# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Jane Doe, individually and on behalf of all similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 25-cv-8520 (JSR) |
| Bank of America, N.A., | ) ) | |
| Defendant. | ) ) ) | |
| Jane Doe, individually and on behalf of all similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 25-cv-8525 (JSR) |
| The Bank of New York Mellon Corp., | ) ) | |
| Defendant. | ) ) ) | |

## BANK OF AMERICA, N.A.'s MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

November 13, 2025

Bethany K. Biesenthal
Paula Quist
Shea F. Spreyer
Carol T. Li
JONES DAY
110 North Wacker Drive
Suite 4800
Chicago, IL 60606
(312) 782-3939

Charlotte H. Taylor
JONES DAY
51 Louisiana Ave, N.W.
Washington, DC 20001
(202) 879-3939

*Counsel for Bank of America, N.A.*

**TABLE OF CONTENTS**

**Page(s)**

INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................ 3

STANDARD OF REVIEW ........................................................................................ 5

ARGUMENT ............................................................................................................. 6

I.    The Complaint fails to state a TVPRA claim (Counts I-IV). ............................ 6

    A.    The Complaint fails to state a perpetrator claim under § 1591(a)(2)..................... 6

        1.    The Complaint does not plead facts that Bank of America knowingly assisted, supported, or facilitated sex trafficking..................... 7

        2.    The Complaint does not plead facts that Bank of America knew or recklessly disregarded Plaintiff's trafficking. ............................................. 9

        3.    The Complaint does not plead facts that Bank of America knowingly benefitted from participation in Epstein's sex-trafficking venture ........................................................................................ 10

    B.    The Complaint fails to state a participant claim under § 1595(a)........................ 11

        1.    The Complaint does not plausibly plead that Bank of America took part in a common purpose of trafficking in violation of the TVPRA. ............................................................................................. 12

        2.    The Complaint does not plausibly plead that Bank of America knew or should have known of Epstein's TVPRA violations. ................ 16

        3.    The Complaint does not plausibly plead that Bank of America knowingly received any benefit from the sex-trafficking venture.......... 18

        4.    The law does not recognize a claim to impose liability on a service provider of a participant in a sex-trafficking venture. ............................. 19

    C.    The Complaint fails to state an "aiding and abetting" claim (Count III)............. 20

    D.    The Complaint fails to state an "obstruction" claim (Count IV). ........................ 21

II.   The Complaint does not plausibly plead a negligence claim (Counts V-VI). ................. 22

    A.    The negligence claims are time-barred................................................................. 22

    B.    Bank of America did not owe Plaintiff a duty to protect her from a third-party's malfeasance............................................................................................... 23

    C.    Bank of America's conduct was not the proximate cause of Plaintiff's injury. ............................................................................................................... 24

CONCLUSION......................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.B. v. Wyndham Hotels & Resorts, Inc.*,
  532 F. Supp. 3d 1018 (D. Or. 2021) ...................................................................19

*Abhyankar by Behrstock v. JPMorgan Chase, N.A.*,
  2020 WL 4001661 (S.D.N.Y. July 15, 2020) ......................................................24

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................................................3, 6, 17

*Ashley v. Deutsche Bank*,
  144 F.4th 420 (2d Cir. 2025) .............................................................................20

*B.J. v. G6 Hospitality, LLC*,
  2023 WL 3569979 (N.D. Cal. May 19, 2023) ......................................................17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................6

*C.C. v. Rashid*,
  2025 WL 1785273 (D. Nev. June 26, 2025)........................................................22

*Calcano v. Swarovski N. Am. Ltd.*,
  36 F.4th 68 (2d Cir. 2022) .................................................................................6

*Catelyn H. v. G6 Hosp., LLC*,
  2025 WL 929032 (D. Nev. Mar. 26, 2025) .........................................................22

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
  511 U.S. 164 (1994)............................................................................................20

*David v. Weinstein Co.*,
  431 F. Supp. 3d 290 (S.D.N.Y. 2019)..................................................................24

*Doe #1 v. Red Roof Inns, Inc.*,
  21 F.4th 714 (11th Cir. 2021) .................................................................. passim

*Doe 1 v. Apple Inc.*,
  96 F.4th 403 (D.C. Cir. 2024)..................................................................12, 13, 14

*Doe 1 v. Deutsche Bank*,
  671 F. Supp. 3d 387 (S.D.N.Y. 2023)....................................................... passim

*Doe v. G6 Hosp., LLC*,
  2025 WL 1167550 (W.D. Wash. Apr. 22, 2025)...................................................22

*Does 1–6 v. Reddit, Inc.*,
  51 F.4th 1137 (9th Cir. 2022) ..............................................................10, 18

*Friedman v. Bartell*,
  2025 WL 1681607 (2d Cir. June 16, 2025) .........................................................22

# TABLE OF AUTHORITIES

**Page(s)**

*G.G. v. Salesforce.com, Inc.*,
  76 F.4th 544 (7th Cir. 2023) ................................................................12, 13, 15, 17

*G.W. v. Northbrook Indus., Inc.*,
  739 F. Supp. 3d 1243 (N.D. Ga. 2024)........................................................................18

*Geiss v. Weinstein Co. Holdings LLC*,
  383 F. Supp. 3d 156 (S.D.N.Y. 2019).....................................................................7, 10

*Hain v. Jamison*,
  68 N.E.3d 1233 (N.Y. 2016)................................................................................24, 25

*Hartsko Fin. Servs., LLC v. JPMorgan Chase Bank, N.A.*,
  125 A.D.3d 448 (N.Y. 1st Dep't 2015).......................................................................24

*In re Terrorist Attacks on Sept. 11, 2001*,
  349 F. Supp. 2d 765 (S.D.N.Y. 2005), *aff'd*, 538 F.3d 71 (2d Cir. 2008)..............25

*In re Terrorist Attacks on Sept. 11, 2001*,
  740 F. Supp. 2d 494 (S.D.N.Y. 2010), *aff'd*, 714 F.3d 118 (2d Cir. 2013)............25

*Jane Doe No. 1 v. Fitzgerald*,
  2022 WL 425016 (C.D. Cal. Jan. 6, 2022) ................................................................21

*K.O. v. G6 Hosp., LLC*,
  728 F. Supp. 3d 624 (E.D. Mich. 2024)......................................................................22

*Levin v. Sarah Lawrence Coll.*,
  747 F. Supp. 3d 645 (S.D.N.Y. 2024)........................................................................22

*Linda R.S. v. Richard D.*,
  410 U.S. 614 (1973).....................................................................................................21

*Linde v. Arab Bank PLC*,
  384 F. Supp. 2d 571 (E.D.N.Y. 2005) ........................................................................25

*Mueller v. Deutsche Bank*,
  777 F. Supp. 3d 329 (S.D.N.Y. 2025)...........................................................13, 15, 17, 18

*Noble v. Weinstein*,
  335 F. Supp. 3d 504 (S.D.N.Y. 2018).............................................................6, 7, 8, 9

*Pinkerton v. United States*,
  328 U.S. 640 (1946).....................................................................................................15

*Purdy v. Public Adm'r of Westchester*,
  526 N.E.2d 4 (N.Y. 1988)............................................................................................24

*Reznor v. J. Artist Mgmt., Inc.*,
  365 F. Supp. 2d 565 (S.D.N.Y. 2005).........................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

*Ricchio v. McLean*,
    853 F.3d 553 (1st Cir. 2017).................................................................................13

*Rothstein v. UBS AG*,
    647 F. Supp. 2d 292 (S.D.N.Y. 2009)....................................................................25

*Sejin Precision Indus. Co. v. Citibank, N.A.*,
    235 F. Supp. 3d 542 (S.D.N.Y. 2017)....................................................................23

*Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*,
    605 U.S. 280 (2025)..............................................................................................20

*Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*,
    56 Cal. Rptr. 2d 756 (Ct. App. 1996).....................................................................24

*T.S. v. Wyndham Hotels & Resorts, Inc.*,
    2024 WL 3927382 (D. Minn. Aug. 23, 2024) .......................................................20

*Twersky v. Yeshiva Univ.*,
    993 F. Supp. 2d 429 (S.D.N.Y. 2014), *aff'd*, 579 F. App'x 7 (2d Cir. 2014).........23

*Twitter, Inc. v. Taamneh*,
    598 U.S. 471 (2023)..............................................................................................20

*United States v. Afyare*,
    632 F. App'x 272 (6th Cir. 2016) ..............................................................6, 7, 8, 9

*Watkins v. First Citizens Bank & Tr. Co., Inc.*,
    2017 WL 4857959 (D.S.C. Oct. 2, 2017) ..............................................................21

**STATUTES**

18 U.S.C. § 2.................................................................................................................20

18 U.S.C. § 1591(a) ...................................................................................................1, 2, 7, 8

18 U.S.C. § 1591(e) ........................................................................................................2, 7, 8

18 U.S.C. § 1595(a) ......................................................................................................*passim*

18 U.S.C. § 1595(c) ..........................................................................................................22

REVISED UNIFORM PARTNERSHIP ACT § 305(a) ...........................................................15

**RULES**

N.Y. CPLR § 214..............................................................................................................22

**OTHER AUTHORITIES**

46 AM. JUR. 2D JOINT VENTURES § 37 ..............................................................................15

*From*, def. 14, Oxford English Dictionary (2d ed. 1989) ..................................................18

## TABLE OF AUTHORITIES

**Page(s)**

*Knowing*, Black's Law Dictionary (12th ed. 2024) ....................................................................18

*Participation*, Black's Law Dictionary (11th ed. 2019) ..............................................................12

*Participation*, def. 2(b), Oxford English Dictionary (2d ed. 1989) ...........................................12

*Venture*, Black's Law Dictionary (11th ed. 2019) ......................................................................12

## INTRODUCTION

This lawsuit seeks to hold Bank of America, N.A. civilly liable for the crimes of Jeffrey Epstein based on nothing more than allegations that it provided routine services to customers who at the time had no known connection to Epstein's sex trafficking. It follows on suits against other banks that were filed years ago and that asserted the same claims. But where those complaints alleged facts indicating that the defendant banks provided non-routine services to Epstein, this Complaint is threadbare and meritless. The Court should dismiss it.

The Trafficking Victims Protection Reauthorization Act ("TVPRA") provides a civil cause of action for "a victim of a violation of this chapter" against both "the perpetrator" of a violation of 18 U.S.C. § 1591(a)—the criminal prohibition on trafficking—and "whoever knowingly benefits … from participation in a venture which that person knew or should have known has engaged in an act in violation" of § 1591(a). 18 U.S.C. § 1595(a). It is therefore Plaintiff's burden to allege facts that establish Bank of America either perpetrated sex trafficking or participated in a venture that did. Rather than detailing any such specific conduct, the Complaint largely recycles boilerplate allegations from the prior cases (and public reporting). When this Court previously allowed some Epstein-related claims against banks to survive motions to dismiss, it did so largely based on those complaints' non-conclusory allegations of non-routine services, such as giving Epstein large quantities of cash, helping him structure cash withdrawals to elude suspicion, delaying reports for thousands of suspicious transactions totaling more than $1 billion, and permitting the use of a subsidiary's jet to transport young women. No such allegations appear here. The Complaint alleges that Bank of America provided routine services to customers who at the time had no known connection to Epstein's sex trafficking. That is insufficient.

The Complaint asserts five main theories of liability, all deficient. *First*, Plaintiff seeks to hold Bank of America liable as a criminal perpetrator of sex trafficking. But there is a high bar

for such "perpetrator liability": Plaintiff must plausibly allege that the defendant "knowingly assist[ed], support[ed], or facilitate[ed]" *her* sex trafficking.  § 1591(a)(2), (e)(4).  Plaintiff's allegations that she received payments in a Bank of America account for immigration and tax services and unspecified reimbursement fall well short.

*Second*, Plaintiff alternatively asserts that Bank of America is liable as a civil participant in criminal sex trafficking under § 1595(a).  But she fails to allege that Bank of America held in "common" the goal of trafficking Plaintiff or took any steps to traffic Plaintiff or any other woman—as is necessary to plead "participation" in a venture that engaged in sex trafficking. Likewise, because the transactions she references bore no indicia of the criminal purpose, she offers no non-conclusory allegation that Bank of America "knew or should have known" of her trafficking or that its customers were engaged in a sex-trafficking venture.  And there is no allegation that Bank of America "knowingly" received a "benefit … from its participation" distinct from the fees any bank receives for processing payments for customers.

*Third*, this Court should dismiss, as it has done before, Plaintiff's claim that Bank of America "aided and abetted" a sex-trafficking venture.  The TVPRA does not provide for § 2 aiding-and-abetting liability, and the Court cannot infer that such a cause of action exists.

*Fourth*, this Court should reject Plaintiff's "obstruction" claim.  Section 1595 does not provide a civil cause of action for "obstruction."  Even if it did, Plaintiff does not provide any specific allegations as to how Bank of America intentionally frustrated investigations into Epstein.

*Finally*, Plaintiff's state-law negligence claims should be dismissed.  To start, they are time-barred.  In New York, negligence claims accrue at the time of injury.  Plaintiff's latest possible injury occurred in 2019, when Epstein died.  This suit—brought over a decade after the alleged negligent acts and six years after the last possible injury—is well outside the three-year

statute-of-limitations window. Even if not, her negligence claims fail because it was not reasonably foreseeable that Bank of America's provision of routine banking services to Plaintiff would set in motion harms to her. Nor was Plaintiff's trafficking a natural and foreseeable consequence of the processing of routine transactions, which is all Plaintiff claims. The alleged transactions pertained to rent, immigration assistance, and tax payments and would not have raised any red flags—a far cry from, for example, the prior litigation's alleged withdrawals of hundreds of thousands of dollars in cash for trafficking purposes.

Bank of America opposes trafficking in all its forms. But this suit attempts to radically expand liability for banks, holding them liable for providing ordinary banking services to individuals one or more steps removed from a trafficker—far beyond what the TVPRA allows. Courts have increasingly rejected such atextual attempts to expand secondary liability for companies. This Court should do the same and dismiss the Complaint.

## BACKGROUND

The only specific, non-conclusory allegations in the Complaint connecting Epstein or his associates with Bank of America pertain to three Bank of America customers: Ghislaine Maxwell, Leon Black, and Plaintiff herself.[1]

*Ghislaine Maxwell's Account.* The Complaint alleges that Maxwell had a Bank of America account but provides no details on how it was used. ECF No. 1 ¶ 109 (hereinafter "Compl.").

*Leon Black's Account.* The Complaint alleges that Wall Street financier Leon Black had a Bank of America account. *Id.* ¶ 109. The only alleged Epstein-related activity from that account was that "Black paid Epstein including $170 million for purported 'tax and estate planning advice.'" *Id.* ¶ 82. The Complaint separately alleges that Black admitted "Epstein used the money

---

[1] For purposes of this motion only, Bank of America accepts the Complaint's factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Black paid him to partially fund his operations in the Virgin Islands" but does not allege any specific connection between this funding and any Bank of America account. *Id.* ¶ 83.

