UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Jane Doe, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>Bank of America, N.A.,<br><br>    Defendant. | Case No. 1:25-cv-08520 |
| Jane Doe, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>The Bank of New York Mellon Corporation,<br><br>    Defendant. | Case No. 1:25-cv-08525 |

JED S. RAKOFF, U.S.D.J.

**ELECTRONIC DISCOVERY STIPULATION AND [PROPOSED] ORDER**

    Plaintiff Jane Doe, individually and on behalf of all others similarly situated ("Plaintiff") and Defendants Bank of America, N.A. and The Bank of New York Mellon Corporation ("Defendants"), hereby submit this stipulation and proposed order establishing a protocol regarding the disclosure and discovery of information potentially relevant to this litigation, including electronically stored information ("ESI"), paper documents, data, and other information in this Action, whether they currently are involved or become so in the future (collectively, the "Parties"). This stipulation is subject to and without waiver of any objections that the parties may make in response to discovery.

I.  **DEFINITIONS**

    A.    "**Action**" means the above-captioned matter, and any and all cases consolidated or coordinated with it.

    B.    "**Custodian**" means the individual or originating source from which Documents or ESI will be collected and reviewed.

    C.    "**Document**" and "**Electronically Stored Information**" or "**ESI**" shall have the same meaning as the usage of these terms in Civil Rule 26.3(c)(2) of the Local District Rules and Federal Rule of Civil Procedure 34(a)(1)(A).

    D.    "**Native file(s)**" means ESI in the file type for the application in which such ESI is normally created, viewed, and/or modified (in contrast to a Static Image, which is a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems, such as .tiff or .pdf).

    E.    "**Metadata**" means (i) information associated with or about a file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, or usage or validity of the electronic file; and (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, saved, or otherwise manipulated by a user of such system; and for purposes of this Action, references the data fields outlined in Section IV.J below which describe the characteristics, origins, and usage of electronic evidence.

    F.    "**Load file**" means a file or files containing a set of paper-scanned images or electronically processed files and indicates where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A load/unitization file will also contain data relevant to the individual documents, such as agreed-upon metadata, coded data, and OCR or extracted text.

    G.    "**OCR**" means the optical character recognition file, which is created by software used in conjunction with a scanner that is capable of reading image-based documents and making such documents searchable using appropriate software.

    H.    "**Extracted text**" means the text extracted from a native file and includes all header, footer, and document body information, including any hidden content, when available. A "Text File" is a file containing the full multi-page text of native or near-native files extracted directly from the native file, or, in the case of paper/hard copy documents subject to OCR, a file containing the text resulting from the OCR.

2

I.  **"Media"** means an object or device, including but not limited to, a disc, tape, computer hard drive, or other device, on which data is or was stored.

J.  **"Production"** or **"Produced"** includes any exchange of Documents or Electronically Stored information between the Parties, whether voluntarily or in response to a formal or informal request.

K.  **"Search Term"** means a combination of words (including synonyms) and phrases designed to capture potentially relevant ESI, and includes strings of words and phrases joined by proximity in Boolean connectors.

L.  **"Static Image"** means or refers to a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems. A Tagged Image File Format (TIFF) image is an example of a Static Image. "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or paper Document.

M.  **"Structured Data"** means ESI stored in a structured format, such as databases or data sets according to specific form and content rules as defined by each field of the database.

N.  **"Unstructured Data"** refers to free-form data which either does not have a data structure or has a data structure not easily readable by a computer without the use of a specific program designed to interpret the data, such as word processing documents, slide presentations, Email, and image files.

## II. DE-DUPLICATION AND THREADING

### A. Global De-Duplication

The parties shall de-duplicate ESI to avoid substantially duplicative productions. The parties will globally de-duplicate as follows:

1. Electronic files: Electronic files will be de-duplicated based upon calculated MD5 Hash values for binary file content.

2. Emails: Emails will be de-duplicated based upon MD5 Hash values for the email family, including parent object and attachments. The following fields will be used to create the unique value for each email: To; From; CC; BCC; Subject; Body; and binary stream of all attachments. Emails will be de-duplicated at a family level, including the message and attachment(s).

3. Documents will be de-duplicated against the entire population and all custodians of a de-duplicated document will be listed in a "Custodians" field. Multiple custodians shall be separated by a semicolon.

