# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Jane Doe, individually and on behalf of all similarly situated, | **)** | |
| | **)** | |
| | **)** | |
| Plaintiff, | **)** | |
| | **)** | Case No. 25-cv-8520 (JSR) |
| v. | **)** | |
| | **)** | |
| Bank of America, N.A., | **)** | |
| | **)** | |
| Defendant. | **)** | |
| | **)** | |
| Jane Doe, individually and on behalf of all similarly situated, | **)** | |
| | **)** | |
| Plaintiff, | **)** | |
| | **)** | |
| v. | **)** | Case No. 25-cv-8525 (JSR) |
| | **)** | |
| The Bank of New York Mellon Corp., | **)** | |
| | **)** | |
| Defendant. | **)** | |
| | **)** | |

## BANK OF AMERICA, N.A.'s SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

January 12, 2026

Bethany K. Biesenthal
Kristina K. Cercone
Paula S. Quist
Shea F. Spreyer
Carol T. Li
JONES DAY
110 North Wacker Drive
Suite 4800
Chicago, IL 60606
(312) 782-3939

Charlotte H. Taylor
JONES DAY
51 Louisiana Ave, N.W.
Washington, DC 20001
(202) 879-3939

Amanda L. Dollinger
JONES DAY
250 Vesey Street
New York, NY 10281
(212) 326-3939

*Counsel for Bank of America, N.A.*

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................ 1

I.  The Amended Complaint's additional allegations............................................ 3

II. The Amended Complaint still fails to state a TVPRA claim............................ 5

    A.  The Amended Complaint fails to state a perpetrator claim under § 1591(a)(2). ....................................................................................... 6

        1.  The Amended Complaint still does not plead that Bank of America knowingly assisted, supported, or facilitated Epstein's sex trafficking. .................................................. 6

        2.  The Amended Complaint does not plead facts that Bank of America knew or recklessly disregarded Plaintiff's sex trafficking.............................................................. 10

        3.  The Amended Complaint does not plead facts that Bank of America knowingly benefited from assisting Epstein's sex-trafficking violations.............................................. 12

        4.  ███████████████████████████████ .................. 13

    B.  The Amended Complaint fails to state an "aiding and abetting" or direct participant claim............................................................... 14

    C.  The Amended Complaint fails to state an "obstruction" claim. ......................... 14

III. The negligence claims likewise fail. .................................................... 15

CONCLUSION.................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).....................................................................................................3, 13

*City of Almaty v. Sater,*
   503 F. Supp. 3d 51 (S.D.N.Y. 2020)........................................................................15

*Doe 1 v. Deutsche Bank,*
   671 F. Supp. 3d 387 (S.D.N.Y. 2023).....................................................1, 7, 14, 15

*Does 1–6 v. Reddit, Inc.,*
   51 F.4th 1137 (9th Cir. 2022) .................................................................................12

*Geiss v. Weinstein Co. Holdings LLC,*
   383 F. Supp. 3d 156 (S.D.N.Y. 2019)................................................................6, 12

*L.M. v. 42 Hotel Raleigh, LLC,*
   717 F. Supp. 3d 464 (E.D.N.C. 2024)...................................................................8, 11

*Lipton v. Cty. of Orange,*
   315 F. Supp. 2d 434 (S.D.N.Y. 2004)........................................................................6

*Mueller v. Deutsche Bank,*
   777 F. Supp. 3d 329 (S.D.N.Y. 2025)........................................................................7

*Noble v. Weinstein,*
   335 F. Supp. 3d 504 (S.D.N.Y. 2018)..............................................................6, 8, 10

*Roeder v. J.P. Morgan Chase & Co.,*
   523 F. Supp. 3d 601 (S.D.N.Y. 2021)......................................................................15

*S.A.S. v. Hilton Domestic Op. Co.,*
   795 F. Supp. 3d 1294 (W.D. Wash. 2025)...............................................................10

*S.M.A. v. Salesforce, Inc.,*
   2024 WL 1337370 (N.D. Tex. Mar. 28, 2024) .........................................................9

*T.S. v. Wyndham Hotels & Resorts, Inc.,*
   2024 WL 3927382 (D. Minn. Aug. 23, 2024) ..........................................................7

