**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JANE DOE, individually and on behalf of all others similarly situated, | Case No. 25-cv-8520 (JSR) |
|     Plaintiff, | |
|       v. | |
| BANK OF AMERICA, N.A., | |
|     Defendant. | |
| JANE DOE, individually and on behalf of all others similarly situated, | Case No. 25-cv-8525 (JSR) |
|     Plaintiff, | |
|       v. | |
| THE BANK OF NEW YORK MELLON CORP., | |
|     Defendant. | |

**PLAINTIFF JANE DOE'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO BANK OF AMERICA, N.A.'S MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT ......................................................................................................................... 3

    A. The Amended Complaint States a Claim for TVPA Participation Liability (Count
       I). ................................................................................................................................ 3

          1.  BOA Supported and Facilitated Epstein's Sex-Trafficking Venture. ............... 4

          2.  BOA Knew, Should Have Known, and Recklessly Disregarded That
              Its Services Supported and Facilitated Epstein's Sex-Trafficking
              Venture. ....................................................................................................... 9

          3.  BOA Benefited From its Participation in Epstein's Sex-Trafficking
              Venture. ..................................................................................................... 11

    B. The Amended Complaint States a Claim for Obstruction of TVPA Enforcement
       (Count IV). ................................................................................................................ 12

    C. Doe Has Properly Pled Her Negligence Claims. .............................................. 14

CONCLUSION ...................................................................................................................... 15

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Canosa v. Ziff*,
2019 WL 498865 (S.D.N.Y. Jan. 28, 2019) ................................................................. 5

*Chavez v. Carranza*,
559 F.3d 486 (6th Cir. 2009) ..................................................................................... 5

*City of Almaty v. Sater*,
503 F. Supp. 3d 51 (S.D.N.Y. 2020) ......................................................................... 15

*Deutsche Doe 1 v. Deutsche Bank Aktiengesellschaft*,
671 F. Supp. 3d 387 (S.D.N.Y. 2023) ............................................................... passim

*G.G. v. Salesforce.com, Inc.*,
76 F.4th 544 (7th Cir. 2023) ...................................................................................... 4

*Hongxia Wang v. Enlander*,
2018 WL 1276854 (S.D.N.Y. Mar. 6, 2018) .............................................................. 5

*In re Barnet*,
737 F.3d 238 (2d Cir. 2013) ..................................................................................... 12

*In re DDAVP Direct Purchaser Antitrust Litig.*,
585 F.3d 677 (2d Cir. 2009) ....................................................................................... 1

*L.M. v. 42 Hotel Raleigh, LLC*,
717 F. Supp. 3d 464 (E.D.N.C. 2024) ........................................................................ 8

*Noble v. Weinstein*,
335 F. Supp. 3d 504 (S.D.N.Y. 2018) ........................................................................ 4

*PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc.*,
520 F.3d 109 (2d Cir. 2008) ..................................................................................... 14

*Revitalizing Auto Cmtys. Envtl. Response Tr. v. Nat'l Grid USA*,
92 F.4th 415 (2d Cir. 2024) ........................................................................................ 6

*Simcuski v. Saeli*,
377 N.E.2d 713 (N.Y. 1978) ..................................................................................... 14

*T.S. v. Wyndham Hotels & Resorts, Inc.*,
2024 WL 3927382 (D. Minn. Aug. 23, 2024) ............................................................. 7

*United States v. Abrams*,
543 F. Supp. 1184 (S.D.N.Y. 1982) .......................................................................... 13

*United States v. Farah*,
766 F.3d 599 (6th Cir. 2014) ................................................................................... 13

*United States v. Gray*,
642 F.3d 371 (2d Cir. 2011) ..................................................................................... 13

*United States v. Marcus*,
    560 U.S. 258 (2010) .................................................................................. 13

*Wei Su v. Sotheby's Inc.*,
    2022 WL 14118016 (S.D.N.Y. Oct. 24, 2022) ...................................... 14

*Zillow, Inc. v. Cap. One Bank, N.A.*,
    2021 WL 412488 (S.D.N.Y. Feb. 5, 2021) ............................................ 1

*Zimmerman v. Poly Prep Country Day Sch.*,
    888 F. Supp. 2d 317 (E.D.N.Y. 2012) .................................................. 15

## Statutes

18 U.S.C § 1591 ....................................................................................... 1, 12, 13

18 U.S.C. § 1505 ........................................................................................... 13

18 U.S.C. § 1510 ........................................................................................... 13

18 U.S.C. § 1519 ........................................................................................... 13

18 U.S.C. § 1595 ....................................................................................... 1, 12

18 U.S.C. §§ 1581–97 .................................................................................. 12

## Rules

Fed. R. Evid. 408 ......................................................................................... 14

