# EXHIBIT G

ONE HUNDRED NINETEENTH CONGRESS

# Congress of the United States
## House of Representatives
COMMITTEE ON THE JUDICIARY
2138 RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515-6216
(202) 225-6906
judiciary.house.gov

October 8, 2025

Mr. Brian Moynihan
Chair of the Board and Chief Executive Officer
Bank of America Corporation
100 North Tryon Street
Charlotte, NC 28255

Dear Mr. Moynihan:

  Can Bank of America help Congress understand how Jeffrey Epstein, Ghislaine Maxwell, and their co-conspirators were able to use your bank and others to conduct more than $1.5 billion in suspicious financial transactions to operate their international sex trafficking ring for years without ever being caught?

  In September, at a hearing with the Federal Bureau of Investigation (FBI) Director Kash Patel, it became clear that the FBI has failed to "follow the money" with regard to more than $1.5 billion in suspicious transactions related to Jeffrey Epstein's sex trafficking ring that JP Morgan Chase & Co. (JPMorgan), Deutsche Bank, Bank of America, and Bank of New York Mellon reported to the Department of the Treasury.

  In light of this startling information, House Judiciary Committee Democrats moved to subpoena financial records related to Jeffrey Epstein from these four banks, but Republicans, with the exception of Representative Thomas Massie (R-KY), blocked these efforts. We trust that, despite the federal government's repeated obstruction of any effort to account for Mr. Epstein's criminal activity with his co-conspirators, Bank of America is willing to work with the Committee to ensure that no American bank will ever again facilitate such heinous crimes.

  Under the Bank Secrecy Act (BSA), Bank of America was required to implement substantial risk-based anti-money laundering (AML) policies and systems to detect and prevent the institution's services from being hijacked to facilitate criminal activities.[1] One of these requirements is for bank compliance officers, often in consultation with executives, to file a report—called a Suspicious Activity Report, or SAR—when they notice activities that raise red

---

[1] 2 U.S.C. § 1829b, 12 U.S.C. §§ 1951-1960, 31 U.S.C. §§ 5311-5314, 5316-5336; *see also*, Financial Crimes Enforcement Network, *The Bank Secrecy Act*, https://www.fincen.gov/resources/statutes-and-regulations/bank-secrecy-act.

flags so federal authorities can be alerted to the potential criminal activity and investigate.[2] SARs are expected to be filed within 60 days of a bank noticing any suspicious transactions.

      Despite the public nature of Mr. Epstein's crimes, and the hundreds of millions of his funds flowing through your bank, it appears Bank of America filed only two significantly delayed SARs relating to his conduct—covering $170 million in transactions between Mr. Epstein and billionaire investor Leon Black. These SARs not only were untimely—filed years after the transactions in question—but Bank of America processed the payments "without asking for information as to the nature of the transactions."[3] Mr. Black, a Bank of America customer with a net worth of $13 billion, has faced serious questions about what financial advice or services he might have received from Mr. Epstein that would be worth $170 million. Furthermore, it remains unclear if Mr. Black remains a customer at Bank of America, and why Bank of America failed to seriously question these transactions at the time.[4]

      Financial institutions are often the first line of defense in detecting serious federal crimes, especially the ones that involve significant flows of money like sex trafficking. Flagging and detecting Mr. Epstein's suspicious withdrawals may well have stopped his crimes years earlier and saved countless girls and women from a fateful interaction with the criminals Mr. Epstein, Ghislaine Maxwell, and their co-conspirators. If you truly regret Bank of America's shameful association with Mr. Epstein, we trust that you will work with us to promptly produce these records and help us ensure that neither your bank nor any other American bank ever again enables and bankrolls a criminal sex trafficking ring like Mr. Epstein's. The records would allow us to better understand Bank of America's lapses and find ways to strengthen our ability to detect, investigate, and prosecute against these heinous crimes.

      These records will also allow us to better understand Director Patel and Attorney General Pam Bondi's outlandish claims that neither the FBI nor the Department of Justice (DOJ) have been able to identify a single additional co-conspirator in Mr. Epstein and Ms. Maxwell's years-long, multi-billion-dollar international sex trafficking operation. It will also help shed light on their ongoing refusal to disclose the Epstein files to Congress or the American people. In the face of this stubborn obfuscation and apparent ongoing cover-up, Congress has a duty to follow the money and ascertain all the facts.

      So, Mr. Moynihan, we ask: is Bank of America willing to put its past behind it and help reveal the truth about Jeffrey Epstein, Ghislaine Maxwell, and their co-conspirators? Or will your bank choose to be part of the cover-up for this massive, international sex trafficking ring that victimized more than 1,000 women and girls?

---

[2] The Bank Secrecy Act of 1970 establishes a framework for preventing money laundering and financial crimes. Under that framework, banks like yours are required to file Suspicious Activity Reports (SARs) with the Financial Crimes Enforcement Network (FinCEN) within 60 days of detecting potentially criminal transactions.

[3] *Id.*

[4] Matthew Goldstein, *Bank of America Flagged Suspicious Payments to Epstein Only After He Died*, N.Y. TIMES (Dec. 13, 2024), https://www.nytimes.com/2024/12/13/business/jeffrey-epstein-bank-of-america.html.

Mr. Brian Moynihan
Page 3

      Pursuant to the House Judiciary Committee's broad jurisdiction over the DOJ and law enforcement issues in the United States, I request that Bank of America provide the following to the Committee no later than 5:00 p.m., October 22, 2025. Unless otherwise indicated, these requests span from 1998 to the present day:

1. All documents and information related to any transaction identified by Bank of America for further review, inspection, or discussion relating to Jeffrey Epstein, Ghislaine Maxwell, or any of their minor victims, whether or not eventually flagged, raised, or provided to federal regulators in any fashion, including but not limited to those relating to Leon Black, his accounts, or any related businesses;

2. All documents and records relating to Leon Black's accounts at Bank of America, including but not limited to any discussions, meetings, or decisions made relating to his financial relationship with Jeffrey Epstein, Ghislaine Maxwell, or other individuals associated with the same;

3. All internal communications within Bank of America and all affiliated institutions regarding Jeffrey Epstein, including but not limited to his investigation and conviction in 2008, potential institutional risk relating to Mr. Epstein, or other compliance risks;

4. All internal risk assessments and due diligence reports for all Jeffrey Epstein-, Leon Black-, or Ghislaine Maxwell-related accounts or transactions; and

5. All communications with federal regulators or law enforcement agencies regarding or related to Mr. Epstein, Mr. Black, or Ms. Maxwell from 1998 to present.

      Thank you for your attention to this important matter and for your willingness to work with us on these critical reforms.

                                  Sincerely,

                                  */s/ Jamie Raskin*

                                  Jamie Raskin
                                  Ranking Member

cc:      The Honorable Jim Jordan, Chairman