**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| JANE DOE, individually and on behalf of all others similarly situated, |
| Plaintiff, |
| v. |
| BANK OF AMERICA, N.A., |
| Defendant. |

Case No. 25-cv-8520 (JSR)

**PLAINTIFF JANE DOE'S MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................................ ii

ARGUMENT ................................................................................................................................ 1

    A. The Requirements of Rule 23(a) Are Satisfied ................................................................ 2

        1.  Rule 23(a)(1)—Numerosity Is Satisfied Where the Trafficking Venture
            Injured Hundreds—and Potentially Over a Thousand—Victims During the
            Class Period ..................................................................................................................... 2

        2.  Rule 23(a)(2)—Common Questions of Law and Fact Clearly Exist ............................ 4

        3.  The Class is Sufficiently Ascertainable ....................................................................... 6

        4.  Rule 23(a)(3)—Plaintiff's Claims are Typical ............................................................ 7

        5.  Rule 23(a)(4)—Plaintiff Will Adequately Represent the Class .................................. 12

    B. The Requirements of Rule 23(b)(3) Are Satisfied .......................................................... 14

        1.  Common Questions of Law and Fact Predominate ..................................................... 14

        2.  A Class Action is Superior to Other Methods of Adjudication .................................. 22

    C. The Court Should Appoint Boies Schiller Flexner LLP and Edwards Henderson
        PLLC as Class Counsel .................................................................................................... 24

CONCLUSION ............................................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prod., Inc. v. Windsor,*
521 U.S. 591 (1997) ................................................................................................ 15, 22

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,*
568 U.S. 455 (2013) ...................................................................................................... 2

*Beltran v. InterExchange, Inc.,*
2018 WL 1948687 (D. Colo. Feb. 2, 2018) .................................................................. 2

*Biediger v. Quinnipiac Univ.,*
2010 WL 2017773 (D. Conn. May 20, 2010) ............................................................... 7

*Bolanos v. Norwegian Cruise Lines Ltd.,*
212 F.R.D. 144 (S.D.N.Y. 2002) ................................................................................... 8

*Casilao v. Hotelmacher LLC,*
2021 WL 4487984 (W.D. Okla. Sep. 30, 2021)........................................................... 12

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.,*
504 F.3d 229 (2d Cir. 2007)........................................................................................... 4

*Chalmers v. City of New York,*
2022 WL 4330119 (S.D.N.Y. Sept. 19, 2022) ........................................................... 14

*Consol. Rail Corp. v. Town of Hyde Park,*
47 F.3d 473 (2d Cir. 1995)............................................................................................. 2

*Denney v. Deutsche Bank AG,*
443 F.3d 253 (2d Cir. 2006)......................................................................................... 13

*Dial Corp. v. News Corp.,*
314 F.R.D. 108 (S.D.N.Y. 2015) ................................................................................... 8

*Dodona I, LLC v. Goldman, Sachs & Co.,*
296 F.R.D. 261 (S.D.N.Y. 2014) ................................................................................... 8

*Doe 1 v. Deutsche Bank Aktiengesellschaft,*
671 F. Supp. 3d 387 (S.D.N.Y. 2023)............................................................................ 1

*Doe 1 v. JPMorgan Chase Bank, N.A.,*
2023 WL 3945773 (S.D.N.Y. June 12, 2023).................................................... passim

*Doe v. Bank of America, N.A.,*
2026 WL 380385 (S.D.N.Y. Feb. 11, 2026) .......................................... 1, 5, 10, 19

*Doe v. MG Freesites, Ltd.*,
    707 F. Supp. 3d 1157 (N.D. Ala. 2023) ................................................................. 7

*Doe v. Mindgeek USA Inc.*,
    702 F. Supp. 3d 937 (C.D. Cal. 2023) ................................................................... 13

*Ebin v. Kangadis Food Inc.*,
    297 F.R.D. 561 (S.D.N.Y. 2014) .......................................................................... 6

*Espinoza v. 953 Assocs. LLC*,
    280 F.R.D. 113 (S.D.N.Y. 2011) .......................................................................... 6

*Flores v. Diamond Bank*,
    2008 WL 4861511 (N.D. Ill. Nov. 7, 2008) .......................................................... 7

*Hawaii Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Ent. Holdings, Inc.*,
    338 F.R.D. 205 (S.D.N.Y. 2021) .......................................................................... 15

*In re Beacon Assocs. Litig.*,
    282 F.R.D. 315 (S.D.N.Y. 2012) .......................................................................... 22

*In re Drexel Burnham Lambert Grp., Inc.*,
    960 F.2d 285 (2d Cir. 1992) ................................................................................. 14

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
    312 F.R.D. 332 (S.D.N.Y. 2015) .......................................................................... 13

*In re MF Global Holdings Ltd. Inv. Litig.*,
    310 F.R.D. 230 (S.D.N.Y. 2015) ..................................................................... 12, 23

*In re Petrobras Secs.*,
    862 F.3d 250 (2d Cir. 2017) ................................................................................. 15

*In re Smith Barney Transfer Agent Litig.*,
    290 F.R.D. 42 (S.D.N.Y. 2013) ........................................................................... 12

*In re USC Student Health Ctr. Litig.*,
    2019 WL 3315281 (C.D. Cal. June 12, 2019) ........................................................ 2

*Jane Doe 30's Mother v. Bradley*,
    64 A.3d 379 (Del. Super. Ct. 2012) ..................................................................... 23

*K.A. v. City of New York*,
    413 F. Supp. 3d 282 (S.D.N.Y. 2019) .................................................................. 2

*Kurtz v. Kimberly-Clark Corp.*,
    321 F.R.D. 482 (E.D.N.Y. 2017) .......................................................................... 4

*Lopez v. Setauket Car Wash & Detail Ctr.*,
 314 F.R.D. 26 (E.D.N.Y. 2016) ........................................................................ 4

*M.K.B. v. Eggleston*,
 445 F. Supp. 2d 400 (S.D.N.Y. 2006) .............................................................. 15

*Marisol A. v. Giuliani*,
 126 F.3d 372 (2d Cir. 1997) ......................................................................... 2, 4

*Menocal v. GEO Grp., Inc.*,
 882 F.3d 905 (10th Cir. 2018) ................................................................ 2, 4, 23

*Mullen v. GLV, Inc.*,
 330 F.R.D. 155 (N.D. Ill. 2019) ...................................................................... 2

*New Castle v. Yonkers Contracting Co.*,
 131 F.R.D. 38 (S.D.N.Y. 1990) ...................................................................... 3

*Novoa v. GEO Grp., Inc.*,
 2019 WL 7195331 (C.D. Cal. Nov. 26, 2019) ................................................ 8

*Owino v. CoreCivic, Inc.*,
 60 F.4th 437 (9th Cir. 2022) ........................................................................... 2

*Paguirigan v. Prompt Nursing Emp. Agency LLC*,
 2018 WL 4347799 (E.D.N.Y. Sept. 12, 2018) ....................................... 2, 6, 15

*Pub. Employees' Ret. Syst. Of Mississippi v. Merrill Lynch & Co.*,
 277 F.R.D. 97 (S.D.N.Y. 2011) ............................................................ 4, 7, 8, 13

