# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Jane Doe, individually and on behalf of all similarly situated, | **)** | |
| | **)** | |
| | **)** | |
| Plaintiff, | **)** | |
| | **)** | Case No. 25-cv-8520 (JSR) |
| v. | **)** | |
| | **)** | |
| Bank of America, N.A., | **)** | |
| | **)** | |
| Defendant. | **)** | |
| | **)** | |

## BANK OF AMERICA, N.A.'s OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

<u>March 2, 2026</u>

Bethany K. Biesenthal
Paula S. Quist
Shea F. Spreyer
Carol T. Li
JONES DAY
110 North Wacker Drive
Suite 4800
Chicago, IL 60606
(312) 782-3939

Charlotte H. Taylor
JONES DAY
51 Louisiana Ave, N.W.
Washington, DC 20001
(202) 879-3939

*Counsel for Bank of America, N.A.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 4

    A.    The typical victim's experience with Epstein. ........................................ 4

    B.    Prior litigation involving JPMorgan Chase. ......................................... 5

    C.    Plaintiff's experience with Epstein was different from other victims'. ................ 6

    D.    Plaintiff's remaining claims. ................................................................. 8

    E.    Plaintiff's motion for class certification. ............................................. 12

ARGUMENT ................................................................................................................... 12

I.    Plaintiff's proposed class does not satisfy the requirements of Rule 23(a). ................... 13

    A.    The class is not sufficiently numerous. ............................................... 13

    B.    Plaintiff's claims are not typical of the class she seeks to represent. ................ 16

    C.    Plaintiff is an inadequate representative. ............................................. 18

II.    The proposed class does not satisfy the requirements of Rule 23(b)(3). ........................ 19

    A.    Common questions of fact or law do not predominate. ....................... 19

    B.    A class action is not a superior means of adjudicating the unique and personal claims of putative class members. ......................................... 25

CONCLUSION ................................................................................................................. 25

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amchem. Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)................................................................................20

*C.C. v. Rashid*,
2025 WL 1785273 (D. Nev. June 26, 2025)............................................14

*Clark v. State Farm Mut. Auto. Ins. Co.*,
245 F.R.D. 478 (D. Colo. 2007) ..............................................................13

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*,
589 U.S. 327 (2020)................................................................................24

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995).................................................................13, 16

*Croft v. Dolan*,
2024 WL 4536309 (C.D. Cal. Sept. 27, 2024), *aff'd*, 2025 WL 3720844 (9th
Cir. Dec. 23, 2025)...................................................................................16

*Doe 1 v. Apple Inc.*,
96 F.4th 403 (D.C. Cir. 2024)..................................................................23

*Doe 1 v. Deutsche Bank*,
671 F. Supp. 3d 387 (S.D.N.Y. 2023)..........................................1, 4, 5, 15

*Doe 1 v. JPMorgan Chase Bank, N.A.*,
2023 WL 3945773 (S.D.N.Y. June 12, 2023) ............1, 4, 6, 12, 15, 18, 19, 20, 21, 22, 23, 25

*Doe v. Bank of America, N.A.*,
2026 WL 380385 (S.D.N.Y. Feb. 11, 2026)...................4, 9, 12, 14, 18, 23

*Doe v. G6 Hospitality, LLC*,
2025 WL 1167550 (W.D. Wash. Apr. 22, 2025).....................................14

*Francis v. APEX USA, Inc.*,
2021 WL 4487985 (W.D. Okla. Sept. 30, 2021) .....................................21

*G.G. v. Salesforce, Inc.*,
76 F.4th 544 (7th Cir. 2023) ....................................................................23

*Gen. Tel. Co. of the Southwest v. Falcon*,
457 U.S. 147 (1982)............................................................................16, 18

# TABLE OF AUTHORITIES

**Page(s)**

*Gordon v. Sonar Cap. Mgmt. LLC*,
    92 F. Supp. 3d 193 (S.D.N.Y. 2015) (Rakoff, J.) ..............................................3, 18

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    574 F.3d 29 (2d Cir. 2009)...................................................................................18

*In re MF Global Holdings Ltd. Inv. Litig.*,
    310 F.R.D. 230 (S.D.N.Y. 2015) ........................................................................19

*In re Namenda Indirect Purchaser Antitrust Litig.*,
    338 F.R.D. 527 (S.D.N.Y. 2021) ........................................................................24

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ............................................................................................24

*Lopez v. Marriott Int'l, Inc.*,
    2026 WL 260433 (D. Colo. Jan. 7, 2026)..........................................................21

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997).................................................................................24

*Mueller v. Deutsche Bank*,
    777 F. Supp. 3d 329 (S.D.N.Y. 2025)................................................................23

*Novella v. Westchester Cnty.*,
    661 F.3d 128 (2d Cir. 2011).................................................................................13

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993).................................................................................16

*Royal Park Invs. SA/NV v. Wells Fargo Bank, N.A.*,
    2018 WL 739580 (S.D.N.Y. Jan. 10, 2018) ......................................................25

*S. Cal. IBEW-NECA Defined Contrib. Plan v. Bank of N.Y. Mellon Corp.*,
    287 F.R.D. 216 (S.D.N.Y. 2012) ........................................................................25

*Staub v. Proctor Hosp.*,
    562 U.S. 411 (2011).............................................................................................24

*Stinson v. City of New York*,
    282 F.R.D. 360 (S.D.N.Y. 2012) ........................................................................13

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*,
    546 F.3d 196 (2d Cir. 2008).................................................................................13

## TABLE OF AUTHORITIES

**Page(s)**

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016)....................................................................................................19

