UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Jane Doe, individually and on behalf of all similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>Bank of America, N.A.,<br><br>　　　　　Defendant. | Case No. 25-cv-8520 (JSR) |

## DECLARATION OF PAULA S. QUIST

I, Paula S. Quist, declare under penalty of perjury that the following is true and correct:

1. I am a member in good standing of the bar of the State of Illinois and am admitted to practice before this Court *pro hac vice*. I am a partner at Jones Day and counsel to Defendant Bank of America, N.A. ("BANA") in the above-captioned action. I am over eighteen years old and have personal knowledge of the facts set forth in this Declaration.

2. I submit this declaration pursuant to the Court's February 13, 2026 Order to "file an affidavit of full compliance with its discovery obligations" in the above-captioned action. This declaration is also submitted to explain the efforts BANA has taken and continues to take to satisfy its ongoing discovery obligations pursuant to the Federal Rules of Civil Procedure and this Court's orders. As explained in detail below, BANA has worked and continues to work expeditiously to respond to plaintiff's voluminous discovery requests. BANA has complied with this Court's Orders and its discovery obligations under the Federal Rules of Civil Procedure, and BANA will continue to supplement its discovery responses consistent with the same.

## I. Substantial Completion Deadline and Compliance with Discovery Obligations

1. Plaintiff served her First Set of Requests for Production on October 20, 2025 (five (5) days after the Complaint was filed), which sought 48 different categories of documents. BANA timely served its written responses and objections on November 19, 2025.

2. On December 9, 2025, BANA provided plaintiff with a list of 19 custodians[1] and 168 search terms it would use to search for documents responsive to plaintiff's First Set of Requests for Production. BANA informed plaintiff that, given that plaintiff's claims relate only to Jeffrey Epstein's sex-trafficking venture, it would search for responsive documents from January 1, 2009 (date of Bank of America Corporation's acquisition of Merrill Lynch and related entities) to August 10, 2019 (the date of Epstein's death). In addition to those 19 custodians, BANA also identified three (3) custodians—investigators who were involved in potentially relevant anti-money laundering ("AML") investigations—for which it would search their custodial files for a more limited time period.[2]

3. Shortly thereafter, BANA collected custodial files for all 19 custodians.

---

[1] For the avoidance of doubt, the 19 custodians included both BANA and Merrill Lynch employees. Consistent with its representations to the Court and plaintiff, BANA collected potentially responsive custodial documents hitting on the search terms provided to plaintiff on December 9, 2025 for Merrill Lynch employees to the extent such documents were within BANA's possession, custody, and control and were maintained in the ordinary course of business.

[2] Upon further investigation, BANA learned two of the three identified investigators were not relevant to the issues in this case. As previewed to plaintiff, BANA intends to supplement its responses and objections to Plaintiff's First Set of Interrogatories to remove these individuals as persons with knowledge about the case and does not intend to offer them as custodians in this matter. The parties are still negotiating the scope and reasonable time period for the remaining investigator identified on December 9, 2025 given his limited relevance, if any, to the facts and issues in this case.

4. On December 22, 2025, following a hearing on BANA's Motion to Dismiss, the Court set the deadline for BANA's substantial completion of production of documents for February 9, 2026. BANA diligently and expeditiously worked to meet that deadline.

5. Prior to the substantial completion deadline, BANA made seven (7) productions of documents in response to plaintiff's First Set of Requests for Production, consisting of Jane Doe account opening documents and statements, ██████████████████████████ ██████████████ These productions totaled 299 documents and 2,606 pages.

6. On February 9, 2026, the date of substantial completion, BANA produced an additional 8,369 documents and 114,947 pages, including both custodial and non-custodial documents. Regarding its custodial production for the 19 above-mentioned custodians, BANA produced 5,460 documents and 18,828 pages. With respect to non-custodial documents, BANA produced 2,909 documents and 96,119 pages, including, but not limited to policies and procedures, account-related documents, and audio recordings from Jane Doe. Absent any claims of privilege, no responsive documents to plaintiff's First Set of Requests for Production were intentionally withheld.

