UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>        v.<br><br>BANK OF AMERICA, N.A.,<br><br>    Defendant. | Case No. 25-cv-8520 (JSR) |

**PLAINTIFF JANE DOE'S REPLY BRIEF
IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**

A. The Class Is Sufficiently Numerous. ........................................................................... 1
B. Plaintiff's Claims Are Typical of Other Class Members. ............................................ 4
C. Plaintiff Will Adequately Represent the Class. ........................................................... 7
D. Common Questions of Law and Fact Predominate for Plaintiff's TVPA Claims ....... 7
E. A Class Action Is Superior to Individual Lawsuits. .................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Bruce v. Christian*,
   113 F.R.D. 554 (S.D.N.Y. 1986) .................................................................................................. 2

*Chalmers v. City of New York*,
   2022 WL 4330119 (S.D.N.Y. Sept. 19, 2022) ............................................................................ 8

*Clark v. State Farm Mut. Auto. Ins. Co.*,
   245 F.R.D. 478 (D. Colo. 2007) .................................................................................................. 2

*Croft v. Dolan*,
   2024 WL 4536309 (C.D. Cal. Sept. 17, 2024) ............................................................................ 6

*Doe 1 v. JPMorgan Chase Bank, N.A.*,
   2023 WL 3945773 (S.D.N.Y. June 12, 2023) ................................................................... passim

*Doe 3 v. Indyke*,
   801 F. Supp. 3d 200 (S.D.N.Y. 2025) ............................................................................. 2, 4, 5, 9

*Doe v. Bank of America, N.A.*,
   2026 WL 380385 (S.D.N.Y. Feb. 11, 2026) ...................................................................... 4, 6, 9

*Gordon v. Sonar Cap. Mgmt. LLC*,
   92 F. Supp. 3d 193 (S.D.N.Y. 2015) .......................................................................................... 6

*Guadagna v. Zucker*,
   332 F.R.D. 86 (E.D.N.Y. 2019) .................................................................................................. 2

*Hongxia Wang v. Enlander*,
   2018 WL 1276854 (S.D.N.Y. Mar. 6, 2018) .............................................................................. 2

*J.G. v. Northbrook Indus., Inc.*,
   2024 WL 4513034 (N.D. Ga. Aug. 16, 2024) .......................................................................... 10

*Martinenko v. 212 Steakhouse, Inc.*,
   2024 WL 4275286 (S.D.N.Y. Sept. 24, 2024) ............................................................................ 3

*Novella v. Westchester Cnty.*,
   661 F.3d 128 (2d Cir. 2011) ........................................................................................................ 2

*Odom v. Hazen Transp., Inc.*,
   275 F.R.D. 400 (W.D.N.Y. 2011) ............................................................................................... 3

*Paguirigan v. Prompt Nursing Emp. Agency LLC*,
   2018 WL 4347799 (E.D.N.Y. Sept. 12, 2018) ........................................................................... 8

*Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co.*,
   277 F.R.D. 97 (S.D.N.Y. 2011) .................................................................................................. 7

*Restrepo v. Monte's Trattoria, Ltd.*,
   2025 WL 753953 (S.D.N.Y. Mar. 7, 2025) ................................................................................ 3

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993) ........................................................................................................ 4

*Stadium Cap. LLC v. Co-Diagnostics, Inc.*,
  2026 WL 100576 (S.D.N.Y. Jan. 14, 2026) ................................................................. 3

*Stinson v. City of New York*,
  282 F.R.D. 360 (S.D.N.Y. 2012) ................................................................................. 2

*United States v. Abrams*,
  543 F. Supp. 1184 (S.D.N.Y. 1982) ............................................................................ 4

*United States v. Gray*,
  642 F.3d 371 (2d Cir. 2011) ........................................................................................ 4

*Williams v. KuCoin*,
  2021 WL 5316013 (S.D.N.Y. Oct. 21, 2021) .............................................................. 3

*Yeend v. Akima Global Servs., LLC*,
  2025 WL 959968 (N.D.N.Y. Mar. 31, 2025) ............................................................... 9

