# JONES DAY

51 LOUISIANA AVENUE, N.W. • WASHINGTON, DC 20001.2113

TELEPHONE: +1.202.879.3939 • JONESDAY.COM

Direct Number: 2028793872
ctaylor@jonesday.com

March 10, 2026

**VIA CM/ECF**

Honorable Jed S. Rakoff
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    <u>Doe v. Bank of America, N.A.</u>, No. 1:25-cv-08520-JSR (S.D.N.Y.)

Dear Judge Rakoff,

    It has now become clear that a criminal "investigation" into Epstein's sex-trafficking venture is "pend[ing]." 18 U.S.C. § 1595(b). Public reports and the Epstein Files reflect as much.[1] And the Government has all but confirmed it. Indeed, the Government has withheld critically relevant information on grounds that presume an investigation exists. The Government has also "repeatedly told" the public that documents are being withheld because they "relate to an ongoing federal investigation."[2] And even Plaintiff's counsel has alluded to an investigation.[3]

    The only question, then, is whether the TVPRA's mandatory stay provision applies to this case. It does: an "investigation" is "pend[ing]"; and the "investigation" "aris[es] out of the same occurrence in which [one or more] claimant[s] is the victim." 18 U.S.C. § 1595(b). Indeed, *just today*, the Northern District of Illinois stayed the *G.G. v. Salesforce.com* case under § 1595(b) and rejected many of the same arguments Plaintiff makes here. *G.G. v. Salesforce.com, Inc.*, No. 20-cv-02335, Dkt. No. 364 (N.D. Ill. Mar. 10, 2026). This Court has relied on *G.G.* in this case and others. *See Doe v. Bank of Am.*, __ F. Supp. 3d __, 2026 WL 380385, at * (Feb. 11, 2026) (Rakoff,

---

[1] *See, e.g.*, Kristen Holmes et al., *Trump Says He's Asking Justice Department to Investigate Epstein's Ties to Slew of High-profile Figures*, CNN (Nov. 14, 2025), https://tinyurl.com/2su8cj8m; Epstein Files Database, DB-SDNY-0103225 / EFTA00128820, https://tinyurl.com/ytyc9r7k (citing Fed. R. Crim. P. 6(e)); *id.*, SDNY_GM_00233683 / EFTA01385994, https://tinyurl.com/4fwe6meh (same).

[2] Stephen Fowler & Saige Miller, *Justice Department Publishes Some Missing Epstein Files*, NPR (Mar. 6, 2026), https://tinyurl.com/2vv66cyd; *see, e.g.*, *Deputy Attorney General Blanche Announces Latest Epstein Release of More than 3 Million Pages*, PBS (Jan. 30, 2026), https://tinyurl.com/y3j9mvta (Blanche, at 4:38, noting "an active federal investigation").

[3] We Can Do Hard Things with Glennon Doyle, *Epstein Survivors' Attorney Who Exposed Government Conspiracy: Brad Edwards* (Feb. 12, 2026), https://tinyurl.com/4ty4hvtc (Edwards, at 1:14:20, noting that "[w]e're currently in a lawsuit with Bank of America" and "have provided to the government other information as they've asked us, you know, who else was involved").

J.) (citing *G.G. v. Salesforce.com*, 76 F.4th 544, 562–64 (7th Cir. Cir. 2023)); *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 405–06 (S.D.N.Y. 2023) (citing *G.G. v. Salesforce.com*, 603 F. Supp. 3d 626, 644 (N.D. Ill. 2022)).

As far as BANA understands, the Government is indifferent to whether this case is stayed. It merely does not want to disclose details that might compromise its investigation. But the Government's representatives (and others) have already said enough. If this Court believes further detail on the evidently ongoing investigation would be helpful to the stay inquiry, BANA respectfully suggests that it invite the Government to disclose additional details either on the record or *ex parte*. *See, e.g., Doe 1-10 v. Fitzgerald*, No. 20-cv-10713 (C.D. Cal. Nov. 17, 2022), Dkt. No. 217 at 3 n.2 ("USAO-SDNY" offering to "provide additional information on an *ex parte* basis" "[t]o the extent … require[d]").

