

| Florida Office | Telephone (954)524-2820 | New York Office |
|---|---|---|
| **425 North Andrews Avenue** | Fax (954)524-2822 | *By Appointment Only* |
| **Fort Lauderdale, FL 33301** | info@cvlf.com | |

March 10, 2026

<u>**VIA E-MAIL**</u>
The Honorable Judge Jed S. Rakoff
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, New York, New York 10007
RakoffNYSDChambers@nysd.uscourts.gov

Re: <i>Doe v. Bank of America, N.A.,</i> Case No. 1:25-CV-08520-JSR

Dear Judge Rakoff:

Pursuant to the Court's request during the discovery conference held before Your Honor on March 9, 2026, Plaintiff respectfully submits this letter motion to articulate the reasons why a mandatory stay pursuant to 18 U.S.C. § 1595(b) is not required at this juncture. The plain language of §1595(b) requires three independent requirements for a mandatory stay: (1) a pending criminal action, (2) arising out of the same occurrence, and (3) in which the claimant is the victim.

There is no pending criminal action. BANA suggests that a pre-indictment "investigation" on a similar subject matter, before a determination or target or victim, would be enough and that it needs discovery to determine whether one exists. Neither is right. The law is clear that the Government need not reveal whether or not there is an investigation; giving effective control to the Government over whether a stay is appropriate is entirely consistent with the purpose of §1595(b), which is to protect the Government. In addition, §1595(b)(2) would have no meaning if an investigation untethered to a criminal action were sufficient, since there would be no end date.[1]

Finally, there is no indication that any speculated "investigation" arises out of the "same occurrence" as the case against BANA, and there is no indication that any speculated "investigation" involves Jane Doe as the victim. A stay should not be granted pre-indictment under the TVPA's mandatory stay provision because the first step is a confirmation of an active criminal case, before a comparison can begin between that criminal case and the civil case.

### 1. A Mandatory Stay of this Case is Not Required by 18 U.S.C. § 1595.

The mandatory stay provision states, "[a]ny civil action filed under subsection (a) shall be stayed during the pendency of any criminal action arising out of the same occurrence in which the

---

[1] BANA's argument requires rewriting the language to convert "investigation" to an independent noun as opposed to a verb or component.

claimant is the victim." 18 U.S.C. § 1595(b)(1). "In this subsection, a "criminal action" includes investigation and prosecution and is pending until final adjudication in the trial court." 18 U.S.C. § 1595(b)(2).

First, Defendant has presented no evidence—and Plaintiff is aware of none—demonstrating "the pendency of any criminal action arising out of the same occurrence" as the allegations in Plaintiff's Amended Complaint. The only document cited by Defendant is the Government's February 27, 2026, *Touhy* response letter, which declined to produce certain materials requested by Defendant on the basis of the law enforcement privilege. However, the letter expressly acknowledges that the law enforcement privilege may apply even where no investigation is ongoing, and it does not indicate that any investigation is currently pending. Accordingly, the *Touhy* response provides no evidence that a criminal action "arising out of the same occurrence" is pending, as required to trigger a mandatory stay under 18 U.S.C. § 1595(b). Moreover, neither the letter nor any other document submitted by Defendant identifies any criminal defendant, investigative target, victim, or the nature of any potential criminal conduct under investigation—information that would be necessary for the Court to determine whether the statutory standard is satisfied.

Second, § 1595(b)(1) requires that any pending criminal action arise out of the same occurrence and be one "in which the claimant is the victim." That requirement cannot be satisfied here. The Jane Doe in this action cannot plausibly be the victim in any purported criminal investigation because: (1) she has never alleged abuse by anyone associated with Jeffrey Epstein other than Epstein himself; (2) she has never been interviewed by the Federal Bureau of Investigation or the United States Attorney's Office for the Southern District of New York; (3) she has never been subpoenaed by or called to testify before a grand jury; and (4) she has never received any victim notification from the Department of Justice identifying her as a victim in a pending criminal investigation pursuant to the Crime Victims' Rights Act, 18 U.S.C. § 3771. Accordingly, there is no evidence before the Court to indicate that this action involves a claimant who is the victim in any pending criminal proceeding, and § 1595(b) therefore provides no basis for a stay.

