UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------x
JANE DOE, individually and on behalf :        MEMORANDUM
of all others similarly situated,    :
                                     :
        Plaintiff,                   :
                                     :        25-cv-8520 (JSR)
        -v-                          :
                                     :
BANK OF AMERICA, N.A.,               :
                                     :
        Defendant.                   :
------------------------------------x
```

JED S. RAKOFF, U.S.D.J.:

On March 11, 2026, the Court issued a "bottom-line" Order denying the motion of defendant Bank of America, N.A., to stay this action pursuant to 18 U.S.C. § 1595(b), a provision of the Trafficking Victims Protection Act ("TVPA"). ECF No. 105. This Memorandum sets forth the reasons for the Court's decision.

I.    Background and Relevant Procedural History

The Court presumes familiarity with the allegations in plaintiff Jane Doe's amended complaint against Bank of America, which the Court has discussed at length elsewhere. See Doe v. Bank of America, --- F. Supp. 3d ---, 2026 WL 380385, at *1-5 (S.D.N.Y. Feb. 11, 2026). The Court also presumes familiarity with the sex trafficking operations masterminded by Jeffrey Epstein, whose grotesque misconduct has been widely recounted. See, e.g., id. at *2; Doe 1 v. Deutsche Bank Aktiengesellschaft, 671 F. Supp. 3d 387, 396-400 (S.D.N.Y. 2023).

As relevant here, on March 9, 2026, the Court conducted a conference at which it heard oral argument regarding, among other

1

things, subpoenas that Bank of America served on the U.S. Attorney's Office for the Southern District of New York and on the Federal Bureau of Investigation. See Minute Entry, Mar. 9, 2026.[1] During the course of that argument, Bank of America requested that the Court direct the Government to indicate whether there is an ongoing criminal investigation arising out of the occurrences alleged in Doe's amended complaint. Bank of America stated its view that, if such an investigation were ongoing, this case must be stayed.

Following oral argument, the Court solicited written submissions from the parties and the Government regarding the matters raised by Bank of America. The Court received those submissions on March 10, 2026. In its submission, Bank of America expressly moved for a stay of proceedings in this action pursuant to Section 1595(b). See ECF No. 103 at 5. As noted, the Court denied Bank of America's motion by bottom-line Order on March 11, 2026. ECF No. 105.

II.  Applicable Law

Section 1595(b) provides that "[a]ny civil action" filed under the TVPA "shall be stayed during the pendency of any criminal action

---

[1] Bank of America also served subpoenas on the U.S. Attorney's Office for the Southern District of Florida and on the Federal Bureau of Investigation in that District. The subpoena recipients filed a motion to quash the subpoenas in the U.S. District Court for the Southern District of Florida. See In re Subpoena to Federal Bureau of Investigation & U.S. Attorney's Office for the Southern District of Florida, No. 26 Civ. 60651 (S.D. Fla.). On March 11, 2026, a court in that District transferred the motion to quash to this Court. See id., ECF No. 8. Further proceedings on the motion to quash are stayed, however, pending the potential settlement of this action. See Minute Entry, Mar. 12, 2026.

arising out of the same occurrence in which the claimant is the victim." 18 U.S.C. § 1595(b)(1). The statute goes on to provide that a "criminal action," for the TVPA's purposes, "includes investigation and prosecution and is pending until final adjudication in the trial court." Id. § 1595(b)(2).

Congress enacted Section 1595(b) in 2003, in the same piece of legislation, the Trafficking Victims Protection Reauthorization Act ("TVPRA"), that created the TVPA's civil cause of action. See Pub. L. 108-193, 117 Stat. 2875, § 4(a)(4)(A) (2003). A report of the House of Representatives' Committee on the Judiciary, which recommended that the House vote in favor of the TVPRA, incorporates a communication from the Department of Justice expressing opposition to "the private right of action that would be established by subsection 4(a)(4)." H.R. Rep. 108-264(II), at *16 (Sept. 29, 2003).[2] The Department of Justice opined that creating a civil cause of action for sex trafficking victims would provide such victims with "unbridled discretion . . . to sue whomever they feel has victimized them and could hinder prosecutors' abilities to try a case unfettered by the complications of civil discovery." Id. at *17. "While perhaps unlikely, this provision could become an incentive for victims to skip criminal prosecution and go directly to Federal court to sue their traffickers for damages." Id. Accordingly, the Department of Justice recommended

---

[2] Except where otherwise indicated, all quotations in this Memorandum omit citations, quotation marks, footnotes, brackets, ellipses, and other alterations in source material.