*Plaintiff's Accounts.* The Complaint alleges that Plaintiff met Epstein in 2011. *Id.* ¶ 43. In 2013, Plaintiff opened a bank account at Bank of America "at the direction of Richard Kahn [Epstein's accountant] and immigration attorney Arda Beskardes." *Id.* ¶ 54. The purpose of the account was not to pay for commercial sex, but rather to "defraud immigration officials." *Id.*

At some point, another account was created in Plaintiff's name to "provide [her] with money from Epstein for monthly rent to create documentation to be provided to immigration." *Id.* ¶ 57. Kahn and his assistant then began making payments into the account. *Id.* ¶¶ 57-66. Plaintiff identifies some actual payments made, such as a 2015 payment for "seven months of rent." *Id.* ¶ 59. Elsewhere, she alleges only that money was deposited for "rent," "payroll," "tax[]," and "immigration purposes," or unidentified "reimbursement." *Id.* ¶ 61; *see also id.* ¶¶ 58, 60, 63. Plaintiff was often "unaware of any reason for the transfer [or] whether … the money was being wired for her own use or for some other purpose." *Id.* ¶ 56. Indeed, "[a]t least one of [her] bank accounts at Bank of America continued to be utilized by Epstein and Kahn through Epstein's death in 2019 for activities unknown and unexplained to Jane Doe." *Id.* ¶ 66. Plaintiff does not allege that any money deposited into her accounts was used to pay for sex or otherwise fueled Epstein's sex-trafficking venture, unlike allegations in prior cases. Based on these allegations, the Complaint asserts, "Rather than merely providing routine banking services to Epstein, Bank of America went far beyond what a non-complicit bank would have done and instead assisted Epstein in setting up the necessary financial structure to operate his sex-trafficking venture." *Id.* ¶ 80. But that statement is conclusory and must rise or fall with the specific allegations that precede it.

The remainder of the Complaint makes similarly conclusory allegations borrowed from

prior cases against JPMorgan Chase and Deutsche Bank Aktiengesellschaft and its related entities, *Doe 1 v. Deutsche Bank Aktiengesellschaft*, Case Nos. 22-cv-10018, 22-cv-10019, 22-cv-10904—but without any factual enhancement as to Bank of America.  For example, Plaintiff alleges that "Bank of America also failed to follow routine banking practices of reviewing Epstein-related accounts against the backdrop of the public information outing him as a serial sex abuser and reporting Epstein for what was obviously a sex trafficking operation he was running."  Compl. ¶ 81.  Plaintiff does not explain what due diligence Bank of America should have performed on Epstein in connection with the limited number of transactions she identifies, many of which did not directly involve him.

Likewise, Plaintiff alleges that "Bank of America … purposely and deliberately failed to timely file required Suspicious Activity Reports ('SARs') for Epstein's suspicious activities."  *Id.* But she identifies no specific, suspicious activities Bank of America should have flagged—no large cash withdrawals, structured cash withdrawals, or unexplained payments to women, for example.  *E.g.*, Dkt. No. 36 ¶¶ 175, 179, 180-81, 22-cv-10019.  Nor does she allege any motivation that Bank of America would have had to withhold such information.  *Id.* ¶¶ 152, 173, 214.

Finally, Plaintiff alleges that "Bank of America chose not to cooperate with law enforcement and other investigations into Epstein's sex trafficking at any time, because it knew it would be exposed as assisting in Epstein's scheme."  Compl. ¶ 85.  But the complaint does not detail any investigations with which Bank of America purportedly did not cooperate, nor does it specify any activity or pattern of activity Bank of America should have brought to the attention of law enforcement.  This stands in stark contrast prior cases where, for example, hush money was allegedly withdrawn to cover up Epstein's crimes.  *E.g.*, Dkt. No. 36 ¶¶ 157-60, 22-cv-10019.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to

"state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. This standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Alleging facts that are "merely consistent with a defendant's liability … stops short of the line between possibility and plausibility." *Id.* (quoting *Twombly*, 550 U.S. at 557).

To withstand dismissal, the plaintiff must provide more than "labels and conclusions," "naked assertion[s] devoid of [] factual enhancement," and "[t]hreadbare recitals of the elements of a cause of action." *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). The court is "not bound to accept as true a legal conclusion couched as a factual allegation"; nor is it bound to accept "conclusory statements" in "support[]." *Id.* Above all, the court must "draw on its judicial experience and common sense." *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022).

## ARGUMENT

## I.    The Complaint fails to state a TVPRA claim (Counts I-IV).

Although the Complaint is not clear, Plaintiff appears to allege in Counts I and II that Bank of America is a "perpetrator" of sex trafficking under § 1591(a)(2), and alternatively that it is a "beneficiary" or "participant" in a venture that engaged in sex trafficking under § 1595(a). Compl. ¶¶ 125-59. Count III alleges aiding and abetting of violations of § 1591(a)(1) and (a)(2), and Count IV seeks to hold Bank of America liable for obstruction of the criminal enforcement of the TVPRA under § 1591(d). *Id.* ¶¶ 160-95. All of these TVPRA claims are legally deficient as pled.

### A.    The Complaint fails to state a perpetrator claim under § 1591(a)(2).

Under § 1595(a), a "victim of a violation of this chapter" may sue the "perpetrator" of her trafficking. In this context, the "perpetrator" is one who criminally violates § 1591(a). *See Noble v. Weinstein*, 335 F. Supp. 3d 504, 523-24 (S.D.N.Y. 2018) (citing *United States v. Afyare*, 632 F.

App'x 272, 283 (6th Cir. 2016)).  Relevant here, § 1591(a) imposes criminal penalties (including up to life imprisonment) on "whoever knowingly benefits, financially," from "knowingly assisting, supporting, or facilitating" a criminal trafficking "violation" of a "person," "knowing" or "reckless[ly] disregard[ing]" that "force," "fraud," or "coercion" "will be used to cause the person to engage in [] commercial sex."  § 1591(a)(2), (e)(4).  No element is satisfied here.[2]

### 1.    The Complaint does not plead facts that Bank of America knowingly assisted, supported, or facilitated sex trafficking.

To begin, Plaintiff must plausibly allege that Bank of America "knowingly assist[ed], support[ed], or facilitat[ed]" a "violation of subsection (a)(1)."  § 1591(a)(1), (e)(4).  To do so, Plaintiff must allege that Bank of America had "some participation in the sex trafficking act itself." *Noble*, 335 F. Supp. 3d at 524; *see also Afyare*, 632 F. App'x at 286 (requiring "'overt act' that further[ed] the sex trafficking aspect of the venture").  And the alleged "violation" must be "toward" the "victim of a violation"—i.e., the plaintiff.  *Noble*, 335 F. Supp. 3d at 524 (quoting § 1595(a)).

"[A]ssociation alone" is not enough.  *Id.*  Nor is "turn[ing] a blind eye."  *Afyare*, 632 F. App'x at 286.  Nor is engaging in business activities with a trafficker.  *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 168 n.4 (S.D.N.Y. 2019) (dismissing claims where defendants were allegedly "involve[d] in making hush payments").  Otherwise, companies would face *criminal* liability for providing ordinary products or services (e.g., food, transportation, utilities, bank accounts) to traffickers.  *Cf. Afyare*, 632 F. App'x at 286 (discussing hypothetical).

---

[2] Plaintiff does not appear to allege that Bank of America *itself* "knowingly" trafficked her in violation of § 1591(a)(1).  *See* Compl. ¶¶ 151-52 (citing "Epstein's violations of § 1591(a)(1)").  With good reason: "A direct perpetrator of sex trafficking is someone who knowingly 'recruits, entices, harbors, transports, provides, advertises, maintains, patronizes, or solicits' [a person] … to engage in a commercial sex act … by means of force, fraud, or coercion."  *Doe 1 v. Deutsche Bank*, 671 F. Supp. 3d 387, 409-10 (S.D.N.Y. 2023).  The provision of banking services, even to a known trafficker, "do[es] not make [a bank] the recruiter."  *Id.* at 410.