3

    4.    Attachments shall not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also exact duplicates of another family, and parent-child relationships shall be preserved as part of any de-duplication. Hard copy documents shall not be eliminated as duplicates of responsive ESI.

    **B.**    **Email Threading**

To reduce the volume of entirely duplicative content within email threads the parties may, but are not required to, use email threading. A party may use industry standard message threading technology to remove email messages where the content of those messages, and any attachments, are wholly contained within a later email message in the thread; provided, however, that the use of threading must not serve to obscure whether a recipient received an attachment.

**III.**    **PRODUCTION FORMAT**

    **A.**    **Structured Data.** To the extent responding to a discovery request requires production of ESI contained in a database, the producing party may comply with the discovery request by querying the database and generating a report ("Structured Data Report") in a reasonably usable and exportable electronic format (for example, in Excel or. CSV format). To the extent available and reasonably accessible, the first line in the Structured Data Report will show the column headers for each field of data included in the Structured Data Report. Unless otherwise agreed, the parties have no obligation to provide a supplemental report for records and information post-dating the extraction of the Structured Data Report.

    **B.**    Except as detailed below, all scanned paper and ESI should be converted/processed to TIFF files, Bates numbered, and include fully searchable text.

    **C.**    The parties may exclude from collection, review, and production ESI or data with file extensions that are not able to be processed or natively viewed by standard means, or that typically contain no meaningful user-created data and/or cannot be reviewed in any meaningful format, including those file types contained on the list established by the National Institute of Standards and Technology ("NIST"). Corrupt or Inaccessible Files. Certain files may be inaccessible due to password protection, corruption, or unreadable document formats. If reasonable efforts to obtain useful images or accessible native versions of these files are unsuccessful, such documents may be withheld. In the event that a corrupt or inaccessible file is an attachment to a responsive email or Edoc, the parties shall produce the responsive email and slipsheet the corrupt or inaccessible file.

    **D.**    **Bates Numbering Documents**

    1.    All images must be assigned a Bates number that shall always: (1) be unique across the entire document production; (2) maintain a constant length across the entire production; and (3) be sequential within a given document.

2.  If a Bates number or set of Bates numbers is skipped in a production, and not otherwise identified on a privilege log, the producing Party will disclose the Bates numbers or ranges in a cover letter accompanying the production.

E.  **Images**

1.  Images should be single-page, Group IV TIFF files, scanned at 300 x 300 dpi resolution.

2.  Bates numbers should be endorsed on the lower right corner of all images.

3.  The file name for each image should be the Bates number reflected in the lower right corner of each image.

4.  PowerPoint: All pages of the file should be scanned in notes view with one slide per page and the corresponding notes below the slide.

5.  All TIFF images shall display tracked changes, comments, and other rich data as displayed in the document, if the track changes were visible in the last saved version of the document, whenever possible.

6.  All TIFF-formatted documents will be produced in black and white. The producing party will comply with reasonable requests to produce particularly identified ESI in the original, color image of specific documents (*e.g.*, where the color is relevant to the interpretation of the document). If a dispute arises as to the reasonableness of the request, the parties shall meet and confer in an effort to resolve their differences.

F.  **Native Files**

1.  Absent special circumstances, Microsoft Excel and other similar spreadsheet files shall be produced in native format ("Native Files"). Native Files should be provided in a self-identified "Natives" directory. Each Native File should be produced with a corresponding single-page TIFF placeholder image, which will contain language indicating that the document is being produced as a Native File. Native Files should be named with the beginning Bates number that is assigned to that specific record in the production. A "NativeLink" entry for each spreadsheet should be included in the .DAT load file indicating the relative file path to each native file on the production media. Native Files should be produced with extracted text and applicable metadata fields as set forth in **Appendix A**. For documents that contain redacted text, the parties may either apply the redactions directly on the native file itself or produce TIFF image files with burned in redactions in lieu of a Native File and TIFF placeholder image. Each producing party will make reasonable efforts to ensure that its discovery vendor, prior to conversion to TIFF, reveals hidden data from redacted Native Files that are

5

produced as TIFF image files and will be formatted so as to be readable (for example, column widths should be formatted so that numbers do not appear as "#########").