*United States v. Afyare,*
   632 F. App'x 272 (6th Cir. 2016) ..............................................................................6

STATUTES

18 U.S.C. § 1505...........................................................................................................15

18 U.S.C. § 1591(a)(1)....................................................................................................2

18 U.S.C. § 1591(a)(2)...........................................................1, 2, 5, 6, 9, 10, 11, 12, 13

# TABLE OF AUTHORITIES

**Page(s)**

18 U.S.C. § 1591(d) ...................................................................................................14, 15

18 U.S.C. § 1591(e)(4).........................................................................................1, 6, 9, 10

18 U.S.C. § 1595(a) .........................................................................................5, 6, 9, 10, 14

## RULES & REGULATIONS

Fed. R. Evid. 408 ...............................................................................................................15

31 C.F.R. § 1020.320(b)(3)................................................................................................13

## OTHER AUTHORITIES

Restatement (Third) of Agency § 5.03 (2006) ...................................................................12

Apollo SEC Disclosure, Ex. 99.1 (Jan. 22, 2021), https://tinyurl.com/42bbac8v .........................8

Jane Musgrave, *Victims Seeking Sex Offender's Millions See Painful Pasts Used Against Them*, The Palm Beach Post (Jan. 24, 2010), https://tinyurl.com/4z95djrh.................................................................................................11

*Model Shop Denies Epstein Tie*, Page Six (Oct. 6, 2007), https://pagesix.com/2007/10/06/model-shop-denies-epstein-tie/ .............................................5

Vicky Ward, *The Talented Mr. Epstein*, VANITY FAIR (Mar. 1, 2003), https://tinyurl.com/yzxx6yem ..............................................................................................11

## INTRODUCTION

Plaintiff was given a second bite at the apple after Bank of America highlighted the many deficiencies in the original complaint. Despite doubling the number of allegations, the Amended Complaint adds nothing of substance. It identifies various transactions and customers with alleged links to Epstein, and then leaps to the conclusion that TVPRA liability exists. But no court has ever embraced such a sweeping theory. Plaintiff must allege conduct by Bank of America that satisfies the elements of the statute. The Amended Complaint falls short.

The Amended Complaint continues to press the same flawed theory that Bank of America can be held liable as a criminal participant in a sex trafficking venture under 18 U.S.C. § 1591(a)(2); but that theory is subject to a very high bar. Under § 1591(e)(4), "participation in a venture" requires more than just connecting the dots between the Bank and Epstein; there must be knowing assistance, support, or facilitation of acts of trafficking. Yet still conspicuously absent from the Amended Complaint are any allegations such as those asserted in *Doe 1 v. Deutsche Bank*, 671 F. Supp. 3d 387, 406 (S.D.N.Y. 2023): that the banks "went well beyond merely providing their usual services to Jeffrey Epstein and his affiliated entities" by providing vast quantities of cash directly to Epstein that was used for trafficking, assisting with structuring cash withdrawals to avoid detection, delaying reports of thousands of suspicious transactions totaling more than $1 billion, transporting young women on a subsidiary's jet, and even employing an executive who abused the plaintiff. The services alleged here were routine; and most were provided to customers who are one step removed from Epstein. That does not add up to knowingly assisting Epstein's sex trafficking.

Nor does the Amended Complaint establish that the Bank knew or recklessly disregarded that its services were used to cause Plaintiff (or any other individual) to engage in a commercial sex act through force, fraud, or coercion. It highlights over three dozen news articles, but none

1

would have put the Bank on notice that Epstein was a *sex trafficker*, let alone that its services to customers *other than Epstein* were being used to traffic Plaintiff.

The Amended Complaint also fails to plead that Bank of America knowingly benefited from allegedly assisting Epstein's sex trafficking. At best, it alleges Bank of America banked high net-worth clients (and one "influential philosopher") affiliated with Epstein. That is insufficient.