# INTRODUCTION

Bank of America, N.A.'s ("BOA" or the "Bank") supplemental brief, ECF No. 63 ("Supp."), ignores the legal standard applicable to a motion to dismiss, the legal requirements of Plaintiff Jane Doe ("Doe")'s particular claims, and the actual allegations pleaded in the Amended Complaint ("AC"). Doe brings two claims under the Trafficking Victims Protection Act ("TVPA"): (1) a § 1591(a)(2) claim that BOA participated (i.e., "assisted" or "facilitated") in Jeffrey Epstein's sex-trafficking; and (2) a § 1591(d) claim that BOA obstructed enforcement of the TVPA.

TVPA § 1595 provides a civil cause of action for sex trafficking victims, like Doe, against those, like BOA, who either violate or "knowingly benefit[] . . . financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a). The statute defines participation as "knowingly assisting, supporting, or facilitating a violation." 18 U.S.C § 1591(e)(4). Here, there is no doubt that BOA's banking services assisted, supported, or facilitated Epstein's sex-trafficking venture—indeed, they were essential to the venture's scope, scale, and duration. Nor is there doubt that BOA received significant financial benefits from providing those services.

The only remaining question is whether BOA knew, should have known, or recklessly disregarded that it was providing its services to a sex-trafficking venture. Questions concerning a party's knowledge or state of mind are not suitable for resolution at this stage. *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 693 (2d Cir. 2009). Doe's burden at this stage is at most only to convince the Court that her allegations are plausible. *See Zillow, Inc. v. Cap. One Bank, N.A.*, 2021 WL 412488, at *3 (S.D.N.Y. Feb. 5, 2021) ("The complaint must contain sufficient

factual allegations to nudge a claim across the line from conceivable to plausible." (internal quotation marks omitted)).

Based on just the documents and information available at this point, Doe has alleged that BOA (1) knew Epstein was a convicted and registered sex offender and widely known sex trafficker, ECF No. 57 ("Amended Complaint" or "AC") ¶¶ 32–34, 39–43, 58–94; (2) knew that banking services, including the movement of large amounts of cash, were critical to such sex trafficking, *id.* ¶¶ 6, 58, 69, 92, 171–96, 285; (3) opened and maintained accounts for Epstein and ███████████████████████████████ *id.* ¶¶ 4, 6(c), 89–90, 164–66; *see also* ECF No. 46-1, Answer No. 3; (4) ████████████████████████, AC ¶¶ 86, 91, 96, 165–68; ECF No. 46-1, Answer No. 4; (5) opened and maintained accounts for Epstein's known agents and co-conspirators, including Leon Black, Ghislaine Maxwell, and MC2, *id.* ¶¶ 4, 6(c), (e), (h), 164–66, 238–81, 288–96, 318–25, 326–40; (6) knew of numerous suspicious "red flag" transactions flowing in and out of BOA's Epstein-related accounts, *id.* ¶¶ 6, 171–96, 252, 255, 273–78, 281, 307, 314, 343–49; (7) opened and maintained a "preferred" account for Doe herself, a young woman who did not speak English and had no business experience or legitimate means of support, into which Epstein deposited tens of thousands of dollars and made transfers wholly at odds with Doe's character that had no apparent or legitimate purpose, *id.* ¶¶ 197–237; and (8) failed to file suspicious activity reports ("SARs") ██████████████████████ ████████████████, *id.* ¶¶ 4, 6, 88, 92, 227–30, 247, 254, 256–81, 296, 305–14.

Independently dispositive of BOA's knowledge (at least at this stage of the case) is the alleged (and undisputed) fact that BOA employed executives who had previously served as Epstein's bankers at JP Morgan and Deutsche Bank, who knew that BOA's banking services facilitated and supported Epstein's sex trafficking, and who knew that JP Morgan and Deutsche

Bank had terminated Epstein because of his use of banking services to facilitate his sex trafficking. *Id.* ¶¶ 23, 86, 91, 148–69; *see also* Supplemental Interrogatory Responses ("Ex. A"), Supplemental Answer No. 1 (References to "Ex." are to the exhibits attached to the Declaration of Andrew Villacastin, filed concurrently hereto). These personnel brought to BOA not only Epstein's business, but also their actual knowledge of Epstein's sex crimes and use of financial institutions to fuel and legitimize his sex-trafficking operation. AC ¶¶ 148–69.