*Roach v. T.L. Cannon Corp.*,
 778 F.3d 401 (2d Cir. 2015) ......................................................................... 16

*Robidoux v. Celani*,
 987 F.2d 931 (2d Cir. 1993) ................................................................... 3, 7, 12

*Scott v. Aetna Servs., Inc.*,
 210 F.R.D. 261 (D. Conn. 2002) ................................................................... 23

*Shahriar v. Smith & Wollensky Rest. Grp.*, Inc.,
 659 F.3d 234 (2d Cir. 2011) ........................................................................... 8

*Sykes v. Mel Harris & Assocs. LLC*,
 780 F.3d 70 (2d Cir. 2015) ............................................................................. 4

*Tsereteli v. Residential Asset Securitization Tr. 2006-A8*,
 283 F.R.D. 199 (S.D.N.Y. 2012) ................................................................... 7

iv

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) ............................................................................................ 15

*Villella v. Chem. & Mining Co. of Chile, Inc.*,
  333 F.R.D. 39 (S.D.N.Y. 2019) .......................................................................... 8

**Statutes**

18 U.S.C. § 1591 ......................................................................................... 5, 16, 17, 21

**Rules**

Fed. R. Civ. P. 23 ............................................................................................... passim

**Other Authorities**

U.S. Dep't of Just., Fed. Bureau of Investigation, FBI Memo, July 2025
  https://www.justice.gov/opa/media/1407001/dl?inline (last visited Dec. 22, 2025) .................. 3

Plaintiff Jane Doe ("Plaintiff" or "Doe") respectfully submits this memorandum of law in support of her Motion for Class Certification pursuant to Federal Rule of Civil Procedure 23. Doe seeks certification of the following Class, identified in ¶ 365 of the Amended Complaint ("AC"):

> All women who were sexually abused or trafficked by Jeffrey Epstein or Epstein's co-conspirators during the time when Bank of America maintained bank accounts for Epstein, Epstein's co-conspirators, Epstein-related entities, and/or Epstein-related accounts (the "Class Period").

Jeffrey Epstein's "grotesque misconduct" has been "widely recounted, including in other decisions of this Court," *Doe v. Bank of America, N.A.*, 2026 WL 380385, at *2 (S.D.N.Y. Feb. 11, 2026) (citing *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 396– 400 (S.D.N.Y. 2023)); *see also Doe 1 v. JPMorgan Chase Bank, N.A.*, 2023 WL 3945773, at *1 (S.D.N.Y. June 12, 2023). Plaintiff thus focuses on the facts that are particularly relevant to class certification in this case, including the common issues of fact concerning Bank of America ("BOA")'s knowledge and facilitation of Epstein's sex-trafficking venture and the typicality of Doe's claims.

## ARGUMENT

"A class may be certified if it satisfies each of the requirements of Rule 23(a) and satisfies at least one of the provisions of Rule 23(b)." *JPMorgan Chase Bank, N.A.*, 2023 WL 3945773, at *1. Rule 23(a) includes four requirements that every class must satisfy: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. *Id.*; Fed. R. Civ. P. 23(a). Plaintiff seeks class certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that

they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). Courts must interpret Rule 23 liberally, including by "adopt[ing] a standard of flexibility" in determining whether a proposed class satisfies its requirements. *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) (citation omitted).

Here, the proposed class easily meets Rule 23(a)'s threshold requirements, and this action further qualifies for certification under Rule 23(b)(3).[1] Courts often grant certification in similar cases involving trafficking or sex abuse claims, lending further support to Doe's argument that certification is appropriate here.[2]

### A. The Requirements of Rule 23(a) Are Satisfied

1. Rule 23(a)(1)—Numerosity Is Satisfied Where the Trafficking Venture Injured Hundreds—and Potentially Over a Thousand—Victims During the Class Period

Numerosity is satisfied when "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Courts presume numerosity at forty members. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Here, the proposed class easily

---

[1] In cases against Deutsche Bank and JP Morgan, the Court certified a traditional Rule 23(b)(3) class of "[a]ll women who were sexually abused or trafficked by Jeffrey Epstein during the time when JP Morgan maintained [accounts] for Epstein and/or Epstein-related entities," reasoning that common questions predominated. *See JPMorgan Chase Bank, N.A.*, 2023 WL 3945773, at *1, *10.

[2] *See, e.g.*, *Owino v. CoreCivic, Inc.*, 60 F.4th 437, 450 (9th Cir. 2022) (affirming class certification in a TVPA forced labor case); *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 927 (10th Cir. 2018) (same); *K.A. v. City of New York*, 413 F. Supp. 3d 282, 303 (S.D.N.Y. 2019) (denying motion to dismiss class action for female prisoners raising § 1983 claims regarding numerous improper intimate examinations); *In re USC Student Health Ctr. Litig.*, 2019 WL 3315281, at *10 (C.D. Cal. June 12, 2019) (preliminarily approving settlement class in case involving USC doctor involved in repeated sexual misconduct); *Mullen v. GLV, Inc.*, 330 F.R.D. 155, 168 (N.D. Ill. 2019) (granting class certification in case involving coach sexually abusing multiple underage players); *Paguirigan v. Prompt Nursing Emp. Agency LLC*, 2018 WL 4347799, at *10 (E.D.N.Y. Sept. 12, 2018) (certifying TVPA forced labor class); *see also Beltran v. InterExchange, Inc.*, 2018 WL 1948687, at *5 (D. Colo. Feb. 2, 2018) (certifying class where national RICO Class's claim arose out of "the same course of events" and the "same purported overall fraud").

clears that threshold. It consists of all women who were sexually abused or trafficked by Epstein

or his co-conspirators during the time period that BOA maintained bank accounts for Epstein, his

co-conspirators, and associated entities—a number measuring in the hundreds by all accounts.[3]

AC ¶ 352. BOA maintained accounts for Epstein, his related entities, and his co-conspirators—

including MC2 Model Management, Ghislaine Maxwell, and Leon Black—for at least 18 years

that Epstein's sex-trafficking venture operated, from 2001 to 2019. Ex. 3, at 23– 25.