*Valentini v. Citigroup, Inc.*,
  837 F. Supp. 2d 304 (S.D.N.Y. 2011)..........................................................................9

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)....................................................................................................13

**STATUTES**

18 U.S.C. § 1591(a) .................................................................................................3, 16

18 U.S.C. § 1591(e) .....................................................................................................17

18 U.S.C. § 1595(c) .....................................................................................................13

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 23 ...................................................................... passim

## INTRODUCTION

This lawsuit follows prior suits brought against JPMorgan Chase ("JPMorgan") and Deutsche Bank; it is brought by the same lawyers and asserts similar claims against Bank of America, N.A. ("BANA"). Plaintiff has now moved for class certification and likely hopes for the same outcome as the JPMorgan case, where this Court certified a similar requested class. But this case is crucially different, because (among other reasons) Plaintiff's relationship with Epstein is atypical and BANA's alleged involvement with Epstein's finances is far less extensive. Plaintiff cannot satisfy the required Rule 23 elements, and the Court should deny the certification motion.

Critical to this Court's decision certifying the class in *Doe 1 v. JPMorgan Chase Bank, N.A.*, 2023 WL 3945773, at *1 (S.D.N.Y. June 12, 2023) ("*JPMorgan*") was that the named plaintiff alleged a common *modus operandi*: Epstein recruited vulnerable young women by luring them to his residences and giving them cash in exchange for massages during which sexual abuse occurred. The "nub" of the claim against JPMorgan, as an alleged participant in this venture, was that it sustained Epstein's operation in a similar way throughout its existence by serving as Epstein's main bank and providing him with vast amounts of cash, while otherwise remaining silent. This Court held that the elements of those claims—whether Epstein in fact paid cash for massages, whether the women who received the cash felt coerced into engaging in commercial sex acts, and whether JPMorgan provided Epstein with cash throughout the relevant timeframe—lent themselves to common proof and involved class members who were sufficiently numerous.

In contrast, here Plaintiff testified ███████████████████████████████ BANA's alleged involvement is likewise different from JPMorgan's. There is no allegation that BANA provided Epstein or his associates with "[c]ash" that was the "lifeblood" of his trafficking operation, *Doe 1 v. Deutsche Bank*, 671 F. Supp. 3d 387, 397 (S.D.N.Y. 2023) ("*Deutsche Bank*"). *See* Dkt. No. 39 at 8-16; Dkt. No. 62 at 7-9. BANA's alleged participation in Epstein's sex-

1

trafficking venture involves separate relationships with different customers (some one or more steps removed from Epstein), across different time periods, with varying links to different victims.

Plaintiff therefore cannot rely on the *JPMorgan* model; she must start from scratch to show that class adjudication is appropriate in this case. She fails to carry her burden.

*First*, Plaintiff stumbles at the very first of Rule 23(a)'s threshold requirements—numerosity. Plaintiff filed her complaint on October 15, 2025. Under the Trafficking Victims Protection Reauthorization Act's ("TVPRA") statute of limitations, any trafficking claims based on abuse that pre-dates October 15, 2015 are time barred. ████████████████████ ████████████████████████████████ according to claims data provided by the JPMorgan and Deutsche Bank settlement funds—a good indicator of class membership. And even if her claims are not time-barred, Plaintiff cannot show that BANA engaged in any arguably culpable conduct prior to 2012. That similarly shrinks the putative class size for Plaintiff's participation claim to less than 40. As for obstruction, this Court has limited that claim to the time after the public unveiling of Epstein's indictment in July 2019. ████████████████████ ████████████████ Neither of Plaintiff's claims, then, can support a sufficiently numerous class to satisfy Rule 23(a)(1).

*Second*, Plaintiff fails to satisfy Rule 23(a)'s typicality requirement because her claims suffer unique weaknesses and are subject to unique defenses. Epstein trafficked minors and likely adult women, but not every woman who came into contact with Epstein (or who was abused by Epstein) was *trafficked* under the statute Congress drafted—which has distinct requirements beyond emotional or sexual abuse. ████████████████████████ ████████████████████████ But as despicable as his conduct was, Plaintiff will still struggle to make out the elements of her *trafficking* claim. To start, Plaintiff

must prove that she was "cause[d] to engage in a commercial sex act," 18 U.S.C. § 1591(a). ████

████████████████████████████████████████████████████████████████████

████████████████. Plaintiff's problems of proof of this element set her apart from the vast majority of Epstein victims who received cash for massages.  In addition, Plaintiff must prove that "force, … fraud, [or] coercion" caused her to engage in commercial sex. ██████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████. To be sure, Plaintiff offered an expert opinion to try to fill this gap, but it is insufficient.  These questions are serious enough "to require the plaintiff to devote considerable time to rebut the[se] unique defense[s]," defeating certification.  *Gordon v. Sonar Cap. Mgmt. LLC*, 92 F. Supp. 3d 193, 201 (S.D.N.Y. 2015) (Rakoff, J.) (quotation marks omitted).

*Third*, Plaintiff separately fails Rule 23(a)'s adequacy requirement because she has had to withdraw key allegations with respect to her alleged coercion due to her unique circumstances. She also faces serious credibility issues because, among other things, she admits that she lied to the government.  Given these weaknesses, Plaintiff cannot fairly and adequately protect the interests of the rest of the putative class.