7. On February 10, 2026, in furtherance to BANA's substantial completion production and in accordance with the Court's February 9, 2026 Order that allowed BANA to produce certain highly-sensitive, custodial documents under an "Attorneys' Eyes Only" designation, BANA produced an additional 1,035 documents, totaling 3,309 pages.

8. Prior to BANA's substantial completion deadline, plaintiff served a Second Set of Requests for Production (which sought another 66 categories of documents) and a Third Set of Requests for Production (which sought another 51 categories of documents) on January 6, 2026 and February 2, 2026, respectively. Altogether, plaintiff has now served 165 Requests for

Production on BANA, in addition to 18 Interrogatories, 345 Requests for Admissions, and two Rule 30(b)(6) Notices that contained over 70 topics and more if including subparts.

9. Given the significant number of discovery requests served by plaintiff and the late date on which these discovery requests were served, BANA repeatedly informed plaintiff that, while BANA would work to respond to plaintiff's extensive discovery requests as promptly as possible, it understood that its substantial completion deadline was limited solely to plaintiff's First Set of Requests for Production.[3] BANA's counsel reiterated that its substantial completion production would be limited to plaintiff's First Set of Requests for Production multiple times during meet and confers. Plaintiff did not object. In all, BANA complied with the Court's substantial completion deadline by producing 9,708 documents and 120,862 pages, subject to BANA's properly served objections and in compliance with BANA's interpretation of plaintiff's requests and the Court order allowing an "Attorneys' Eyes Only" designation for certain custodial documents that were produced the day after the substantial completion deadline. In accordance with the Court's February 13, 2026 Order, BANA has since confirmed that the above-discussed productions are within "full compliance with its discovery obligations," and to the extent BANA identifies additional responsive documents, BANA will promptly produce those documents in accordance with its ongoing discovery obligations.

---

[3] BANA timely served its responses and objections to plaintiff's Second Set of Requests for Production on February 5, 2026. The parties have engaged in numerous meet and confers on these Requests and BANA continues to encourage plaintiff to narrow and prioritize issues in light of the scheduling deadline. BANA will additionally serve its responses and objections to plaintiff's Third Set of Requests for Production on March 5, 2026. BANA previews to the Court that many of these Requests are duplicative, burdensome, and/or harassing.

## II. Additional Discovery Developments

10. Significant discovery developments have occurred since the Court set the substantial completion deadline of February 9, 2026, such that BANA is working to promptly supplement its custodial and non-custodial productions in accordance with the Court's subsequent rulings and BANA's discovery obligations pursuant to the Federal Rules of Civil Procedure.

11. On January 29, 2026, the Court—over BANA's objections—ordered that, "[w]ithin the various categories of documents enumerated by plaintiff's counsel (e.g., materials related to Congress, board and committee meeting minutes, anti-money-laundering materials, etc.), . . . Bank of America produce documents post-dating Epstein's death if those documents refer or relate to Bank of America's conduct in the period preceding Epstein's death." *See* 2026.01.29 Email. BANA interpreted the Court's Order to be limited to the four (4) categories plaintiff explicitly identified during the hearing. Accordingly, BANA promptly started collecting and reviewing potentially relevant documents that might fall within these four (4) non-custodial categories in order to produce documents to plaintiff as expeditiously as possible.

12. On January 30, 2026 (more than six (6) weeks after BANA provided a list of search terms to plaintiff), plaintiff asked that BANA run an additional 160 search terms. Given that many of those terms were unnecessarily broad and/or facially irrelevant, BANA repeatedly asked plaintiff to narrow the scope of the terms so the parties could engage in productive meet and confers. Despite BANA's repeated requests, plaintiff refused to narrow the scope of the terms or explain the relevance of these terms.

13. On February 3, 2026, at plaintiff's request, BANA agreed to add an additional custodian—an investigator with limited relevance to this matter—and informed plaintiff that, prior to his deposition (which was set for February 19, 2026), it would produce responsive documents

for the time period in which this witness conducted any investigations relevant to this matter. The investigator's custodial data was promptly collected, reviewed, and searched using the search terms that BANA provided to plaintiff on December 9, 2025, and the applicable time period was limited to the start and end dates of the potentially relevant investigations that this investigator was involved in. On February 13, 2026, BANA produced 166 custodial documents and 577 pages from this investigator's file. This production also contained additional responsive policies and procedures, AML files, and correspondence to/from certain members of Congress. Consistent with the Court's January 29, 2026 ruling, both the AML files and correspondence to/from Congress contained in this production included documents that post-dated Jeffrey Epstein's death that referred or related to BANA's conduct in the period preceding Epstein's death. In total, the February 13, 2026 production was 419 documents and 5,415 pages.