**Statutes**

18 U.S.C. § 1591 ................................................................................................................ 5
18 U.S.C. § 1595 ................................................................................................................ 4

**Other Authorities**

Benjamin Weiser, Matthew Goldstein, & Mike Baker, *Why the Epstein Investigations Took So Long and Did So Little*, N.Y. TIMES (Mar. 1, 2026),
  https://www.nytimes.com/2026/03/01/us/epstein-justice-department-investigations.html ...... 10

Despite the millions of pages released by the Department of Justice, including "torture" videos and child pornography, exposing Jeffrey Epstein and his co-conspirators' multi-decade sex-trafficking operation, Ex. 67; Ex. 68, Bank of America, N.A. ("BOA" or the "Bank") in its opposition to class certification somehow finds it appropriate to argue that Plaintiff Jane Doe ("Plaintiff" or "Doe") was ██████████████████████████████ ██████████████████ ECF No. 84 ("Opp.") at 2, 17. Leaving aside the questionable relevance of this dubious argument, the fact is that nothing about Epstein's sex-trafficking venture was ██████████████████████████████████████████████████ *See, e.g.*, Ex. 69 at 323:9–16 (██████████████████████████████████████████████ ██████████████████████████████████████████████████ ██). While BOA would no doubt like to erase the fact that it provided the financial infrastructure to help fuel and conceal the venture, it cannot avoid its conduct by victim-blaming or minimizing Epstein's crimes. In any event, BOA's many merits arguments suffer two fatal flaws—they rely on disputed factual assertions, and they will be decided by common evidence. Nothing in BOA's opposition changes the fact that Plaintiff has satisfied the requirements for class certification under Rule 23(a) and (b) because the claims present common issues of liability that will rise or fall based on evidence common to the proposed class.

A.   **The Class Is Sufficiently Numerous.**

Plaintiff's opening brief identifies multiple sources demonstrating the existence of "hundreds" of potential class members, easily satisfying Rule 23(a)'s numerosity requirement. *See* ECF No. 75 ("Mot.") at 2–4. BOA concedes this requirement by submitting a spreadsheet showing that ██████████████████████████████████████████████████ ██████████████████ BOA Ex. 2 at App'x A. Those claims were submitted nearly three years ago, and many additional victims have come forward since, particularly due to the recent Department of

1

Justice releases and Plaintiff's attorneys' representation of other Epstein victims. *See, e.g.*, *Ward v. Indyke, et al.* (Case No. 24-cv-01204 (S.D.N.Y.)); *see also* Ex. 2 at ¶¶ 48, 81 (sex-trafficking victims often wait years to disclose that they are victims). Moreover, participation in the JP Morgan and Deutsche Bank settlement was voluntary and therefore "understate[s] the class's numerosity." *Doe 1 v. JPMorgan Chase Bank, N.A.*, 2023 WL 3945773, at *2 n.3 (S.D.N.Y. June 12, 2023).

BOA attempts to reduce numerosity by reducing the duration of the class. The attempt to begin the class in 2015 based on the statute of limitations fails because the continuing tort doctrine and equitable tolling apply to TVPA claims. *See Hongxia Wang v. Enlander*, 2018 WL 1276854, at *3–4 (S.D.N.Y. Mar. 6, 2018); *Doe 3 v. Indyke*, 801 F. Supp. 3d 200, 208 (S.D.N.Y. 2025) (applying continuing tort doctrine to TVPA claims brought by an Epstein victim, noting such claims accrue "on the last date the wrongful conduct occurs").[1] "[T]he relevant question is not how many proposed class members possess *viable* claims, but rather whether the number of potential plaintiffs with analogous claims is sufficiently large that it would be unduly burdensome to make each individually join the lawsuit." *Guadagna v. Zucker*, 332 F.R.D. 86, 93 (E.D.N.Y. 2019) (emphasis in original); *see also Bruce v. Christian*, 113 F.R.D. 554, 557 (S.D.N.Y. 1986).