But unless the Government makes a submission that contradicts its own public statements, a stay is required here.

**A.** As the U.S. Attorney's Office for the Southern District of New York has elsewhere recognized, the TVPRA contains a "broad, encompassing mandatory stay provision," and "there is no discretion" to deny a stay where "the provision applies." *Fitzgerald*, No. 20-cv-10713, Dkt. No. 217 at 2 (citation omitted). Specifically, the text provides: "Any civil action under subsection (a) shall be stayed during the pendency of any criminal action," i.e., an "investigation and prosecution," "arising out of the same occurrence in which the claimant is the victim." 18 U.S.C. § 1595(b). Thus, "a civil [TVPRA] case must be stayed if (1) a criminal action is pending, (2) the action arises out of the same occurrence as the civil action, and (3) the plaintiff in the civil action is also a victim in the criminal action." *Bradberry v. Abercrombie & Fitch Co.*, 2024 WL 4604508, at *2 (S.D.N.Y. Oct. 29, 2024). All three requirements are easily satisfied here.

*First*, there is an ongoing criminal "investigation" into Epstein's sex-trafficking venture, which is a "criminal action." 18 U.S.C. § 1595(b)(2). *See supra*.

*Second*, this "civil action" and the "criminal … investigation[s]" "aris[e] out of the same occurrence." 18 U.S.C. § 1595(b). "[C]ourts routinely rely on pleadings to determine whether legal actions overlap or are related." *Doe 1-10 v. Fitzgerald*, 102 F.4th 1089, 1099 (9th Cir. 2024) (relying on multi-plaintiff complaint's allegations); *see, e.g., Bradberry*, 2024 WL 4604508, at *2 (relying on class complaint's allegations). And in the § 1595(a) venture context, courts generally examine whether the actions involve the same "sex trafficking venture[s]." *E.g., Fitzgerald*, 102 F.4th at 1093 (analyzing venture's alleged violations). This inquiry is not onerous, as a deeper inquiry might indeed compromise an investigation. *See Ara v. Khan*, 2007 WL 1726456, at *1–2 (E.D.N.Y. June 14, 2007) (finding sufficient a non-detailed confirmation that "the government initiated a criminal investigation …"); *id.*, No. 1:07-cv-01251, Dkt. No. 18 at 1.

Here, there is a "pending criminal [investigation]" into "[Epstein's sex-trafficking venture] and pending civil allegations against [BANA] for its involvement in the same scheme." *G.G.*, No.

20-cv-02335, Dkt. No. 364 at 7. Indeed, Plaintiff maintains that her "TVPA causes of action … require adjudication and proof of … the following:" "[w]hether Epstein ran a sex-trafficking venture," "[w]hether the Epstein sex-trafficking venture caused its victims to engage in commercial sex acts in violation of the [TVPA]" and "recruited, enticed, solicited, harbored, provided, obtained, and transported victims in ways that were in or affecting interstate or foreign commerce," and "[w]hether Epstein and his co-conspirators used means of force, fraud, coercion, and abuse of legal process … to sexually abuse the victims and to cause victims to engage in commercial sex acts." Dkt. No. 77 at 16–18. These matters inevitably overlap with any criminal investigation of Epstein's sex-trafficking operation. And that is so regardless of whether BANA is implicated in the criminal investigation, because "[d]iscovery with respect to [] civil defendants not facing criminal charges" like BANA "will frequently overlap significantly with the discovery relating to criminally charged defendants." *Lunkes v. Yannai*, 882 F. Supp. 2d 545, 550 (S.D.N.Y. 2012); *G.G.*, No. 20-cv-02335, Dkt. No. 364 at 8–9.

*Third*, the "claimant[s]" in this case are the same "victim[s]" at issue in the criminal investigation. 18 U.S.C. § 1595(b)(1). Plaintiff seeks to represent "[a]ll women who were sexually abused or trafficked by Jeffrey Epstein or Epstein's co-conspirators during the time when Bank of America maintained bank accounts for Epstein, Epstein's co-conspirators, Epstein-related entities, and/or Epstein-related accounts." Dkt. No. 77 at 1. And she claims that BANA maintained these accounts from 2001 to 2019. *See Doe v. Bank of America, N.A.*, 2026 WL 380385, at *4 (S.D.N.Y. Feb. 11, 2026). A criminal investigation into Epstein's sex-trafficking operation must obviously involve at least "some" women who were victims between 2001 and 2019. *Fitzgerald*, 102 F.4th at 1101; *see also G.G.*, No. 20-cv-02335, Dkt. No. 364 at 10–12. Thus, a stay must enter.