Third, the two subsections of 18 U.S.C. § 1595(b) must be read together as part of a single statutory scheme. Subsection (b)(1) provides that a civil action "shall be stayed during the pendency of any criminal action arising out of the same occurrence," while subsection (b)(2) clarifies that a "criminal action" includes "investigation and prosecution" and remains pending "until final adjudication in the trial court." Read in harmony, these provisions necessarily contemplate a criminal proceeding that has progressed to the point of a filed indictment or formal charge. Only in that circumstance can the statute's definition—continuing "until final adjudication in the trial court"—have operative meaning. If "investigation" alone, untethered to an indictment, were sufficient to trigger the mandatory stay, the stay could persist indefinitely even where no charges are ever filed, because there would never be a "final adjudication in the trial court." The statute's structure therefore confirms that the term "criminal action," including its investigative phase, refers to a criminal case that has been formally initiated and is capable of proceeding to adjudication in a trial court.

It follows that, "[t]he weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment." *In re Par Pharmaceutical, Inc.*, 133 F.R.D. 12, 13 (S.D.N.Y. 1990); *see also Bradberry v. Abercrombie & Fitch Co., et al.*, No. 1:23-cv-09440-JHR (S.D.N.Y. 2024) at DE 77 (denying defendants' motion to stay without prejudice, even where Defendants had attached formal grand jury subpoenas to their motion as evidence of a criminal investigation), later resulting in a stay only after a formal indictment was filed against civil defendants Jeffries and Smith (DE 87)).[2] Even in cases outside of this jurisdiction like *GG v. SalesForce.com*, where a stay was granted, it is clear that the stay of civil proceedings must be predicated on the existence of a formal pending criminal investigation. No. 1:20-cv-02335-VMK, DE 364 at 5 (E.D.Ill. 2026) (finding proof of the pending criminal investigation to be a non-issue as Salesforce provided the Court with copies of the underlying indictments and criminal complaints).

Based on the record presented to the Court during the March 9 hearing—including the absence of any indictment and the lack of any representation by either the Government or Defendant regarding the mere existence of an ongoing criminal investigation—any stay of this action would rest on speculation alone. Such speculation is insufficient to trigger the extraordinary relief of a mandatory stay under 18 U.S.C. § 1595(b). On this record, § 1595(b) provides no basis for a stay.

2. **Neither the Southern District of New York nor Defendant are Seeking a Stay of the Civil Action**

The legislative purpose of the TVPRA's stay provision is not to delay civil cases, but "to protect the victims of trafficking and strengthen the government's ability to prosecute perpetrators." *Does v. Murphy*, No. 7:20-CV-00947-DCC, 2023 WL 2423113, at *3 (D.S.C. March 9, 2023); *see also Plaintiff A. v. Schair*, 744 F. 3d 1247, 1254-55 (11th Cir. 2014) ("[A]s the TVPA's legislative history indicates, the mandatory stay provision was added to § 1595 to alleviate the U.S. Department of Justice's concern that civil suits could hinder a domestic prosecutor's ability to try criminal cases 'unfettered by the complications of civil discovery.'"). Accordingly, TVPRA stays have typically been imposed in cases where the Government has intervened in a case, informed the Court of an ongoing investigation, and advised that the civil case was subject to a mandatory stay under the TVPRA. *See, e.g., Ara v. Khan*, CV-07-1251, 2007 WL 1726456 (E.D.N.Y.2007) at 5 (imposing a stay after allowing the United States to Intervene)); *see also Fitzgerald*, 2022 WL 18110021 at *4 (determining that "the USAO prosecuting a parallel criminal case is inevitably in a better position than any other party" to determine if a stay is necessary due to a conflict in overlapping cases"). Here, SDNY AUSA Jacob Lillywhite directly informed the Court that the Government is not seeking a stay of this civil proceeding due to any potential ongoing criminal investigation. If DOJ believed this pending civil litigation would interfere with any potential prosecution—the exact purpose of the stay provision—the Government would have intervened and requested the stay before this Honorable Court.

---

[2] A copy of the hearing transcript delineating Judge Rearden's reasons for denying Defendant's Motion to Stay is attached as **Exhibit A**.