that, if Congress enacted the TVPRA, it should add language to Section 1595 in order to "stay all pending civil actions in the wake of a criminal prosecution." Id. That was because, the Department of Justice explained, "[w]e believe that prosecutions should take priority over civil redress and that prosecutions should be complete prior to going forward with civil suits." Id.

Only a few courts have had cause to analyze Section 1595(b) and its legislative history in detail. They have all but uniformly expressed the view that Congress enacted Section 1595(b) in response to the Department of Justice's concerns. See Plaintiff A v. Schair, 744 F.3d 1247, 1254-55 (11th Cir. 2014) (explaining that "[t]here is no reason to believe that § 1595(b)'s stay provision was intended to protect an alleged sex-trafficking defendant's rights or interests in any way"); see also, e.g., Lunkes v. Yannai, 882 F. Supp. 2d 545, 549 (S.D.N.Y. 2012); Tianming Wang v. Gold Mantis Constr. Decoration (CNMI), LLC, No. 18 Civ. 30, 2020 WL 5983939, at *2 (D. N. Mar. I. Oct. 9, 2020); Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc., No. 10 Civ. 4124, 2011 WL 5188424, at *2 (W.D. Ark. Oct. 31, 2011).

While the relevant caselaw is not voluminous, there is a clear consensus that, because Section 1595(b)(1) uses the word "shall," it is a "broad, encompassing mandatory stay provision" and a court has "no discretion" to deny a stay where "the provision applies." E.g., Doe 1-10 v. Fitzgerald, No. 20 Civ. 10713 (C.D. Cal. Nov. 17, 2022), ECF No. 217 at 2; G.G. v. Salesforce.com, Inc., No. 20 Civ. 2335 (N.D.

4

Ill. Mar. 10, 2026), ECF No. 364, at 13. Hence, civil claims asserted under the TVPA "must be stayed if (1) a criminal action is pending, (2) the [criminal] action arises out of the same occurrence as the civil action, and (3) the plaintiff in the civil action is also a victim in the criminal action." Bradberry v. Abercrombie & Fitch Co., No. 23 Civ. 9440, 2024 WL 4604508, at *2 (S.D.N.Y. Oct. 29, 2024).

III. Analysis

Bank of America's motion to stay this action presents three related questions. First, as a matter of statutory interpretation, is Section 1595(b)'s automatic stay triggered by the mere existence of an "investigation," or must such an investigation have developed into a "prosecution"? Second, as a factual matter, is there sufficient evidence before the Court to support the inference that there is a pending criminal investigation "arising out of the same occurrence" as Doe's claims and in which Doe or any putative class member is a victim? And third, as a matter of law, does the Court have the authority or obligation to compel the Department of Justice to disclose whether such a criminal investigation is pending? The confluence of these questions appears to present a matter of first impression.

For the reasons set forth in detail below, the Court concludes that Section 1595(b)'s automatic stay is not triggered by the existence of an investigation alone; that there is, in any case, insufficient evidence to support an inference that a relevant investigation is pending here; and that the Government may not be compelled to disclose the existence of such an investigation.