Two cases illustrate what does—and does not—state a § 1591(a)(2) claim. In *Noble*, Judge Sweet analyzed a claim brought by one of Harvey Weinstein's victims against his brother and business associate, Robert. The plaintiff alleged that Robert "facilitat[ed]" Weinstein's "commercial sex acts in foreign commerce" by promoting his business projects, covering his "travel in interstate commerce," and paying "prior settlements of claims by women against him." 335 F. Supp. 3d at 523. But these allegations did not suffice: "§ 1591(a)(2) targets those who *participate in sex trafficking*; it does not target those [like Robert] who [at most] turn a blind eye to the source of their financial sponsorship." *Id.* at 524 (quoting *Afyare*, 632 F. App'x at 286) (alteration adopted, emphasis in original).

In *Deutsche Bank*, in contrast, this Court analyzed a § 1591(a)(2) claim brought by Jeffrey Epstein's victims against two banks that provided services for dozens of accounts for Epstein himself and his related entities. 671 F. Supp. 3d at 397-400. The plaintiff alleged that one bank "assisted with 'structuring' cash withdrawals" used for trafficking "so that those withdrawals would not appear suspicious"; that it "actually trafficked women and girls for Jeffrey Epstein through its subsidiary"; and that its executive "himself abused some of Epstein's victims, including [a plaintiff] herself." *Id.* at 399, 405-06. Even after that bank exited Epstein, a second bank "[s]imilarly concealed its delivery of hundreds of thousands of dollars in cash to Epstein and his associates" that was used for trafficking. *Id.* at 406. These and other non-conclusory allegations sufficed to allege § 1591(a)(2) liability, as the banks "went well beyond merely providing their usual services to Jeffrey Epstein and his affiliated entities." *Id.* (distinguishing, e.g., *Noble*).

This case is like *Noble*, not *Deutsche Bank*. There is no allegation that Bank of America "knowingly assist[ed], support[ed], or facilitat[ed]" *any* criminal trafficking "violation," § 1591(a)(2), (e)(4), much less "a violation" as to this "victim," § 1595(a). Instead, the Complaint

8

alleges Bank of America provided normal banking services to customers (who were *not* Epstein) for purposes unrelated to trafficking. *See, e.g.*, Compl. ¶¶ 59-64 (alleging payments for "rent, payroll, … taxes, [and] immigration purposes"); *id.* ¶ 82 (alleging payment for "tax and estate planning advice"). That is not enough. *See Noble*, 335 F. Supp. 3d at 524.

## 2. The Complaint does not plead facts that Bank of America knew or recklessly disregarded Plaintiff's trafficking.

A plaintiff must also show that the defendant had the requisite mens rea. The mental state required by § 1591(a) is that of a criminal offense—actual knowledge or reckless disregard that the plaintiff was trafficked and that force, fraud, or coercion caused the plaintiff's sex-trafficking. *See Noble*, 335 F. Supp. 3d at 517-18. It is specific as to the plaintiff and as to the venture.[3]

The Complaint only alleges—at best—generalized knowledge. Indeed, the only detailed allegations regarding knowledge concern public reports of Epstein's behavior from the early 2000s. Compl. ¶¶ 93-103. Elsewhere, the Complaint simply alleges Bank of America "had knowledge that Epstein was operating a sex-trafficking venture," "knew from the press that Epstein was a sex offender," and "ignore[ed] multiple red flags." *Id.* ¶¶ 87, 104-07. Absent from the Complaint are allegations that Bank of America knew Epstein was recruiting, enticing, soliciting, or harboring *Plaintiff* (or any identified individual) or using force, fraud, or coercion to cause *Plaintiff* (or any identified individual) to engage in commercial sex. *See Afyare*, 632 F.

---

[3] In *Deutsche Bank*, this Court stated that for § 1591(a)(2) purposes, "[k]nowledge … is required with respect to the venture, not with respect to any particular person." 671 F. Supp. 3d at 407. Bank of America respectfully disagrees. Section 1595(a) allows claims against both "perpetrators" and "participants." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 724 (11th Cir. 2021). For a "perpetrator" claim, the plaintiff must prove a § 1591(a) violation, including knowledge of *her* trafficking: "knowing" or "reckless[ly] disregard[ing]" that "force," "fraud," or "coercion" will be used "to cause *the person* to engage in a commercial sex act" (emphasis added). While § 1595(a) also requires plaintiff-specific knowledge (*see infra* 16-18), it uses different language, requiring that a defendant "knew or should have known" that the "venture … has engaged in an act in violation" of § 1591(a).

App'x at 283; *cf. Deutsche Bank*, 671 F. Supp. 3d at 407 (finding sufficient allegations, e.g., that one bank's "high-level executive[]" "sexual[ly] assault[ed]" a plaintiff and another bank's agent "met with Epstein" and even "observed victims in Epstein's home"). Accordingly, Plaintiff has failed to plead Bank of America acted with the requisite mens rea for her perpetrator claim.

### 3. The Complaint does not plead facts that Bank of America knowingly benefitted from participation in Epstein's sex-trafficking venture.

Finally, for criminal perpetrator liability based on participation, the plaintiff must plead that the defendant "knowingly [] benefits … from participation in a venture which has engaged in" sex trafficking. § 1591(a)(2). It is settled that in the criminal context, "[t]he participation giving rise to the benefit must be participation in a *sex-trafficking venture*, not … in other activities engaged in by the sex traffickers that do not further the sex-trafficking aspect of their venture." *Geiss*, 383 F. Supp. 3d at 169 (emphasis in original). And there must be "a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit." *Does 1–6 v. Reddit, Inc.*, 51 F.4th 1137, 1145 (9th Cir. 2022) (quoting *Geiss*, 383 F. Supp. 3d at 169). In sum, the defendant must receive the benefit *in return for* its facilitation *of sex-trafficking*.

In *Geiss*, the court considered whether The Weinstein Company (TWC) knowingly benefitted from Harvey Weinstein's sex-trafficking venture. 383 F. Supp. 3d at 169-70. While TWC "undoubtedly benefited" from employing Weinstein because "[h]is movies and influence generated revenue," there was no allegation he "provided any of those benefits to TWC *because of* TWC's facilitation" of his trafficking. *Id.* at 169 (emphasis in original). Nor was it alleged that Weinstein "secured TWC's alleged complicity in his sexual violence as a condition of his employment" or that any officers "were compensated for their participation" in Weinstein's trafficking. *Id.* at 170.

The same is true here. The Complaint alleges that Bank of America received unspecified

"connections," "deposits," and "opportunit[ies] to earn financial benefits" from Epstein, "his co-conspirators, and his wealthy friends and associates." Compl. ¶ 114. Setting aside that the Complaint never provides any factual enhancement to support this allegation, the Complaint fails to allege that Bank of America knew it received any of the alleged benefits *because* it was providing banking services that facilitated Epstein's sex-trafficking venture. There is no allegation that anyone offered their business to Bank of America as a reward for Bank of America's purported facilitation or that anyone threatened to pull their business from Bank of America if it did not overlook alleged red flags. *Cf. Deutsche Bank*, 671 F. Supp. 3d at 408. All Plaintiff has alleged is that Bank of America "earned interest, commissions, service fees, and other financial benefits" from its customers. Compl. ¶ 113. That is unremarkable and not actionable.