    2.    Other than as specifically set forth above, a producing party need not produce documents in native format. If good cause exists for the receiving party to request production of certain documents in native format, the receiving party may request production in native format by providing: (1) a list of the Bates numbers of documents it requests to be produced in native format; and (2) an explanation of the need for reviewing such documents in native format. The producing party shall not unreasonably deny such requests. Each document produced in response to such requests shall be produced with a "NativeLink" entry in the .DAT load file indicating the relative file path to each Native File on the production media, and all extracted text and applicable metadata fields set forth in **Appendix A**.

### G.    Text

Searchable text of the entire document must be provided for every record, at the document level. Extracted text must be provided for all documents that originated in electronic format, and electronic text must be extracted directly from the native electronic file unless it is a redacted document, an image file, or a hard copy document. In these instances, a text file shall be created using OCR and shall be produced in lieu of extracted text. The text file name shall be the same as the Beginning Bates number the document. File names shall not have any embedded spaces.

### H.    Paper Documents

    1.    Paper documents, including spreadsheets maintained in paper form shall be produced as TIFF images (consistent with the specifications in Section II.C.) The production will include the appropriate load file which will, at a minimum, contain the following fields (described in detail in Section II.H.7.):

        (a)    Beginning Bates Number (PRODBEGNUMBER)

        (b)    Ending Bates Number (PRODENDNUMBER)

        (c)    Beginning Attachment Bates Number (PRODBEGATTACH)

        (d)    Ending Attachment Bates Number (PRODENDATTACH)

        (e)    Custodian

        (h)    Text Path (TEXTLINK).

    2.    In scanning paper documents, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple

records (*i.e.*, paper documents should be logically unitized) unless linked as a document family. In the case of hard copy documents, a single OCR text file shall be provided in lieu of extracted text for each produced document.

I. **Production and Use of Native Files**

    1. **Production of Native Files**

        (a)    The full path of the native file, as it exists in the production, must be provided in the .DAT file for the NATIVELINK field.

        (b)    For files not also imaged to TIFF format, a placeholder image that identifies the Bates number and confidentiality designation associated with the native document must be provided in lieu of a TIFF image. The file name of the native file produced shall be the Bates number of the corresponding TIFF slip sheet. Produce the following documents in native format with an image placeholder unless redactions are required:

            (i)    Microsoft Excel documents (with all data unhidden) including CSV files that are not easily converted to TIFF images; and

            (ii)    Multimedia files (audio, visual, etc.).

        (c)    To the extent a native file produced cannot be rendered or viewed without the use of proprietary third-party software, the parties shall meet and confer to discuss options.

J. **Production of Redacted Documents**

Any redacted material must be clearly labeled on the face of the document as having been redacted as shall be identified as such in the load file provided with the production. Each redacted document shall be provided with an OCR .txt file containing redacted text.

K. **Parent and Child Documents**

The parties shall produce attachments to a document (including attachments to e-mail) sequentially after the parent document. The parties can withhold privileged documents, and need not produce privileged documents that are attached to otherwise responsive documents. If privileged documents are removed from a family of documents, a slip sheet will be inserted indicating that the document was removed as privileged, and the metadata for that document will not be produced.

L. **Image Load File**

The image key within each production load file shall be named the same as the Bates

7

number of the page. The image cross-reference file is needed to link the images to the database. It is a comma-delimited file consisting of seven fields per line. There must be a line in the cross-reference file for every image in the database. The name of the image load file shall mirror the name of the delivery volume and should have an .opt extension (e.g., ABC001.opt). The volume names shall be consecutive (e.g., ABC001, ABC002, *et. seq.*).

The format is as follows:

*ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount*

*ImageID*: The unique designation that *Concordance®* and *Concordance Image®* use to identify an image.

***Note***: *This imageID key **must** be a unique and fixed length number. This number will be used in the .DAT file as the ImageID field that links the database to the images. The format of this image key must be consistent across all productions. The format should be a 7 digit number to allow for the possible increase in the size of a production. The imageID should correspond exactly to the Begin Bates number in the document, including both the Bates prefix and the fixed length number (e.g. ABC0000001).*

*VolumeLabel*: Optional

*ImageFilePath*: The full path to the image file.

*DocumentBreak*: The letter "Y" denotes the first page of a document. If this field is blank, then the page is not the first page of a document.

*FolderBreak*:   Leave   empty

*BoxBreak*:   Leave   empty

*PageCount*: Optional

    **M.**    **Metadata**

        1.    To the extent reasonably available and accessible, the metadata fields set forth in **Appendix A** shall be produced.