The Amended Complaint suffers other legal flaws. It mangles the applicable standard by stating the Bank "should have known" its services were used to further Epstein's sex trafficking. *No* TVPRA theory allows liability when a party merely had constructive knowledge it was participating in a venture; nor does § 1591(a)(2)—Plaintiff's chosen theory—allow liability when a party merely had constructive knowledge that the venture would use force, fraud, or coercion to cause commercial sex acts. ████████████

████████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████

The Amended Complaint also fails to cure the obvious legal deficiencies with Plaintiff's other claims, which all remain subject to dismissal. (1) The TVPRA still does not create liability for aiders and abettors of sex trafficking, nor can a bank become a direct perpetrator of sex trafficking under § 1591(a)(1) by providing banking services. (2) The Amended Complaint fails to identify any law enforcement investigation that Bank of America intentionally obstructed. (3) The Amended Complaint does not cure the deficiencies with Plaintiff's negligence claims, which are time-barred, not salvaged by any equitable estoppel theory, and wrong on the merits.

## I.      The Amended Complaint's additional allegations.[1]

The Amended Complaint asserts the same theories of liability against the Bank as the original: knowing and intentional participation in "Epstein's sex-trafficking venture," aiding and abetting a sex-trafficking venture, obstructing law enforcement investigations into Epstein, and state-law negligence.  The Amended Complaint focuses primarily on participation in a venture.

The Amended Complaint asserts five forms of the Bank's supposed participation: (a) "servic[ing] accounts for Epstein's known associates," including Ghislaine Maxwell, Dkt. No. 57 ¶ 318 ("FAC"); (b) allowing "Epstein and his entities and agents [to] directly use[] [the Bank's] accounts," *id.* ¶ 287; (c) "enabling billionaire financier Leon Black to provide the financial underpinning for Epstein['s trafficking,]" *id.* ¶¶ 238; (d) providing "services … to Jane Doe," *id.* ¶ 210; and (e) "maintain[ing] an operating account for MC2," a modeling agency, *id.* ¶ 326.

*Maxwell's Account.*  The Amended Complaint continues to reference Maxwell's Bank of America accounts but provides no detail on how they were used.  But as already explained (Dkt. No. 49 at 3), none of the Epstein-Maxwell payments detailed in the cited U.S. Senate memorandum involve the Bank.  Moreover, as Plaintiff knows, ████████████████████████

*Epstein-Related Accounts.*  The Amended Complaint alleges (¶ 4) that "█████████████
████████████████████████████████████████████████████████████████████████████
████." But as it ████████████████████████████████████████████████████████████
████████████████████. ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████. Moreover, while the

---

[1] For this motion, the Bank accepts the Amended Complaint's factual allegations as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), but discovery will show that key allegations are untrue.

Amended Complaint cites early news articles and gossip columns about Epstein and his affiliates (*e.g.*, ¶¶ 54-91), none confirms that he had been engaging in sex trafficking.

*Doe's Accounts.*  The Amended Complaint alleges (¶ 220) that Doe maintained two accounts and that "all money that was deposited into her account … was either … from Epstein's JPMorgan Chase and Deutsche Bank accounts, or … from an Epstein-Related entity."  At least one account was allegedly used to "defraud immigration officials" and "to make transfers unrelated to Jane Doe."  *Id.* ¶¶ 208, 215, 223.  The Amended Complaint concludes (¶ 236) that the Bank "knew or should have known of the suspicious activity in Doe's account related to human trafficking" because, for example, her account activity was "inconsistent with her employment (or lack thereof)," and "did not appear to serve any lawful purpose."  But as this Court noted, a bank has to "know their customer and they have to be alert to suspicious activity, [but] they don't have to be the FBI either, and … scour every possible connection."  Dec. 15 Tr. at 12.

*Black's Account.*  The Amended Complaint alleges (¶ 242) that Bank of America "allowed Black to otherwise knowingly facilitate the transfer of finances for the commercial aspect of Epstein's commercial sex-trafficking venture."  But that theory focuses on how *Black* facilitated Epstein's trafficking.  It details transactions from Black to others, including "$170 million that [Black] provided to Epstein," and "███████████████████████████████████████ ██████████████████████"  *Id.* ¶¶ 256, 267.  The Amended Complaint does not explain how these transactions establish that *Bank of America* knowingly assisted Epstein's trafficking violations. And while Plaintiff claims (¶ 243) the Bank should have known about Black's allegedly nefarious connection to Epstein because "Epstein became a Trustee of the Leon D. Black Foundation in 1997" and "Black was identified as a real estate tycoon businessman who would dine with Epstein at his home," neither suggests Black's involvement in Epstein's trafficking crimes.