Doe's § 1591(d) claim is based on BOA's concealment, including by not filing required SARs, of the suspicious banking transfers to which BOA was a party. A bank's obligation to file SARs is triggered when a bank "knows, suspects, or has reason to suspect" suspicious activity. *Id.* ¶ 182. A key purpose of requiring the timely filing of SARs is to alert law enforcement of potential criminal activity, like sex trafficking, and enable the termination and prosecution of such activity.[1] *Id.* ¶¶ 180–90. As a recent Congressional letter to BOA notes: if BOA had timely notified law enforcement, they "may well have stopped [Epstein's] crimes years earlier and saved countless girls and women from a fateful interaction with the criminals Mr. Epstein, Ghislaine Maxwell, and their co-conspirators."[2]

## <u>ARGUMENT</u>

**A.    The Amended Complaint States a Claim for TVPA Participation Liability (Count I).**

Contrary to BOA's assertion (Supp. at 5–6), the TVPA imposes liability where a defendant knew or should have known that it was facilitating a sex-trafficking venture. *See G.G. v.*

---

[1] BOA suggests (Supp. at 2) that its ███████████████████ is somehow evidence that it was previously not aware of Epstein's sex trafficking, an argument unpersuasive at any stage, and wholly unavailing at this stage. Under BOA's theory, financial institutions charged with monitoring for money laundering and sex trafficking could ignore red flags ████████████ ███████████ Such an interpretation defeats the entire purpose of the regulatory scheme.

[2] U.S. House of Representatives Committee on the Judiciary, *Letter to Bank of America CEO Brian Moynihan from Representative Raskin* (Oct. 8, 2025) ("Ex. G"), at 2 (referenced at AC ¶ 6 n.2).

*Salesforce.com, Inc.*, 76 F.4th 544, 555 n.9 (7th Cir. 2023) ("This is a negligence standard," and "all courts agree that a defendant under Section 1595 must have had at least constructive knowledge" that the alleged venture violated § 1591). While some courts have articulated a different standard requiring at least reckless disregard, *see Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018), this Court has previously held that similar allegations about financial institutions' involvement with Epstein's sex-trafficking enterprise met either standard. *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 405–08 (S.D.N.Y. 2023) ("*Deutsche Bank/JP Morgan*"). All of the facts the Court in *Deutsche Bank/JP Morgan* found sufficient to survive a motion to dismiss (671 F. Supp. 3d at 405–06) are alleged here: (1) delayed SAR filings; (2) allowing Epstein to use the bank's accounts to send dozens of wires and deposits to known co-conspirators; (3) failing to implement oversight; (4) permitting unusually large transfers; and (5) making "unusual" transfers to the Jane Doe in that case.

1. BOA Supported and Facilitated Epstein's Sex-Trafficking Venture.

BOA: (1) opened and maintained accounts for known Epstein-related entities and agents, including Black, Maxwell, ███████████████████████████████ ████████ without any due diligence and despite BOA's actual and constructive knowledge of Epstein's sex crimes and sex-trafficking venture, *id.* ¶¶ 6, 288–94; (2) opened an account for Doe herself without any due diligence, and with actual knowledge or in reckless disregard of the fact that the account was being used to facilitate Epstein's sex-trafficking venture, *id*. ¶¶ 6, 197–237; (3) sent at least $170 million from Black's BOA accounts to Epstein and his related entities despite obvious red flags, *id*. ¶¶ 6, 238, 248, 252, 255, 274–78; (4) opened and maintained a business account for MC2, which was used to fund and conceal Epstein's sex-trafficking venture, *id*. ¶¶ 6, 326–40; (5) executed transfers of funds from Epstein and his entities to Epstein's victims, including Doe, *id*. ¶¶ 208–13, 215, 217–24, 296–301; (6) transferred ███████████████

████████████, furthering and concealing Epstein's sex-trafficking venture, *id.* ¶¶ 260–71; and (7) failed to timely file the SARs it was required to file, ████████████████████, despite actual and constructive knowledge that its accounts were being used to further Epstein's sex-trafficking venture, *id.* ¶¶ 6, 227–30, 254–59, 264–69, 273–78, 292–96, 305–14. BOA's ongoing "pattern of facilitation and cover-up" shows participation. *Canosa v. Ziff*, 2019 WL 498865, at *23–24 (S.D.N.Y. Jan. 28, 2019).