A declaration from the claims administrator of the Epstein Victims Compensation Program

("EVCP"), confirms that 148 Epstein victims were deemed eligible for compensation through that

Program and 136 accepted offers for compensation. Ex. 8 at 3. "While this statistic is not a precise

measure of the proposed class's size, it provides a reasonable indicator that the class well exceeds

forty members." *JPMorgan Chase Bank, N.A.*, 2023 WL 3945773, at *2. Government

investigations and public records further confirm the scale of Epstein's trafficking venture exceeds

the threshold for numerosity. *See id.* at *2. The Department of Justice stated publicly in July 2025

that the evidence confirms that Epstein harmed **over 1,000 victims**—a number far in excess of what

is required to clear Rule 23(a)(1)'s numerosity hurdle.[4] Florida authorities identified at least 36

victims during the 2006 investigation that led to Epstein's 2008 conviction. Epstein's phone book

contains an extensive list of phone numbers for underage girls listed as "masseuses." Ex. 49, at 70,

88, 96, 97. It has been publicly reported that Epstein settled "at least two dozen lawsuits with

---

[3] If the Court had any doubt that the class contains fewer than forty members, it can still find numerosity satisfied. *See, e.g.*, *New Castle v. Yonkers Contracting Co.*, 131 F.R.D. 38, 41 (S.D.N.Y. 1990) (certifying a class of thirty-six members). The "[d]etermination of practicability depends on all the circumstances surrounding a case, not on mere numbers." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) (citations omitted). Here, one such relevant circumstance is the dispersion of victims across the United States and abroad, which would make joinder impracticable and weighs strongly in favor of numerosity. *See id.* Even within the U.S., Epstein's sex-trafficking venture operated in at least six states and territories. *See* AC ¶ 35.
[4] U.S. Dep't of Just., Fed. Bureau of Investigation, FBI Memo, July 2025, at 1, https://www.justice.gov/opa/media/1407001/dl?inline (last visited Dec. 22, 2025).

young women" for similar allegations. Ex. 54, at 3. Plaintiff's attorneys have themselves collectively represented more than 250 of Jeffrey Epstein's victims since 2008. Declaration of David Boies ("Boies Decl.") ¶ 7; Ex. 1, Declaration of Bradley J. Edwards ("Edwards Decl."), at ¶ 4. Numerosity is also clear from the unfortunate fact that, two weeks ago, the DOJ unintentionally released hundreds of victims' names through its release of documents pursuant to the Epstein Files Transparency Act. Ex. 48.

2. Rule 23(a)(2)—Common Questions of Law and Fact Clearly Exist

Rule 23's commonality requirement is met if all class members' claims share a common question of law or of fact. *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007). "Even a single common question of law or fact may suffice to satisfy the commonality requirement." *Pub. Employees' Ret. Syst. Of Mississippi v. Merrill Lynch & Co.*, 277 F.R.D. 97, 105 (S.D.N.Y. 2011) (Rakoff, J.); *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 529 (E.D.N.Y. 2017).

A question is common to the class if it is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Lopez v. Setauket Car Wash & Detail Ctr.*, 314 F.R.D. 26, 28 (E.D.N.Y. 2016) (citation omitted). The "one stroke" rule is often satisfied where, as here, there is a uniform policy or practice that affected all class members. *See Sykes v. Mel Harris & Assocs. LLC*, 780 F.3d 70, 87–88 (2d Cir. 2015); *Menocal*, 882 F.3d at 920 (finding commonality where plaintiffs asserted TVPA claims based on a common policy); *Marisol A.*, 126 F.3d at 377 (affirming finding of commonality where the plaintiffs' "injuries derive from a unitary course of conduct by a single system."). As explained below, this accommodating standard is more than adequately met here, where each of Doe's claims is predicated on the proof of common questions of law and fact shared by all members of the proposed Class.

Doe brings two claims under the Trafficking Victims' Protection Act of 2000 ("TVPA") on behalf of the class. Count I is a beneficiary liability claim under 18 U.S.C. § 1591(a)(2), the elements of which are that (1) "defendant participated in a commercial sex trafficking venture;" (2) "the defendant knew or should have known that the venture either involved the perpetrator's use of force, the threat of force, fraud, or coercion to cause the victims to participate in sex or that the venture involved sex with victims who were under the age of 18;" and (3) "the defendant benefited from its participation in the venture." *Doe*, 2026 WL 380385, at *8; *see also* AC ¶¶ 375–96. Count IV claims obstruction of TVPA enforcement, requiring proof BOA knowingly and intentionally obstructed, attempted to obstruct, interfered with, or prevented an investigation or prosecution into Epstein for trafficking. *See* 18 U.S.C. § 1591(d); AC ¶¶ 426–44.

Adjudicating each of these claims requires addressing common questions of law and fact shared by all members of the proposed class. As explained further below with regards to predominance, every element of the beneficiary liability claim is common to the class. If each class member brought an individual action instead, they would have to individually prove "many questions that are capable of classwide resolution." *JPMorgan Chase Bank, N.A.*, 2023 WL 3945773, at *4. As to the TVPA participation claim, this includes at least the following:

- Whether Jeffrey Epstein ran a sex-trafficking venture;

- Whether BOA knew or should have known about Epstein's sex-trafficking venture, which will be shown through testimony and evidence from BOA's employees;

- Whether BOA benefited from the trafficking venture, which will be shown through evidence of revenues BOA earned from Epstein's and his close co-conspirators' accounts and their recruitment of additional customers for BOA;

- Whether BOA participated in the venture by, for example, facilitating wire transfers used

to pay class members for commercial sex, paying funds to co-conspirators, or deliberately failing to file reports, including SARs, that might result in government intervention.

As to the obstruction claim, each class member would have to prove common questions of knowledge, intent, and whether BOA obstructed a prosecution or investigation.

### 3.   The Class is Sufficiently Ascertainable

The Second Circuit recognizes an implied requirement of ascertainability, or that "the identity of class members must be reasonably ascertainable by reference to objective criteria." *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566–67 (S.D.N.Y. 2014) (Rakoff, J.). "Class members need not be ascertained prior to certification, but must be ascertainable at some point in the case." *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 125 (S.D.N.Y. 2011). "The standard for ascertainability is not demanding," it is "designed only to prevent the certification of a class whose membership is truly indeterminable," and "the Second Circuit has instructed that failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule." *Ebin*, 297 F.R.D. at 567 (citations omitted).

Here, class membership will be ascertainable by objective criteria. The class is defined to include women abused or trafficked by Epstein throughout the time period that BOA maintained bank accounts for him, his affiliated entities, or his co-conspirators. Members of this class may be ascertained by reference to publicly available information including law enforcement reports, legal proceedings, statements to the media, and documents produced by BOA. *See JPMorgan Chase Bank, N.A.*, 2023 WL 3945773, at *5 (explaining that the proposed class was ascertainable by "consulting publicly available records, prior legal proceedings, and, plaintiff represents, documentation provided by her."); *Paguirigan v. Prompt Nursing Emp. Agency LLC*, 2018 WL 4347799, at *4 (E.D.N.Y. Sept. 12, 2018) (finding ascertainability of a TVPA class through the defendant's own produced records); *Flores v. Diamond Bank*, 2008 WL 4861511, at *4 (N.D. Ill.

6

Nov. 7, 2008) (rejecting argument that it would be difficult to identify potential class members who were not customers of Defendant bank where they were identifiable through use of Bank's records). Class members may also submit additional documentation identifying themselves as victims, such as contemporaneous communications about the abuse, medical records, victim notification letters that the Department of Justice sent to many victims pursuant to the Crime Victims Rights' Act, records publicly released by the Department of Justice, or determinations of eligibility from the EVCP or the funds administered by Claims Administrator Simone Lelchuk at the conclusion of the JP Morgan and Deutsche Bank cases. *See Doe v. MG Freesites, Ltd.*, 707 F. Supp. 3d 1157, 1171 (N.D. Ala. 2023) (finding class ascertainable in a sex trafficking case where class members could self-identify and where "Defendants' own records show[ed] who the class members [were]"). Accordingly, the class is sufficiently ascertainable at this stage. *See Biediger v. Quinnipiac Univ.*, 2010 WL 2017773, at *4 (D. Conn. May 20, 2010) (finding class of students subject to sex discrimination sufficiently ascertainable).