*Finally*, the motion fails to meet the predominance requirement of Rule 23(b)(3).  Likely recognizing that her deposition testimony undermines her claim of force, fraud, or coercion, Plaintiff (supported by her expert) asserts that Epstein exercised control over her through ████████████████████████, Dkt. No. 75 ("Mot."), Ex. 2 ¶ 38, including by controlling her "housing, food, education, and clothing," Mot. at 10.  But as she herself testified, this means of coercion—unlike the cash-for-massages scheme that this Court held could be proved through common evidence—will yield a highly individualized inquiry with respect to those women who

3

were allegedly subjected to it; and again, it is not common to Plaintiff's putative class as a whole.

Plaintiff also cannot show predominance because of the multiple different theories she asserts of BANA's supposed participation in a sex trafficking venture. Proof at trial will be different depending whether, for example, a given victim was allegedly trafficked by MC2 (which BANA supposedly supported by providing banking services through operating accounts) or allegedly paid by Epstein after he grew his wealth through investments (which BANA supposedly enabled when its separate corporate affiliate, Merrill Lynch, opened investment accounts for the Epstein-controlled Southern Trust Company). Given these variations in proof of BANA's supposed participation in a venture, Plaintiff's only alternative to satisfy predominance would be to divide her case into subclasses. But if she takes that path, she will certainly fail to satisfy numerosity (assuming, contrary to the facts and law, she could show it in the first place).

Plaintiff fails to carry the burden for class certification under Rule 23. This Court should deny her motion to certify a class.

## BACKGROUND

### A.    The typical victim's experience with Epstein.

The nature of Epstein's conduct has been widely recounted, including by this Court (*see Doe v. Bank of America, N.A.*, 2026 WL 380385 (S.D.N.Y. Feb. 11, 2026) ("*Bank of America*"); *Deutsche Bank*, 671 F. Supp. 3d at 397; *JPMorgan*, 2023 WL 3945773, at *1), Doe herself (*see* Dkt. No. 51 ¶¶ 26-43, 53-94) ("FAC"); Mot. at 9), and a recently released memorandum from the Federal Bureau of Investigation (Mot. Ex. 24). A brief summary is provided here.

Beginning in the late 1990s, Epstein began a scheme in which mostly underage girls were paid cash in exchange for "massages" that frequently escalated into sexual abuse. *E.g.*, FAC ¶ 123; Mot. at 9; Mot. Ex. 24 at 1-37. A key feature of that scheme involved recruitment: victims were encouraged to bring in other women to Epstein and were paid for doing so—either in cash or ██████

 like gifts or wire transfers.  Mot. Ex. 24 at 1-37; Ex. 1 at 275:16-25.

█████████████ Ex. 1 at 284:11-16.

Epstein was arrested in 2006, and pled guilty to state charges for solicitation.  FAC ¶¶ 32-33.  He served thirteen months out of an eighteen-month jail sentence and was released in July 2009. *Deutsche Bank*, 671 F. Supp. 3d at 399.

█████████████  But the number of women he victimized tapered down.  Data provided by the JPMorgan and Deutsche Bank settlement funds show that █████████████

█████████████ Ex. 2 at App'x A.[1]

### B.     Prior litigation involving JPMorgan Chase.

Plaintiff's attorneys filed suit against JPMorgan Chase in 2022 alleging that JPMorgan participated in a venture with Epstein that focused on his cash-for-massages operation.  According to the allegations in that lawsuit, "[c]ash was the lifeblood of Epstein's operation.  Victims were paid hundreds of dollars, in cash, each time Epstein abused them; and they were also paid hundreds of dollars, in cash, for each additional victim that they recruited."  *Deutsche Bank*, 671 F. Supp. 3d at 397.  The plaintiff in that case received cash that flowed through JPMorgan.  Specifically, the plaintiff alleged that she was trafficked "from 2006 through 2013" and "was usually paid in cash that was withdrawn from one of Epstein's accounts at JPMC."  Dkt. No. 122 at 7.

---

[1] Counsel reviewed a spreadsheet provided by the claims administrator of the settlement funds, which set forth anonymized data █████████████

At class certification, this Court focused on the cash-for-massages operation as the basis for finding the claims would be subject to common proof. *JPMorgan*, 2023 WL 3945773, at *9. As the Court stated, "Jeffrey Epstein recruited his victims with a common *modus operandi*": "use prior victims to lure young, vulnerable victims, bring the victim to his home, sexually abuse the victim during a massage, and then provide the victim with cash or something else of value." *Id.* JPMC's alleged participation in that venture was also common across the class: it provided "large quantities of cash, … assistance in 'structuring' cash withdrawals, and … silence." *Id.* at *1.

### C. Plaintiff's experience with Epstein was different from other victims'.

Plaintiff's allegations here are markedly different. ███████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████

Plaintiff opened a personal checking account at BANA. Mot. at 18. Her bank statements reveal ████████████████████████████████████████████████

████████████████████████ There were no large or structured cash withdrawals and no unexplained transfers out of the account. █████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████

Plaintiff repeatedly testified ██████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████[2]

Plaintiff testified that ██████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

---

[2] Plaintiff's class certification expert relies on the claim form Plaintiff submitted to the EVCP for numerous factual assertions that are contradicted by her deposition testimony. ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ These contradictions undermine the expert's opinions.

**D.    Plaintiff's remaining claims.**

Only two of Plaintiff's claims have survived dismissal: (1) that BANA participated in a sex trafficking venture, and (2) that BANA obstructed law enforcement investigations into Epstein.