14. On February 13, 2026, plaintiff again applied to the Court to, among other things, (1) raise a purported issue with BANA's custodial productions to date—despite not previously addressing this issue with BANA prior to hearing; (2) revisit the January 29, 2016 Order; and (3) request that BANA run 150 additional search terms across all custodial files. As to the first application, plaintiff provided the Court with two examples of BANA's purported deficiencies: first, an early-in-time email from an employee who did not work at Merrill Lynch at the time the email was sent, and second, a 2017 email thread that was not within the custodian's file when collected in late 2025.[4] Following the hearing, the Court ordered BANA to "review the materials

---

[4] As stated above, BANA was not aware that plaintiff intended to raise this purported issue with the Court. Plaintiff did not provide BANA a copy of these two documents prior to the hearing and therefore, BANA was unable to meet and confer with plaintiff on this issue prior to the hearing. Plaintiff also did not send BANA the documents after the hearing, such that BANA's understanding of the above is based on the representations and descriptions plaintiff's counsel made about the documents during the hearing.

it has produced in response to plaintiff[']s discovery requests and, within ten business days, file an affidavit of full compliance with its discovery obligations." 2026.02.17 Minute Entry. BANA addressed its compliance with this Order and its ongoing discovery obligations related to its substantial completion productions in the Paragraphs above and further incorporates the below Paragraphs.

15. Regarding post-August 10, 2019 documents, on February 13, the Court ordered that BANA produce "documents post-dating Jeffrey Epstein[']s death but referring or relating to Bank of America's conduct prior to Epstein[']s death applies to all categories of such documents." *Id.* As to search terms, the parties were ordered to meet and confer and, if any disputes remained, to submit the search terms to the Court no later than midnight on February 13, 2026. *See id.* Through negotiations with plaintiff, BANA agreed to add certain additional search terms but the parties were at an impasse as to 101 search terms—many of which were due to plaintiff's refusal to inform BANA of the purported relevance to the claims and defenses in this matter. On February 14, 2026, the Court ordered that BANA "promptly" run 35 additional search terms across the custodial files. *See* 2026.02.14 Email. BANA is diligently working to produce any additional custodial documents, and continues to makes productions on a rolling basis, to the extent such documents exist and are responsive to plaintiff's discovery requests.

16. During the February 13, 2026 hearing, BANA represented to the Court that it would search for pre-August 10, 2019 custodial documents and communications related to Ghislaine Maxwell. In accordance with its representation to the Court, BANA ran Maxwell-related search term across all 19 custodial files and has not identified any responsive pre-August 10, 2019 communications. To the extent BANA identifies additional responsive documents, BANA will promptly produce those documents in accordance with its ongoing discovery obligations.

17. On February 13, 2026, the Court further allowed plaintiff to "serve third-party subpoenas on Bank of America Corporation and Merrill Lynch, returnable within seven days." 2026.02.17 Docket Entry. On February 15, 2026, plaintiff served Federal Rule of Civil Procedure Rule 45 subpoenas on Bank of America Corporation ("BAC") and Merrill Lynch, Pierce, Fenner & Smith Incorporated ("MLPFS"), with the return date of February 23, 2026 at 5:00 pm ET.[5] In accordance with its representations to the Court and plaintiff, BANA reiterates that it has not withheld responsive documents within the Relevant Time Period of January 1, 2009 – August 10, 2019 on the basis of corporate separation. BANA does, however, maintain its objection that BAC and MLPFS are not parties to this lawsuit, and therefore, any accounts held by these entities are not grounds for recovery.