BOA's attempt to begin the class in 2012 because that was "when Black first made a payment to Epstein" (Opp. at 14) fails because of the other factual bases for liability. BOA argues that pre-2012 Merrill Lynch ("ML") was a "████████████" with limited activity. Opp. at 9–

---

[1] *Clark v. State Farm Mut. Auto. Ins. Co.*, 245 F.R.D. 478, 482 (D. Colo. 2007), *Novella v. Westchester Cnty.*, 661 F.3d 128, 144 (2d Cir. 2011), and *Stinson v. City of New York*, 282 F.R.D. 360, 374 (S.D.N.Y. 2012) are inapposite. None of these cases involve TVPA claims or tolling principles, and *Stinson* did not involve a numerosity inquiry. *Novella*, an ERISA action, recognized that the continuing violation doctrine applies where "separate violations of the same type, or character, are repeated over time." *Novella*, 661 F.3d at 146. For Plaintiff and other class members, that is precisely the case here.

2

10 & n.3. The facts are otherwise.[2]

Moreover, and independently dispositive, Plaintiff's attorneys are aware of at least 60 women who were victimized by Epstein between 2012 and 2019, 47 of which reported being victimized between 2015 and 2019. Ex. 75 at ¶ 2. Even under BOA's incorrect estimate of ▉ ▉ class members, numerosity would be satisfied. *See, e.g., Odom v. Hazen Transp., Inc.*, 275 F.R.D. 400, 407 (W.D.N.Y. 2011) (16 class members); *Martinenko v. 212 Steakhouse, Inc.*, 2024 WL 4275286, at *4 (S.D.N.Y. Sept. 24, 2024) (24 class members); *Restrepo v. Monte's Trattoria, Ltd.*, 2025 WL 753953, at *1 (S.D.N.Y. Mar. 7, 2025) (30 class members). Certification is appropriate here for judicial economy, due to the geographic dispersion and limited financial resources of the putative class members, and due to the inability to file individual suits. *Williams v. KuCoin*, 2021 WL 5316013, at *10–11 (S.D.N.Y. Oct. 21, 2021) (certifying class in the "gray area" of potentially 26 individuals due to geographic dispersion). Since a class beginning in 2012, or even 2015, would satisfy the numerosity requirement, whether the class should be so limited

---

[2] ▉▉▉▉▉ Ex. 70. BOA's own Rule 30(b)(6) witness testified that ▉▉▉▉▉▉▉ Ex. 71 at 19:25–20:11; 151:4–153:14; 154:6–20; 160:24–161:11; *see also* Ex. 72 at 42:6–12; 323:8–23; Ex. 73 at ¶ 3. In fact, ▉▉▉ Ex. 74 (JG-BOA 0000452) at 0461, 0463. ▉▉▉, BOA both controlled and was at all times aware of ML's provision of non-routine services and compliance failures concerning Epstein's accounts. *See Stadium Cap. LLC v. Co-Diagnostics, Inc.*, 2026 WL 100576, at *5 (S.D.N.Y. Jan. 14, 2026) (explaining that scienter is a "complex inquiry" "seldom appropriate for resolution" prior to trial). BOA's argument based on its characterization of BOA's Maxwell and MC2 accounts inappropriately asks the Court to resolve disputed issues of fact without a hearing or trial.

3

need not be decided at this time. *See JPMorgan Chase Bank*, 2023 WL 3945773, at *10. [3]

B.  **Plaintiff's Claims Are Typical of Other Class Members.**

Plaintiff's claims are typical because "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *JPMorgan Chase Bank*, 2023 WL 3945773, at *5; *see also Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993) (the typicality requirement is usually met "irrespective of minor variations in the fact patterns underlying individual claims").