**B.** All counterarguments are unavailing. *First*, the Government suggests that a stay is appropriate only when the Government seeks one. *See* Tr. of Mar. 9, 2026 Proceedings ("Tr."), at 24–25 (Mr. Lillywhite). But that theory finds zero support in the TVPRA's text, which mandates that a civil case "shall be stayed" while a criminal action is "pend[ing]." 18 U.S.C. § 1595(b)(1); *Lopez v. Davis*, 531 U.S. 230, 241 (2001) ("Congress' use … of a mandatory 'shall' … impose[s] discretionless obligations…."). If a stay were available only by government request, the text would say so—or at a minimum, use discretion-granting language, such as "may be stayed." But the TVPRA does no such thing. Thus, "courts have granted stays sought by civil defendants with no government intervention." *G.G.*, No. 20-cv-02335, Dkt. No. 364 at 12 (collecting cases).

That stands in stark contrast with other statutory stay provisions, which are discretionary or otherwise require the Government's support. *Cf., e.g.*, 31 U.S.C. § 3730(c)(4) ("[U]pon a *showing by the Government* that certain actions of discovery by the person initiating the action would interfere with the Government's investigation or prosecution of a criminal or civil matter arising out of the same facts, the court *may* stay such discovery for a period of not more than 60 days.") (emphasis added); 18 U.S.C. § 981(g)(1) ("Upon the motion of the United States, the court shall stay the civil forfeiture proceeding *if the court determines* that civil discovery will adversely

affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case.") (emphasis added). Congress took a different approach to the TVPRA.

It is true that § 1595(a)'s legislative history reflects the DOJ's opposition to the TVPRA's private right of action because of a concern it would "hinder prosecutors' abilities to try a case unfettered by the complications of civil discovery." H.R. Rep. No. 108-264, pt. 2, at 17 (2003). But that does not change the analysis. While "[c]lear evidence of congressional intent may illuminate ambiguous text," courts do not "allow ambiguous legislative history to muddy clear statutory language." *United States v. Coonan*, 143 F.4th 119, 127 (2d Cir. 2025) (cleaned up). Indeed, *G.G.* acknowledged this legislative history and held that "[n]onetheless, the statute does not grant the Court any discretion to deny a stay on policy justifications when all elements of the provision are met." *G.G.*, No. 20-cv-02335, Dkt. No. 364 at 13; *see also Tianming Wang v. Gold Mantis Constr. Decoration (CNMI), LLC*, 2020 WL 5983939, at *2 (D. N. Mar. I. Oct. 9, 2020) (cited by Mr. Lillywhite at hearing) (acknowledging legislative history but nonetheless holding that "the government need not be the party moving for a stay"). In any case, enforcing the mandatory stay provision supports the stated purpose of ensuring that criminal actions "take priority over civil redress." H.R. Rep. No. 108-264, pt. 2, at 17. This case is a perfect example: BANA has made discovery requests that are critical to its defense, and a stay enables the Government to conduct its investigation without the burden of responding to them. If anything, Congress made the TVPRA stay provision *more* protective of government investigations by requiring a stay without putting the burden on the Government to seek one. *Cf. Bradberry*, 2024 WL 4604508, at *3 n.1 (staying case over Mr. Edwards' objections that "(1) the U.S. Attorney's Office had not 'sought to intervene and request a stay,' (2) Defendant's attempt to stay the case was a delaying tactic, and (3) the status of the criminal investigation was uncertain").