## **Conclusion**

Here, there is no criminal indictment, no request from the Government that this civil action be stayed, and no evidence of any pending criminal action arising out of the same occurrence as the allegations set forth in Plaintiff's Amended Complaint. Nor is there any indication that the Jane Doe in this action is a victim in any such criminal proceeding, or any evidence presented by Defendant suggesting that an investigation is ongoing at all. Granting a stay on this record would undermine the legislative purpose of the TVPRA and permit civil litigation to be indefinitely delayed based on conjecture rather than the statutory criteria set forth in 18 U.S.C. § 1595(b). Accordingly, Plaintiff respectfully requests that the Court decline to impose a stay and allow this action to proceed.

Respectfully submitted,

EDWARDS HENDERSON, PLLC

*[signature]*

Brittany Henderson
Brad Edwards

# EXHIBIT A

O8n2BraC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

DAVID BRADBERRY, individually
and on behalf of all others
similarly situated,

                Plaintiff,            New York, N.Y.

           v.                         23 Civ. 9440 (JHR)

ABERCROMBIE & FITCH CO., et
al.,

                Defendants.

------------------------------x       Decision

                                      August 23, 2024
                                      10:20 a.m.


Before:

                    HON. JENNIFER H. REARDEN,

                                      District Judge



                          APPEARANCES


EDWARDS HENDERSON
     Attorneys for Plaintiff
BY:  BRITTANY HENDERSON
     DEAN KAIRE


HOGAN LOVELLS US LLP
     Attorneys for Defendant Abercrombie & Fitch Co.
BY:  BENJAMIN A FLEMING
     MICHAEL E. DeLARCO
```

```
 1                              APPEARANCES
                                (continued)
 2

 3   NELSON MULLINS RILEY & SCARBOROUGH, LLP
          Attorneys for Defendants Michael S. Jeffries and
 4        The Jeffries Family Office, LLC
     BY:  MARK F. RAYMOND
 5        MITCHELL BOYARSKY
          RYAN K. TODD
 6

 7   DIMOND KAPLAN & ROTHSTEIN, P.A.
          Attorneys for Defendant Matthew Smith
 8   BY:  DAVID A. ROTHSTEIN
          ALEXANDER M. PERAZA
 9