A.    Definition of a "Criminal Action"

Section 1595(b)(2) defines the term "criminal action" to include "investigation and prosecution." Bank of America maintains that this language triggers the automatic stay even where what is pending is a "criminal investigation alone." ECF No. 102 at 4-5. According to Bank of America, "if a prosecution were required for a stay, the word 'investigation' would be superfluous," and that would run counter to the rule of construction that courts must "give effect, if possible, to every clause and word of a statute." ECF No. 102 at 4; Panjiva, Inc. v. U.S. Customs & Border Prot., 975 F.3d 171, 178 (2d Cir. 2020). Moreover, Bank of America points out, the word "and" can carry, depending on the context, either a conjunctive or disjunctive meaning. ECF No. 102 at 4 (citing Confederated Tribes & Bands of Yakama Nation v. Yakima Cnty., 963 F.3d 982, 990-91 (9th Cir. 2020)).

In opposition, Doe contends that the term "criminal action," as used in the TVPA, "refers to a criminal case that has been formally initiated and is capable of proceeding to adjudication in a trial court." ECF No. 104 at 2. On Doe's account, Section 1595(b)(2)'s reference to an action that "is pending until final adjudication in the trial court" can only mean "a criminal proceeding that has progressed to the point of a filed indictment or formal charge." Id.[3]

---

[3] The Government takes no position as to whether Section 1595(b)'s automatic stay is triggered by the existence of an "investigation," separate from the bringing of a "prosecution." ECF No. 103 at 2. As discussed below, however, the Government contends that a civil party's "speculation that there [is] an ongoing criminal investigation" is insufficient to trigger the automatic stay. See id.

Otherwise, Doe argues, a stay prompted by an investigation alone "could persist indefinitely even where no charges are ever filed, because there would never be a 'final adjudication in the trial court.'" Id.

While Section 1595(b) is far from a paradigm of clear drafting and both parties' arguments are colorable, the Court's view is that Doe offers the better reading of the statute. First, Section 1595(b)(2) refers to "investigation and prosecution" (emphasis added). Bank of America is correct, of course, that "and" can sometimes mean "or," but "and" more often actually means "and." Cf. Confederated Tribes & Bands, 963 F.3d at 990 ("the ordinary meaning of 'and' is typically conjunctive"). Read in context, Section 1595(b)(2) encompasses all the stages of a criminal action that has progressed to "final adjudication in the trial court." One of those stages is investigation, but if Congress had intended Section 1595(b)(2)'s automatic stay to be triggered by an investigation alone, it could easily have written "or" instead of "and." Second, this reading of Section 1595(b)(2) does not necessarily turn the words "investigation and" into surplusage because the term "prosecution" is itself ambiguous, possibly referring to all post-indictment proceedings but also possibly referring only to some portion of them, such as the prosecution of a case at trial. "Investigation and prosecution" therefore encompass the entirety of a filed criminal case through "final adjudication in the trial court." See 18 U.S.C. § 1595(b). Third, in opposing the enactment of the TVPA and requesting that Congress include in it a provision like Section 1595(b), the Department of Justice referred repeatedly to the

7

"prosecution" of cases. See H.R. Rep. 108-264(II), at *16-17. Particularly important, in the Court's view, is the Department of Justice's request that Section 1595(b) "should stay all pending civil actions in the wake of a criminal prosecution." Id. at *16 (emphasis added). Not once in its submission to Congress did the Department of Justice suggest that a stay should follow from the mere existence of an investigation. See id. at *16-17.

Hence, the Court concludes that an automatic stay pursuant to Section 1595(b) is triggered by the commencement of a criminal case, rather than by the existence of a criminal investigation. And because no criminal case that falls within the meaning of Section 1595(b) has been filed, it follows that no stay is required here.

B.    Evidence of a Pending Investigation

But even if the Court agreed with Bank of America that the existence of a criminal investigation were enough to trigger Section 1595(b)'s automatic stay, there is insufficient evidence before the Court that there is any pending criminal investigation "arising out of the same occurrence and in which [Doe or any member of the putative class] is the victim." See 18 U.S.C. § 1595(b)(2).