### B. The Complaint fails to state a participant claim under § 1595(a).

Having failed to establish a criminal "perpetrator" claim, the Complaint also fails to state a civil "participant" claim. Any analysis of § 1595 participant liability must "begin with the venture" as the plaintiff defines it. *Doe v. Red Roof Inns, Inc.*, 21 F.4th at 726. Here, Plaintiff has chosen to define the venture as "Epstein's sex trafficking venture." *E.g.*, Compl. at p.15.[4] Accordingly, to state a civil participant claim, Plaintiff must plausibly allege (1) Bank of America "participat[ed]" in Epstein's sex-trafficking venture; (2) Bank of America "knew or should have known" that his sex-trafficking venture "engaged in an act in violation of [§ 1591(a)]"; and (3) Bank of America "knowingly … benefit[ted] … from [its] participation" in his sex-trafficking venture. § 1595(a).

---

[4] The Complaint references Epstein's sex-trafficking venture in relation to Bank of America's conduct approximately 40 times. *See, e.g.*, Compl. ¶¶ 16, 19, 75, 77, 84, 85, 88, 89, 93, 104, 112, 114, 118, 120, 128, 132, 137-39, 140, 142, 151, 157, 162-64, 166-68, 173, 181, 185-86, 190, 193.

1.    **The Complaint does not plausibly plead that Bank of America took part in a common purpose of trafficking in violation of the TVPRA.**

While § 1591(a)(2) and § 1595(a) both use the terms "participation in venture," courts have not imported the definition of "participation in a venture" in § 1591(e)(4) into the civil context but rather have looked to the plain meaning of the term as used in § 1595(a). *See, e.g.*, *Red Roof Inns*, 21 F.4th at 724; *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 558 (7th Cir. 2023). A "venture" is ordinarily understood to be "[a]n undertaking that involves risk; esp., a speculative commercial enterprise." *Venture*, Black's Law Dictionary (11th ed. 2019). "Participation" is defined as "[a] taking part, association, or sharing (with others) in some action or matter." *Participation*, def. 2(b), Oxford English Dictionary (2d ed. 1989); *see also Participation*, Black's Law Dictionary (11th ed. 2019) ("[t]he act of taking part in something"). "Participation in a venture," therefore, means to take "part in a common undertaking or enterprise involving risk and potential profit." *Red Roof Inns*, 21 F.4th at 719; *accord Doe 1 v. Apple Inc.*, 96 F.4th 403, 415 (D.C. Cir. 2024). And that venture must have violated the TVPRA. *Red Roof Inns*, 21 F.4th at 726.

The Complaint fails to allege the requisite acts necessary to show that Bank of America participated in a sex-trafficking venture with Epstein (or anyone else) in violation of the TVPRA.

**Bank of America did not participate in Epstein's sex-trafficking venture.** Plaintiff's theory of liability is that "Bank of America participated in Epstein's sex-trafficking venture." Compl. at p.15. Under the plain terms of the statute, passive facilitation of a sex-trafficking venture is not actionable; rather, a defendant must take affirmative acts to further the venture's common purpose. The distinction is illustrated by leading cases in the hospitality context.

In *Red Roof Inns*, the Eleventh Circuit held that neither a hotel's "financial benefit[] from renting hotel rooms" nor alleged "observ[ation]" of sex trafficking demonstrated that the hotel franchisors "took part in the common undertaking of *sex trafficking* … with sex traffickers." *Id.*

at 726-27 (emphasis added).  By contrast, in *Ricchio v. McLean*, the First Circuit held that a motel operator participated in a venture with the plaintiff's trafficker by participating in the "gainful business" of using a "sex slave" to "supply[] sexual gratification"—as evidenced by the operators "exchanging high-fives in the motel's parking lot while speaking about 'getting this thing going again'" and "visit[ing] the rented quarters to demand … payment" while witnessing the plaintiff's "obvious physical deterioration" and "ignor[ing] [her] plea for help."  853 F.3d 553, 555, 557 (1st Cir. 2017).  Together, *Red Roof Inns* and *Ricchio* demonstrate that doing business with a counterparty that is engaged in trafficking is not the same as "acknowledg[ing] the illegal purpose of the relationship" and "shar[ing] in the benefits and risk."  *Apple*, 96 F.4th at 415 (citing *Ricchio*).

Even where plaintiffs allege participation in a commercial venture—as opposed to a trafficking venture, as here—courts have drawn the same distinction.  In *Doe 1 v. Apple*, the D.C. Circuit held that technology companies did not participate in a venture with their cobalt suppliers, even where the companies had "full knowledge" that the suppliers "facilitate[d] forced labor."  96 F.4th at 408, 415.  Rather, the parties were merely "on opposite sides of an arms-length transaction" for cobalt, which did not provide "a factual basis to infer a common purpose."  *Id.* at 415-16.  By contrast, in *G.G. v. Salesforce.com*, the Seventh Circuit found that Salesforce, a software company, was alleged to have participated in a venture by delivering personalized tools to Backpage, a business that the plaintiff alleged trafficked her and many others.  76 F.4th at 565.  For example, Salesforce allegedly supplied Backpage with "targeted solutions addressed to the needs of [its] business," assessed its "operational needs," and provided "active, ongoing support" "tailored" to those needs.  *Id.* at 560.  As both cases make clear: "'[P]articipation' requires more than providing off-the-shelf … products or services."  *Id.* at 562; *see Apple*, 96 F.4th at 415.

The TVPRA operates the same way in the banking context.  In *Mueller v. Deutsche Bank*,

Judge Cote rejected a claim that, by providing financial services to customers affiliated with ISIS, banks participated in ISIS's human-trafficking venture. 777 F. Supp. 3d 329, 332 (S.D.N.Y. 2025). There, plaintiffs alleged two schemes. First, al-Qaeda agents allegedly used the banks' services to commit tax fraud, the proceeds of which were used in ISIS's human-trafficking venture. *Id.* at 332-34. Second, the banks allegedly processed thousands of transactions, worth around $3 billion, on behalf of banks seized by ISIS. *Id.* at 335. But without an allegation that the banks "interacted with their allegedly ISIS-connected accountholders any more or differently than they would with their many other customers," the banks "cannot be said to have 'taken part or shared in an enterprise or undertaking' with them." *Id.* at 338 (quoting *Apple*, 96 F.4th at 415) (cleaned up).

By contrast, in *Deutsche Bank*, this Court permitted a § 1595 claim to go forward where the complaint alleged that banks' affirmative acts "went well beyond merely providing their usual services to Jeffrey Epstein and his affiliated entities." 671 F. Supp. 3d at 406. Specifically, the plaintiffs alleged that the banks provided "unusual" amounts of cash to Epstein to fund his sex-trafficking venture, "assisted with structur[ing] cash withdrawals so that those withdrawals would not appear suspicious," "delayed filing suspicious activity reports concerning Epstein's activities" to help avoid detection, allowed Epstein "to use [his] accounts to send dozens of wires … to then known co-conspirators," and "actually trafficked women and girls for Epstein through [a] subsidiary." *Id.* Those specific allegations plausibly showed there was *something more* to the banks' relationship with Epstein that furthered a common purpose. *Id.* at 408.

Here, the Complaint alleges no special services Bank of America provided to Epstein or any associate that in any way deviated from services provided to any other customer. Indeed, there are barely any allegations about Maxwell's and Black's use of their accounts; and no specific allegation about how Doe's use of her account was out of the ordinary. There are no allegations

that Bank of America's customers were wiring funds to any of Epstein's then-known conspirators. There are no allegations that Bank of America was helping Epstein or his associates structure cash withdrawals to avoid alerting authorities. And there are no allegations that Bank of America was providing unusual amounts of cash to Epstein or his associates. The Complaint's allegations are thus even more paltry than those found wanting in *Mueller*, where the bank actually provided extensive services to ISIS-controlled banks and ISIS-controlled accountholders. 777 F. Supp. 3d at 332-34, 338. The Complaint fails to deliver on the allegation that Bank of America "participated in … a sex-trafficking venture." Compl. ¶ 149. Count II should, therefore, be dismissed.