        2.    The metadata load file shall use the following standard Concordance delimiters:

            (a)    Comma: ¶ (Character 20)

            (b)    Quote: þ (Character 254)

            (c)    Newline: ® (Character 174)

  (d)  Multi-line: ; (Character 59)

3. All date fields shall be produced in "mm/dd/yyyy."

4. A carriage-return line-feed shall be used to indicate the start of the next record.

5. Load files shall not span across media (*e.g.*, CDs, DVDs, Hard Drives, etc.) – *i.e.*, a separate volume shall be created for each piece of media delivered.

6. The name of the metadata load file shall mirror the name of the delivery volume, and shall have a .dat extension (*i.e.*, ABC001.dat).

7. The volume names shall be consecutive for each produced source. (*i.e.*, ABC001, ABC002, *et. seq.*

8. The first record shall contain the field names in order of the data set forth in Appendix A. The text and metadata of email and the attachments, and native file document collections should be extracted and provided in a .DAT file using the field definition and formatting described below, to the extent reasonably available.

9. Electronic file collection will be "De-NISTed," removing commercially available operating system and application files contained on the current NIST file list. Identification of NIST list matches will be through MD5 Hash values.

N. **Databases**: To the extent a response to discovery requires production of information contained in databases, the parties will meet and confer to discuss an appropriate production protocol for information from such databases.

O. **Compressed files**: Compression file types (*i.e.*, .CAB, .GZ, .TAR., .Z, .ZIP) shall be decompressed in an iterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

P. **Replacement files**: Any documents that are replaced in later productions shall be identified in a letter accompanying the production clearly designating such documents as replacements.

Q. **Time Zone**: The preferred time zone of processing ESI is UTC. Care should be taken, however, that any alteration of time zone during processing does not interfere with or alter original metadata of that ESI. The producing party shall consistently produce all ESI processed using the same time zone.

IV. **OTHER PRESERVATION OBLIGATIONS NOT AFFECTED**

Nothing in this Stipulation shall affect any other obligations of the parties to preserve documents or information for other purposes, such as pursuant to court order, administrative order, statute, regulation, or in response to other pending or anticipated litigation. In addition, nothing in this Stipulation shall eliminate or alter any party's obligation to retain native format copies, including associated metadata, of all documents produced in this litigation, together with the original hard copy documents for all paper discovery produced in this litigation.

**SO STIPULATED AND AGREED.**

/s/ **Andrew Villacastin**
*Counsel for Plaintiff*

Dated: November 13, 2025

/s/ **Shea F. Spreyer**
*Counsel for Bank of America, N.A.*

Dated: November 13, 2025

/s/ **Christopher Bouchoux**
*Counsel for The Bank of New York Mellon Corporation*

Dated: November 13, 2025

**SO ORDERED.**

_____
JED S. RAKOFF, U.S.D.J.

**Dated: New York, New York**

   11-18-25

## APPENDIX A: ESI METADATA FIELDS

| Field Name | Description of Field |
| --- | --- |
| BegBates | Beginning document number |
| EndBates | Ending document number |
| BegAttach | Beginning document number of family unit |
| EndAttach | Ending document number of family unit |
| Custodians | Individual from whom the document originated and, if deduplicated, each additional custodian separated by ";" |
| Attachment Count | Number of attachments, same as Family Count |
| Author | Author field extracted from the metadata of the native file |
| From | Sender of the e-mail message |
| TO | Recipient(s) of the e-mail message |
| CC | Recipient(s) of "carbon copies" of the e-mail message |
| BCC | Recipient(s) of "blind carbon copies" of the e-mail message |
| Email Subject | Subject field extracted from the metadata of the native file |
| Sent Date | Date the e-mail message was sent (produced in "MM/DD/YYYY" format) |
| File Type | Mail, attachment, individual file |
| File Extension | File extension of document (.msg, .doc, .xls, etc.) |
| File Name | Name of original file |
| Title | Title of a non-email document (e.g. Microsoft Title field) |
| Hash Value | MD5 or SHA-1 Hash Value, unique document identifier |
| Nativelink | Relative file path to each native file on production media |
| Confid Designation | "Confidential" or "Null" |
| TEXTLINK | Contains path to .TXT files |