*MC2 Account*.    According to the Amended Complaint (¶¶ 6, 326), Bank of America "maintained an operating account for MC2," a modeling agency allegedly "financed by Epstein." The Amended Complaint provides no specifics on the alleged account or any transfers through that account.  *E.g., id.* ¶ 333 (giving no indication how Bank of America or Epstein were involved in one check payment).  It asserts in a conclusory fashion (¶ 329) that Bank of America "facilitated hundreds of transfers of monies" in "whole round numbers" that "were used to entice and silence young victims by keeping the pretense of a modeling agency alive."  It further asserts (¶ 329, 331) that those transfers should have been "red flags of criminal activity, including trafficking" and emphasizes press coverage linking Epstein trafficking to MC2.  But that press coverage is equivocal, *see id.* ¶ 62 & n.19 (citing *Model Shop Denies Epstein Tie*, Page Six (Oct. 6, 2007), https://pagesix.com/2007/10/06/model-shop-denies-epstein-tie/), and in any case there is no allegation that Bank of America provided special—as opposed to routine—services to MC2.

The remaining allegations in the Amended Complaint are largely unchanged.  It continues to assert (¶ 341), in conclusory terms, that "BANA knowingly benefitted from its participation in Epstein's sex-trafficking venture, including its provision of non-routine financial services and failure to monitor or report suspicious activities in furtherance of Epstein's sex-trafficking venture."  But as this Court emphasized, conclusory assertions are not enough.  Dec. 15 Tr. at 4.

Finally, the Amended Complaint continues to assert (¶ 12) that the Bank "resist[ed] cooperation with law enforcement and Congressional investigations" by "failing to make filings and disclosures that it was legally obligated to make."  But the Amended Complaint does not detail any investigation in which the Bank purportedly did not cooperate or that it even knew about.

## II.    The Amended Complaint still fails to state a TVPRA claim.

Bank of America has extensively explained the differences between a perpetrator claim under § 1591(a)(2) and a civil participant claim under § 1595(a).  Dkt. No. 39 at 6-20; Dkt. No. 49

at 4-5.   To recap, the two provisions have different standards for participation in a venture: "knowingly assisting" criminal trafficking in § 1591(a)(2) vs. taking part in a common undertaking involving risk and profit in § 1595(a).   They also have different mens rea standards relating to the "force, fraud, or coercion" element: "knowing" or "reckless disregard" in § 1591(a)(2) vs. "knew or should have known" in § 1595(a).   Plaintiff asserts a § 1591(a)(2) perpetrator claim, as well as claims for aiding and abetting TVPRA violations and obstruction.[2]   All are legally deficient.

### A.     The Amended Complaint fails to state a perpetrator claim under § 1591(a)(2).

Plaintiff must plausibly allege that Bank of America (1) "participat[ed] in a venture which has engaged in" sex trafficking of "a person"; (2) while "knowing" or "in reckless disregard of the fact that … force, … fraud, [or] coercion … will be used to cause the person to engage in [] commercial sex"; and (3) "knowingly benefit[ed] … from participation" in that venture.

### 1.     The Amended Complaint still does not plead that Bank of America knowingly assisted, supported, or facilitated Epstein's sex trafficking.

As expressly defined in § 1591(e)(4), to participate in a venture, a defendant must "knowingly assist[], support[], or facilitate[]" a "violation of subsection (a)(1)."   This requires an "overt act that further[ed] the sex trafficking aspect of the venture."   *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016).   And the alleged "violation" must be "toward" the "victim of a violation"—i.e., the plaintiff.   *Noble v. Weinstein*, 335 F. Supp. 3d 504, 514 (S.D.N.Y. 2018).   "[A]ssociation alone" is not enough, *id.*, nor is "turn[ing] a blind eye," *Afyare*, 632 F. App'x at 286.   Business activities with a trafficker are insufficient.   *Geiss v. Weinstein Co. Holdings LLC*,

---

[2] At the Motion to Dismiss hearing, Plaintiff made clear that she is pursuing a § 1591(a)(2) claim against Bank of America.  *See, e.g.*, Dec. 15 Tr. at 12-13.  The Amended Complaint doubles down (¶¶ 375-409) on the theory that the Bank is liable under § 1591(a)(2) and brings no standalone claim under § 1595(a).  Accordingly, Plaintiff has abandoned any § 1595(a) claim.  *See Lipton v. Cty. of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) (claim abandoned "when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed").