Throughout its supplemental briefing, BOA ignores the AC's allegations, and the reasonable inferences in Doe's favor that can be drawn from them. Instead, BOA relies on a counter narrative which improperly substitutes different facts and inferences. For example:

1. Improperly relying on facts outside the pleadings, BOA suggests that it can avoid liability because ████████████████████████████████ outside the limitations period. Supp. at 3–4, 7. But the TVPA is a continuing tort (ECF No. 45 ("Opp.") at 20 n.18),[3] and even if ████████████████████, Epstein and his related entities continued to finance his sex trafficking through ████████████████, including Doe's own BOA accounts. AC ¶¶ 164, 208, 216, 232. Any knowledge concerning Epstein's sex-trafficking enterprise that BOA gained during its ████████████████████████ ████████ would also not have been lost simply because ████████████████████████.

2. BOA's argument (Supp. at 3, 7) that a Senate memorandum did not trace a particular Maxwell payment through BOA doesn't undermine the AC's well-pleaded allegations, including that BOA opened and maintained Maxwell's account despite her well-documented role in Epstein's sex-trafficking venture (a role BOA would have known about through its required

---

[3] The equitable tolling doctrine also applies to TVPA claims. *See Chavez v. Carranza*, 559 F.3d 486, 493 (6th Cir. 2009); *Hongxia Wang v. Enlander*, 2018 WL 1276854, at *4 (S.D.N.Y. Mar. 6, 2018). Doe's allegations meet the standard required for equitable tolling. *See* AC. ¶¶ 10–16.

customer due diligence) and that the transfers to and from Maxwell's account were integral to Epstein's sex trafficking. AC ¶¶ 120–29.

3. Contrary to BOA's argument (Supp. at 3, 7), executing transfers ████████████ ██████████████████████████████████████ directly furthered Epstein's sex-trafficking venture. For example, ████████████████████████████████████████, were two of the entities used by Black and Epstein to fund the sex-trafficking venture. AC ¶¶ 6, 274–78, 293, 305, 312, 317. BOA's due diligence did or should have revealed that ███████████ was a front company with no business purpose.[4] *Id.* ¶ 252. BOA knew that there was no apparent business or lawful purpose or explanation for these transactions. *Id.* ¶ 182. BOA also knew Epstein owned ████████████████████████████████████████████████████ *Id.* ¶¶ 97, 104– 08, 112, 166, 252.

4. BOA is wrong that Doe fails to connect Black's BOA accounts to Epstein's sex-trafficking venture. Supp. at 4, 7. For example, ██████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████ AC ¶¶ 264–66; ██ ██████████ ("Ex. C").[5] These were known markers of criminal activity and trafficking. AC ¶¶

---

[4] As the Amended Complaint alleges, ████████████████████████ which means BOA should have conducted appropriate and risk based tailored due diligence, including, timely transaction monitoring, particularly, because ████████████████████████, which required BOA to know ██████████████████████████████ AC ¶¶ 97, 104– 08, 165–66, 171–90.

[5] On a motion to dismiss, a court may consider documents "incorporated by reference" in the complaint and documents that are "integral to the complaint." *Revitalizing Auto Cmtys. Envtl. Response Tr. v. Nat'l Grid USA*, 92 F.4th 415, 436 (2d Cir. 2024).

182–88. Likewise, in a ███████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████ *Id.* ¶ 269; █████████████████ ("Ex. D") at

BOA_000000754. ███████████████████████████████████████████████

████████████████████████████████████████████████████████████ AC

¶ 269; Ex. D at BOA_000000753. At the time the wires were made, BOA knew that these were

markers of suspicious activity and trafficking and should have prompted BOA to investigate and

timely file the required SARs. AC ¶¶ 182–88.

BOA reliance on *T.S. v. Wyndham Hotels & Resorts, Inc.*, 2024 WL 3927382, at *10 (D.

Minn. Aug. 23, 2024), which rejects the Seventh Circuit's definition of participation as "a

continuous business relationship," is misplaced. *Id.* at *9. The AC's allegations, including ████

████, demonstrate that the relationship between Black and Epstein went beyond a mere legitimate

business relationship. *See, e.g.*, ████████████████ ("Ex. E") at BOA_000000766 (████████

█████████████████████████████████████████████████████████████); Ex. D at

BOA_000000755 (███████████████████████████████████████████████████████

█████████); *see also* AC ¶¶ 274–78, 281.[6] Further, BOA's argument that ████████████████

████████████████████ cannot support participation in a sex-trafficking venture is incorrect.