4. Rule 23(a)(3)—Plaintiff's Claims are Typical

"Rule 23(a)(3)'s typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux*, 987 F.2d at 936. "Plaintiffs are not required, in proving typicality, to show that the situations of the named representatives and the class members are identical." *Pub. Employees' Ret. Sys. Of Mississippi*, 277 F.R.D. at 109; *see also Robidoux*, 987 F.2d at 936–37 (explaining that the typicality requirement is usually met "irrespective of minor variations in the fact patterns underlying the individual claims"). Rather, courts focus on the defendant's uniform course of conduct, meaning that minor variations in the plaintiffs' underlying experiences do not defeat certification. *See Tsereteli v. Residential Asset Securitization Tr. 2006-A8*, 283 F.R.D. 199, 208 (S.D.N.Y. 2012) (granting class certification emphasizing that "[c]ourts finding typicality

generally look not at the 'plaintiffs' behavior, but rather [at] the defendant's actions,'" meaning the "factual background of each named plaintiff's claim" need not be identical); *Dial Corp. v. News Corp.*, 314 F.R.D. 108, 113–14 (S.D.N.Y. 2015) (granting class certification and holding that typicality is met if "the same unlawful conduct was directed at or affected both the named plaintiff and the class" (citation omitted)); *Dodona I, LLC v. Goldman, Sachs & Co.*, 296 F.R.D. 261, 267–68 (S.D.N.Y. 2014) (granting class certification and rejecting argument that the plaintiff had "unusual" underlying circumstances, finding the requirement met because typicality is "not demanding" and "does not require factual identity"); *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 154–55 (S.D.N.Y. 2002) (recommending class certification and holding that plaintiffs' individual "factual variations in plaintiffs' claims should not defeat class certification" because typicality is established "[a]s long as plaintiffs assert . . . that defendants committed the same wrongful acts in the same manner against all members of the class" (citation omitted)).

And typicality does not "require that damages be identical among class members." *Villella v. Chem. & Mining Co. of Chile, Inc.*, 333 F.R.D. 39, 55 (S.D.N.Y. 2019); *see also Pub. Employees' Ret. Sys. Of Mississippi*, 277 F.R.D. at 108; *Shahriar v. Smith & Wollensky Rest. Grp.*, *Inc.*, 659 F.3d 234, 252 –53 (2d Cir. 2011) (affirming class certification where claims arose from "the same course of events," noting that typicality is met even where "class plaintiffs' individualized damages will vary"); *Novoa v. GEO Grp., Inc.*, 2019 WL 7195331, at *14 (C.D. Cal. Nov. 26, 2019) (explaining in a TVPA case that "[t]he typicality requirement can be met notwithstanding varying fact patterns supporting class member claims, and this extends to disparity in damages by the representative plaintiffs"). "Courts in this Circuit have held that the 'typicality requirement is not demanding.'" *Pub. Employees' Ret. Sys. Of Mississippi*, 277 F.R.D. at 107 (citation omitted).

Plaintiff's claims are representative of those of the Class. These claims all arise from BOA's uniform practice of providing extensive financial services to Epstein that enabled him to traffic and abuse victims in the Class at an unprecedented scale and with impunity, evading government detection and oversight through BOA's complicity. Like the other class members, Plaintiff suffered injuries during Epstein's relationship with BOA, caused by the sex-trafficking venture, and pursuant to Epstein's well-established modus operandi. *See* AC ¶¶ 197–224 (describing Doe's experience of Epstein's uniform pattern and practice of commercial sex abuse, her account activity at BOA, and the typicality of Doe's experiences); *see also* Ex. 2, at ¶¶ 37–38, 52, 67–72, 75–76, 82, 92 (explaining how Doe's experience was consistent with publicly reported accounts of other Epstein victims).

Epstein's modus operandi is by now widely known. At one of Epstein's mansions, a victim would be forced to provide a massage—often after being instructed to undress—during which Epstein sexually assaulted her in some manner, such as by touching her breasts or genitals, using sex toys on her, or even penetrating her. Ex. 9, at 28, 34, 39–40; Ex. 10, at ¶¶ 54–58; Ex. 11, at 54:3 –56:13; Ex. 12, at 13:17–15:5; Ex. 13, at ¶¶ 38, 63; Ex. 2, at ¶¶ 52–53, 57, 59, 75. The victim would then be provided with several hundred dollars in cash. Ex. 9, at 29, 51, 52, 56, 79; Ex. 23, at 70:8–22; Ex. 2, at ¶¶ 52–53, 57, 76, 150. Epstein targeted women and young girls with vulnerabilities he could exploit; he would then dangle money, opportunities, and access to celebrities coupled with threats, coercion, and indoctrination to teach his victims the absolute necessity of their compliance with his exploitative demands. AC ¶¶ 28 –31, 198; Ex. 2, at ¶¶ 68–69, 74, 78–91.

Epstein also relied on his co-conspirators to recruit victims. Jean-Luc Brunel, a French "model scout" formed a "modeling agency" called MC2 Models Management with Epstein that

they used to entice young females with promises of modeling careers before sexually abusing and trafficking them. *Doe*, 2026 WL 380385, at *3 (citing AC ¶¶ 130–146). Ghislaine Maxwell was arrested in July 2020 on federal sex-trafficking charges in the Southern District of New York and has been described as Epstein's "best friend" and "madame." Ex. 14, at 1; Ex. 15, at 3. Maxwell played a central role in procuring underage girls for Epstein to abuse.

Epstein took actions to ensure his victims were beholden to him by forcing them to rely on him for basic necessities, such as housing, food, education, and clothing. AC ¶¶ 26, 31, 198; Ex. 5; Ex. 16; Ex. 17; Ex. 18, at ¶¶ 57–60; Ex. 2, at ¶¶ 38, 74, 79, 82, 92. Epstein also provided housing to many young females and aspiring models in a building on East 66th Street in New York. Ex. 19; Ex. 20, at 8; Ex. 2, at ¶¶ 79, 146–47. Epstein and his co-conspirators also directly threatened their victims. Ex. 21; Ex. 22, at 56:19 –57:17; Ex. 24, at 42 ("Darren Indyke met with her and told her that if she ever needed help she should not talk to police"). Epstein and his lawyers would gather information about the girls to blackmail them if they ever disobeyed him. Ex. 25; Ex. 26, at ¶ 43. Epstein made certain that his victims were aware that he socialized and conducted business with the most powerful people in the world and he would wield that power against his victims if they disobeyed him. Ex. 27; Ex. 28, at ¶ 27; Ex. 29, at ¶¶ 14, 25. Even through death, Epstein used his wealth to ensure that his co-conspirators and those with knowledge of his crimes were paid off. Ex. 59.