**1.  Participation in a sex-trafficking venture.**  Plaintiff alleges that BANA is liable for participation in a sex-trafficking venture under § 1595(a).  Because the statute specifies that a civil cause of action is available to "a victim of a violation of [§ 1591]," at the threshold, Plaintiff will have to show that she is a victim of sex trafficking.  In other words, "it is an element of each adult

class member's TVPA claims that they were caused to perform a commercial sex act by means of force, fraud, or coercion." *JPMC*, 2023 WL 3945773, at *9 n.8.

From there, this Court has held that a § 1595(a) civil participation claim "involves three elements: first, that the defendant participated in a commercial sex trafficking venture; second, that the defendant knew or should have known that the venture either involved the perpetrator's use of force, the threat of force, fraud, or coercion to cause the victims to participate in sex or that the venture involved sex with victims who were under the age of 18; and third, that the defendant benefited from its participation in the venture." *Bank of America*, 2026 WL 380385, at *8.

Having initially asserted five ways in which BANA supposedly participated in Epstein's sex-trafficking venture, FAC ¶¶ 210, 238, 287, 218, 326, Plaintiff now no longer claims BANA participated in this venture by providing her banking services. Mot. at 18 n.7 (the "fact that Jane Doe had an account at the Bank is not a basis for liability"). That leaves four theories:

    ***Epstein's accounts.*** Epstein and his related entities █████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

---

[3] Plaintiff has named only Bank of America, N.A. as a defendant. Plaintiff also served discovery requests on BANA's affiliates Merrill Lynch Pierce Fenner & Smith, Inc. ("Merrill Lynch"), and Bank of America Corporation. Merrill Lynch is a separate entity from BANA; it was not even an affiliate until BANA's ultimate parent, Bank of America Corporation, acquired Merrill Lynch's parent company in January 2009. Ex. 14. The knowledge and actions of Merrill Lynch employees, therefore, are presumptively *not* imputed to BANA. *See Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304, 317 (S.D.N.Y. 2011) ("[M]ere existence of a parent-subsidiary or affiliate relationship is not on its own sufficient to impute the scienter of the subsidiary to the parent or affiliate.").



*Ghislaine Maxwell's accounts.* ████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████

*Leon Black's accounts.*  Many of Plaintiff's allegations focus on longtime BANA customer

Leon Black, the former CEO of Apollo Global Management, Inc., a private equity firm.  The

Amended Complaint alleges that BANA "allowed Black to … knowingly facilitate the transfer of

finances for the commercial aspect of Epstein's commercial sex-trafficking venture."  FAC ¶ 242.

████████████████████████████████████████████████████████████

---

[4] GBAM provides investment banking and trading services to large corporations and institutions within Merrill Lynch. Ex. 15 at 29.  In 2018, GBAM was moved to BofAML Securities, Inc ("BofA Securities").  Ex. 16.  GWIM provides comprehensive wealth management solutions targeted to high net worth clients.  Ex. 15 at 29.  GWIM's services are provided through two businesses: Merrill Lynch Wealth Management and Bank of America Private Bank.  *Id.*

████████████████████████████████████████████████████████

████████████████████ Ex. 13 ¶ 23.  The legitimacy of Black's payments to Epstein was

the subject of an independent investigation by Dechert LLP on behalf of Apollo; Dechert

determined there was "no evidence that Black … was involved in any way with Epstein's criminal

activities at any time."  Ex. 17 at 2.  Dechert also concluded that Black regularly engaged Epstein

to advise him "on a variety of issues related to trust and estate planning, tax, philanthropy, and the

operation of the Family Office."  *Id.* at 3.  "Black believed, and witnesses generally agreed, that

Epstein provided advice that conferred more than $1 billion and as much as $2 billion or more in

value to Black" and "Black compensated Epstein for his work in amounts that were intended to be

proportional to the value provided by Epstein."  *Id.* at 3-4.  BANA anticipates being able to

substantiate the conclusions in the Dechert Memorandum with admissible evidence.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████

*MC2 accounts*.    Finally, Plaintiff alleges that BANA participated in Epstein's sex

trafficking venture by "maintain[ing] an operating account for MC2," a modeling agency financed

by Epstein that Plaintiff claims "was publicly known to have been used to lure, manipulate, groom,

and exploit young women."  FAC ¶¶ 6(h), 326.  ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[5] Plaintiff has identified one $4,500 check from MC2 to HBRK Associates—a company founded
by Epstein's long-time accountant, Richard Kahn.  FAC ¶ 333.

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████

**2. Obstruction**.  Plaintiff alleges that BANA obstructed the enforcement of the TVPRA in violation of § 1591(d).  To prevail, Plaintiff "must show that [BANA] (1) knew of an effort to enforce the TVPA and (2) intentionally obstructed or attempted to obstruct that enforcement effort."  *Bank of America*, 2026 WL 380385, at *13.  This Court found that the "only relevant TVPA enforcement effort … is the investigation in the Southern District of New York that resulted in Epstein's 2019 indictment," but the Amended Complaint "d[id] not plausibly allege that [BANA] knew about that investigation before it became public."  *Id.* at *13.  Therefore, the only question is whether BANA obstructed the investigation after "the intense publicity surrounding Epstein's indictment, arrest, and death."  *Id.*

**E.     Plaintiff's motion for class certification.**

Plaintiff seeks to certify a class of "[a]ll women who were sexually abused by Jeffrey Epstein or Epstein's co-conspirators during the time when Bank of America maintained bank accounts for Epstein, Epstein's co-conspirators, Epstein-related entities, and/or Epstein-related accounts" under Federal Rule of Civil Procedure 23(b).  Mot. at 1.