18. In an effort to produce documents prior to the above-discussed investigator's deposition, on February 17, 2026, BANA produced an additional 62 documents and 209 pages for an agreed-to expanded time period that applied all search terms—inclusive of those ordered by the Court three (3) days prior. On February 18, 2026, plaintiff brought five (5) additional applications to the Court seeking, among other things, (1) corrections related to the metadata for redacted documents; (2) documents regarding "automated suspicious monitoring system"; and (3) account opening and closing documents related to certain allegedly relevant individuals. Subsequently, the Court ordered that BANA: (1) correct redaction-related ESI metadata by February 23, 2026; (2) ensure all documents and communications that are responsive to plaintiff's Request for Production No. 34 were produced as part of its "double checking"; and (3) promptly produce certain account opening and closing documents for certain allegedly relevant individuals. *See* 2026.02.18 Email. In response to the Court's order, later on February 18, 2026, BANA produced corrected ESI

---

[5] Counsel for BANA accepted service of these subpoenas on February 16, 2026.

metadata related to redacted documents. BANA is also promptly working to produce the additional court-ordered documents, to the extent they exist and are maintained in the ordinary course of business.

19. On February 20, 2026 and in accordance with the Court's February 13, 2026 ruling relating to documents post-August 10, 2019 regarding or relating to BANA's conduct preceding Jeffrey Epstein's death, BANA re-produced to plaintiff documents provided to a government agency. This production contained 15,299 documents and 50,497 pages.

20. On February 20, 2026, plaintiff brought five (5) additional applications to the Court, seeking (1) discovery concerning Leon Black and associated individuals; (2) documents concerning Jane Doe's account activity; (3) clarification on the Court's post-August 10, 2019 Order; (4) information regarding an alleged centralized negative news database; and (5) additional documents related to "Epstein-related entities"—a term that the Court previously struck due to it being overly broad. Subsequently, the Court ordered that BANA: (1) promptly produce the summary revenue document related to Leon Black; (2) re-review documents within BANA's possession related to Jane Doe and incorporate such findings into its certification; and (3) identify whether BANA hosted a centralized source of negative news for clients. *See* 2026.02.20 Email.

21. On February 23, 2026, BANA produced an employee's personnel file prior to his deposition on February 26, 2026. For the avoidance of doubt, this personnel file (as well as any other personnel file that has been or will be produced in this matter) was retrieved from BANA's third-party vendor that houses all employment files and in accordance with the same processes that BANA would have taken if it had received a third-party subpoena on this issue. BANA made this representation to both the Court and plaintiff.

22. In compliance with the Federal Rule of Civil Procedure 45 subpoenas, on February 23, 2026, counsel for BANA—also now serving as counsel for BAC and MLPFS in connection with the third party subpoenas—served responses and objections to the subpoenas. In response to the subpoenas, the responding parties agreed to produce responsive custodial documents hitting on the search terms for one additional custodian. BAC and MLPFS are diligently working to collect, review, and produce responsive documents in accordance with its above agreement.

23. On February 24, 2026, plaintiff brought an additional three (3) applications to the Court requesting (1) that BANA produce additional documents related to an employee's personnel file; (2) a date certain for productions from BAC and MLPFS—two entities that are not parties to this lawsuit but agreed to produce responsive documents for one custodian; and (3) that the Court revisit its prior rulings related to BSA-related redactions. Subsequently, the Court ordered that (1) to the extent plaintiff seeks further information on the employee's personnel file, plaintiff can question the witness during his deposition and/or the Bank's Rule 30(b)(6) deponent; (2) productions in response to the third-party subpoenas be made by March 6, 2026; and (3) BANA remove the BSA-redactions with respect to one of the challenged documents.

24. On February 25, 2026 and in accordance with the Court's February 20, 2026 Order, BANA confirmed to plaintiff that based on a reasonable and diligent investigation, it does not maintain in the ordinary course of business a centralized system of record that would capture all "negative news" on any prospective or current BANA customer during the Relevant Time Period of January 1, 2009 to August 10, 2019. Rather, BANA represented to plaintiff that, during the Relevant Time Period, certain employees had access to certain news sources hosted by various third party vendors.