BOA argues that Plaintiff's claims are atypical because she supposedly . Opp. at 3, 7, 16. This argument is baseless because it is contradicted by her actual testimony, because cash is not the only basis for commercial sex, and because the commercial sex act element of the TVPA does not require that a victim subjectively believe that she exchanged sex for money. *See Doe 3*, 801 F. Supp. 3d at 207 (rejecting identical argument because "[n]othing in the caselaw, nor the statutory text, suggests that the victim's subjective view of *what* she was paid for is dispositive") (emphasis in original); Ex. 69 at 79:25–80:3 (

---

[3] BOA's argument that the obstruction claim is limited to those abused after Epstein's indictment became public in July 2019 (Opp. at 15–16) misreads the Court's ruling. As the Court explained, § 1595 recognizes as "victims" not just the government, but anyone "who suffered harm because the government's enforcement efforts were hindered." *Doe v. Bank of America, N.A.*, 2026 WL 380385, at *13 (S.D.N.Y. Feb. 11, 2026). Because BOA's failure to timely file SARs delayed justice for every victim, the class includes all those harmed by the obstruction, not just those who reported abuse after July 2019. Plaintiff respectfully submits that Section 1591(d) does not require knowledge of a specific investigation, and indeed never refers to an "investigation" as opposed to the broader term "enforcement." *See also United States v. Gray*, 642 F.3d 371, 378 (2d Cir. 2011) (rejecting similar argument under 18 U.S.C. § 1519 because "knowledge of a pending federal investigation or proceeding is not an element of the obstruction crime"); *United States v. Abrams*, 543 F. Supp. 1184, 1187–88 (S.D.N.Y. 1982) (holding similarly as to 18 U.S.C. § 1510). In any event, documents published for the first time after the filing of Plaintiff's Amended Complaint, including those concerning years-long investigations by the Drug Enforcement Agency (Ex. 83) and additional information concerning the DOJ investigation that eventually resulted in Epstein's arrest, show that BOA was likely aware of enforcement efforts well before 2019.

4

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓).[4] Indeed, as Judge Subramanian reasoned, "[a] sex-trafficker may tell a victim that payments are being made for something other than sex, and the victim might in the moment believe him. But the truth might be that the payments were in fact for the victim's compliance with the abuser's sexual wishes." *See Doe 3*, 801 F. Supp. 3d at 207.

Moreover, while BOA claims that Plaintiff "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" (Opp. at 16), Epstein paid his victims in a variety of ways, *see* Ex. 76 at ¶¶ 2, 6, and the TVPA does not require victims to have been paid in cash. 18 U.S.C. § 1591(e)(3) ("The term 'commercial sex act' means any sex act, on account of which ***anything of value*** is given to or received by any person.") (emphasis added); *see also Doe 3*, 801 F. Supp. 3d at 207 (collecting cases); *JPMorgan Chase Bank*, 2023 WL 3945773, at *9 (recognizing Epstein's common *modus operandi* of providing victims "with cash or ***something else of value***") (emphasis added). Here, Plaintiff's ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ satisfy the TVPA's requirements, and is consistent with how Epstein paid other class members. Ex. 69 at 47:16–23; 48:22–25; 49:22–50:11; 107:8–18; 181:7–182:2; BOA Ex. 3 at 59:9–19; Ex 76 at ¶¶ 2, 6.[5]

BOA also argues that Plaintiff's claims are atypical by claiming she was not caused to engage in commercial sex by force, fraud, or coercion. Opp. at 17. BOA's characterization of Epstein's abuse as ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ is insulting and flatly contradicted by the record. As Plaintiff testified, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[4] The fact that Epstein victims in other cases testified similarly supports that Plaintiff's claims are typical. *Doe 3*, 801 F. Supp. 3d at 207 ("Doe admits that . . . she didn't understand that the money Epstein gave her was in exchange for sex.").

[5] Contrary to BOA's suggestion (Opp. at 17), Epstein's sex-trafficking operation was not limited to a "cash-for-massage exchange," it was a far broader "pyramid scheme of sexual exploitation" as the DOJ noted. Ex. 82 at 2.