*Second*, Plaintiff maintains that a criminal investigation alone does not trigger a stay; rather, there must also be a prosecution, given that the term "criminal action" is defined as an "investigation *and* prosecution." 18 U.S.C. § 1595(b) (emphasis added); *see* Tr. at 18–19 (Mr. Boies); *id.* at 20, 22–24 (Mr. Edwards). But if a prosecution were required for a stay, the word "investigation" would be superfluous. To "give effect … to every clause and word of [the] statute," the provision must mean that investigations and prosecutions are *both* criminal actions, either one of which is sufficient to trigger a stay. *Panjiva, Inc. v. United States Customs & Border Prot.*, 975 F.3d 171, 178 (2d Cir. 2020) (citation omitted); *see Confederated Tribes & Bands of Yakama Nation v. Yakima Cnty.*, 963 F.3d 982, 990 (9th Cir. 2020) (explaining that the word "and" can have a disjunctive meaning). Courts thus enter stays in TVPRA cases where a criminal investigation is ongoing but no prosecution has commenced. *See, e.g.*, *Ara*, 2007 WL 1726456, at *1–2 (granting stay of "all proceedings in the case pending the conclusion of [the Government's] criminal investigation as well as the conclusion of any prosecution to which that investigation may lead"). Plaintiff also argued that, if stays are entered for investigations, the stay "could literally go on indefinitely and forever [] [b]ecause if no criminal action was never [*sic*] filed, this case would literally be stayed until the end of time." Tr. at 22 (Mr. Edwards). But criminal investigations, while sometimes lengthy, are not indefinite—they come to an end, and when they do, the stay can

be lifted. *See Plaintiff A. v. Schair*, 744 F.3d 1247, 1250 (11th Cir. 2014) (noting the district court "stayed th[e] civil action" pending "a criminal investigation" and lifted the stay only "[a]fter that … criminal investigation ended").

*Third*, Plaintiff suggests *she* must be the subject of the investigation. *See* Tr. at 23 (Mr. Edwards). But a stay is required where the criminal action "arise[s] out of the same *occurrence* in which the claimant is a victim." 18 U.S.C. § 1595(b) (emphasis added). Here, Plaintiff alleges "how [Epstein] perpetrated a wide-ranging and far-reaching sex-trafficking scheme that victimized individuals across the nation," and this "scheme or systematic practice that victimizes multiple individuals … constitutes an 'occurrence' under § 1595(b)(1)." *G.G.*, Dkt. No. 364 at 8–9. The Government's investigation of Epstein's wide-ranging scheme therefore "arise[s] out of the same occurrence" from which Plaintiff is also an alleged victim. *Id.* at 11 ("Plaintiffs attempt to claim that they are not the victims in the [criminal] Actions to avoid stays, but this is directly contradicted by their own allegations in the Complaints. In the Complaints, Plaintiffs allege that they were advertised for sale on Backpage, and their traffickers paid Backpage to post these ads.… This is the exact scheme underlying [the criminal action]."); *Fla. Abolitionist, Inc. v. Backpage.com LLC*, No. 6:17-cv-00218, Dkt. No. 159 at 3 (M.D. Fla. Dec. 16, 2018) (rejecting argument "that none of the Plaintiffs in this case is alleged to be a victim in the pending criminal cases" because "the allegations against Ferrer and Backpage.com in both this case and the criminal matters—involving sweeping, systematic practices that allegedly harmed many victims in the same fashion—renders the situation at hand unique"); *see also Bradberry*, 2024 WL 4604508, at *3 (plaintiff was a "victim" of the same occurrence even though he was not *specifically* identified as such in the criminal action).

In any event, Plaintiff is not the only "claimant": Plaintiff claims that she and all her putative class members are victims of Epstein's sex-trafficking venture. *See, e.g.*, *Bradberry*, 2024 WL 4604508, at *2 (analyzing "same occurrence" by reference to the "putative class"); *Fitzgerald*, 102 F.4th at 1093, 1101 (staying case even though only "some of the plaintiffs were victims of Nygard's sex trafficking venture"). Plaintiff cannot contend that the action must be stayed as to other members but not herself—or if she can, then that underscores that she cannot adequately represent the class.

\* \* \*

For the foregoing reasons, the Court should stay proceedings pursuant to § 1595(b).

Respectfully submitted,

*/s/ Charlotte H. Taylor*
Charlotte H. Taylor