10

11

12   Also Present:

13   Brian Bieber, Esq., Criminal Counsel for Michael Jeffries

14

15

16

17

18

19

20

21

22

23

24

25
```

O8n2BraC

1        (Case called)

2        THE DEPUTY CLERK:  This is a reminder that this is a
3   public proceeding.  Members of the public and press are able to
4   access the proceeding with a public dial-in number.  All
5   participants are reminded that any recording and rebroadcasting
6   of this proceeding is strictly prohibited.

7        The Honorable Jennifer H. Rearden presiding.

8        THE COURT:  Thank you, Mr. Lee.

9        Hello, everybody.  Who is on the line, please?

10       MR. KAIRE:  Good morning, your Honor.  This is Dean
11  Kaire, and I am here with Brittany Henderson, from the law firm
12  Edwards Henderson, on behalf of the plaintiff David Bradberry.

13       THE COURT:  All right.

14       MR. TODD:  Good morning, your Honor.  This is Ryan
15  Todd on behalf of the defendants Michael Jeffries and
16  codefendant for The Jeffries Family Office.  Joined with me are
17  my counsel and colleagues Mark Raymond and Mitch Boyarsky.
18  Also on the line we have Mr. Jeffries' criminal defense
19  counsel, Brian Bieber.

20       THE COURT:  Okay.  Hello to you all.

21       MR. ROTHSTEIN:  May it please the Court, your Honor,
22  my name is David Rothstein.  I'm joined by Alex Peraza.  We are
23  both with the law firm of Dimond Kaplan & Rothstein on behalf
24  of the defendant Matthew Smith.

25       THE COURT:  Okay.  Let me just go back to the

1    plaintiffs.  I got that the firm is Edwards Henderson.  I
2    thought I was going to be hearing Bradley Edwards, but I don't
3    think that is what I heard.  Could you please tell me again
4    your name?
5             MR. KAIRE:  Correct, your Honor.  This is Dean Kaire,
6    from the law firm of Edwards Henderson, and Ms. Brittany
7    Henderson is on the line, as well.
8             THE COURT:  Okay.  Great.  And how do you spell your
9    last name Mr. Kaire?
10            MR. KAIRE:  Kaire, K-A-I-R-E.
11            THE COURT:  Okay.
12            MR. FLEMING:  Your Honor, good morning.  It is Ben
13   Fleming from Hogan Lovells on the line for --
14            THE COURT:  For Abercrombie.
15            MR. FLEMING:  -- Abercrombie & Fitch, and my colleague
16   Mike DeLarco is also on.
17            THE COURT:  Okay.  Thank you, everyone.
18            We are here to address the motion for a stay filed by
19   the defendants, Michael Jeffries, Matthew Smith, and The
20   Jeffries Family Office.  I will collectively refer to these
21   parties as the "moving defendants."
22            I ask that all counsel remain on the line for the
23   entirety of this proceeding.
24            Because the parties are familiar with the facts of the
25   case, I will not recite them all in detail.  To the extent that

any of the facts presented in the parties' submissions are pertinent to my decision, those facts are embedded in my analysis. I will simply briefly recount the procedural history as follows:

Plaintiff David Bradberry filed this individual and putative class action against defendants Abercrombie & Fitch Co., Michael S. Jeffries, Matthew Smith, and The Jeffries Family Office, LLC, asserting claims under the Trafficking Victims Protection Act, which is codified at 18 U.S.C. 1591 *et. seq.*

At bottom, plaintiff alleges that the defendants promised him and other members of the putative class the "opportunity to model for Abercrombie so long as they engaged in commercial sex acts with Jeffries, Smith, and his associates." I am citing the complaint at paragraph 88. That is to say, according to plaintiff, defendants operated a "scheme for the manipulation and abuse of young men under the guise of providing them with the modeling opportunity of their dreams—becoming an Abercrombie model," citing there to paragraph 115 of the complaint.

The moving defendants—as noted, defendants Jeffries, Smith, and The Jeffries Family Office—filed the instant motion to stay this action pursuant to 18 U.S.C. 1595(b). The moving defendants contend that shortly after plaintiff filed the complaint, "the United States Attorney's Office for the Eastern

1  District of New York subpoenaed the Jeffries Family Office,
2  LLC, to testify before a grand jury."  In support of their
3  motion, the moving defendants attached a grand jury subpoena
4  issued to The Jeffries Family Office (that's ECF No. 55-1); a
5  chart comparing the grand jury subpoena demands with the
6  allegations in the complaint (that's ECF No. 55-2); and a BBC
7  article dated January 16, 2024 that states that a criminal
8  "investigation is being led by F.B.I. agents specializing in
9  alleged sex crimes and federal prosecutors from the Eastern
10 District of New York" into claims that defendants Jeffries and
11 Smith "sexually exploited and abused men at events around the
12 world."  That's ECF No. 54-3.  Plaintiff opposed the motion at
13 ECF No. 60, and moving defendants thereafter filed a reply at
14 ECF No. 61.  The Court then heard argument on the motion.
15 Having carefully considered the parties' written submissions
16 and argument, here is my ruling:
17         To begin, the Trafficking Victims Protection
18 Reauthorization Act, or TVPRA, provides that "an individual who
19 is a victim of sex trafficking may bring a civil action against
20 the perpetrator (or whoever knowingly benefits, financially or
21 by receiving anything of value from participation in a venture
22 which that person knew or should have known has engaged in sex