The Government has declined to indicate that any such investigation is pending. See generally ECF No. 103. Bank of America contends that the Court should infer the existence of such an investigation from a combination of four sources: (1) public media reports; (2) documents published by the Department of Justice in connection with the release of the so-called "Epstein Files";

8

(3) statements by the Government both about the publication of those documents and about the subpoenas served by Bank of America in this case; and (4) public statements by Doe's counsel. See ECF No. 102 at 1 & nn.1-3. But none of these sources supports the inference that Bank of America requests the Court to draw.

As to media reports, Bank of America cites an article reporting that the President of the United States stated that "he will ask Attorney General Pam Bondi to investigate convicted sex offender Jeffrey Epstein's ties to many other high-profile figures." ECF No. 102 at 1 n.1 (citing Kristen Holmes et al., Trump Says He's Asking Justice Department to Investigate Epstein's Ties to Slew of High-profile Figures, CNN (Nov. 14, 2025)). But such a promised presidential directive -- assuming, arguendo, that it was in fact issued -- does not necessarily imply that any criminal investigation was ever initiated, nor does it necessarily imply that any such investigation arises out of the "same occurrence" as Doe's lawsuit. That "occurrence" -- Doe's alleged trafficking by Epstein, Bank of America's alleged participation in her trafficking, and Bank of America's alleged obstruction of the enforcement of the TVPA -- is not the only "occurrence" out of which the criminal investigation purportedly directed by the President could arise.

Then, as to materials published as part of the "Epstein Files," Bank of America points to two documents marked "Confidential - Pursuant to Fed. R. Crim. P. 6(e)." See ECF No. 102 at 1 n.1. Rule 6(e) is the provision of the Federal Rules of Criminal Procedure governing the

9

recording and disclosure of grand jury proceedings. The markings appear to match the font and size of other markings on the documents that use the acronyms "SDNY," apparently indicating the U.S. Attorney's Office for the Southern District of New York, "GM," and "DB". See Epstein Files Database, https://www.justice.gov/epstein/files/DataSet%209/EFTA00128820.pdf; https://www.justice.gov/epstein/files/DataSet%209/EFTA01385994.pdf (accessed Mar. 16, 2026). One of the documents cited by Bank of America pertains, on its face, to Epstein's co-conspirator Ghislaine Maxwell and to Deutsche Bank. See https://www.justice.gov/epstein/files/DataSet%209/EFTA01385994.pdf. While the Court cannot be certain, the most likely interpretation of the initials "GM" and "DB" is that the documents concern Ghislaine Maxwell and Deutsche Bank, respectively. Because Maxwell was convicted of sex trafficking in the Southern District of New York and because Deutsche Bank settled the civil case brought against it in this Court, these markings do not imply the existence of a pending criminal investigation. See United States v. Maxwell, No. 20 Cr. 330 (S.D.N.Y.); Doe 1 v. Deutsche Bank Aktiengesellschaft, No. 22 Civ. 10018 (S.D.N.Y.).

Next, Bank of America contends that the Government has "all but confirmed" the existence of a pending criminal investigation in its public statements about the "Epstein Files" and in representations it has made to Bank of America. ECF No. 102 at 1 & n.2. Again, the record suggests otherwise. Bank of America cites a news article for the proposition that the Department of Justice has withheld certain documents from publication "because they 'relate to an ongoing federal

10

investigation.'" ECF No. 102 at 1 & n.2. But Bank of America plainly takes this language out of context. Its source quotes the Department of Justice as saying that the withheld documents "were 'privileged, are duplicates[,] or relate to an ongoing federal investigation.'" Stephen Fowler & Saige Miller, Justice Department Publishes Some Missing Epstein Files, NPR (Mar. 6, 2026), https://www.npr.org/2026/03/05/nx-s1-5737562/justice-department-missing-epstein-files-trump. The full quotation makes clear that a document's having been withheld from publication hardly means that it relates to a pending criminal investigation. The same is true of Bank of America's other source, a press conference given by the Deputy Attorney General on the occasion of the release of the "Epstein Files." Bank of America claims that the Deputy Attorney General "not[ed] 'an active federal investigation,'" ECF No. 102 at 1 n.2, but in fact, the Deputy Attorney General mentioned the possibility of ongoing investigations as one among a series of reasons why the Department of Justice withheld documents from publication, see Deputy Attorney General Blanche Announces Latest Epstein Release of More than 3 Million Pages, PBS (Jan. 30, 2026), https://tinyurl.com/y3j9mvta, at 4:09-4:48 (listing numerous reasons for withholding documents).