  ***Bank of America did not participate in any venture that violated the TVPRA.*** Dismissal is warranted even if the Complaint could plausibly be read to allege a commercial venture with a party who, in turn, engaged in sex trafficking. "[T]he venture in which the defendant participated and from which it knowingly benefitted must have violated the TVPRA," so a violation by *someone in* the venture is not sufficient. *Red Roof Inns*, 21 F.4th at 726; *see also G.G.*, 76 F.4th at 559 (noting the "venture … must violate Section 1591, and not the participant"). This comports with other legal concepts for enterprise liability. For example, a defendant is not liable for all acts of a co-conspirator, but only those within the scope of the conspiracy. *See Pinkerton v. United States*, 328 U.S. 640, 647-48 (1946) (defendant not liable for co-conspirator's offense if it "did not fall within the scope of the unlawful project"). Likewise, a partner is only liable for acts within the scope of the partnership. Revised Uniform Partnership Act § 305(a) ("A partnership is liable for … injury caused to a person … as a result of a wrongful act or omission … of a partner acting in the ordinary course of business of the partnership or with authority of the partnership."). So too for ventures. 46 Am. Jur. 2d Joint Ventures § 37 ("joint venturers may bear responsibility for the defalcations of their partners performed within the scope of the joint venture").

Here, the Plaintiff does not allege that any venture *between Bank of America and its customers* violated the TVPRA. With respect to Plaintiff's Bank of America relationship, that should be obvious, since she does not claim she engaged in a venture that perpetrated her own trafficking (nor that of other victims). *See* § 1591(a)(1). Similarly, even if Black and Maxwell did participate in Epstein's sex-trafficking venture in violation of § 1591, *see* Compl. ¶¶ 83, 180, the Complaint does not sufficiently allege that any such violations were within the scope of the supposed venture *between Bank of America and them* for the provision of financial services.

### 2. The Complaint does not plausibly plead that Bank of America knew or should have known of Epstein's TVPRA violations.

If a defendant has indeed participated in an alleged trafficking venture—which is not pled here—the next question is whether the defendant "knew or should have known [that such venture] has engaged in an act in violation of this chapter." § 1595(a). The Complaint again falls short.

The most natural reading of "knew or should have known" is that it requires a defendant's "actual or constructive knowledge." *Red Roof Inns*, 21 F.4th at 725. Where, as here, the underlying violation is sex trafficking under § 1591(a), the defendant must have "actual or constructive knowledge that the venture—in which it voluntarily participated and from which it knowingly benefited—violated the TVPRA *as to the plaintiff*." *Red Roof Inns*, 21 F.4th at 725 (emphasis added). This is because a participant claim under § 1595 authorizes "a victim of a violation of this chapter" to bring suit against a defendant for its participation in a venture "that has engaged in an *act in violation* of this chapter." § 1595(a) (emphasis added). The "act in violation," in turn, is the crime of "knowingly … recruit[ing], entic[ing], harbor[ing] [and the like] … a *person*." § 1591(a) (emphasis added). Thus, "because § 1595 requires constructive knowledge of a § 1591 violation and a § 1591 violation requires knowledge of a specific victim, damage suits are available only when a plaintiff plausibly alleges that the defendant should have

known that the venture engaged in her particular sex trafficking." *G.G.*, 76 F.4th at 569 (Kirsch, J., dissenting). As explained above, Plaintiff fails to plausibly plead that Bank of America knew or should have known that its supposed venture was trafficking her specifically. *Supra* 9-10.

To be sure, this Court previously rejected a victim-specific knowledge framework, instead finding that "[k]nowledge … is required with respect to the venture, not with respect to any particular person." *Deutsche Bank*, 671 F. Supp. 3d at 407. But even if venture-specific knowledge is all that is required, Plaintiff has still pled insufficient facts that Bank of America knew or should have known that its supposed venture criminally trafficked *anyone*.

As noted above, the Complaint makes specific allegations only with respect to the use of Doe's accounts. And it does not plead facts that establish that Bank of America knew or should have known about its customers' involvement in Epstein's sex-trafficking venture. Indeed, Doe alleges that *she* did not even know the purpose of many account payments. Compl. ¶¶ 56, 66.

Plaintiff does allege her account was opened "to defraud immigration officials," but does not allege how Bank of America should have known that. Compl. ¶ 54. In any event, a TVPRA "beneficiary [must] know its client is engaged in trafficking, not just in any illegal activity." *Mueller*, 777 F. Supp. 3d at 339. These payments indicated purposes that at best were "equally consistent with criminal conduct other than sex trafficking." *B.J. v. G6 Hospitality, LLC*, 2023 WL 3569979, at *6 (N.D. Cal. May 19, 2023). Such allegations "stop short of the line between [the] possibility" that Bank of America could have known about Epstein's trafficking and the "plausibility" that it should have. *Iqbal*, 556 U.S. at 678. Nor do general allegations about banks' regulatory obligations suffice: "even if other regulations require financial institutions to maintain … controls to detect or prevent money laundering or terrorism financing, the TVPRA … does not require a company providing generally available services to investigate its customers to

ensure they are not indirectly connected to trafficking." *Mueller*, 777 F. Supp. 3d at 339.

### 3.    The Complaint does not plausibly plead that Bank of America knowingly received any benefit from the sex-trafficking venture.

The final question is whether the defendant "knowingly benefit[ed], or attempt[ed], or conspire[d] to benefit, financially or by receiving anything of value from participation in a venture … that … has engaged in an act in violation" of § 1591.  § 1595(a).  The word "knowing" means "[h]aving or showing awareness or understanding" or "deliberate; conscious."  *Knowing*, Black's Law Dictionary (12th ed. 2024).  And the word "from" connotes a causal relationship. *From*, def. 14, Oxford English Dictionary (2d ed. 1989) ("[d]enoting ground, reason, cause, or motive: [b]ecause of, on account of, owing to, as a result of, through").

The best understanding of the "knowingly benefits … from" element, therefore, is that a defendant must know the circumstances underlying the § 1595(a) elements—i.e., that it received a benefit that it knew to be tied to its participation in an unlawful venture.  *See Reddit*, 51 F.4th at 1145 (noting there must be "a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit"); *Red Roof Inns*, 21 F.4th at 725 (similar).

This Court has expressed doubt that a "causal relationship" is required.  *Deutsche Bank*, 671 F. Supp. 3d at 408.  But the words cannot be "viewed in isolation and disconnected from the other prongs of the test."  *G.W. v. Northbrook Indus., Inc.*, 739 F. Supp. 3d 1243, 1251 (N.D. Ga. 2024).  It is not enough for a defendant to know it is receiving *some* financial benefit; that would read the words "from participation in a venture" out of the statute.  *See Reddit*, 51 F.4th at 1145.

Even if this Court disagrees, Bank of America still must "knowingly benefit" "from" sex trafficking.  The alleged transactions were not conducted *for sex trafficking*, such that Bank of America received a benefit associated with them *from a sex-trafficking venture*.  *Supra* 3-4.

      **4.     The law does not recognize a claim to impose liability on a service provider of a participant in a sex-trafficking venture.**

Plaintiff's theory, ultimately, is this: because Bank of America had a normal banking relationship with customers who were allegedly involved in Epstein's sex trafficking, it is civilly liable for the harms that stem from Plaintiff's trafficking. In effect, Plaintiff seeks to hold Bank of America liable for a mere business relationship. While Bank of America is sympathetic to all of Epstein's victims, the TVPRA does not impose liability on third parties supplying routine goods and services to traffickers. Otherwise, the entire service economy could be on the hook: phone companies that provide traffickers cell services, gas stations that sell traffickers gas, and so on. Imposing liability effectively would amount to a general federal statutory duty to prevent sex trafficking. The federal courts uniformly hold such a duty does not exist. *A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018, 1027 (D. Or. 2021) (collecting cases).