383 F. Supp. 3d 156, 168 n.4 (S.D.N.Y. 2019). The same principles apply for banks: something "well beyond" routine services (at a minimum) is necessary. *Deutsche Bank*, 671 F. Supp. 3d at 405-06; *cf. Mueller v. Deutsche Bank*, 777 F. Supp. 3d 329, 332 (S.D.N.Y. 2025).

At the Motion to Dismiss hearing, Plaintiff agreed that the relevant "question is do they know that they are facilitating and assisting [Epstein's] sex trafficking?" Dec. 15 Tr. at 12-13. The answer to that question is "no" for each of the five theories of participation.

*First*, with respect to Maxwell's account, ███████████████████, there are no alleged payments through her Bank of America account for sex-trafficking (or any) purposes.

*Second*, with respect to Epstein-related accounts, there is no explanation for how ████████████████████████████████████████████████████ knowingly assisted Epstein's sex-trafficking violations or amounted to special services from the Bank. Compare that to the account activity in *Deutsche Bank*, where two banks allegedly provided services for dozens of Epstein (and related) accounts by, among other things, "structur[ing]" 97 cash withdrawals by co-conspirators and knowingly allowing Epstein to use accounts "to send dozens of wires, directly and indirectly, including at least 18 wires [for] $10,000 or more to then known co-conspirators," that were then used for sex trafficking. 671 F. Supp. 3d at 406.

*Third*, the Amended Complaint does not explain how Bank of America's customer relationship with *Leon Black* is transmogrified into a venture with *Epstein*. *See* Dkt. No. 39 at 15-16. "[A]llow[ing] Black to otherwise knowingly facilitate the transfer of finances for the commercial aspect of Epstein's commercial sex-trafficking venture," FAC ¶ 242, even if true, is not the same as a venture *between Bank of America* and *Black* that violated the TVPRA. *See T.S. v. Wyndham Hotels & Resorts, Inc.*, 2024 WL 3927382, at *10 (D. Minn. Aug. 23, 2024) (rejecting the notion that a TVPRA claim can be based on A's relationship with B and B's relationship, in

turn, with the trafficker).[3]  Nor does Plaintiff explain how ████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████.[4]  *Noble*, 335 F. Supp. 3d at 514.

Indeed, on the facts alleged—as distinct from unsupported conclusions—█████████

████████████████████████████████████████████████████████████████

████████████████████████ that does not clear the

bar of plausibly pleading that Bank of America knowingly facilitated payments in support of *sex*

*trafficking*.  *See L.M. v. 42 Hotel Raleigh, LLC*, 717 F. Supp. 3d 464, 469-70 (E.D.N.C. 2024)

(collecting cases requiring, in addition, "non-conclusory allegations from which inferences of

force or fraud could be drawn").  And there are no allegations that the Bank provided services to

Black that deviated from services provided to any other high-net-worth customer.

Fourth, while it gestures towards "red flags" for the MC2 account, ¶ 329, the Amended

Complaint does not detail special services for MC2 furthering Epstein's sex-trafficking operation.

Finally, the Amended Complaint asserts that Bank of America participated in Plaintiff's

sex trafficking by banking her.  The Amended Complaint maintains (¶¶ 208, 215, 220, 223) that

one of Plaintiff's accounts was opened to "defraud immigration officials," was used to provide

"monthly rent and other living expenses," and was funded by "deposit[s] … from Epstein's

---

[3] In any event, Plaintiff will not be able to establish that Bank of America knowingly facilitated Epstein's sex trafficking by processing Black-Epstein payments.  In 2021, Dechert LLP conducted an investigation for Apollo Global Management ("Apollo"), into Black's relationship with Epstein, reviewing over 60,000 documents.  Apollo included Dechert's findings in an SEC filing: "Epstein provided advice" "on a variety of issues related to trust and estate planning, tax, philanthropy, and the operation of [Black's] Family Office" "that conferred more than $1 billion and as much as $2 billion or more in value to Black."  Apollo SEC Disclosure, Ex. 99.1 at 3 (Jan. 22, 2021), https://tinyurl.com/42bbac8v.