Supp. at 7–8. BOA ignores that ventures require the participation of multiple individuals who



_____

[6] BOA's reliance on a 2021 Dechert LLP report concerning Black's relationship with Epstein is
unavailing for several reasons. Supp. at 8 n.3. First, the report is outside of the pleadings and
therefore is inappropriate to consider at motion to dismiss. Second, the report did not exist during
BOA's banking relationship with Epstein and therefore cannot retroactively supply BOA with a
business or legitimate purpose that would excuse its failure to flag inherently suspicious
transactions contemporaneously. Third, the report and its findings have been widely criticized,
including by a committee of U.S. Senators. *See* U.S. Senate Committee on Finance, *Letter to Leon
Black* (July 24, 2023) ("Ex. H"), at 9 ("The Committee remains concerned about the payments to
Epstein in amounts that would represent a highly unusual compensation scheme.").

commit crimes in furtherance of that venture. Black's payments to Epstein, his shell entities, ███

███████, combined with BOA's actual knowledge of Epstein's sex crimes and history as a sex

trafficker, plausibly allege BOA's participation in Epstein's sex-trafficking venture. Unlike *L.M.*

*v. 42 Hotel Raleigh, LLC*, 717 F. Supp. 3d 464, 469–70 (E.D.N.C. 2024), which involved only

allegations of prostitution, Doe alleges a venture, funded by Black through BOA, that allowed

Epstein to control his victims' lives, coerce their compliance, and buy their silence.

5.    BOA's claim (Supp. at 8) that Doe fails to allege non-routine services for MC2 and

Brunel is wrong. The AC shows BOA: (1) opened the account without proper due diligence despite

Brunel's criminal history and public ties to Epstein; (2) failed to flag payments to young women;

(3) failed to investigate, monitor, or flag payments from Epstein to MC2 or ties to Epstein and his

victims; and (4) failed to file SARs BOA knew were required. AC ¶¶ 6, 326–35. Moreover, the

MC2 transfers exhibited several indicators of trafficking, including round-number amounts, and

were made to "models" and entities associated with Epstein without any apparent lawful or

business purpose. *Id.* ¶¶ 183, 187, 339.

6.    BOA's argument that it did not knowingly assist Epstein's trafficking of Doe (Supp. at

8–9) is directly refuted by ████████. ████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████. AC ¶ 227; ████████████████ ("Ex. F") at

BOA_000000671. BOA should have contemporaneously filed a SAR ████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████

████  AC ¶ 230.

2. <u>BOA Knew, Should Have Known, and Recklessly Disregarded That Its Services Supported and Facilitated Epstein's Sex-Trafficking Venture.</u>

Knowledge under the TVPA applies to the venture, not to any particular victim. Opp. at 12 (citing *Deutsche Bank/JP Morgan*, 671 F. Supp. 3d at 407). To satisfy this element, Doe must only show that BOA "[knew], or recklessly disregarded, that force, fraud, or coercion was used in the particular sex-trafficking venture that it is alleged to have participated in." 671 F. Supp. 3d at 406. In any event, BOA had an account for Doe herself.

BOA's argument (Supp. at 10) that "[t]he Amended Complaint does not allege any facts that would have put [BOA] on notice of Epstein's sex trafficking prior to 2019" is incorrect. The AC identifies scores of publicly available sources that put BOA on notice of Epstein's sex trafficking (AC ¶¶ 32–34, 48–52, 54–84, 87–91), sources which other financial institutions "noticed" and used as the basis for either firing Epstein as a client or refusing to open new accounts for him. AC ¶¶ 85, 256. BOA was also aware of all the red flags and suspicious transactions discussed above.

Moreover, BOA had actual knowledge of Epstein's sex-trafficking venture at least as early as 2016, when it hired Epstein's longtime banker, Paul Morris. *Id.* ¶¶ 23, 86, 162. Morris previously oversaw Epstein's various accounts at JP Morgan and Deutsche Bank, dealt with Epstein directly, and was copied on multiple communications detailing the civil and criminal allegations against Epstein, including the trafficking of minors. *Id.* ¶¶ 152, 158–60, 162. Morris's knowledge is imputed to BOA. *Deutsche Bank/JP Morgan*, 671 F. Supp. 3d at 407 ("[W]hen an agent is employed to perform certain duties for his principal and acquires knowledge material to

those duties, the agent's knowledge is imputed to the principal.")[7]