Plaintiff Jane Doe was one of Epstein's many victims while he banked at BOA, and her experience is typical of the other class members. Epstein targeted Doe in 2011 while she was living in Russia. AC ¶ 197. Epstein and his co-conspirators groomed and indoctrinated Doe, instilling both fear and incentive with constant reminders of his extraordinary wealth, power, and influence, and threatening severe financial, reputational, and physical harm if she did not comply with his

demands. *Id.* ¶¶ 198–99. Epstein and his co-conspirators also used threats of abuse of process and deprivation of basic life necessities, such as food, medical care, shelter, safety, and essential financial security to manipulate and control Doe. *Id.* ¶ 198; Ex. 4, at 327:20–25 ("███████████

████████████████████████████████████████████████████████████████

███████."); *see also* Ex. 2, at ¶¶ 37–38, 74–79, 82–84, 89–91.

Over the ensuing years, from 2011 until 2019, Epstein subjected Doe to relentless and vicious abuse, including directly sexually abusing Doe on at least 100 times (by rape and forced sexual acts with other women for his gratification). AC ¶ 200; Ex. 2, at ¶¶ 75–77. Epstein also transported Doe across state lines and in foreign commerce to facilitate her abuse. AC ¶ 202. As with Epstein's other victims, Doe was repeatedly paid by Epstein in furtherance of his sex-trafficking operation. Doe was paid through a BOA account that Epstein's co-conspirators opened for her, and with cash or gifts, so that Epstein could maintain control over her. *Id.* ¶¶ 207–24; Ex. 4, at 65:13 –21; 98:2 –4 ("█████████████████████████████████████████████

████████████"); Ex. 2, at ¶¶ 76, 92, 120. [5]

The precise circumstances of Epstein's trafficking of Plaintiff may differ in small ways from the circumstances under which another class member was victimized, but the necessary typicality is found in the uniform pattern of abuse each class member suffered and BOA's consistent role in facilitating the same. Minor differences in each victim's horrible and traumatic experiences at Epstein's hands, where they exist, are both natural and irrelevant to the class certification inquiry. *See JPMorgan Chase Bank, N.A.*, 2023 WL 3945773, at *5 (finding typicality where "[l]ike other class members, Jane Doe alleges that [the Bank] facilitated Epstein's sex-

---

[5] An issue common to all class members was payment as part of the sex-trafficking operation. Payment came in a variety of ways including by cash, by wire transfer, by gifts, and by payments through bank accounts. Doe received payment in a variety of ways as well including by cash and through her BOA account.

trafficking venture, which in turn harmed her"); *In re Smith Barney Transfer Agent Litig.*, 290 F.R.D. 42, 45 –46 (S.D.N.Y. 2013) (explaining where "it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims").

The claims in this action are not against the trafficker (*i.e.*, Jeffrey Epstein) but rather target BOA's course of conduct enabling and participating in Epstein's illegal venture, and how that conduct harmed the class. Plaintiff's claims and the class members' claims are based on the same "course of events" (BOA's relationship with Epstein) and similar "legal arguments to prove the defendant's liability" (BOA's participation in Epstein's sex-trafficking venture and failures to prevent harm to Epstein's victims). *JPMorgan Chase Bank, N.A.*, 2023 WL 3945773, at \*5. This is sufficient. *See Robidoux*, 987 F.2d at 936; *see also Marisol A.*, 126 F.3d at 377 (affirming finding typicality where class members' injuries resulted "from a unitary course of conduct by a single system"); *Casilao v. Hotelmacher LLC*, 2021 WL 4487984, at \*7 (W.D. Okla. Sep. 30, 2021) (rejecting argument that "personal experiences unique to certain class members and not experienced by others demonstrate a lack of typicality" in TVPA case where "the class members' claims are based on the same legal theories and the same operative conduct of Defendants as the claims brought by the Named Plaintiffs"). Accordingly, Doe's claims satisfy the typicality requirement imposed by Rule 23(a)(3).

5.  Rule 23(a)(4)—Plaintiff Will Adequately Represent the Class

Under Rule 23(a)(4), adequacy requires that the representative parties will "fairly and adequately protect the interests of the class." *See In re MF Global Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 237 (S.D.N.Y. 2015). "A finding that a proposed class representative satisfies the typicality inquiry constitutes strong evidence that [its] interests are not antagonistic to those of the

class; the same strategies that will vindicate plaintiff['s] claims will vindicate those of the class." *Pub. Employees' Ret. Sys. Of Mississippi*, 277 F.R.D. at 109. Even if a conflict exists, it does not "necessarily defeat class certification—the conflict must be 'fundamental.'" *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006) (citation omitted).

Here, Plaintiff will "fairly and adequately" represent the Class. Plaintiff's interests align with the class members' interests; she has no interests adverse to those of other class members; she is committed to vigorously prosecuting this action on behalf of the Class as was demonstrated in her deposition; and she will continue to pursue this matter aggressively until final resolution and closure is obtained for her and all others who experienced what she did. *See JPMorgan Chase Bank, N.A.*, 2023 WL 3945773, at *7 (explaining that plaintiff was a "strong" representative for a class of women abused by Epstein in a TVPA action because she was "incentivized to promote the interests of the class, since her own interest—like that of other class members—is to secure a judgment against JP Morgan and to secure as large an award of damages as is possible"); *see also Doe v. Mindgeek USA Inc.*, 702 F. Supp. 3d 937, 947 –48 (C.D. Cal. 2023) (finding a survivor-plaintiff to be an adequate representative where her claims aligned with the class, giving her "every reason to vigorously pursue those claims," and holding that her willingness to shoulder the burden of litigation to protect absent class members from trauma was a "hallmark of competence"); *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 345 (S.D.N.Y. 2015) (finding the adequacy requirement easily satisfied where the proposed representatives' "depositions . . . demonstrate[d] the adequacy of Plaintiffs' involvement in the case" and their "awareness and willingness" to participate). In addition, Plaintiff "has confirmed her commitment to success in this matter through her active participation up to this point," including by sitting for a ten-hour deposition—a "grueling experience, given the deposition's length and its subject-matter."

13

*JPMorgan Chase Bank, N.A.*, 2023 WL 3945773, at *7. Plaintiff also produced nearly 20,000 documents, including records recounting the most intimate details of her life and private medical records, and agreed to sit for an intrusive full-day medical examination by BOA's expert. Moreover, Plaintiff's counsel is "qualified, experienced and generally able to conduct the litigation." *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).

Doe's counsel includes attorneys experienced in class actions and complex litigation. They have demonstrated their high degree of tenacity and dedication towards pursuing justice in this matter through their success litigating (to favorable, multi-million-dollar settlement) lawsuits filed against Deutsche Bank and JP Morgan, as well as through their significant contributions towards the arrest and prosecution of Epstein himself, along with his co-conspirators Maxwell and Brunel. Accordingly, as with each of the three preceding requirements, the adequacy requirement imposed by Rule 23(a)(4) is also met.

## B. The Requirements of Rule 23(b)(3) Are Satisfied

In addition to meeting all four prerequisites under Rule 23(a), Doe can also demonstrate class certification is appropriate under Rule 23(b). A class under Rule 23(b)(3) is appropriate because common questions of law or fact predominate over any questions affecting individual class members, and resolving these by class action is superior to adjudicating them *seriatim*.