## ARGUMENT

To qualify for class certification, a plaintiff must prove that the putative class meets the four threshold requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy. *JPMorgan*, 2023 WL 3945773, at *2.  If a plaintiff satisfies the threshold requirements, she must also show, as relevant here, that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action [is] superior to other available methods for fairly and efficiently adjudicating the controversy."  *Id.* at

*7 (quoting Fed. R. Civ. P. 23(b)).

Rule 23 does not set forth a "mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Plaintiff bears the burden of proving that the requirements of Rule 23 are met by a "preponderance of the evidence." *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008).  Plaintiff has not met her burden.

**I.    Plaintiff's proposed class does not satisfy the requirements of Rule 23(a).**

Even if this Court were to assume, for purposes of class certification, that BANA participated in a single Epstein sex-trafficking venture (*but see infra* 23), Plaintiff would still fail to clear the threshold hurdles of Rule 23.

**A.    The class is not sufficiently numerous.**

Numerosity is satisfied when "the class is so numerous that joinder of all members is impracticable."  Rule 23(a)(1).  Numerosity is presumed when the proposed class contains 40 or more members.  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  "Case law holds that statutes of limitation should, in fact, be considered when calculating numerosity." *Clark v. State Farm Mut. Auto. Ins. Co.*, 245 F.R.D. 478, 482 (D. Colo. 2007)), *aff'd*, 590 F.3d 1134 (10th Cir. 2009); *see also Novella v. Westchester Cnty.*, 661 F.3d 128, 144 (2d Cir. 2011) ("[T]he question of whether the certified class was sufficiently large to satisfy Rule 23 hinges on whether the statute of limitations for each class member's claim began to run upon receipt of his first pension payment."); *Stinson v. City of New York*, 282 F.R.D. 360, 369 n.3 (S.D.N.Y. 2012) (Sweet, J.) ("Because of the three year statute of limitations applicable to [§ 1983], the applicable class period begins in May 2007.").  Here, the limitations period narrows the class to under 40.

**1.**  The TVPRA provides in relevant part that "[n]o action may be maintained … unless it is commenced not later than … 10 years after the cause of action arose."  18 U.S.C. § 1595(c)(1). In the TVPRA context, "each act of 'harboring' or each receipt of a benefit from the sex trafficking

venture is actionable" and "discrete," and thus, each TVPRA violation "starts a new clock for filing a lawsuit alleg[ing] that act." *Doe v. G6 Hospitality, LLC*, 2025 WL 1167550, at *5 (W.D. Wash. Apr. 22, 2025). Plaintiff ignores (at 3-4) the statute of limitations in favor of trying to sweep in the broadest class possible based on abuse that happened over nearly two decades. But Plaintiff filed this lawsuit on October 15, 2025. Claims based on trafficking that occurred prior to October 15, 2015 are untimely. ████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████ That is not sufficiently numerous.

No equitable principle will allow Plaintiff to sweep in a larger group of victims. Courts have rejected the discovery rule for TVPRA violations. *E.g.*, *C.C. v. Rashid*, 2025 WL 1785273, at *5 (D. Nev. June 26, 2025). Even assuming that TVPRA claims are subject to the continuing torts doctrine, *but see Doe*, 2025 WL 1167550, at *5 (declining to apply continuing tort doctrine to TVPRA claims), that still limits the class to individuals who suffered at least one act of trafficking within the limitations period—which is under 40. Finally, equitable estoppel will be unavailable. Plaintiff raised equitable estoppel arguments with respect to her facially time-barred negligence claims. *E.g.*, Dkt. No. 49 at 9, Dkt. No. 62 at 15. This Court rejected Plaintiff's equitable estoppel argument, holding that Plaintiff "can plead no set of facts supporting tolling." *Bank of America*, 2026 WL 380385, at *16.

**2.** Even setting aside the statute of limitations, any Epstein-related conduct here that could even plausibly serve as a basis for liability did not begin until 2012 when Black first made a payment to Epstein. ████████████████████████████████████████████

████████████████████████████████████████████████████████

To show participation in a sex-trafficking venture, this Court held that Plaintiff must prove

BANA's "active engagement" in the venture, which requires "provid[ing] more than its usual routine services." *Bank of America*, 2026 WL 380385, at *8. *But see infra* 23. BANA's pre-2012 conduct (even setting aside the statute of limitations, *supra* 13-14) does not come anywhere near that standard. *See JPMorgan*, 2023 WL 3945773, at *3 (noting that the Court "needed to consider (but not decide) various issues bearing on the viability of their claims"). ███████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

Nor could these investment accounts have been used to "'set in motion' Jeffrey Epstein's sex-trafficking venture[] by providing the cash that fueled it." *Deutsche Bank*, 671 F. Supp. 3d at 414; *supra* 5-6. ███████████████████████████████ *Supra* 10.

Plaintiff also points to Maxwell's pre-2012 accounts. *Supra* 10. But she has not articulated how Maxwell's accounts were used to fuel Epstein's sex-trafficking venture or how they relate to any putative class members.[6]

In sum, no evidence even remotely suggests BANA participated in a venture prior to 2012. That sharply limits the size of the putative class.

**3.** With respect to the obstruction claim, Plaintiff must show that BANA's "conduct *caused* harm to each class member." *JPMorgan*, 2023 WL 3945773, at *4 (emphasis in original). But

---

[6] ████████████████████████████████████████████████

this Court has recognized that the only viable period of time during which BANA could have possibly obstructed an investigation was after Epstein's indictment became public in July 2019.

████████████████████████████████████████████████████████████████████████

█████████ That class is not sufficiently numerous. *Consol. Rail Corp.*, 47 F.3d at 483.