25. On February 26, 2026 and in accordance with the Court's prior rulings identified above, BANA produced an additional 86 documents and 3,467 pages. This production consisted of (1) account opening and closing documents for certain allegedly relevant individuals; (2) a revenue summary document related to Leon Black; (3) an additional personnel file; (4) responsive custodial data that hit on the new search terms, as well as additional custodial data from BANA's QC and privilege checks; and (5) miscellaneous documents responsive to plaintiff's discovery requests. Additionally, on February 26, 2026, BANA served an overlay production removing or modifying certain custodial data, including removing the BSA-redactions of certain individuals and/or entities as ordered by the Court on February 25, 2026.

26. On February 27, 2026, plaintiff brought two (2) additional applications to the Court, seeking (1) extended instant message chat histories and (2) a list of non-custodial sources that BANA has searched. Subsequently, the Court ordered that BANA: (1) produce instant messages and chat histories in the 24-hour increments and (2) promptly produce to plaintiff a list of the non-custodial sources it has searched for discovery materials. *See* 2026.02.27 Email. The Court also that the parties produce privilege logs on March 9, 2026. *See id.*

27. On March 2, 2026, in accordance with the Court's prior rulings and prior to filing this affidavit, BANA produced 137 documents and 2,686 pages. This production contained (1) documents perceived to be responsive to Request for Production No. 34—as ordered by the Court; (2) policies and procedures; (3) a personnel file for an upcoming deponent; and (4) additional non-custodial documents, such as OCC and BSA-related documents.

28. Regarding the Court's February 20, 2026 Order to incorporate information in this declaration related to Jane Doe's accounts and activity, BANA had previously produced the following documents related to Jane Doe: (1) account opening documents, (2) account statements,

and (3) audio complaint recordings. Following the Court's February 20, 2026 Order, BANA performed a reasonable and diligent investigation to obtain additional information related to plaintiff's accounts. BANA has advised that it does not maintain in the ordinary course of business IP address data dating back to the Relevant Time Period of January 1, 2009 – August 10, 2019, and therefore, there are no documents to produce in response to plaintiff's request. Additionally, based on a reasonable and diligent investigation and subsequent information learned from BANA, on March 2, 2026, BANA also produced the following documents regarding Jane Doe's account during the Relevant Time Period: (1) challenge questions; (2) password history; (3) online ID information; (4) party ID contact information; and (5) complaint data. The first three categories of Jane Doe account data were available only for a limited time period and in some incidences, the data was encrypted. To the extent BANA identifies additional responsive documents relating to Jane Doe's accounts and activity, BANA will promptly produce those documents in accordance with its ongoing discovery obligations.

29. In sum, BANA has made 15 productions and produced a total of 24,710 documents and 180,410 pages. Since the substantial completion deadline on February 9, 2026, the Court has subsequently ordered the production of the following additional information and responsive documents, to the extent they exist:

    a. All post-August 10, 2019 documents related to or regarding BANA's conduct preceding Jeffrey's Epstein death;

    a. Documents hitting on 35 additional search terms;

    b. Whether a centralized negative news database exists;

    c. Corrected metadata for redacted documents;

    d. Documents and communications regarding BANA's "automated transaction monitoring";

    e. Pre-2009 documents related to Ghislaine Maxwell;

    f. Account opening and closing statements for five (5) additional individuals;

    g. Unredacted document that previously contained BSA-related redactions;

    h. Revenue summary document for Leon Black;

    i. Instant message chat histories in 24-hour increments;

    j. List of non-custodial sources BANA has searched; and

    k. Privilege log by March 9, 2026.

30. Accordingly, BANA is currently in the process of re-collecting and re-reviewing custodial documents that hit on the additional search terms ordered on February 14, 2026, as well as identifying any additional responsive documents with respect to the above-referenced recent Court orders. BANA is diligently working to produce documents on a rolling basis.

31. BANA reiterates that it is not withholding responsive documents absent a claim of privilege and, to the extent additional responsive documents are identified, BANA will promptly produce in accordance with its discovery obligations pursuant to Rule 26(e) of the Federal Rules of Civil Procedure.

32. Upon request of the Court, I can provide a supplemental declaration regarding the status of BANA's custodial and non-custodial documents after the close of discovery on March 16, 2026.

|  |  |
|---|---|
| Dated: March 2, 2026 | Respectfully submitted, |
|  | */s/ Paula S. Quist* |
|  | Paula S. Quist |
|  | *Counsel for Bank of America, N.A.* |