██████████████████████████████████████████████████████████████████ Ex. 69 at 57:18–58:18; 62:2–4; 167:7–9; 170:1–17; 187:4–8; 222:14–17; *see also* BOA Ex. 7 at JDoe0004916. ██████████████████████████████████████████████ Ex. 69 at 334:1–9; 364:13–15. ███████████████████████████████████████████ *Id.* at 322:12–325:3; *see also* BOA Ex. 7 at JDoe0004919–20. ████████████████████████ ███████████████████████████████████████████████████████████████ BOA Ex. 3 at 59:9–16; Ex. 69 at 322:12–324:12; 329:16–330:13; 331:3-333:18; 345:25-346:18; BOA Ex. 7 at JDoe0004920 (Plaintiff ████████████████████████). This is consistent with the type of force, fraud, or coercion that Epstein used against all class members. Mot. at 9–10; Ex 76 at ¶¶ 3, 5–7. Indeed, Virginia Giuffre, one of the most widely known Epstein survivors, was trafficked for years. During some of those years, she had an apartment and a boyfriend, even while Epstein and others continued to abuse her. Ex. 77 at 182:17–22; 184:16–185:13. Apparent freedoms like these do not negate the invisible handcuffs of sex trafficking. BOA Ex. 7 at JDoe0004923 (████████████████████████████); Ex 76 at ¶ 7; *see also* Ex. 2 at ¶¶ 48, 78 (explaining that sex trafficking is often hidden in plain sight).[6]

---

[6] BOA's cases are easily distinguishable. In *Croft v. Dolan*, 2024 WL 4536309, at *3–6 (C.D. Cal. Sept. 17, 2024), the plaintiff repeatedly failed to allege that the third-party agency had the requisite knowledge that the abuser was using force or coercion. Here, by contrast, the Court has already determined that Plaintiff plausibly alleged such knowledge. *Doe*, 2026 WL 380385, at *10–11. In *Gordon v. Sonar Cap. Mgmt. LLC*, 92 F. Supp. 3d 193, 201–02, 205 (S.D.N.Y. 2015) (Rakoff, J.), the Court found typicality was not satisfied on the unique defense of "netting of gains and losses" in the securities fraud context. Notably, when the Court analyzed whether to certify a similar class of TVPA claimants against JP Morgan, it granted the motion and found typicality satisfied. *JPMorgan Chase Bank*, 2023 WL 3945773, at *6.

6

C.   **Plaintiff Will Adequately Represent the Class.**

BOA's baseless attempts to attack Plaintiff's credibility fail to demonstrate why Doe, a survivor of abuse at the hands of the same man who victimized and abused all other putative class members, is an inadequate class representative. At her deposition, Plaintiff testified that ███ ███ Ex. 69 at 329:16–330:13. That BOA did not specifically ask ███ does not contradict a statement in her EVCP claim form that she did. BOA Ex. 7 at 20.

Similarly, ███ (BOA Ex. 20) that Plaintiff made a false statement while under the threat of the very coercion underlying her TVPA claims does not make Plaintiff inadequate. Ex. 69 at 292:5–7 (███); BOA Ex. 7 at JDoe0004920; BOA Ex. 4 at ¶¶ 3–4 (███); Ex 76 at ¶ 5 (███ ███) see also Ex. 2 at ¶ 81. Counsel's withdrawal of certain allegations also does not detract from Doe's adequacy because the core theory of the case remains the same: with BOA's participation, Epstein controlled his victims' lives by forcing them to rely on him for basic necessities and by leveraging opportunities—whether education, career advancement, or other benefits—to coerce victims to submit to his sexual abuse and force their silence. Mot. at 9–10; *see also* Ex. 2 at ¶ 81. Plaintiff adequately represents the class because all claims arise from the same overarching legal theory that BOA facilitated the sex trafficking.

D.   **Common Questions of Law and Fact Predominate for Plaintiff's TVPA Claims.**

Common questions of law and fact predominate here. "[P]redominance does not require a plaintiff to show that there are no individual issues." *Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co.*, 277 F.R.D. 97, 111 (S.D.N.Y. 2011) (Rakoff, J.). This requirement calls "only for predominance, not exclusivity, of common questions." *Chalmers v. City of New York*, 2022 WL

7

4330119, at *17 (S.D.N.Y. Sept. 19, 2022). There are numerous common issues. Mot. at 5–6. None of the issues BOA raises will predominate here.