23 trafficking)." 18 U.S.C. 1595(a).  The TVPRA further provides
24 that "any civil action filed under subsection (a) shall be
25 stayed during the pendency of any criminal action arising out

1     of the same occurrence in which the claimant is the victim,"
2     citing to section 1595(b)(1).  The statute defines "criminal
3     action" to include "investigation and prosecution," both of
4     which are considered "pending until final adjudication in the
5     trial court."  That's section 1595(b)(2).
6          "When the statute applies to a particular case, it is
7     mandatory for the Court to impose a stay," citing *Does 1-9 v.*
8     *Murphy,* Case No. 20 Civ. 947 (DCC), 2023 WL 2423113, at *2
9     (D.S.C. Mar. 9, 2023); *see Sharma v. Balwinder*, 2021 WL
10    4865281, at *2 (N.D. Cal. Sept. 29, 2021) (noting the plain
11    language of section 1595(b)(1) requires a stay of any civil
12    action to which it is applicable).  "However, courts have found
13    the statute does not apply in every instance and have declined
14    to impose a stay where there is insufficient evidence that an
15    active investigation and prosecution exist, that the criminal
16    action arises out of the same occurrence as the civil action,
17    and that the plaintiffs in the civil action are the victims of
18    the criminal action," citing *Murphy*, 2023 WL 2423113, at *2;
19    *see, e.g.*, *Tianming Wang v. Gold Mantis Construction Decoration*
20    *(CNMI) LLC,* 2020 WL 5983939, at *2-5 (D.N. Mar. I. Oct. 9,
21    2020), *Kolbek v. Twenty First Century Holiness Tabernacle*
22    *Church, Inc.,* 2011 WL 5188424 at *2, (W.D. Ark. Oct. 11, 2011).
23         "Here, there is a lack of evidence demonstrating that
24    the criminal action arose out of the same occurrence as the
25    civil action."  *Doe v. Aylo Global Enterprises, Inc.,* Case No.

1   23 Civ. 07488 (MWF), 2023 WL 8884400, at *3 (C.D. Cal. Nov. 29,
2   2023).  In support of a stay, the moving defendants
3   substantially rely on a subpoena issued by the United States
4   Attorney's office—a party that has not moved to intervene and
5   seek a stay of this action—to defendant The Jeffries Family
6   Office, LLC.  According to the moving defendants, "the
7   documents demanded in the subpoena overlap with the allegations
8   of plaintiff Bradberry and the proposed class."  That's page 2
9   of plaintiff's brief.  In an effort to bolster this contention,
10  the moving defendants have submitted, among other things, a
11  chart purporting to highlight the similarities between the
12  allegations in the complaint and in the subpoena.
13          However, "the statutory requirement of the 'same
14  occurrence' does require more than inferences from
15  similar-sounding allegations."  *Aylo Global Entertainment,*
16  *Inc.*, 2023 WL 8884400, at *3.  By way of example, in *Tianming*
17  *Wang*, the defendant attempted to establish that the civil and
18  criminal proceedings at issue arose out of the "same
19  occurrence" by proffering "a word-for-word comparison between
20  the civil complaint and superseding indictment allegations,"
21  pointing to the fact that the two documents "both mentioned
22  many of the same terms and phrases," 2020 WL 5983939, at *4.
23  The court found this unpersuasive, reasoning that the mere fact
24  that "both the civil action and criminal action involved this
25  similar factual background" did not support a finding that

"they involved the 'same occurrence'" *Id.*  The Court determined that, notwithstanding an ostensibly "similar factual background," the criminal charges were "based on defendants defrauding and deceiving the U.S. government and its agencies," whereas, "in contrast, the civil complaint was based on trafficking, worker exploitation, forced labor, and egregious working conditions" *Id.*  The Court thus concluded that the two proceedings did not "arise out of the same occurrence" and denied the motion.

The moving defendants' "word-for-word comparison" *(id.* at *4) between the allegations in the complaint and the contents of the subpoena fare no better here.  Fundamentally, the subpoena does not explicitly define the precise nature of the investigation underway, rendering the Court unable to assess whether its focus is in fact on the scheme involving individual plaintiff Bradberry as alleged in the complaint.

The cases proffered by the moving defendants are unpersuasive.  "In those cases, the link between the civil and criminal case was clear such that a court could easily discern that the criminal case arose out of the 'same occurrence in which the claimant is the victim.'"  *Tianming Wang*, 2020 WL 5983939, at *3.  In *Plaintiff A v. Schairr*, 11 Civ. 145 (WCO) (S.D.N.Y. July 7, 2011), for instance, the Court stayed the civil action pursuant to section 1595(b) "because the U.S. Department of Justice was conducting a criminal investigation

into the same conduct alleged in the plaintiffs' complaint." Notably, however, the defendant in that case had attached as an exhibit to its moving papers a letter from the United States Attorney's office informing the defendant of an ongoing criminal investigation and expressly advising him that he was, "considered a subject of this criminal investigation." And I am quoting there the Court's order at page 2, which is quoting in turn Exhibit C appended to the defendants' motion.