Bank of America separately contends that the U.S. Attorney's Office for the Southern District of New York "has withheld critically relevant information" from Bank of America "on grounds that presume an investigation exists." ECF No. 102 at 1. But the Government's submission makes clear that Bank of America's logic is again faulty:

because numerous privileges entitle the Government to withhold or redact documents, the fact that the Government contested certain of Bank of America's subpoena requests provides "no basis for . . . an inference" that there is an ongoing criminal investigation within the meaning of Section 1595(b). See ECF No. 103 at 2-3.

Last, Bank of America claims that Doe's counsel "has alluded to an investigation," citing the appearance of one of Doe's lawyers on a podcast. ECF No. 102 at 1 n.3. But this evidence is even flimsier. Doe's counsel stated: "[W]e have provided to the government other information as they've asked us, you know, who else was involved." See ECF No. 102 at 1 n.3 (quoting We Can Do Hard Things with Glennon Doyle, Epstein Survivors' Attorney Who Exposed Government Conspiracy: Brad Edwards (Feb. 12, 2026)). To the extent that plaintiff's counsel has generically provided information to the Government or generically answered the Government's questions, that hardly serves as a basis for the Court to infer that there is a pending criminal investigation that would trigger the automatic stay.

In contrast to all this, other circumstances give the Court reason to doubt that an investigation within the meaning of Section 1595(b) is pending. Doe asserts that, among other things, she "has never been interviewed by the Federal Bureau of Investigation or the United States Attorney's Office for the Southern District of New York"; that she "has never been subpoenaed by or called to testify before a grand jury"; and, perhaps most relevantly, that she "has never received any

12

victim notification from the Department of Justice identifying her as a victim in a pending criminal investigation." ECF No. 104 at 2.[4]

For all these reasons, the Court has no basis to conclude that a criminal investigation within the meaning of Section 1595(b) is pending. Thus, even were Bank of America correct that the existence of an investigation alone were sufficient to trigger an automatic stay of these proceedings, the evidence before the Court is insufficient to establish that factual predicate.

C.   Disclosure by the Government

Alternatively, Bank of America suggests that, should the Court require additional evidence regarding the existence of a pending criminal investigation, the Court should "invite the Government to disclose additional details either on the record or ex parte." ECF No. 102 at 2. But neither the parties nor the Government have cited "any case in which a court has ordered the United States to disclose the existence or nonexistence of an ongoing criminal investigation in order to apply" Section 1595(b). ECF No. 103 at 2. The Court rejects Bank of America's invitation to become the first such court.

Section 1595 is entirely silent as to Bank of America's alternative request for relief. That is, the statute does not authorize the Court to direct the Government to disclose whether a relevant

---

[4] To be sure, because the instant case is a putative class action, Doe's representations are not conclusive because Section 1595(b) could be satisfied if there were a pending criminal investigation in which any putative class member is a victim. See ECF No. 102 at 5. But there is insufficient evidence to that effect either, so the Court need not consider the issue further.

criminal investigation is pending. See 18 U.S.C. § 1595.[5] Given Congress's silence, the Court interprets Section 1595 in light of "clear evidence of congressional intent" and the well-established privileges against disclosure that prosecutors enjoy. Cf. United States v. Coonan, 143 F.4th 119, 127 (2d Cir. 2025) (authorizing the use of legislative history to "illuminate ambiguous text").