But Plaintiff's theory goes one step further: she alleges that Bank of America provided services to customers like Black who, unbeknownst to the bank, allegedly had connections with Epstein. *Supra* 14-17. Holding Bank of America liable for having a business relationship with customers who in turn have a relationship with sex traffickers would vastly expand TVPRA liability. And it would expose companies to expensive and protracted proceedings (including discovery) where, as here, there is even one alleged transaction between a customer and an individual who turns out later to have committed a crime—but where that transaction, as alleged, is unrelated to the crime.

If Plaintiff is permitted to move forward, any business could be subject to suit and held liable if there is an allegation that it should have known *its customer* would associate with a trafficker—even if it had no alleged or actual contact with the trafficker and any venture in which it allegedly or actually participated did not include the trafficker. Suppose a utility company

supplies power to a hotel. When the company's employee visits the hotel to read the electric meter, he observes signs of trafficking on the property, yet the company continues to supply electricity to the hotel. On Plaintiff's view, the company's continued supply of electricity would mean that it shares a common goal with a sex-trafficking venture. *See T.S. v. Wyndham Hotels & Resorts, Inc*., 2024 WL 3927382, at *10 (D. Minn. Aug. 23, 2024) (discussing similar hypothetical).

Imposing liability here would also be inconsistent with leading cases on secondary liability. Most prominently, in *Twitter v. Taamneh*, the Supreme Court interpreted the Anti-Terrorism Act's knowledge requirement to avoid "sweep[ing] in innocent bystanders as well as those who gave only tangential assistance," "lest mostly passive actors like banks become liable for all of their customers' crimes by virtue of carrying out routine transactions." 598 U.S. 471, 491, 488-89 (2023). The Second Circuit also rejected liability for "continuing to provide [companies] with basic commercial banking services" even "after learning that the [c]ompanies' product would be exploited" for terrorist activities. *Ashley v. Deutsche Bank*, 144 F.4th 420, 439 (2d Cir. 2025). While the TVPRA and ATA are different statutes, the same caution applies: banks should not be liable merely for processing transactions that allegedly have some relationship to trafficking.[5]

### C.    The Complaint fails to state an "aiding and abetting" claim (Count III).

Plaintiff alleges that Bank of America aided and abetted an Epstein sex-trafficking venture in violation of § 1591(a)(1) and (a)(2). Compl. ¶¶ 160-75. But Section 1595(a) only provides a civil cause of action for a victim to sue for a violation "of this chapter." The aiding-and-abetting provision from 18 U.S.C. § 2 is not in "this chapter," and aiding-and-abetting liability cannot be inferred from "statutory silence." *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver,*

---

[5] Similarly, the Supreme Court just unanimously rejected a claim that gun manufacturers could be liable for unlawful sales to Mexican traffickers, explaining that "[w]hen a company merely knows that 'some bad actors' are taking 'advantage' of its products for criminal purposes, it does not aid and abet." *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 293 (2025).

*N.A.*, 511 U.S. 164, 185, 190-91 (1994).  This Court previously rejected an aiding-and-abetting claim under the TVPRA; it should do so again.  *Deutsche Bank*, 671 F. Supp. 3d at 410-11.

### D.    The Complaint fails to state an "obstruction" claim (Count IV).

Plaintiff also does not have a cause of action under § 1595(a) for a violation of § 1591(d).  Compl. ¶¶ 176-95.  The TVPRA's "civil remedy" only provides "a victim" with a right of action "against the perpetrator."  The most natural reading of this phrase is that a victim may sue for her own injury stemming from a violation of § 1591.  But the "victim" of § 1591(d)'s violation for "[w]hoever obstructs, attempts to obstruct, or in any way interferes with or prevents the enforcement of this section" is the U.S. Government.  A private plaintiff has no private right of action under § 1591(d) and thus is a not a "victim" who may bring a claim under § 1595(a).  *Jane Doe No. 1 v. Fitzgerald*, 2022 WL 425016, at *4 (C.D. Cal. Jan. 6, 2022); *see also Watkins v. First Citizens Bank & Tr. Co., Inc.*, 2017 WL 4857959, at *2 (D.S.C. Oct. 2, 2017) (collecting cases).  That accords with the basic principle that a "private citizen lacks a judicially cognizable interest in the prosecution … of another."  *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).

Nevertheless, even if a private plaintiff can bring a civil cause of action for obstructing TVPRA enforcement, *see Deutsche Bank*, 671 F. Supp. 3d at 409, Plaintiff fails to plead sufficient facts to support such a claim.  In *Deutsche Bank*, this Court allowed an obstruction claim to survive where the plaintiffs pled that (a) the banks "knew of investigations into Jeffrey Epstein's sex-trafficking operation" based on specific alleged reports, and (b) "intentionally failed to file suspicious activity reports in order to frustrate such investigations" based on a failure to file SARs for payments to women who were mentioned in news reports and contained in the banks' due diligence files.  671 F. Supp. 3d at 397-98, 409; *see* Dkt. No. 36 ¶¶ 181-82, Case No. 22-cv-10019.

Unlike in *Deutsche Bank*, Plaintiff here has not alleged any concrete facts to support her claim that Bank of America "knew of law enforcement investigations into Jeffrey Epstein's sex-

trafficking operation" and that the Bank "intentionally failed to file suspicious activity reports in order to frustrate such investigations." 671 F. Supp. 3d at 409. Again, there are not even allegations concerning why Bank of America should have been tracking news reports related to Epstein or what payments should have triggered suspicious activity reports. *Supra* 9-10.

## II.    The Complaint does not plausibly plead a negligence claim (Counts V-VI).

Plaintiff also brings two negligence claims for Bank of America's supposed failure to "exercise reasonable care." Compl. ¶¶ 196-229. The claims fail on both procedure and substance.

### A.    The negligence claims are time-barred.

Both of Plaintiff's negligence claims are facially time-barred.[6] Under New York law, negligence claims for personal injury are subject to a three-year statute of limitations. N.Y. CPLR § 214; *Friedman v. Bartell*, 2025 WL 1681607, at *1 (2d Cir. June 16, 2025).

In negligence cases, the "cause of action accrues when the acts or omissions constituting the negligence produce the injury." *Reznor v. J. Artist Mgmt., Inc.*, 365 F. Supp. 2d 565, 579 (S.D.N.Y. 2005) (Rakoff, J.). Here, Plaintiff knew about the negligent acts as far back as 2013; indeed she alleges that she "questioned Epstein or Kahn about irregularities with her account." Compl. ¶ 65. As for her alleged injury, Plaintiff alleges that she was abused by Epstein and his co-conspirators "from 2011 through 2019" when Epstein died, *id.* ¶¶ 47, 53, 68, and that "[a]t least

---

[6] Plaintiff's TVPRA claims are also untimely in part. Plaintiff must file suit within "10 years." 18 U.S.C. § 1595(c)(1). Thus, any claims that accrued before October 15, 2015, must be dismissed. *See, e.g.*, *Catelyn H. v. G6 Hosp., LLC*, 2025 WL 929032, at *3 (D. Nev. Mar. 26, 2025) (dismissing "plaintiff's TVPRA claim as it relates to events that occurred prior to April 12, 2014"); *K.O. v. G6 Hosp., LLC*, 728 F. Supp. 3d 624, 639 (E.D. Mich. 2024) (similar). No tolling principle applies here. Neither the discovery rule nor the continuing-torts doctrine apply to TVPRA claims. *E.g.*, *C.C. v. Rashid*, 2025 WL 1785273, at *5 (D. Nev. June 26, 2025) (discovery rule); *Doe v. G6 Hosp., LLC*, 2025 WL 1167550, at *5 (W.D. Wash. Apr. 22, 2025) (continuing-torts doctrine). Plaintiff's "affirmative concealment" allegation (*see* Compl. ¶ 7 n.5) fails for lack of particularity. *Infra* 23. And even assuming arguendo that equitable tolling applies to the TVPRA, Plaintiff does not allege facts to support its application here. *E.g.*, *Levin v. Sarah Lawrence Coll.*, 747 F. Supp. 3d 645, 674 (S.D.N.Y. 2024).

one of [her] accounts … continued to be utilized by Epstein and Kahn through Epstein's death in 2019," *id.* ¶ 66.  Plaintiff's negligence claims thus started to accrue in 2013, when she alleges her account was opened and she was being trafficked.  At the latest, the claims accrued in 2019.  Either way, Plaintiff's claims fall well outside the limitations window, which expired in 2022 at the latest.