[4] ████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

JPMorgan Chase and Deutsche Bank accounts, or … an Epstein-Related entity." It also alleges (¶ 210) Plaintiff was designated as a "Preferred Customer" with "Advantage Tiered Checking" "despite the fact that accounts with such designation are typically reserved for accounts with higher monthly balances." None of these allegations demonstrate that the Bank *knowingly* assisted, supported, or facilitated Plaintiff's trafficking. Processing transactions or providing a checking account are not special services; they are among the most routine banking services of all. And the Amended Complaint does not explain why the Bank—if it does suspect a customer is a trafficking victim—participates in a venture *with the trafficker* by continuing its relationship with its customer.

To sidestep § 1591(a)(2)'s participation-in-a-venture requirement, the Amended Complaint attempts to import § 1595(a)'s constructive knowledge language—"knew or should have known." *See, e.g.*, FAC ¶ 394 ("BANA also should have known that it was participating in and facilitating a venture that had engaged in coercive sex trafficking."). The statute bars this.

Participation in a venture and knowledge of force, fraud, or coercion are two separate elements of any TVPRA claim. For a § 1591(a)(2) claim, a defendant must participate in the venture by "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)." § 1591(a)(2), (e)(4). There can be no negligent participation. Separately, § 1591(a)(2) requires the defendant to *know* or *recklessly disregard* that force, fraud, or coercion will be used to cause a person to engage in commercial sex. By express statutory command, constructive knowledge that the venture is engaged in trafficking will not suffice.

Even if Plaintiff had not abandoned any § 1595(a) civil participation claim, *but see supra* 6, it would still be error to apply the "knew or should have known" standard to the defendant's *participation in a venture*. Plain language and common sense dictate that one cannot "participate in" a venture of which one has only constructive knowledge. *See, e.g., S.M.A. v. Salesforce, Inc.*,

2024 WL 1337370, at *14 n.7 (N.D. Tex. Mar. 28, 2024) ("In order to participate in a venture, a person must know that a specific venture exists."). Appropriately then, § 1595(a) applies the constructive knowledge element only to the defendant's awareness that the venture in which it participated *was engaged in sex trafficking*. Specifically, it extends civil liability to "whoever knowingly benefits … from participation in a venture which that person *knew or should have known has engaged in an act in violation of this chapter*."

It would therefore defy the statutory scheme twice over to hold that a defendant can participate in a venture under § 1591(a)(2) by providing services it "should have known … [were] related to human trafficking." FAC ¶ 236; *see S.A.S. v. Hilton Domestic Op. Co.*, 795 F. Supp. 3d 1294, 1310 (W.D. Wash. 2025) (distinguishing between standards and noting that "[t]o prove beneficiary liability under the criminal provision, § 1591(a)(2), the perpetrator must have "'knowingly assist[ed] … whoever 'recruit[ed] …, harbor[ed], or maintain[ed]' the victim" (citing § 1591(e)(4)). In any event, the Amended Complaint fails to allege that Bank of America had the requisite knowledge under any applicable standard. *Infra* 10-12.

## 2. The Amended Complaint does not plead facts that Bank of America knew or recklessly disregarded Plaintiff's sex trafficking.

In addition, § 1591(a)(2) (a criminal statute) requires knowledge or reckless disregard that force, fraud, or coercion caused the plaintiff's trafficking. *See supra* 6; Dkt. No. 39 at 9; *Noble*, 335 F. Supp. 3d at 517-18. It is specific to the plaintiff/perpetrator and the venture.

The Amended Complaint does not allege any facts that would have put Bank of America on notice of Epstein's sex trafficking prior to 2019. It cites approximately 40 news articles and gossip columns (such as Page Six), all saying the same thing: Epstein surrounded himself with

10

women and was a registered sex offender.[5]  But "prostitution and sex trafficking by force or fraud are not coterminous."  *L.M.*, 717 F. Supp. 3d at 469.  Those few articles that label Epstein a "sex trafficker" draw from allegations in civil lawsuits and uncharged conduct that this Court already doubted would be sufficient notice of Epstein's trafficking.  Dec. 15 Tr. at 9.  None suggests that Bank of America's customers (like Black and Plaintiff) had connections to his trafficking.