BOA also "recklessly disregard[ed] what was plainly to be seen." *Deutsche Bank/JP Morgan*, 671 F. Supp. 3d at 407. The AC details a well-documented, years-long public record of Epstein's sex-trafficking operation, which includes hundreds of pages of police reports detailing sex trafficking of minors, Epstein's non-prosecution agreement with the U.S. Department of Justice, his guilty plea and registration as a high-risk sex offender, dozens of public civil lawsuits detailing Epstein's sex trafficking, media coverage regarding ongoing federal investigations, and years of reporting linking Epstein's financial activity to his trafficking scheme. AC ¶¶ 32–34, 39–43, 58–94. As a sophisticated financial institution, BOA had due diligence obligations, including negative news screenings, that would have and did put BOA on notice of Epstein's convictions and sex crimes, including trafficking, as well as the involvement of his various co-conspirators, agents, and entities. *Id.* ¶¶ 55, 95–147, 171–79, 191–95. BOA itself ███████████████ ████████████████████████████ AC ¶ 147. BOA also knew or recklessly disregarded multiple markers of criminal activity and trafficking related to hundreds of transactions connected to Epstein, Black, Maxwell, MC2, Doe, and other victims. *See* p. 6–8 *supra*. Taken together, these allegations show that the Bank knew or recklessly disregarded that Epstein was operating a sex-trafficking venture and using BOA accounts to facilitate that venture. *Deutsche Bank/JP Morgan*, 671 F. Supp. 3d at 407.

BOA erroneously claims that Doe fails to explain what BOA recklessly disregarded with respect to 301 East 66th Street. Supp. at 11. This Court previously directed Doe to explain the address's affiliation with Epstein and its significance to the sex-trafficking venture. Dec. 15 Tr. at

---

[7] ████████████████████████████████████████████████████████████████

14–15. The AC does so, explaining that the address has been publicly linked to Epstein and the sex-trafficking venture since at least 2010, appeared in Epstein's public Black Book, was used to house dozens and dozens of trafficking victims, served as the business address for multiple Epstein-related entities, and was tied to Epstein's known agents Kahn and Indyke. AC ¶¶ 51, 52, 225, 301, 311, 314, 333. The use of a single address across multiple accounts and victims is a textbook red flag for human trafficking, *id.* ¶ 187, and shows that BOA "disregard[ed] what was plainly to be seen." *Deutsche Bank/JP Morgan*, 671 F. Supp. 3d at 407.

### 3.  BOA Benefited From its Participation in Epstein's Sex-Trafficking Venture.

Like earlier cases, BOA undisputedly earned fees from Epstein's accounts. *See Deutsche Bank/JP Morgan*, 671 F. Supp. 3d at 408 ("JP Morgan and Deutsche Bank do not contest that they received fees and other revenue from providing services to Jeffrey Epstein and his affiliated entities."). The AC alleges that BOA chose to ignore red flags and intentionally failed to file SARs that would have reported that Epstein, Black, Maxwell, and MC2 were involved in Epstein's sex-trafficking venture because BOA understood it would lose money if it fired Epstein as a client or if it filed SARs with respect to Black's transfers. AC ¶¶ 340–55. The AC further alleges how BOA, through employees like Paul Morris, benefited from Epstein's referrals of high-net-worth and prominent clients. *Id.* ¶ 363. By facilitating Epstein's sex-trafficking venture, BOA earned interest, commissions, service fees, and other financial benefits from its connection to Epstein, his entities, and co-conspirators. AC ¶ 362; *see also Deutsche Bank/JP Morgan*, 671 F. Supp. 3d at 399 ("Mr. Morris suggested to Deutsche Bank's senior management that a relationship with Epstein could be very lucrative: banking Epstein could generate millions of dollars of fees, and it could also lead to further relationships with Epstein's wealthy friends."). It is reasonable to infer Morris told BOA the same.

**B.    The Amended Complaint States a Claim for Obstruction of TVPA Enforcement (Count IV).**

Doe has adequately pleaded TVPA obstruction. She alleges that BOA knew of Epstein's sex-trafficking operation (AC ¶¶ 32–34, 39–43, 58–94, 95–147, 148–69, 171–96, 430, 436–38), knew of numerous red flags and suspicious transactions (*id.* ¶¶ 4, 6, 225, 242, 247, 253–83, 294–315, 343–52), but did not file the required ███████████████████ (*id.* ¶¶ 4, 6(i), 92, 247, 253–83, 294–315, 343–62, 431–35, 439; *see also* ██████████████ ("Ex. B"); Ex. C; Ex. D; Ex. E; Ex. F).

BOA's contention that there is no civil obstruction liability under the TVPA, made without any case support, is wrong. Opp. at 14. Section 1595 expressly authorizes suit for any "violation of this chapter," which includes § 1591(d)'s prohibition on obstruction. 18 U.S.C § 1595(a). Had Congress intended to limit the TVPA's civil remedy to select subsections of "this chapter" (*i.e.*, Chapter 77, 18 U.S.C. §§ 1581–97), it could have done so. *In re Barnet*, 737 F.3d 238, 246 (2d Cir. 2013). It did not.