### 1. Common Questions of Law and Fact Predominate

Rule 23(b)(3) certification "does not require a plaintiff to show that *no* individual issues exist; that would be an impossibly high standard." *JPMorgan Chase Bank, N.A.*, 2023 WL 3945773, at *8; *see also Chalmers v. City of New York*, 2022 WL 4330119, at *17 (S.D.N.Y. Sept. 19, 2022) ("The predominance requirement calls only for predominance, not exclusivity, of common questions."). Rather, the appropriateness of certification requires only that "questions of law or fact common to class members predominate over any questions affecting only individual

members." Fed. R. Civ. P. 23(b); *see also Hawaii Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Ent. Holdings, Inc.*, 338 F.R.D. 205, 213–14 (S.D.N.Y. 2021) ("Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.") (citation omitted). "[A] common question is one where 'the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized class-wide proof.'" *In re Petrobras Secs.*, 862 F.3d 250, 270 (2d Cir. 2017) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). "[T]he core inquiry is whether the proposed class is 'sufficiently cohesive to warrant adjudication by representation.'" *JPMorgan Chase Bank, N.A.*, 2023 WL 3945773, at *8 (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).

In this case, Plaintiff brings claims for violation of the TVPA. Those claims will be proven with common evidence. Factual questions affecting individual members cannot defeat class certification given the common issues regarding BOA's liability. *See, e.g.*, *M.K.B. v. Eggleston*, 445 F. Supp. 2d 400, 441 (S.D.N.Y. 2006) (certifying class of immigrants denied public benefits even though "each member of the class was denied benefits for slightly different reasons and under slightly different circumstances"). Indeed, because the "TVPA's explicit statutory language makes clear that a 'reasonable person' standard applies in determining whether a particular harm (or threat of harm) is sufficiently serious" to force compliance, any claim that litigating "coercion" under the TVPA "would require an individualized consideration of each putative class member is mistaken." *Paguirigan*, 2018 WL 4347799, at *8. Proof pertaining to specific class members does not predominate over the core common questions regarding BOA's liability to the class members. The fact that damages determinations may be individualized does not alter this fact or undermine the

15

appropriateness of class certification. *See JPMorgan Chase Bank, N.A.*, 2023 WL 3945773, at *10 ("it is well-established that the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification") (citation omitted); *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 409 (2d Cir. 2015) ("[I]ndividualized damages determinations alone cannot preclude certification under Rule 23(b)(3).").

Plaintiff's TVPA causes of action (AC ¶¶ 375–444) require adjudication and proof of common issues of law and fact affecting class members including (but not limited to) the following:

a.    **Whether Epstein ran a sex-trafficking venture.** Proof of the existence of the venture would be common to the Class and be established by evidence including, *e.g.*, testimony from victims and witnesses about the operation of Epstein's trafficking venture, documents from law enforcement, documents released by the Department of Justice pursuant to the Epstein Files Transparency Act, and documents produced by the Epstein Estate regarding the venture.[6]

Testimony and evidence from civil lawsuits against Epstein have revealed the details of his sex-trafficking venture and the crimes he committed against young females. The files released by the Department of Justice pursuant to the Epstein Files Transparency Act further illuminate the egregiousness of Epstein's sex-trafficking scheme. For example, a draft indictment against Epstein prepared by federal prosecutors in 2007 that was never filed was released for the first time showing

---

[6] Epstein was charged for the conduct underlying his sex-trafficking venture twice. After receiving a complaint, the Palm Beach Police Department identified more than 30 girls who Epstein sexually abused at his Palm Beach mansion. Ex. 9. In 2006, the Palm Beach Police Department investigation was turned over to the United States Attorney's Office, which after identifying nearly forty underage victims, entered into a non-prosecution agreement ("NPA") pursuant to which Epstein plead guilty to prostitution charges. Ex. 30. A decade later, on July 2, 2019, the U.S. Attorney's Office for the Southern District of New York charged Epstein with sex trafficking conspiracy and sex trafficking in violation of 18 U.S.C. § 1591. Ex. 31. Epstein died in jail on August 10, 2019.

a series of sex crimes Epstein was accused of committing against more than a dozen teenage girls over six years. Ex. 61. The files released also contain countless emails between Epstein and young females, *e.g.*, Ex. 65, and emails showing Epstein and his staff coordinating travel for young females, *e.g.*, Ex. 64. New files released by the Department of Justice also reveal the extent to which Epstein was able to use his wealth to keep his co-conspirators quiet about his crimes even through his death. Ex. 59.

b.    **Whether the Epstein sex-trafficking venture caused its victims to engage in commercial sex acts in violation of the Trafficking Victims Protection Act, 18 U.S.C. § 1591(a)(1).**  Proof of this fact is common to the Class and would entail, *e.g.*, testimony of victims and witnesses, some of which would likely be traumatic, burdensome, and potentially dangerous to repetitively elicit (as would be required in separate actions). This would include testimony like Doe's that she was recruited by Epstein in 2011 and trafficked and sexually abused by Epstein until 2019. Ex. 4, at 34:2–35:17, 62:18–63:25, 169:13–170:17, 322:15–18.

c.    **Whether the Epstein sex-trafficking venture recruited, enticed, solicited, harbored, provided, obtained, and transported victims in ways that were in or affecting interstate or foreign commerce.** Proof of this fact is common to the Class and would entail, *e.g.*, testimony of victims and witnesses and production of documents from law enforcement, documents released by the Department of Justice pursuant to the Epstein Files Transparency Act, and documents produced by the Epstein Estate regarding the sex-trafficking venture. This includes flight manifests kept by Epstein's pilots that show Epstein transporting young females on his private planes. Ex. 56.

d.    **Whether Epstein and his co-conspirators used means of force, fraud, coercion, and abuse of legal process, or a combination of such means, to sexually abuse the victims and**

**to cause victims to engage in commercial sex acts.** Proof of this fact is common to the Class and would entail, *e.g.*, testimony of victims and witnesses which should not needlessly be duplicated and documents that show Epstein and his co-conspirators threatened the victims. *See, e.g.*, Ex. 21; Ex. 22, at 56:19–57:17; Ex. 61, at 15 ("Defendant JEFFREY EPSTEIN told Jane Doe #7 that if she reported to anyone what had occurred at Defendant JEFFREY EPSTEIN's home, bad things could happen to her.").

      e.      **Whether BOA participated in the Epstein sex-trafficking venture.** Proof of this fact is common to the Class and would rely on evidence including, *e.g.*, BOA's internal documents, records, memoranda showing how BOA supports Epstein's sex-trafficking venture, and testimony of current and former BOA employees. Evidence in discovery thus far has already demonstrated this fact. BOA participated in Epstein's sex-trafficking venture by:

1. Opening and maintaining ▮▮▮▮▮▮▮▮ accounts for known Epstein-related entities and agents including Leon Black, Ghislaine Maxwell, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, without any due diligence and despite BOA's actual and constructive knowledge of Epstein's sex crimes and sex-trafficking venture, AC ¶¶ 6, 288–94; Ex. 32 at 2; Ex. 33; Ex. 34 at 2; Ex. 35 at 2; Ex. 2, at ¶¶ 60–61, 123–24; 134–35, 137–38.