**B.    Plaintiff's claims are not typical of the class she seeks to represent.**

"Rule 23(a)(3)'s typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993). This requirement "serve[s] as [a] guidepost[] for determining whether … maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Here, they are not.

Plaintiff's trafficking claim is atypical of the putative class in ways that undermine her ability to effectively represent absent class members. To state a viable civil claim under the TVPRA, Plaintiff must show that she was trafficked by proving (1) that she was "engage[d] in a commercial sex act" and (2) that "force, threats of force, fraud, [or] coercion" were used to "cause" her to do so. 18 U.S.C. § 1591(a)(2). At a minimum, Plaintiff faces significant challenges in her ability to satisfy her burden of proving both elements.

*First*, ██████████████████████████████████████████. She will therefore struggle to establish that she "engage[d] in a commercial sex act." *See Croft v. Dolan*, 2024 WL 4536309, at *3 (C.D. Cal. Sept. 27, 2024) (dismissing claim for failure to allege a "commercial sex act"), *aff'd*, 2025 WL 3720844 (9th Cir. Dec. 23, 2025). She attempts to paper this over (at 11), suggesting that Epstein gave her money, including cash. █████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████ *see also supra* 7.  Even if she later attempts to walk back this unequivocal testimony, that will create a distracting sideshow about the veracity of her claims.  Meanwhile, the many victims whose encounters with Epstein consisted of a straightforward cash-for-massage exchange would be disserved by this strain on the class representative's case.

*Second*, even if she can show, ████████████████████████ that she engaged in commercial sex, Plaintiff faces significant hurdles in establishing that she was caused to do so by force, fraud, or coercion.  █████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████.  None of this is consistent with force, fraud, or coercion.

Plaintiff also references (at 11) one rape and psychological and emotional abuse of, ███ ████████████████████████████████████████  As abhorrent as that behavior was, it is not tied to a "scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm or physical restraint," 18 U.S.C. § 1591(e)(2).  And again, it was not linked to a commercial sex act.

Plaintiff and her class certification expert further advance the argument that she was coerced by Epstein's manipulation and coercive control.  Mot. at 10-11; Mot. Ex. 2 ¶¶ 38, 74, 79, 82, 92.  She points (at 11) to her allegations that Epstein threatened to deprive her of "basic life necessities," such as "food, medical care, shelter, safety, and essential financial security."  ████████

██████████████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

Plaintiff's atypical experience means that she will need to "devote considerable time to rebut the unique defense" that she was not trafficked—a foundational requirement that will "become the focus of the litigation." *Gordon*, 92 F. Supp. 3d at 201. Other Epstein victims, like the many minors who received cash for massages, would not face the same obstacles of proof. *See JPMorgan*, 2023 WL 3945773, at *9; *supra* 4-6.

### C.    Plaintiff is an inadequate representative.

Plaintiff is also not an adequate class representative. This is, in part, because her experience is not typical of the class. *See Falcon*, 457 U.S. at 157 n.13 (typicality requirement "tend[s] to merge with the adequacy-of-representation requirement"). But the adequacy inquiry also serves to "uncover[] 'conflicts of interest between named parties and the class they seek to represent,'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (quoting *Amchem. Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997))—and Plaintiff's case is riddled with those.

Critically, Plaintiff has withdrawn her allegations concerning her main theory of coercion: that Epstein coerced Plaintiff by using her immigration status as a threat. Yet she continues to rely on immigration status as a form of coercion for *other* victims. *Infra* 21. She cannot represent absent class members on this issue.

She has further disclaimed BANA's liability associated with another theory of coercion—Epstein's control of her bank account. *Compare* Mot. 18 n.7 ("The fact that Doe had an account at the Bank is not a basis for liability."), *with* FAC ¶¶ 205, 233 (alleging that Epstein "controlled

18

[her] financially" and that "sex traffickers routinely open and/or control financial accounts in the names of their victims"). This too puts her at odds with absent class members who might wish to pursue liability based on their own banking relationships.

Moreover, Plaintiff faces serious credibility issues. She admitted that she has lied to the government. Ex. 20. And she has offered inconsistent stories about the nature of her abuse. *Supra* 7 n.2. Given the problematic and unique nature of her case, it is far from clear that Plaintiff will be able to "fairly and adequately protect the interests of the class." *In re MF Global Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 237 (S.D.N.Y. 2015).

## II.    The proposed class does not satisfy the requirements of Rule 23(b)(3).

Plaintiff therefore cannot get past Rule 23(a). But even if she could, her motion fails to satisfy the requirements of Rule 23(b)(3). Specifically, she cannot show that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). She also cannot show that a "class action [is] superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.*

### A.    Common questions of fact or law do not predominate.

Plaintiff must first show that common questions predominate over individual inquiries. "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 2 Newberg on Class Actions § 4:50 (5th ed. 2012)). "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than [those] subject only to individualized proof." *JPMorgan*, 2023 WL 3945773,

at *8 (citation omitted).  At bottom, the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623.

"An analysis of predominance must begin with the elements of the plaintiff's claims." *JPMorgan*, 2023 WL 3945773, at *8.  To prove her trafficking claim, Plaintiff must show (1) Jeffrey Epstein conducted a sex-trafficking venture that committed a violation of § 1591; (2) BANA participated in that venture; (3) Plaintiff's injury was caused by BANA's conduct; (4) BANA knew or should have known that the venture in which it participated committed a sex-trafficking violation; and (5) that BANA knowingly benefitted from its participation in the venture. §§ 1591(a)(2), 1595(a); *see also JPMorgan*, 2023 WL 3945773, at *8; Mot. at 16-21.  Many of these elements will involve individualized inquiries and proof that will overwhelm any commonalities.