*__Sex-Trafficking.__* Plaintiff clearly asserts that Epstein's *modus operandi* was the same for each victim: Epstein or his co-conspirators lured young, vulnerable victims in with promises of money, opportunities, or access to powerful individuals, sexually abused the victims, often during a "massage," and then provided the victim with cash or something else of value. *See* Mot. at 9–10. Epstein also ensured his victims were beholden to him by forcing them to rely on him for basic necessities such as housing, food, education, or clothing. *Id.* at 10. "Whether he in fact used this pattern, and whether it would make a reasonable person (characterized by the youth and relative financial deprivation that was typical of Epstein's victims) feel coerced, are issues capable of common proof." *JPMorgan Chase Bank*, 2023 WL 3945773, at *9;[7] *see also Paguirigan v. Prompt Nursing Emp. Agency LLC*, 2018 WL 4347799, at *8 (E.D.N.Y. Sept. 12, 2018). BOA also attempts to use Plaintiff's particular vulnerabilities and "deeply personal" experiences to defeat commonality. Opp. at 22. But "even if Jane Doe were uniquely vulnerable, that would only serve to *support* her claims, not undermine them." *JPMorgan Chase Bank*, 2023 WL 3945773, at *5 (emphasis in original).

BOA's focus on the insignificant variations in the specific threats used against victims does not defeat predominance because Epstein maintained a common *modus operandi* of coercing victims to engage in commercial sex.[8] *See Yeend v. Akima Global Servs., LLC*, 2025 WL 959968,

---

[7] As this Court explained, even if certain aspects of coercion are not entirely capable of common proof, that argument "would form a relatively minor part of this case and could be addressed through post-trial proceedings." *JPMorgan Chase Bank*, 2023 WL 3945773, at *9 n.9.

[8] BOA's attempt to recast Plaintiff as part of a group of "assistants" or "girlfriends" (Opp. at 8, 22) is disingenuous. Indeed, Epstein intentionally characterized his victims as "assistants" to legitimatize his sex trafficking and avoid detection. *See* Ex. 69 at 109:25–110:9; 111:22–112:4. For example, Johanna Sjorberg testified she was recruited by Ghislaine Maxwell at 20 years old

8

at *13 (N.D.N.Y. Mar. 31, 2025) (finding predominance where plaintiffs alleged various forms of coercion). BOA also ignores the vast commonality in each class member's claims about BOA's own misconduct, which predominates over any questions affecting only individual members, including its servicing and maintaining of accounts for Epstein, his entities, and co-conspirators, execution of hundreds of suspicious transfers, and failures to monitor or report those transfers.

***Participation.*** BOA's argument that Plaintiff cannot show common issues predominate with respect to the participation element of Plaintiff's TVPA participation claim largely repackages arguments this Court already rejected in denying BOA's motion to dismiss. *See Doe*, 2026 WL 380385, at *8 ("The amended complaint . . . plainly alleges the provision of non-routine services that facilitated Epstein's sex-trafficking venture."). Unsatisfied with that ruling, BOA mischaracterizes Plaintiff's theory as involving different ventures. Opp. at 23 & n.8. But Plaintiff's theory has always been that Epstein operated a single sex-trafficking venture, and that BOA knowingly facilitated that venture by providing non-routine banking services to Epstein and individuals and entities associated with his sex-trafficking venture. *See, e.g.*, AC ¶¶ 6, 92; *see also Doe*, 2026 WL 380385, at *8. That the Bank enabled the venture through multiple forms of conduct does not transform a single trafficking enterprise into separate ventures requiring separate subclasses. *See JPMorgan Chase Bank*, 2023 WL 3945773, at *1 (certifying a single class where JPM structured multiple cash withdraws, failed to conduct due diligence, and failed to report). BOA suggests that it should escape liability because it facilitated Epstein's sex-trafficking scheme

---

to be an "assistant" who would answer phones, but she was immediately subject to sexual abuse instead. Ex. 78 at 8:2–12:1; 67:22–69:21. Rinaldo Rizzo, Epstein's house manager, testified that a 15-year-old girl was hired to be an "executive personal assistant" but was immediately held against her will on Epstein's island. Ex. 79 at 52:6–18; 55:2–57:23; *see also Doe 3*, 801 F. Supp. 3d at 204 ("Epstein wrote to Doe, asking whether she could suggest anyone to work as his assistant.").  ̄x. 76 at ¶¶ 2–7.