Here, the moving defendants have submitted no such letter or other communications from the United States Attorney's Office expressly describing the nature of the pending investigation, much less explicitly informing them that they were considered a "subject of the criminal investigation." The Court cannot, and will not, make logical leaps and inferences—as the moving defendants would have the Court do—by relying on broad topical and linguistic similarities between the complaint and the subpoena. In short, "the Court cannot conclude, based on the current record, that this case must be stayed under 18 U.S.C. 1595(b)(1)." *Cortez-Romero v. Marin J. Corp*, Case No. 20 Civ. 14058, 2020 WL 3162979, at *1 (S.D. Fla. June 11, 2020).

The BBC article reporting on the supposed details of the investigation does not alter the Court's conclusion. As in other cases in which a party proffered news articles in support of its argument that an investigation into the defendant's

conduct was purportedly underway, the Court will not "rely on speculation and newspaper articles to obtain the information it needs to justify a stay." *Tianming Wang*, 2020 WL 5983939, at *1.

At bottom, "it seems to the Court illogical and contrary to the purpose of the statute that a stay may be mandatorily imposed by force of a civil defendant who can only surmise as to whether a criminal investigation arising out of the same occurrence as the civil action may be ongoing." *Kolbek*, 2011 WL 5188424, at *2.

Even setting aside the lack of support for a finding that the criminal and civil proceedings arise "out of the same occurrence," the fact remains that "the plain language of the statute narrows the scope of 'same occurrence' to that in which the claimant is the victim*, Tianming Wang*, 2020 WL 5983939, at *4 (quoting section 1595(b)(1)).  "Thus, the claimant in the civil action must be the victim in the criminal case for a mandated stay under the TVPRA." *Id.*  Here, however, there is no indication that plaintiff Bradberry—the sole individual plaintiff in this as-yet-uncertified putative class action—is in fact a victim in the criminal proceedings.  Indeed, "if the criminal action arose from the same occurrence in which the claimants are the victims, the government would have been required to contact plaintiff" as "federal law requires that prosecutors make their best efforts to notify crime victims of

their rights." *Id.* (quoting 18 U.S.C. 3771(c), which provides in relevant part, "Officers and employees of the Department of Justice and other departments and agencies of the United States engaged in the . . . investigation . . . of crime shall make their best efforts to see that crime victims are notified.") Here, however, "nothing suggests that plaintiff was ever notified by the government of the pending investigation." *Id.* To the contrary, at oral argument, plaintiff's counsel represented that he was "contacted by the F.B.I., and David Bradberry was interviewed" but was otherwise "given no information whatsoever." To wit, when pointedly asked whether plaintiff had been notified of the criminal investigation as a victim pursuant to section 3771(c)(1), counsel responded "no" and that "to his knowledge plaintiff has not received anything in writing." That's at page 27 of the transcript. As such, the Court cannot conclude, absent more, that plaintiff Bradberry is a victim in the criminal proceedings.

For the reasons that I have stated, the moving defendants' motion to stay is denied without prejudice. To the extent that the moving defendants come into possession of additional information regarding the nature of the investigation which they deem pertinent to a 1595(b) analysis, they "may file renewed motions to stay without further leave of court." *Murphy*, 2023 WL 2423113, at *3; *see also*, for example, *Tianming Wang*, 2020 WL 5983939, at *1, in which the Court noted

1  it had previously "encouraged the defendant to contact the USAO
2  rather than rely on speculation and newspapers articles to
3  obtain the information it needed to justify a stay and to
4  refile the motion."
5      In sum, "based on the evidence currently before the
6  this Court, the Court finds that this case is not subject to a
7  mandatory stay under 18 U.S.C. 1595 and declines to otherwise
8  impose or recognize a stay of these proceedings."  *Murphy*, 2023
9  WL 2423113, at *3.
10     That constitutes the order of the Court, and I would
11 ask that you order the transcript, please, and split the cost.
12     Is there anything else that we should be addressing
13 today?
14     MR. KAIRE:  Your Honor, this is Dean Kaire here on
15 behalf of the plaintiffs.
16     Thank you for the ruling, and if the Court is
17 inclined, we would only request an order expeditiously
18 requiring the completion of the Rule 26 conference so that we
19 may go ahead and submit a proposed case management plan to the
20 Court, your Honor.
21     THE COURT:  I would like to have an IPTC, and so what
22 I would intend to do is issue a notice of a conference with all
23 that is generally included in it.  Then we can take up these
24 matters at that conference, and you will have a chance to
25 propose a case management plan.

```
      O8n2BraC
 1              MR. KAIRE:  That sounds great, your Honor.  Thank you.
 2              THE COURT:  All right.  Thank you all.  We are
 3     adjourned.  I wish you a nice weekend.
 4              COUNSEL:  You as well.
 5              COUNSEL:  Thank you, your Honor.
 6              THE COURT:  All right.  Thank you.
 7              COUNSEL:  Thank you, your Honor.
 8                                oOo
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```