As the Court discussed above, and as the parties agree, Congress enacted Section 1595(b) in response to concerns expressed by the Department of Justice that "prosecutions should take priority over civil redress and that prosecutions should be complete prior to going forward with civil suits." H.R. Rep. 108-264(II), at *17; see also ECF No. 102 at 4; ECF No. 103 at 1-3; ECF No. 104 at 2. It follows, as courts appear to have uniformly held, that the intended beneficiary of Section 1595(b) is the Government, not any civil defendant. E.g., Plaintiff A, 744 F.3d at 1254-55 ("There is no reason to believe that § 1595(b)'s stay provision was intended to protect an alleged sex-trafficking defendant's rights or interests in any way, much less in an important way."); Does 1-9 v. Murphy, No. 20 Civ. 947, 2023 WL 2423113, at *3 (D.S.C. Mar. 9, 2023) ("[B]ased on the legislative history, and the very name of the Act, the purpose of the Trafficking Victims Protection Act, as amended . . . was to protect victims of trafficking and strengthen the government's ability to prosecute perpetrators."); Lunkes, 882 F. Supp. 2d at 549; Tianming Wang, 2020

---

[5] To be sure, the statute does not expressly preclude the Court from doing so. See id.

14

WL 598939, at *2; Kolbek, 2011 WL 5188424, at *2. Accordingly, courts have occasionally permitted the Government to intervene in civil actions for the purpose of invoking Section 1595(b). Ara v. Khan, No. 07 Civ. 1251, 2007 WL 1726456, at *1 (E.D.N.Y. June 14, 2007) (granting Government's motion to intervene for purpose of requesting Section 1595(b) stay); Doe v. Fitzgerald, No. 20 Civ. 10713, 2022 WL 18110021, at *2-5 (C.D. Cal. Dec. 14, 2022) (similar), aff'd, 102 F.4th 1089 (9th Cir. 2024), cert. denied sub nom. Fitzgerald v. U.S. Attorney's Office, S. Dist. of N.Y., 145 S. Ct. 378 (2024). Courts have not required the Government to do so.

Because Congress enacted Section 1595(b) for the benefit of the Government, the Court concludes that ordering the Government to disclose the existence of a pending investigation would directly contravene Congress's intent. Cf. Kolbek, 2011 WL 5188424, at *2 (noting that "the government may exercise its rights under [Section 1595(b)] to impose a mandatory stay if and when appropriate").

That conclusion is bolstered by the numerous privileges the Government enjoys in investigating criminal conduct and deciding whether to bring charges. As the Government points out here, "whether a non-public criminal investigation exists is information protected by . . . the law enforcement privilege, work product doctrine, and deliberative process privilege." ECF No. 103 at 2. Indeed, the Department of Justice asserted such privileges, along with others, when it withheld thousands of documents from the publication of the "Epstein Files." See Memorandum from Deputy Attorney General (Jan. 30,

15

2026), at 2, 4, https://www.justice.gov/opa/media/1426091/dl. And longstanding Department of Justice regulations prohibit the release of information where, among other things, a disclosure would not be appropriate "under the relevant substantive law concerning privilege" or a disclosure "would reveal investigative records compiled for law enforcement purposes . . . or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired." 28 C.F.R. § 16.26(a)(2), (b)(5); cf. In re Att'y Gen. of U.S., 596 F.2d 58, 61, 68 (2d Cir. 1979) (issuing writ of mandamus and vacating contempt order where Attorney General cited such regulations as basis for refusal to make disclosures). Thus, there are numerous reasons why the Government may rightfully refuse to disclose the existence or nonexistence of a pending criminal investigation, and the mere fact of the Government's refusal does not provide a valid basis for an inference that any such investigation in fact exists.

Because Congress' intent in enacting Section 1595(b) was to avoid interference with law enforcement functions and because the Government enjoys well-established privileges against disclosure, the Court rejects Bank of America's request to direct the Government to make any disclosures in this matter.

## IV.  Conclusion

For all the foregoing reasons, the Court issued its March 11, 2026, bottom-line Order denying Bank of America's motion to stay.

New York, New York
March 20, 2026

_____
JED S. RAKOFF, U.S.D.J.

16