Perhaps recognizing the facial untimeliness of these claims, the Complaint asserts in a footnote that Bank of America is "equitably estopped from asserting a statute-of-limitations defense" because of "the Bank's affirmative concealment of the facts."  Compl. ¶ 7 n.5.  But "[e]quitable estoppel is an 'extraordinary remedy'" requiring that each element be pled "with particularity."  *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 442-43 & n.5 (S.D.N.Y. 2014), *aff'd*, 579 F. App'x 7 (2d Cir. 2014); *accord Sejin Precision Indus. Co. v. Citibank, N.A.*, 235 F. Supp. 3d 542, 553 (S.D.N.Y. 2017) (Rakoff, J.).  Plaintiff comes nowhere near satisfying this stringent standard.  She does not allege, for instance, that Bank of America made "affirmative" misrepresentations that were "specifically directed at preventing the plaintiff from bringing suit." *Twersky*, 993 F. Supp. 2d at 442.  Nor does she "demonstrate reasonable reliance on the defendant's misrepresentations."  *Id.* at 442-43.  Instead, she relies on conclusory broadsides that the bank "affirmatively conceal[ed]" the facts and "strategically and fraudulently covered up its conduct."  Compl. ¶ 7 n.5.  That does not suffice, particularly where Plaintiff had all the facts she needed to allege a claim based on the use of her own account.  *See Sejin Precision Indus.*, 235 F. Supp. 3d at 552-53 (rejecting tolling because "[p]laintiffs here do not allege, except in a conclusory fashion, that defendants took affirmative steps to conceal the alleged fraud or the resulting injury from plaintiffs").  Plaintiff's negligence claims are time-barred and should be dismissed.

**B.    Bank of America did not owe Plaintiff a duty to protect her from a third-party's malfeasance.**

The negligence claims also fail on the merits.  To start, the facts do not establish that Bank

of America owed Plaintiff a duty to prevent physical harm inflicted by Epstein. *See David v. Weinstein Co.*, 431 F. Supp. 3d 290, 305 (S.D.N.Y. 2019). Generally, "under New York law, a bank does not have an extracontractual duty to its depositors." *Abhyankar by Behrstock v. JPMorgan Chase, N.A.*, 2020 WL 4001661, at *5 (S.D.N.Y. July 15, 2020); *see also Hartsko Fin. Servs., LLC v. JPMorgan Chase Bank, N.A.*, 125 A.D.3d 448, 448 (N.Y. 1st Dep't 2015) (negligence claim "was correctly dismissed because defendant had no duty to plaintiff independent of the contract formed when the account was opened"). Here, Plaintiff is an alleged customer of Bank of America and the scope of its duty to her is defined by their contract. There is no allegation that the parties' contract imposed a duty to prevent harm to Plaintiff caused by third parties.

But even if Plaintiff's negligence argument is not foreclosed by contract, New York law ordinarily "does not impose a duty to control the conduct of third persons to prevent them from causing injury to others." *Purdy v. Public Adm'r of Westchester*, 526 N.E.2d 4, 8 (N.Y. 1988). Such a duty may be found, as this Court has held, where "banks provide nonroutine services" that "set in motion" forces that will foreseeably harm the plaintiff. *Deutsche Bank*, 671 F. Supp. 3d at 414. No such facts are alleged here. There is no allegation that Bank of America helped "set in motion" Epstein's sex-trafficking venture. *Supra* 7-18. Nor is there an allegation that providing banking services to others aside from Epstein made it reasonably foreseeable that Plaintiff would be harmed. "Account activity, whether in large sums or small, whether frequent or infrequent, is the nature of the beast—far from being suspicious, it is expected, routine behavior." *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 56 Cal. Rptr. 2d 756, 763 (Ct. App. 1996).

### C.    Bank of America's conduct was not the proximate cause of Plaintiff's injury.

Even if Bank of America did owe a duty to Plaintiff, the negligence claims fail for lack of proximate cause. Alleged negligence "is not enough by itself to establish liability"; rather, it must be "a proximate, or legal, cause" of Plaintiff's harm. *Hain v. Jamison*, 68 N.E.3d 1233, 1236-37

(N.Y. 2016). Where, as here, the alleged injury was caused by an intervening criminal act, that act must be "a natural and foreseeable consequence of a circumstance created by [the] defendant." *Id.* at 1237-38. "[P]roximate cause will be found lacking where the original negligent act merely 'furnished the occasion for'—but did not cause—'an unrelated act to cause injuries not ordinarily anticipated.'" *Id.* at 1238. Because "manageable limits" must be placed "upon the liability that flows from negligent conduct," proximate cause imposes a demanding limitation. *Id.* at 1237.

Banks "cannot be held liable for the wrongdoing" of a customer—let alone third parties— "based solely on the allegation that [the wrongdoer] utilized the banking and financial services offered to all bank customers." *In re Terrorist Attacks on Sept. 11, 2001*, 740 F. Supp. 2d 494, 518 (S.D.N.Y. 2010), *aff'd*, 714 F.3d 118 (2d Cir. 2013). Where the bank offers the same routine "banking and financial services offered to all bank customers," *id.*, there is "no basis for a bank's liability for injuries funded by money passing through it on routine banking business," *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 831-33 (S.D.N.Y. 2005), *aff'd*, 538 F.3d 71 (2d Cir. 2008); *see Rothstein v. UBS AG*, 647 F. Supp. 2d 292, 294 (S.D.N.Y. 2009) (similar).

The Complaint says Bank of America offered "non-routine banking" services, Compl. ¶¶ 211, 213, 214, but it never explains what those services entailed. Indeed, the offering of non-routine services would be difficult to square with the Complaint's other allegations that seemingly legitimate payments were being made to and from accounts—one of the most routine services offered by a bank. *Id.* ¶¶ 54-65. At most, the Complaint alleges that Bank of America was a "mere unknowing conduit for the unlawful acts of others." *Linde v. Arab Bank PLC*, 384 F. Supp. 2d 571, 588 (E.D.N.Y. 2005). Proximate cause requires more.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the Complaint.

Respectfully submitted,

Dated: November 13, 2025

/s/ Charlotte H. Taylor

Bethany K. Biesenthal                          Charlotte H. Taylor
Paula Quist                                    JONES DAY
Shea F. Spreyer                                51 Louisiana Ave, N.W.
Carol T. Li                                    Washington, D.C. 20001
JONES DAY                                      (202) 879-3939
110 North Wacker Drive                         ctaylor@jonesday.com
Suite 4800
Chicago, IL 60606
(312) 782-3939

*Counsel for Bank of America, N.A.*

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Charlotte H. Taylor, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1(c) that the foregoing Memorandum of Law was prepared using Microsoft Word and complies with Rule 2(e) of this Court's Individual Rules and Local Civil Rule 7.1(c).

<u>*/s/ Charlotte H. Taylor*</u>
Charlotte H. Taylor