To bridge the gap, the Amended Complaint relies on (¶ 225) one address: "301 East 66th Street, … known to be affiliated with Epstein."  But, as this Court pointed out, saying "'known,' without saying known by whom is vague; 'affiliated,' without saying what that means is vague."  Dec. 15 Tr. at 15.  The Amended Complaint does not cure this problem.  It claims (¶ 225) that "a link between Epstein and the building … has been public since at least 2010," but does not explain where any such information was published (in contrast to the dozens of articles that it cites for other facts).  The Amended Complaint also alleges (¶ 301) Bank of America "should have known" various transfers involving its customers were suspicious because the address "███████████ ███████████████████████████████████████████████████████████████████  The standard under § 1591(a)(2) is "reckless disregard," not "should have known"—but anyway ████████████ ███████████████████████████████████████████████████████████████████████████ ████████████████████████████████████  And again, banks "don't have to be the FBI" and "scour every possible connection" to Epstein.  Dec. 15 Tr. at 12.  Even if they did,

---

[5] Before 2008, the articles focus on Epstein's connections to women.  For example, the Amended Complaint cites (¶ 55 n.14) a 2003 Vanity Fair piece that noted "there are many women in [Epstein's] life, mostly young."  Vicky Ward, *The Talented Mr. Epstein*, VANITY FAIR (Mar. 1, 2003), https://tinyurl.com/yzxx6yem.  After 2008, articles describe the solicitation charges to which he pled guilty.  For example, the Amended Complaint cites (¶¶ 68 n.24, 75 n.26) an article stating that Epstein pleaded guilty to two state charges—procuring a minor for and soliciting prostitution—and describing his behavior as "lur[ing [women] to his Palm Beach mansion for sexually charged massages."  Jane Musgrave, *Victims Seeking Sex Offender's Millions See Painful Pasts Used Against Them*, The Palm Beach Post (Jan. 24, 2010), https://tinyurl.com/4z95djrh.

Plaintiff's common address with others did not put the Bank on notice that anyone affiliated with that address was recruiting, enticing, soliciting, or harboring Plaintiff (or any individual) or using force, fraud, or coercion to a cause Plaintiff (or any individual) to engage in commercial sex.

Finally, Plaintiff cannot rely on Paul Morris's alleged knowledge about Epstein's sex-trafficking venture from his prior employment. FAC ¶ 162. At best, the Amended Complaint alleges that ███████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████ *See* Restatement (Third) of Agency § 5.03 (2006) ("The nature and scope of the duties assigned to an agent are key to imputation within an organization."). Accordingly, the Amended Complaint fails to plead the Bank acted with the requisite mens rea for § 1591(a)(2).

### 3. The Amended Complaint does not plead facts that Bank of America knowingly benefited from assisting Epstein's sex-trafficking violations.

Finally, as already explained (Dkt. No. 39 at 10), the plaintiff must plead that the defendant "knowingly [] benefits … from … knowingly assisting" a sex-trafficking "violation." § 1591(a)(2). It is settled that in the criminal context—i.e., for Plaintiff's § 1591(a)(2) claim—"[t]he participation giving rise to the benefit must be participation *in a sex-trafficking venture*, not … in other activities engaged in by the sex traffickers that do not further the sex-trafficking aspect of their venture." *Geiss*, 383 F. Supp. 3d at 169 (emphasis in original). And under § 1591(a)(2), there must be "a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit." *Does 1–6 v. Reddit, Inc.*, 51 F.4th 1137, 1145 (9th Cir. 2022) (quoting *Geiss*, 383 F. Supp. 3d at 169). In sum, the defendant must receive the benefit knowing it is in return for its facilitation of sex trafficking.

The Amended Complaint falls short.  For example, the Amended Complaint alleges (¶ 350) "BANA financially benefitted … for allowing Black's participation in the Epstein sex-trafficking scheme."  But Bank of America must have knowingly benefitted from *its own* participation, not from allowing *its customer's*.  18 U.S.C. § 1591(a)(2).  The causal relationship is missing.