Moreover, § 1591(d) broadly provides that "[w]hoever obstructs, attempts to obstruct, or in any way interferes with or prevents the enforcement of" § 1591 violates the TVPA. 18 U.S.C. § 1591(d). Where, as here, Doe alleges that BOA was obligated to file timely SARs but knowingly and intentionally failed to do so while continuing to provide financial services for the benefit of a sex-trafficking venture, BOA itself obstructs and interferes with the enforcement of § 1591. BOA is therefore a perpetrator of a TVPA violation for purposes of civil liability under § 1595(a), in addition to being a knowing participant.

Contrary to BOA's argument (Supp. at 2, 5, 14–15), a TVPA obstruction claim does not require that Doe plead knowledge of a specific investigation. Unlike the participation provision in § 1591(a), § 1591(d) does not contain a "knowingly" requirement. *Compare* 18 U.S.C § 1591(a)

*with* 18 U.S.C. 1591(d). And unlike 18 U.S.C. § 1505, relied upon by *United States v. Farah*, 766 F.3d 599, 611–12 (6th Cir. 2014) (cited by *Deutsche Bank/JP Morgan*, 671 F. Supp. 3d at 409), § 1591(d) does not tie liability to an "investigation" or "proceeding." *Compare* 18 U.S.C § 1505 *with* 18 U.S.C. 1591(d). Rather, § 1591(d) prohibits conduct that "interferes with or prevents the enforcement" of the TVPA, and intentionally failing to file timely SARs clearly prevents that enforcement.[8] This reading is consistent with how courts in this Circuit interpret similar obstruction statutes. *See, e.g.*, *United States v. Gray*, 642 F.3d 371, 378 (2d Cir. 2011) (rejecting similar argument because "knowledge of a pending federal investigation or proceeding is not an element of the obstruction crime" under 18 U.S.C. § 1519); *United States v. Abrams*, 543 F. Supp. 1184, 1187 (S.D.N.Y. 1982) (holding similarly as to 18 U.S.C. § 1510).

Even if knowledge of a specific investigation were required, Doe more than adequately pleads it here—indeed, with greater detail than those the Court found sufficient in *Deutsche Bank/JP Morgan*. *Compare* AC ¶¶ 32–34, 39–43, 58–94, 95–147, 148–69, 171–96, 430–33, 436–38 *with* DB FAC ¶¶ 42–46, 60–63, 188–99, 212–13 445–48 (cited by *Deutsche Bank/JP Morgan*, 671 F. Supp. 3d at 409).

BOA's retroactivity argument (Supp. at 14) likewise fails. Regardless of whether Section 1591(d) applies retroactively, liability attaches where conduct began before the statute's enactment but continued thereafter. *See United States v. Marcus*, 560 U.S. 258, 261 (2010) ("The Constitution . . . does not forbid the application of a new statute to such a course of conduct so long as the course of conduct continued *after* the enactment of the statute."). That is what Doe

---

[8] Indeed, one of the purposes of filing SARs is to alert law enforcement and regulators to suspected criminal activity so that investigations can be opened and enforcement action can be taken. *See, e.g.*, FinCEN, *Guidance on Preparing A Complete & Sufficient Suspicious Activity Report Narrative* (Nov. 2003) ("Ex. I"), at 1 (explaining that "it is imperative that financial institutions" file SARs "within the established deadlines" because they impact "law enforcement's ability to determine whether a crime was committed or continues to be committed").

alleges here, as she alleges that BOA continued to obstruct TVPA enforcement after 2008, "up to and following the return of an indictment against Epstein [in July 2019]." AC ¶ 430.

## C.    Doe Has Properly Pled Her Negligence Claims.

Doe's negligence claims are timely under the doctrine of equitable estoppel, which applies where the "plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action," including where the defendant's conduct led to the concealment of the cause of action from the plaintiff. *See* Opp. at 17 (citing *Simcuski v. Saeli*, 377 N.E.2d 713, 716 (N.Y. 1978)). This includes situations where the concealment involves third parties acting in concert with the defendant. *See Wei Su v. Sotheby's Inc.*, 2022 WL 14118016, at *10 (S.D.N.Y. Oct. 24, 2022).