2. Opening an account for Doe herself without any due diligence, and with actual knowledge or in reckless disregard of the fact that the account was being used to facilitate Epstein's sex-trafficking venture, AC ¶¶ 6, 197–237; Ex. 36 at 12;[7]

3. Sending at least $170 million from Black's BOA accounts to Epstein and his related entities despite obvious red flags and without any plausible justification for the financial advice that Black has claimed it was for, AC ¶¶ 6, 238, 248, 252, 255, 274–78; Ex. 6, at 4, 5, 6, 9, 11, 13, 14, 16, 23. A $62 million settlement between Leon Black and the USVI that gave Black immunity from sex trafficking charges in the USVI includes an admission that "Jeffrey Epstein used the money Black paid him to partially fund his operations in the Virgin Islands." Ex. 7.

---

[7] One sub-part of BOA's knowledge is that there were indications that Jane Doe's account was being used to facilitate Epstein's sex-trafficking venture. The fact that Jane Doe had an account at the Bank is not a basis for liability (she is not claiming any damages based on that account). The facts about her account are relevant because they demonstrate BOA's knowledge of the sex-trafficking venture.

4.  Opening and maintaining a business account for MC2, which was used to fund and conceal Epstein's sex-trafficking venture, AC ¶¶ 6, 326–40;

5.  Executing transfers of funds from Epstein and his entities to Epstein's victims, including Doe, and his co-conspirators, *id.* ¶¶ 208–13, 215, 217–24, 296–301; Ex. 5; Ex. 63, at 1(Kahn and representative of MC2 discussing payments made through Bank of America); Ex. 2 at ¶ 120.

6.  ████████████████████████████████████, furthering and concealing Epstein's sex-trafficking venture, AC ¶¶ 260–71; Ex. 37, at 13; Ex. 2 at ¶¶ 129–30; and

7.  Failing to timely file the SARs it was required to file ████████████████ ████, despite actual and constructive knowledge that its accounts were being used to further Epstein's sex-trafficking venture, AC ¶¶ 6, 227–30, 254–59, 264–69, 273–81, 292–96, 305–14; Ex.55; Ex. 37; Ex. 57; Ex. 58; Ex. 36.

f.   **Whether BOA knew or recklessly disregarded the existence of the Epstein sex-trafficking venture.** Proof of this fact is common to the Class and would rely on evidence including, *e.g.*, BOA's internal documents and records, memoranda, testimony of current and former employees, written communications discussing the venture, media reports regarding the venture, and publicly available information about the venture demonstrating that BOA should have known about the venture.[8]

Evidence produced by BOA so far in discovery has shown BOA's employees were intimately familiar with Epstein and communicated directly with him and his agents and co-conspirators. All these individuals brought their actual knowledge of Epstein's sex crimes to the Bank. The preventable abuses victims in the Class experienced would not have been possible without the assistance and knowing complicity of a bank that provided Epstein's operation with the financial means to conduct sex trafficking under a veneer of legitimacy.

---

[8] This is especially true with respect to the knowledge element of a TVPA participation liability claim, which the Court recently reaffirmed applies to the sex-trafficking venture and "does not require that the defendant know or recklessly disregard the fact that the force, fraud, or coercion was used with respect to plaintiff herself." *Doe*, 2026 WL 380385, at *10.

Julie Minsky, a BOA employee who worked on Epstein's accounts, was the sister-in-law of Epstein's long-time accountant, Richard Kahn. Ex. 45; Ex. 44. Minsky helped Epstein set up accounts for Epstein at BOA. *Id.* She did this even though, when she was at UBS, she had previously advised Kahn that UBS was going to close Epstein's credit cards as they did "not want [a]ny reputation risk per their compliance [department]." Ex. 62.

BOA also employed bankers who had previously served as Epstein's bankers at JP Morgan and Deutsche Bank and who knew that JP Morgan and Deutsche Bank had terminated Epstein because of his use of banking services to facilitate his sex trafficking, including Paul Morris and Amanda Ens. Ex. 50 (Ens corresponding directly with Paul Barrett and Epstein while she was employed at JP Morgan). Amanda Ens was personally connected with Epstein on social media, Ex. 38, ███████████████████████████████; Ex. 39, and made sure Epstein received special attention from BOA; Ex. 51 (████████████████████████████████ ████████████████████████████████████████████████ ████████████); Ex. 52 (████████████████████ ████████████). Paul Morris, who was Epstein's longtime banker at JP Morgan and Deutsche Bank, and subsequently at BOA, met with Epstein frequently, sometimes in person. Ex. 41; Ex. 42. ████████████████████████████████████████ ████████████████. Ex. 40.

BOA serviced Epstein despite knowing that he had been convicted of sex crimes, was a known sex trafficker, used Maxwell, Jean-Luc Brunel, and MC2 to recruit new young females into his criminal orbit, and had ties to Black who funded Epstein's sex-trafficking operation. BOA's employees were well aware of Epstein's sexual misconduct, acknowledging that at least as early as 2012 that he ████████████████████████ and that they could ████████████



Ex. 43.

Ex. 33. Nonetheless,

Ex. 35.

g.    **Whether BOA benefited financially or by receiving things of value from its participation in a venture which has engaged in sex trafficking in violation of TVPA, 18 U.S.C. § 1591(a)(1).** Proof of this fact is common to the Class and would rely on evidence including, *e.g.*, BOA's financial records, executive compensation, and testimony of current and former employees that BOA earned millions of dollars from servicing Epstein's accounts and financial needs and the accounts and financial needs of his close co-conspirators. Evidence in discovery so far has shown that BOA received great financial benefits by way of service fees, interest, and connections to high-net-worth individuals. Ex. 46, at 2

); Ex. 47, at 4

); Ex. 66, at 2

).

h.    **Whether BOA knew or should have known that the Epstein sex-trafficking venture had engaged in violations of the TVPA, 18 U.S.C. § 1591(a).** Proof of this fact is common to the Class and would rely on evidence including, *e.g.*, that suggested in (e)–(h) above.

i.    **Whether BOA obstructed the enforcement of the TVPA with respect to Jeffrey Epstein's sex-trafficking venture.** Proof of this fact is common to the Class and would rely on evidence including, *e.g.*, that suggested in (e)–(h) above, which will illustrate BOA's failure to file

21

SARs and intentional disregard of blatant indicia of international sex trafficking. The evidence produced so far has shown it was not until 2019, after Epstein was indicted on new charges related to sex crimes involving minors, that BOA ███████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████ Ex. 60.

Accordingly, common issues of law and fact subject to common proof predominate over individualized issues relating to Doe's TVPA claims, qualifying those claims for class certification under Rule 23(b)(3).

2.   A Class Action is Superior to Other Methods of Adjudication

"[A] class action is superior to other available methods for fairly and efficiently adjudicating the controversy" in this context. Fed. R. Civ. P. 23(b)(3). The relevant factors include:

> (A) The class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

*Id.* A Rule 23(b)(3) class is superior when it allows for the vindication of "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *In re Beacon Assocs. Litig.*, 282 F.R.D. 315, 333 (S.D.N.Y. 2012) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997)).