**1.  Whether Epstein ran a sex-trafficking venture that used force, fraud, or coercion to cause victims to engage in commercial sex acts**.  The TVPRA does not apply to all sex crimes—only to those that it defines as sex trafficking.  Thus, "it is an element of each adult class member's TVPA claims that they were caused to perform a commercial sex act by means of force, fraud, or coercion."  *JPMorgan*, 2023 WL 3945773, at *9.

This Court has already found that "force and fraud likely would need to be provided on an individualized basis."  *Id.*  And while this Court stated that "[c]oercion … is more amenable to common proof," that was in the context of the named plaintiff's allegations that "Jeffrey Epstein recruited his victims with a common modus operandi": "lure young, vulnerable victims, bring the victim to his home, sexually abuse the victim during a massage, and then provide the victim with cash or something else of value."  *Id.*  Plaintiff says she plans (at 16) to rely on "testimony from victims and witnesses about the operation of Epstein's trafficking venture, documents from law

enforcement, documents released by the Department of Justice pursuant to the Epstein Files Transparency Act, and documents produced by the Epstein Estate regarding the venture." But those sources will likely detail the same cash-for-massages venture that was at issue in *JPMorgan*. Indeed, a 2019 memo released under the Epstein Files Transparency Act almost exclusively involves interviews with women who reported getting cash for massages. Mot. Ex. 24. But here, the claims do not involve a common modus operandi and Plaintiff's proffered proof of force, fraud, or coercion is different in kind.

Plaintiff's motion skims over the force, fraud, or coercion element. She says (at 17-18) that she will present "testimony of victims and witnesses … that show Epstein and his co-conspirators threatened the victims." But the example threats she cites are not the same, or even similar. One threat apparently relates to immigration status—a topic on which Plaintiff has withdrawn her allegations. *See* Mot. Ex. 21 (email from Epstein discussing whether there is a "way for us to file something that would revoke a tourist visa"). The second example relates to the confiscation of a passport. Mot. Ex. 22 at 56:19-57:2 (witness explaining he heard victim say "Sarah took her passport and her phone and gave it to Ghislaine Maxwell"). And the third relates to a threat of force after the commercial sex act was undertaken. Mot. Ex. 61 at 15 ("In or around July 2004, Defendant JEFFREY EPSTEIN told Jane Doe #7 that if she reported to anyone what had occurred at [his] home, bad things could happen to her."). Whether these, or any other threats, caused a person to engage in commercial sex is not capable of common proof. *See, e.g.*, *Francis v. APEX USA, Inc.*, 2021 WL 4487985, at *11 (W.D. Okla. Sept. 30, 2021) ("The fact that a particular employee was threatened with termination and/or deportation consequences does not create a class-wide inference that all employees were subject to similar threats or felt compelled to work as a result of any such threats."); *Lopez v. Marriott Int'l, Inc.*, 2026 WL 260433, at *6 (D.

Colo. Jan. 7, 2026) (similar).

Even if Plaintiff pivots to other forms of coercion, individual inquiries would still predominate. Plaintiff's examples of her own coercion (at 11) are deeply personal and highly individualized. Specifically, she alleges that Epstein "███████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████ Even assuming these incidents coerced her into having sex with Epstein, Plaintiff has not alleged that he followed a similar pattern with other women or that "a reasonable person of the same background and circumstances would have also felt coerced" to engage in commercial sex after receiving such treatment. *JPMorgan*, 2023 WL 3945773, at *9.

All this goes to a fundamental feature of the coercion Plaintiff alleges. She and her expert assert that Epstein exercised control over her through █████████████████████ Mot. at 10, Mot. Ex. 2 ¶ 38. ████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████

The reality is that Plaintiff was part of a small group of women who served as assistants to Epstein and acted like girlfriends. Their experiences of coercion were all different. █████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ █████████████████████████████ And even if *these* victims were coerced through common means, they still stand apart from the many, more typical Epstein victims subjected to cash-for-

massages coercion. At best, then, Plaintiff's experience of ███████████████ is representative of a coterie of women that does not meet Rule 23's numerosity requirement.[7]

     **2.  Whether Bank of America participated in a sex-trafficking venture that caused Plaintiff's injury**. To hold BANA liable for Epstein's trafficking, Plaintiff must show that BANA took "part or shar[ed] in an enterprise or undertaking" involving "risk[] and potential gain," i.e. a venture, "that violates [the TVPRA]." *Doe 1 v. Apple Inc.*, 96 F.4th 403, 406 (D.C. Cir. 2024); *see also G.G. v. Salesforce, Inc.*, 76 F.4th 544, 559 (7th Cir. 2023) (noting the "venture … must violate Section 1591, and not the participant").[8] This Court has construed the participation element to mean that Plaintiff must show that BANA provided "some level of active engagement … more than its usual routine services" that were then used for Epstein's sex trafficking. *Bank of America*, 2026 WL 380385, at *8. But unlike *JPMorgan*, Plaintiff does not allege a single coherent trafficking venture in which BANA participated, and Plaintiff's proof is not exclusively focused on what services BANA allegedly provided to Epstein himself that fueled his trafficking activities.