9

through numerous individuals and entities connected to Epstein's venture. But that is not the law. Participation is satisfied even where a defendant separately interacts with and services multiple actors within a single trafficking scheme. *See, e.g.*, *J.G. v. Northbrook Indus., Inc.*, 2024 WL 4513034, at *9 (N.D. Ga. Aug. 16, 2024).

Accordingly, BOA's contention that Plaintiff ███████████████████████ ██████████████████████████████ (Opp. at 10, 24 n.9) is immaterial.[9] Epstein had a typical *modus operandi*, and the thrust of Plaintiff's claim is that BOA "sustained Epstein's operation in a similar way" by providing non-routine services to the entities and individuals that fueled it. Under this theory, causation is satisfied. *JPMorgan Chase Bank*, 2023 WL 3945773, at *10 (certifying class where the bank's participation was a "but-for cause of Jeffrey Epstein's sex-trafficking venture" and the "venture harmed each class member").

E.     **A Class Action Is Superior to Individual Lawsuits.**

In addition to everything else, as BOA acknowledges, and the Court previously recognized, the "intensely personal nature of the claims at stake [may] give class members an interest in class-wide adjudication." Opp. at 25 (citing *JPMorgan*, 2023 WL 3945773, at *11). It nonetheless asserts that Plaintiff's adequacy and individualized issues defeat superiority. For the reasons set forth above and in Plaintiff's opening brief (Mot. at 22–23), the Court should reject those arguments.

---

[9] BOA ignores that Leon Black was the key funder of the very trafficking operation that harmed Plaintiff and the class. *See* Benjamin Weiser, Matthew Goldstein, & Mike Baker, *Why the Epstein Investigations Took So Long and Did So Little*, N.Y. TIMES (Mar. 1, 2026), https://www.nytimes.com/2026/03/01/us/epstein-justice-department-investigations.html ("After Mr. Wexner and Mr. Epstein split, Mr. Epstein's most important source of money became Mr. Black, who paid him $170 million over several years."). Contrary to BOA's suggestion (Opp. at 10–11), evidence shows this money was anything but legitimate. Ex. 80 (Epstein: "He [Black] ignores the fact that he has paid MILLIONS of dollars to RUSSIAN girls."); Ex. 81.

10

Dated: March 9, 2026                                Respectfully submitted,

                                                                      */s/ David Boies*
David Boies
Andrew Villacastin
Rachael Schafer
Boies Schiller Flexner LLP
55 Hudson Yards
New York, NY
Telephone: (212) 446-2300
Fax: (212) 446-2350
Email: dboies@bsfllp.com
Email: avillacastin@bsfllp.com
Email: rschafer@bsfllp.com

Sigrid McCawley
Daniel Crispino
Megan Nyman
Boies Schiller Flexner LLP
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33316
Telephone: (954) 356-0011
Fax: (954) 356-0022
Email: smccawley@bsfllp.com
Email: dcrispino@bsfllp.com
Email: mnyman@bsfllp.com

Bradley J. Edwards
Brittany N. Henderson
Dean Kaire
Edwards Henderson
425 N. Andrews Ave., Suite 2
Fort Lauderdale, FL 33301
Telephone: (954) 524-2820
Fax: (954) 524-2822
Email: brad@cvlf.com
Email: brittany@cvlf.com
Email: dean@cvlf.com

*Counsel for Plaintiff Jane Doe*

11

## CERTIFICATE OF COMPLIANCE

    I, David Boies, hereby certify pursuant to Local Civil Rule 7.1(c) that the foregoing Memorandum of Law was prepared using Microsoft Word and complies with Rule 2(e) of this Court's Individual Rules and Local Rule 7.1(c).

                                                                             */s/ David Boies*