Elsewhere, the Amended Complaint tries (¶ 363) to identify a benefit from the Bank's alleged relationship with Epstein by claiming that "Epstein directed Kahn to move an account belonging to Epstein's friend and influential philosopher to Merrill Lynch, a BANA subsidiary." But even if this account was valuable (which is not pled) there is no allegation that anyone at the Bank *knew* that it gained a customer in exchange for furthering Epstein's sex-trafficking venture.

    **4.**





**B.    The Amended Complaint fails to state an "aiding and abetting" or direct participant claim.**

Bank of America already explained (Dkt. No. 39 at 20-21, Dkt. No. 49 at 3-4) that Plaintiff cannot maintain an aiding-and-abetting claim via § 1595(a).  Likewise, Plaintiff cannot assert a direct perpetrator claim against the Bank because the provision of banking services, even to a known trafficker or to a victim, "do[es] not make [a bank] the recruiter."  *Deutsche Bank*, 671 F. Supp. 3d at 410; *see* Dkt. 39 at 7 n.2.  The Amended Complaint does nothing to save these claims.

**C.    The Amended Complaint fails to state an "obstruction" claim.**

Bank of America maintains (Dkt. No. 39 at 21, Dkt. No. 49 at 8) that there is no civil obstruction liability under the TVPRA.  And Bank of America has already explained (at Dkt. No. 49 at 8) that even if there is such liability, an obstruction claim cannot be maintained based on the Florida investigation that pre-dated 2008, when § 1591(d) was added to the TVPRA without retroactive effect.  That leaves the 2019 New York investigation, but the Amended Complaint still does not plausibly allege that Bank of America "knew" of that investigation before it became

public in 2019. That is fatal to the obstruction claim. *See Deutsche Bank*, 671 F. Supp. 3d at 409.[6]

## III.    The negligence claims likewise fail.

Plaintiff's negligence claims remain facially time-barred. *See* Dkt. No. 39 at 22-23, Dkt. No. 49 at 9. The Amended Complaint pursues equitable estoppel, which requires pleading that the Bank "wrongfully induced the plaintiff to refrain from timely commencing an action by deception, concealment, threats, or other misconduct." *Roeder v. J.P. Morgan Chase & Co.*, 523 F. Supp. 3d 601, 617 (S.D.N.Y. 2021). But the Amended Complaint includes (███) only a single allegation that conceivably supports this theory: that █████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████

Second, the Amended Complaint fails to plausibly allege that the Bank owed Plaintiff a duty to prevent harm by Epstein or that it proximately caused her injuries. As already explained (Dkt. No. 39 at 7-18, Dkt. No. 49 at 5-8, 10, 24-25, *supra* 6-12), providing Plaintiff routine banking services did not plausibly lead to her trafficking, nor does it establish proximate causation.

## CONCLUSION

For the foregoing reasons and those in Bank of America's prior briefing, this Court should dismiss the Complaint.

---

[6] The Amended Complaint adds an allegation (¶ 6) that "BANA has not produced the requested information to Congress" in response to an October 8, 2025 letter from the U.S. House of Representatives. This allegation cannot support an obstruction claim because Congress does not "enforce[]" the TVPRA. 18 U.S.C. § 1591(d); *cf.* 18 U.S.C. § 1505 (separately criminalizing obstruction of a congressional investigation). Indeed, the Amended Complaint correctly omits this irrelevant allegation from its obstruction count. FAC ¶¶ 426-44.

Respectfully submitted,

Dated: January 12, 2026

*/s/ Charlotte H. Taylor*

Bethany K. Biesenthal
Kristina K. Cercone
Paula S. Quist
Shea F. Spreyer
Carol T. Li
JONES DAY
110 North Wacker Drive
Suite 4800
Chicago, IL 60606
(312) 782-3939

Charlotte H. Taylor
JONES DAY
51 Louisiana Ave, N.W.
Washington, D.C. 20001
(202) 879-3939
ctaylor@jonesday.com

Amanda L. Dollinger
JONES DAY
250 Vesey Street
New York, NY 10281
(212) 326-3939

*Counsel for Bank of America, N.A.*

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Charlotte H. Taylor, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1(c) that the foregoing Memorandum of Law was prepared using Microsoft Word and complies with Rule 2(e) of this Court's Individual Rules and Local Civil Rule 7.1(c).


*/s/ Charlotte H. Taylor*
Charlotte H. Taylor