Here, BOA made misrepresentations and engaged in affirmative acts of concealment that prevented Doe from understanding that she may have claims against the Bank, which, until recently, she believed was unaware of Epstein's sex-trafficking venture. AC ¶¶ 10–16. This included misrepresenting its role as a bank providing only routine banking services, failing to file required SARs, misleadingly asserting that it was unaware that BOA accounts were used to facilitate Epstein's sex-trafficking, resisting cooperation with law enforcement and Congressional investigations, and ███████████████████████████████████████████

██████████████████████████████████████████████████████. AC ¶¶ 12–13.[9] These actions, combined with Epstein and his co-conspirator's broader scheme of coercion— including threats to Doe's immigration status and economic pressure—impeded Doe's ability to discover the Bank's wrongful conduct through reasonable diligence. AC ¶¶ 10, 14, 19, 204–206,

---

[9] ████████████████████████████████████████████████████████████████

████████████████ Fed. R. Evid. 408; *see also PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc.*, 520 F.3d 109, 115 (2d Cir. 2008).

234. Taken together, these allegations are sufficient to establish equitable estoppel at the pleading stage. *See Zimmerman v. Poly Prep Country Day Sch.*, 888 F. Supp. 2d 317, 341 (E.D.N.Y. 2012) (finding that the defendant school's misrepresentations, such as maintaining that the abuser was in "good standing," could have led plaintiffs' parents to believe the school was unaware of the sexual abuse and therefore not liable); *City of Almaty v. Sater*, 503 F. Supp. 3d 51, 66–68 (S.D.N.Y. 2020) (█████████████████████████, combined with other deceptive conduct, supported equitable estoppel).

Also, Doe has adequately alleged that BOA owed her a duty, and that it proximately caused her injuries. *See* AC ¶¶ 208–37, 447–51, 453–54, 460–72. BOA knew, should have known, and recklessly disregarded that Epstein was operating a sex-trafficking venture through BOA accounts, yet continued to provide non-routine banking services to Epstein and his known agents, entities, and co-conspirators that facilitated and sustained the venture. *See id.* ¶¶ 92, 96–113, 148–70, 171–96. Because Doe alleges that BOA's non-routine services helped "set in motion" Epstein's sex-trafficking venture that caused Doe's injury, she plausibly alleges that BOA owed her a duty. *Deutsche Bank/JP Morgan*, 671 F. Supp. 3d at 414. BOA's knowing provision of such non-routine services made it reasonably foreseeable that victims of Epstein's sex-trafficking venture, including Doe, would be harmed. Opp. at 21–25; *see also Deutsche Bank/JP Morgan*, 671 F. Supp. 3d at 415 (even "constructive knowledge" that banking services sustained a sex-trafficking venture makes harm to victims foreseeable).

## **CONCLUSION**

For the foregoing reasons, and the reasons stated in Doe's Opposition, the Court should deny BOA's Motion to Dismiss in its entirety.

15

Dated: January 20, 2026                          Respectfully submitted,


                                                 */s/ David Boies*
                                                 David Boies
                                                 Andrew Villacastin
                                                 Rachael Schafer
                                                 Boies Schiller Flexner LLP
                                                 55 Hudson Yards
                                                 New York, NY
                                                 Telephone: (212) 446-2300
                                                 Fax: (212) 446-2350
                                                 Email: dboies@bsfllp.com
                                                 Email: avillacastin@bsfllp.com
                                                 Email: rschafer@bsfllp.com

                                                 Sigrid McCawley
                                                 Daniel Crispino
                                                 Megan Nyman
                                                 Boies Schiller Flexner LLP
                                                 401 E. Las Olas Blvd., Suite 1200
                                                 Fort Lauderdale, FL 33316
                                                 Telephone: (954) 356-0011
                                                 Fax: (954) 356-0022
                                                 Email: smccawley@bsfllp.com
                                                 Email: dcrispino@bsfllp.com
                                                 Email: mnyman@bsfllp.com

                                                 Bradley J. Edwards
                                                 Brittany N. Henderson
                                                 Dean Kaire
                                                 Edwards Henderson
                                                 425 N. Andrews Ave., Suite 2
                                                 Fort Lauderdale, FL 33301
                                                 Telephone: (954) 524-2820
                                                 Fax: (954) 524-2822
                                                 Email: brad@cvlf.com
                                                 Email: brittany@cvlf.com
                                                 Email: dean@cvlf.com


                                                 *Counsel for Plaintiff Jane Doe*

## **CERTIFICATE OF COMPLIANCE**

I, David Boies, hereby certify pursuant to Local Civil Rule 7.1(c) that the foregoing

Memorandum of Law was prepared using Microsoft Word and complies with Rule 2(e) of this

Court's Individual Rules and Local Rule 7.1(c).

_/s/ David Boies_