Here, the TVPA was designed to protect victims of trafficking, who are vulnerable, may fear reprisal or the loss of anonymity, and wish to avoid repeatedly revisiting their past traumas. Class treatment is superior in this context. *See, e.g.*, *JPMorgan Chase Bank, N.A.*, 2023 WL 3945773, at *11 ("[W]hile the intensely personal nature of the claims at stake might give class members an interest in individually controlling their prosecution, it might also—to an equal or even greater extent—give them an interest in class-wide adjudication."); *Jane Doe 30's Mother v.*

*Bradley*, 64 A.3d 379, 385 (Del. Super. Ct. 2012); *Scott v. Aetna Servs., Inc.*, 210 F.R.D. 261, 268 (D. Conn. 2002) (finding class action superior in a case alleging violations of state labor law in part because "class members may fear reprisal"). Proceeding by class would also avoid a "multiplicity and scattering of suits" that would follow were the victims of Epstein's venture— which operated in at least six states and territories and internationally—to independently vindicate their rights in courts across the country. *In re MF Global Holdings*, 310 F.R.D. at 239 (citation omitted); *see also Menocal*, 882 F.3d at 917 (citation omitted) (finding superiority where "the putative class members reside[d] in countries around the world"). Further, several members of the Class are Eastern European or are not proficient in English and lack familiarity with the U.S. legal system such that class treatment would be preferrable and equitable. *JPMorgan Chase, N.A.*, 2023 WL 3945773, at *11 (citing *Menocal*, 882 F.3d at 917).

Forcing the members of the class members to proceed individually would seriously harm their ability to pursue justice for their injuries in ways easily remedied by proceeding as a class instead, making that the superior option. Litigating this case has required (and will require) seeking substantial discovery from BOA, including obtaining tens of thousands documents from the Bank and third parties, taking numerous depositions, and employing experts that would be relevant to each class members' claims but would be difficult for each class member to obtain on her own in an individual lawsuit. *See* Boies Decl. at ¶ 5; Ex. 1, Edwards Decl. at ¶ 3. Lastly, "there are no apparent difficulties that are likely to be encountered in the management of this action as a class action apart from those inherent in any hard-fought battle where substantial sums are at issue and all active parties are represented by able counsel." *JPMorgan Chase Bank, N.A.*, 2023 WL 3945773, at *11 (citation omitted).

### C. The Court Should Appoint Boies Schiller Flexner LLP and Edwards Henderson PLLC as Class Counsel

Rule 23(g)(1) provides that "a court that certifies a class must appoint class counsel," and:

> In appointing class counsel, the court: (A) must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(a).

Under these criteria, Boies Schiller Flexner LLP ("BSF") and Edwards Henderson PLLC (together, "Proposed Class Counsel") meet Rule 23(a)(4)'s adequacy requirement and should be appointed as Class Counsel under Rule 23(g). Proposed Class Counsel have invested substantial time and resources investigating Doe's claims, prosecuting this case, and gathering discovery from BOA and third parties. Since the filing of the initial complaint, Proposed Class Counsel have identified and investigated Plaintiff's claims, participated in the discovery process, and responded to BOA's motion to dismiss. Proposed Class Counsel have committed, and continue to commit, substantial time and resources to representing the Class, and have worked vigorously and zealously to competently represent the interests of the members of the Class in this case, in other cases before this Court and other Courts within this jurisdiction, and before the United States of America both with Congress and the Department of Justice. *See* Boies Decl. at ¶¶ 3, 5, 8, 10, 11; Ex. 1, Edwards Decl., at ¶¶ 3, 4, 7, 8, 10, 14.

Proposed Class Counsel are well qualified to represent the proposed Class and its interests. Proposed Class Counsel have substantial experience handling class actions, complex litigation, banking matters, matters involving trafficking and abuse, and, more specifically, cases related to Epstein's sex-trafficking venture. David Boies of BSF is one of the most well-known class actions attorneys in the United States and has recovered billions of dollars for plaintiffs in class action

24

litigation. Sigrid McCawley of BSF has devoted years of her career to seeking justice for Epstein's survivors, and her work contributed to the arrest of Jeffrey Epstein, Ghislaine Maxwell, and Jean-Luc Brunel. Brad Edwards and Brittany Henderson have likewise been leaders in prosecuting actions against Epstein and his co-conspirators, in 2008 and 2015 respectively, and have a legal practice that focuses solely on representing victims of crime wherein they have litigated numerous other high-profile matters for survivors of sexual violence. In Class Counsel's recent representation of victims in class actions against JP Morgan and Deutsche Bank, this Court commended them for their "extraordinarily laudable" work, Ex. 53 at 10:23, and "excellent" results, *id.* at 31:10. Thus, Rule 23(g) is satisfied.

## CONCLUSION

For the reasons stated herein, Doe respectfully requests that the Court issue an Order: (1) certifying this action pursuant to Rule 23 as a class action and certifying the Class defined herein; (2) appointing Jane Doe as the Class Representative; (3) appointing Boies Schiller Flexner LLP and Edwards Henderson PLLC as Class Counsel; and (4) granting such other and further relief as the Court may deem just and proper.

Dated: February 17, 2026                    Respectfully submitted,


                                            */s/ David Boies*
                                            David Boies
                                            Andrew Villacastin
                                            Rachael Schafer
                                            BOIES SCHILLER FLEXNER LLP
                                            55 Hudson Yards
                                            New York, NY
                                            Telephone: (212) 446-2300
                                            Fax: (212) 446-2350
                                            Email: dboies@bsfllp.com
                                            Email: avillacastin@bsfllp.com
                                            Email: rschafer@bsfllp.com

                                            Sigrid McCawley
                                            Daniel Crispino
                                            Megan Nyman
                                            BOIES SCHILLER FLEXNER LLP
                                            401 E. Las Olas Blvd., Suite 1200
                                            Fort Lauderdale, FL 33316
                                            Telephone: (954) 356-0011
                                            Fax: (954) 356-0022
                                            Email: smccawley@bsfllp.com
                                            Email: dcrispino@bsfllp.com
                                            Email: mnyman@bsfllp.com

                                            Bradley J. Edwards
                                            Brittany N. Henderson
                                            Dean Kaire
                                            EDWARDS HENDERSON LLC
                                            425 N. Andrews Ave., Suite 2
                                            Fort Lauderdale, FL 33301
                                            Telephone: (954) 524-2820
                                            Fax: (954) 524-2822
                                            Email: brad@cvlf.com
                                            Email: brittany@cvlf.com
                                            Email: dean@cvlf.com


                                            *Counsel for Plaintiff Jane Doe*

## <u>CERTIFICATE OF COMPLIANCE</u>

I, David Boies, hereby certify pursuant to Local Civil Rule 7.1(c) that the foregoing

Memorandum of Law was prepared using Microsoft Word and complies with Rule 2(e) of this

Court's Individual Rules and Local Rule 7.1(c).


*/s/ David Boies*