     To be sure, Plaintiff does suggest that her overall venture theory is that BANA grew Epstein's wealth in one form or another. Mot. at 18-19. Of course, growing someone's wealth through the provision of routine services is not a viable theory. *Bank of America*, 2026 WL 380385, at *8. But even if it were (*but see* Dkt. No. 39 at 19-20; Dkt. No. 49 at 5-6; Dkt. No. 62 at 7-9), upon inspection, Plaintiff's theory involves ventures with different customers during different times and tracing to Epstein in different ways.

███████████████████████████████████████████████
███████████

---

[8] BANA continues to maintain that Plaintiff's participation theories fail as a matter of law. *See Mueller v. Deutsche Bank*, 777 F. Supp. 3d 329, 339 (S.D.N.Y. 2025) (citing *Apple* and holding that a bank did not "participat[e] in a venture" with ISIS traffickers, as providing "financial services" to—and earning "higher fees" from—"ISIS-connected customers" did not mean the bank "shared in any common enterprise (and associate risk or profit) with them").

For example, Plaintiff alleges (at 18) that BANA participated in one Epstein venture by processing payments from Black to Epstein, which Epstein then used to partially fund his operations. She alleges (at 19) that BANA participated in another Epstein sex-trafficking venture by holding accounts for MC2, which allegedly were used to lure Eastern European women under "false promises of a future in the modeling industry" and "to pay Epstein's victims, through the ruse of a payroll system." FAC ¶¶ 329-30. And she alleges that, in a separate venture, Maxwell procured women for Epstein, even though she never links that to BANA's services. *Id.* ¶ 126. The same evidence and arguments will not suffice to establish liability for each.[9] And these stand apart from the theory of whether BANA participated in Epstein's sex-trafficking venture by banking him, where the focus will be on whether BANA provided special services to Epstein (it did not).

At class certification, different liability "theories must be analyzed separately" to ensure that each meets Rule 23's requirements. *In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527, 571 (S.D.N.Y. 2021). Indeed, the Second Circuit has directed district courts to "engage in a rigorous analysis of the plaintiffs' legal claims and factual circumstances in order to ensure that appropriate subclasses are identified, that each subclass is tied to one or more suitable representatives, and that each subclass satisfies Rule 23[]." *Marisol A. v. Giuliani*, 126 F.3d 372,

---

[9] Notably, Plaintiff cannot connect her facts to any of those theories— ███████████████████████

███████████████ *Supra* 10. Indeed, the only thing that connected her to BANA was her account. But she has now disclaimed that as a basis for liability. Her lack of connection to her own liability theories is yet another reason she is a poor class representative. The TVPRA provides that "a victim of a violation … may bring a civil action" against a participant in a venture that traffics her and "may recover damages and reasonable attorneys fees." § 1595(a). That creates a causation element. "[W]hen Congress creates a federal tort it adopts the background of general tort law." *Staub v. Proctor Hosp.*, 562 U.S. 411, 417 (2011). The default rule from general tort law is "but-for causation," *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 332 (2020), and "proximate causation," *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014). Plaintiff will be unable to establish the causation necessary to prove her claims.

377-38 (2d Cir. 1997). Plaintiff has not even attempted to establish that the Rule 23(a) threshold requirements are met with respect to each of her theories of liability. ██████████████

██████████████████████████████████████████

██████ were trafficked through the use of MC2's or Maxwell's Bank of America accounts. *Supra* 10-12. None of those subclasses are sufficiently numerous and Plaintiff has therefore not met her burden of satisfying the elements of 23(b)(3).

### B.    A class action is not a superior means of adjudicating the unique and personal claims of putative class members.

The plaintiff must also show that a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, it is not.

*First*, courts deny certification where class members "have a strong interest in individually controlling the prosecution of their own actions." *E.g.*, *Royal Park Invs. SA/NV v. Wells Fargo Bank, N.A.*, 2018 WL 739580, at *17 (S.D.N.Y. Jan. 10, 2018) (no superiority where "'several [plaintiffs] have already commenced their own lawsuits'"). While this Court previously found that the "intensely personal nature of the claims at stake [may] give class members an interest in class-wide adjudication," *JPMorgan*, 2023 WL 3945773, at *11, this is not the case where, as here, the named plaintiff cannot adequately represent their interests. *Supra* 18-19.

*Second*, a class action would be unmanageable. The key to this factor is whether proof at trial would require "'mini-trials' to resolve individual issues." *E.g.*, *S. Cal. IBEW-NECA Defined Contrib. Plan v. Bank of N.Y. Mellon Corp.*, 287 F.R.D. 216, 230 (S.D.N.Y. 2012). For the reasons discussed above, individualized issues—including whether a class member was trafficked and how she can trace her trafficking to BANA—would dominate any trial. *Supra* 20-24.

### CONCLUSION

For the foregoing reasons, this Court should deny Plaintiff's request to certify a class.

Respectfully submitted,

Dated: March 2, 2026

/s/ Charlotte H. Taylor

Bethany K. Biesenthal
Paula Quist
Shea F. Spreyer
Carol T. Li
JONES DAY
110 North Wacker Drive
Suite 4800
Chicago, IL 60606
(312) 782-3939

Charlotte H. Taylor
JONES DAY
51 Louisiana Ave, N.W.
Washington, D.C. 20001
(202) 879-3939
ctaylor@jonesday.com

Counsel for Bank of America, N.A.

26

## CERTIFICATE OF COMPLIANCE

I, Charlotte H. Taylor, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1(c) that the foregoing Memorandum of Law was prepared using Microsoft Word and complies with Rule 2(e) of this Court's Individual Rules and Local Civil Rule 7.1(c).

_/s/ Charlotte H. Taylor_
Charlotte H. Taylor