**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| JANE DOE, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>       v.<br><br>BANK OF AMERICA, N.A.,<br><br>    Defendant. | Case No. 25-cv-8520 (JSR) |

## CLASS REPRESENTATIVE'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR (I) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; AND (II) APPROVAL OF NOTICE TO THE CLASS

BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY
Telephone: (212) 446-2300
Fax: (212) 446-2350


EDWARDS HENDERSON, PLLC
425 N. Andrews Ave., Suite 2
Fort Lauderdale, FL 33301
Telephone: (954) 524-2820
Fax: (954) 524-2822

*Counsel for Plaintiff Jane Doe*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................ii

PRELIMINARY STATEMENT ........................................................................................... 2

HISTORY OF THE LITIGATION ....................................................................................... 4

NEGOTIATION OF SETTLEMENT ................................................................................... 5

SETTLEMENT TERMS ....................................................................................................... 6

ARGUMENT......................................................................................................................... 7

    I.    THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS. . 7

        A.    The Requirements of Rule 23(a) Are Easily Satisfied.................................................. 7

        B.    Rule 23(b)(3) Are Satisfied........................................................................................ 10

        C.    The Court Should Appoint BSF and EH as Class Counsel and Jane Doe as Class Representative Pursuant to Rule 23(g)(1)...................................................................... 11

    II.    PRELIMINARY APPROVAL IS WARRANTED AND WILL ALLOW LEAD PLAINTIFF TO NOTIFY THE CLASS. ............................................................................ 12

        A.    Rule 23(e)(2) Factors Are Satisfied. .......................................................................... 14

            1.    Lead Plaintiff and Class Counsel Have Adequately Represented the Class............. 14

            2.    The Proposed Settlement Is the Result of Good Faith, Arm's-Length Negotiations 14

            3.    The Relief Provided by the Settlement Is Adequate When Weighed Against the Risks of Litigation.................................................................................................... 15

            4.    The Proposed Method for Distributing Relief Is Effective...................................... 16

            5.    Class Counsel's Fee and Expense Request Is Fair and Reasonable ........................ 17

            6.    All Class Members Are Treated Equitably Relative to One Another....................... 22

         B.    The Proposed Settlement Meets the *Grinnell* Factors. .............................................. 22

    III.    NOTICE TO THE CLASS SHOULD BE APPROVED................................................. 24

CONCLUSION.................................................................................................................... 25

i

## TABLE OF AUTHORITIES

**Cases**

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)......................................................................................................... 18

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
    504 F.3d 229 (2d Cir. 2007)............................................................................................. 21

*Christine Asia Co., Ltd. v. Yun Ma*,
    2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ................................................................... 20

*City of Providence v. Aeropostale, Inc.*,
    2014 WL 1883494 (S.D.N.Y. May 9, 2014) ............................................................... 15, 18

*Clark v. Ecolab, Inc.*,
    2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009).................................................................... 14

*Consol. Edison, Inc. v. Ne. Utilities*,
    332 F. Supp. 2d 639 (S.D.N.Y. 2004)................................................................................ 25

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995)................................................................................................. 7

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)................................................................................................ 23

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)................................................................................... 13, 22, 23

*Doe 1 v. JPMorgan Chase Bank, N.A.*,
    2023 WL 3945773 (S.D.N.Y. June 12, 2023) ............................................................ passim

*Doe v. Bank of Am., N.A.*,
    2026 WL 380385 (S.D.N.Y. Feb. 11, 2026)........................................................................ 5

*Ebin v. Kangadis Food Inc.*,
    297 F.R.D. 561 (S.D.N.Y. 2014) ........................................................................................ 9

*Espinoza v. 953 Assocs. LLC*,
    280 F.R.D. 113 (S.D.N.Y. 2011) ........................................................................................ 9

*Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*,
    62 F. 4th 704 (2d Cir. 2023) ............................................................................................. 21

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000)................................................................................... 13, 18, 19, 21

*Gordon v. Vanda Pharms. Inc.*,
2022 WL 4296092 (E.D.N.Y. Sept. 15, 2022) ........................................................ 18

*Hicks v. Stanley*,
2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .......................................................... 22

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) ............................................................................ 14

*In re Agent Orange Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984) .......................................................................... 24

*In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig.*,
2009 WL 762438 (S.D.N.Y. Mar. 24, 2009) ........................................................... 18

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012)...................................................................... 23

*In re BHP Billiton Ltd. Sec. Litig.*,
2019 WL 1577313 (S.D.N.Y. Apr. 10, 2019)........................................................... 19

*In re CRM Holdings*,
2016 WL 4990290 (S.D.N.Y. Sept. 7, 2016)............................................................ 18

*In re Drexel Burnham Lambert Grp., Inc.*,
960 F.2d 285 (2d Cir. 1992).................................................................................... 10

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
2007 WL 2230177 (S.D.N.Y. July 27, 2007) .......................................................... 15

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010).............................................................. 19

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................................ 13

*In re GSE Bonds Antitrust Litig.*,
2019 WL 6842332 (S.D.N.Y. Dec. 16, 2019)........................................................... 15

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019)...................................................................... 22

*In re Initial Pub. Offering Sec. Litig.*,
243 F.R.D. 79 (S.D.N.Y. 2007) .............................................................................. 12

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
2018 WL 3475465 (S.D.N.Y. July 19, 2018) ..................................................... 12, 14

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ................................................................................... 15

*In re MF Global Holdings Ltd. Inv. Litig.*,
  310 F.R.D. 230 (S.D.N.Y. 2015) ............................................................................. 10, 11

*In re PaineWebber Ltd. P'ships Litig.*,
  147 F.3d 132 (2d Cir. 1998).......................................................................................... 12

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ..................................................................................... 23

*In re Petrobras Sec. Litig.*,
  317 F. Supp. 3d 858 (S.D.N.Y. 2018)............................................................................ 10

I*n re Petrobras Sec. Litig.*,
  862 F.3d 250 (2d Cir. 2017)........................................................................................... 10

*In re Petrobras Secs. Litig.*,
  2018 WL 4521211 (S.D.N.Y. Sept. 21, 2018) ................................................................ 7

*In re Vitamin C Antitrust Litig.*,
  2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ............................................................... 23

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972) .......................................................................................... 24

*Pantelyat v. Bank of Am., N.A.*,
  2019 WL 402854 (S.D.N.Y. Jan 31, 2019) ................................................................... 16

*Pub. Employees' Ret. Syst. of Mississippi v. Merrill Lynch & Co.*,
  277 F.R.D. 97 (S.D.N.Y. 2011) ....................................................................................... 8

*S.J. v. Choice Hotels Int'l, Inc.*,
  473 F. Supp. 3d 147 (E.D.N.Y. 2020) ............................................................................. 8

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  650 B.R. 524 (Bankr. S.D.N.Y. 2023)............................................................................. 7

*Sewell v. Bovis Lend Lease, Inc.*,
  2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012)................................................................ 23

*Vargas v. Capital One Fin. Advisors*,
  559 F. App'x 22 (2d Cir. 2014) ..................................................................................... 25

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1982)............................................................................................. 25

**Statutes**

iv

18 U.S.C. § 1591.................................................................................................................. 8

28 U.S.C. § 1715................................................................................................................ 25

**Rules**

Fed. R. Civ. P. 10.............................................................................................................. 7
Fed. R. Civ. P. 23 ………………………………………………………………….. passim

**Other Authorities**

2 Newberg on Class Actions § 4.63 (5th ed. 2018) ....................................................... 10

Plaintiff Jane Doe ("Lead Plaintiff"), individually and on behalf of a proposed class of similarly situated victims (the "Class"), respectfully submits this memorandum of law in support of her unopposed motion for: (i) preliminary approval of the proposed Settlement[1] of *Jane Doe v. Bank of America, N.A.*, No. 25-cv-8520 (S.D.N.Y.) (the "Litigation"), between Lead Plaintiff, on behalf of herself and the members of the Class, and Defendant Bank of America, N.A. ("Defendant," "BANA," or the "Bank") (together with Lead Plaintiff, the "Parties"), in an amount of $72.5 million plus certain litigation costs and claims administration costs; (ii) conditional certification of the proposed class for settlement purposes under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure; (iii) appointment of Boies Schiller Flexner LLP ("BSF") and Edwards Henderson, PLLC ("EH") as Class Counsel and of Lead Plaintiff as the Class Representative; (iv) approval of the form and manner of the notice to be provided to the Class; and (v) the scheduling of a hearing (the "Settlement Hearing") for the final approval of the Settlement and Class Counsel's application for an award of attorneys' fees and litigation costs and expenses, and deadlines related thereto. The Parties' agreed proposed Order Granting Preliminary Approval Pursuant to Fed. R. Civ. P. 23 (e)(1) and Permitting Notice to the Class (the "Preliminary Approval Order") and Final Order are filed herewith, as Exhibits A and B, respectively.

On March 15, 2026, the Parties reached a settlement in principle of this Litigation. The negotiated Settlement Terms included the following Settlement Class definition:

> all women who were sexually abused or trafficked by Jeffrey Epstein, or by any person who is connected to or otherwise associated with Jeffrey Epstein or any Jeffrey Epstein sex-trafficking venture, between June 30, 2008 and July 6, 2019, inclusive. This includes, but is not limited to: (1) girls under the age of 18 who engaged in sexual contact with Epstein and/or a person connected to or otherwise associated with Epstein, and received money or something else of value in

---

[1] Unless otherwise stated or defined, all capitalized terms used herein shall have the meanings provided in the Stipulation of Settlement, as filed simultaneously herewith. All emphasis is added and all citations are omitted unless otherwise noted.

exchange for engaging in that sexual contact; (2) women aged 18 or older who were forced, coerced, or defrauded into engaging in sexual contact by Epstein, and/or anyone connected to Epstein or otherwise associated with Epstein by, for example, using physical force, threatening harm or legal action, making a false promise, or causing them to believe that not engaging in sexual contact would result in harm, and who received money or something else of value in exchange for engaging in that sexual contact; and (3) girls or women of any age with whom Epstein, and/or a person connected to or otherwise associated with Epstein, engaged in sexual contact without consent (even if the sexual contact was perceived to be consensual provided that the girl or woman was under the age of 18 at the time of engaging in that contact).

## PRELIMINARY STATEMENT

The Parties have negotiated, at arm's length and with the assistance of experienced and neutral mediators, a proposed settlement of all claims in this Litigation for $72.5 million in cash and Defendant's agreement to pay for certain litigation costs and claims administration costs. The Settlement is the result of a pre-Complaint investigation and analysis, extensive fact, class certification, and expert discovery, taking depositions, producing and reviewing hundreds of thousands of pages of documents, and exchanging reports and rebuttal reports of ten expert witnesses. The Settlement represents a substantial recovery that falls well within the range of reasonable resolutions. The terms of the Settlement are set forth in the Stipulation of Settlement (the "Stipulation"), filed simultaneously herewith.

Lead Plaintiff and Class Counsel approve of the Settlement. Lead Plaintiff is an alleged victim of Jeffrey Epstein's sex trafficking and actively oversaw the Litigation and authorized the Settlement. Class Counsel have deep litigation experience, including class action litigation and litigation on behalf of survivors of sex trafficking and abuse, and are recognized leaders in those fields. Based upon their years of experience and evaluation of the facts and the applicable law, Class Counsel and Lead Plaintiff submit that the proposed Settlement is fair, reasonable, adequate, and in the best interests of the Class. This is especially so considering the risk that the Class might recover substantially less if the action were litigated through summary judgment, trial, and the

2

likely post-trial motions and appeals that would follow (a process that could last several years). Given these and other risks inherent in this complex class action, as well as the Settlement's significant value, the Settlement represents an excellent and fair result for the Class. Decl. of Class Counsel ¶¶ 10–19. The proposed Settlement resolves the Class's claims and satisfies all the criteria for preliminary settlement approval.

At this stage, the Court need only conduct a preliminary evaluation of the fairness of the Settlement to determine whether notice to the Class is appropriate. Considering the substantial recovery obtained, and the risks and burdens entailed in summary judgment, trial, and appeal, Lead Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement and enter the Preliminary Approval Order. Among other things, the Preliminary Approval Order: (i) preliminarily approves the Settlement on the terms set forth in the Stipulation; (ii) approves the form and content of the Notice of Proposed Settlement of Class Action (the "Notice") and the Summary Notice of Proposed Settlement of Class Action (the "Summary Notice"), attached to the Stipulation as Exhibits A-1 and A-2, respectively; (iii) holds that the procedures for distribution of the Notice and publication of the Summary Notice in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances and comply with the notice requirements of Due Process and Rule 23 of the Federal Rules of Civil Procedure; and (iv) sets a schedule and procedures for disseminating the Notice and publication of the Summary Notice, objecting to the Settlement or Class Counsel's application for an award of attorneys' fees and litigation costs and expenses, submitting papers in support of final approval of the Settlement, and the Settlement Hearing. Lead Plaintiff also submits a proposed Schedule of Settlement events attached hereto as Exhibit C.

3

**HISTORY OF THE LITIGATION**

Lead Plaintiff's counsel commenced the action on October 15, 2025 by filing an initial individual and class action complaint, which was later amended on December 29, 2025.[2] At the heart of the Amended Complaint, Lead Plaintiff alleges that Jeffrey Epstein's sex trafficking venture was facilitated and enabled by Defendant helping Epstein avoid regulators' scrutiny and providing Epstein with withdrawal and wire services, all so Defendant could profit from Epstein and his associates. ECF No. 51. Lead Plaintiff further alleges that Defendant's assistance to Epstein's sex trafficking enterprise prevented the authorities from discovering his illegal scheme and increased the size and scale of Epstein's access to and control of victims, causing damage to members of the Class. Defendant has expressly denied, and continues to deny, that it participated in or otherwise assisted, supported, or facilitated the Epstein sex-trafficking venture in any way or that it engaged in obstruction.

In preparation for the filing of this action, Class Counsel engaged in extensive research, conducted dozens of interviews, and reviewed thousands of documents they have accumulated over the past fifteen years of litigation against Jeffrey Epstein, his Estate, and his associates. Class Counsel Decl. ¶¶ 5–9. Class Counsel have confidentially interviewed at least 50 individuals, including dozens of survivors both in the United States and abroad, as well as several other witnesses who were close to or associated with Epstein for many years. Additionally, Class Counsel reviewed an enormous volume of publicly available documents regarding Jeffrey Epstein and his sex-trafficking operation, including civil complaints, police reports, investigative reports,

---

[2] The Amended Complaint brought six claims against the Bank: (1) violating the Trafficking Victims Protection Act ("TVPA") by participating in Epstein's sex trafficking venture and benefiting thereby (Count I); (2) violating the TVPA by perpetrating sex trafficking (Count II); (3) aiding, abetting, and inducing TVPA violations (Count III); (4) obstructing the enforcement of the TVPA (Count IV); (5) negligent failure to exercise reasonable care to prevent physical harm (Count V); and (6) negligent failure to exercise reasonable care as a banking institution (Count VI). As explained herein, Counts I and IV survived the Bank's motion to dismiss.

other information obtained through criminal investigations, court transcripts, hundreds of thousands of documents disclosed by the Department of Justice, news articles, audio recordings of survivors, and other publicly available sources. Finally, Class Counsel researched Defendant, including an extensive review of other lawsuits and other regulatory findings.

On November 13, 2025, Defendant moved to dismiss the initial complaint. ECF No. 38. Before ruling on the motion to dismiss, the Court directed Lead Plaintiff to file an Amended Complaint and allowed the Parties to file supplemental briefs. Lead Plaintiff's participation TVPA claim (Count I) and obstruction TVPA claim (Count IV) survived the Bank's motion to dismiss. *See Doe v. Bank of Am., N.A.*, 2026 WL 380385, at *17 (S.D.N.Y. Feb. 11, 2026).

The Parties engaged in extensive discovery efforts spanning several months, including fact, class certification, and expert discovery, taking 8 depositions and defending 2 depositions, producing and reviewing hundreds of thousands of pages of documents, and preparing and rebutting reports for nine expert witnesses. Numerous discovery disputes were litigated, and depositions were continuing. On February 17, 2026, Lead Plaintiff moved for class certification. *See* ECF No. 74. The motion was fully briefed and due to be heard on March 12, 2026.

## NEGOTIATION OF SETTLEMENT

On February 20 and March 9, 2026, the Parties participated in a confidential mediation with Judge Layn R. Phillips of Phillips ADR Enterprises, an experienced mediator, and members of his team. In advance of that mediation, Class Counsel and Defendant's Counsel each provided the mediator with mediation statements. The Parties engaged in good faith negotiations during the mediation sessions and outside the sessions and reached a settlement in principle on March 11, 2026. The Parties negotiated a Term Sheet, memorializing their agreement to settle Lead Plaintiff's and Class Members' claims against Defendant and to end the Litigation and executed a Stipulation

of Settlement on March 27, 2026.

## SETTLEMENT TERMS

The Settlement provides that Defendant will pay, or cause to be paid, $72.5 million into a Qualified Settlement Fund ("QSF"), which will constitute the Global Settlement Amount ("GSA") plus accrued interest. Stipulation ¶ 2.2. The QSF shall be used to pay Class Members their Allocated Amounts and to pay any attorneys' fees that the Court may award. *Id*. ¶ 6.1. Defendant will also separately pay for certain litigation costs and claims administration costs. *Id*. ¶ 2.2. In exchange for these payments, the Lead Plaintiff and Class Members agree to settle and dismiss the Litigation with prejudice and to grant full mutual releases to Bank of America, N.A., Merrill Lynch, Pierce, Fenner & Smith, Inc., BofA Securities, Inc., Bank of America Corporation, and their affiliates as defined in the Stipulation. *Id*. ¶ 1.27. (the "Released Defendant Parties"), subject to the approval by the Court, which the Parties now seek.

Notice to the Class, and the cost of settlement administration ("Notice and Administration Expenses") will be paid from the separate amount to pay Settlement Administration Costs. *Id.* ¶ 2.2. A Fund Administrator will be selected to administer the settlement. *Id.* ¶¶ 1.13, 5.1. That amount plus accrued interest will be held in the QSF. The Parties propose that Simone Lelchuk ("Lelchuk") be retained to administer the settlement. *Id.* As set forth in the proposed Notice, Class Counsel will submit an application in support of final approval of the Settlement and an application for an award of (i) attorneys' fees on behalf of Class Counsel to be paid from the QSF, and (ii) unreimbursed costs, charges, and expenses plus interest accrued on both amounts at the same rate as earned by the QSF. After payments to Class Members, payment of Notice and Administration Expenses, Taxes, Tax Expenses, and Court-approved attorneys' fees, costs, charges, and expenses from the QSF, the remaining amount—if any—shall be distributed to a charitable organization to be determined in a

6

mutually agreeable fashion by the Settling Parties as a *cy pres* recipient. *See In re Petrobras Secs. Litig.*, 2018 WL 4521211, at *5 (S.D.N.Y. Sept. 21, 2018) (Rakoff, J.).

**ARGUMENT**

**I.    THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS.**

The Court should preliminarily approve the proposed Settlement because the proposed Settlement Class meets Rule 23(a)'s threshold requirements and this action qualifies for certification under Rule 23(b)(3).

Rule 23(a) requires that every class must satisfy: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. *Doe 1 v. JPMorgan Chase Bank, N.A.*, 2023 WL 3945773, at *2 (S.D.N.Y. June 12, 2023); Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). All requirements are met here.[3]

**A.    The Requirements of Rule 23(a) Are Easily Satisfied.**

*Numerosity:* Courts presume numerosity at forty members. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Here, the proposed Settlement Class satisfies this threshold. The Proposed Settlement Class consists of women who were sexually abused or trafficked by Epstein or his co-conspirators between June 30, 2008, and July 6, 2019, a period that the Bank or an affiliate maintained bank accounts for Epstein, his co-conspirators, and associated

---

[3] Lead Plaintiff adopts by incorporation the arguments and evidence advanced in her Class Certification Motion and Reply in support of the same. ECF Nos. 75, 93. *See also* Fed. R. Civ. P. 10 (c) ("A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion."); *see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 650 B.R. 524, 543 (Bankr. S.D.N.Y. 2023) (recognizing "pleadings filed in the 'same action' may be properly adopted by reference in other pleadings in that action."). The arguments herein summarize the arguments made in Lead Plaintiff's certification papers. Defendant reserves the right to contest certification if the settlement is not approved.

entities. The Department of Justice stated publicly in July 2025 that the evidence confirms that Epstein harmed over *1,000* victims. Further, Class Counsel is aware that there are at least *60* women who were victimized by Epstein between June 20, 2008, and July 6, 2019—well within the agreed Settlement Class Period.

*Commonality:* Rule 23's commonality requirement is met if all class members' claims share a common question of law or of fact. *Pub. Employees' Ret. Syst. of Mississippi v. Merrill Lynch & Co.*, 277 F.R.D. 97, 105 (S.D.N.Y. 2011) (Rakoff, J.). Lead Plaintiff brings two TVPA claims on behalf of the class: *First*, a beneficiary liability claim under 18 U.S.C. § 1591(a), the elements of which are that "(1) the person or entity must knowingly benefit, financially or by receiving anything of value, (2) from participating in a venture, (3) that the person knew or should have known has engaged in an act in violation of this chapter." *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 152–53 (E.D.N.Y. 2020) (citation omitted); and *second*, an obstruction of TVPA enforcement claim, which requires proof that the Bank acted to obstruct, attempt to obstruct, interfere with, or prevent an investigation or prosecution into Epstein for trafficking. Adjudicating each of Lead Plaintiff's TVPA claims requires addressing common questions of law and fact shared by all members of the proposed Settlement Class. As to the beneficiary claim, this includes at least the following common issues: (1) whether Jeffrey Epstein ran a sex-trafficking venture; (2) whether BANA knew or should have known about Epstein's sex-trafficking venture; (3) whether the Bank benefited from the trafficking venture; and (4) whether BANA participated in Epstein's sex-trafficking venture. As to the obstruction claim, each class member would have to prove common questions of knowledge, intent, and whether BANA obstructed a prosecution or investigation.

*Ascertainability:* "Class members need not be ascertained prior to certification, but must

be ascertainable at some point in the case." *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 125 (S.D.N.Y. 2011). This standard is "not demanding." *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 567 (S.D.N.Y. 2014). The proposed Settlement Class is defined to include women abused or trafficked by Epstein between June 30, 2008, and July 6, 2019, during which BANA or an affiliate maintained bank accounts for him, his affiliated entities, or his co-conspirators. Members of this proposed Settlement Class may be ascertained by reference to publicly available information, including law enforcement reports, legal proceedings, statements to the media, and documents produced by the Bank. *See JPMorgan*, 2023 WL 3945773, at *5.

*Typicality:* Lead Plaintiff's claims are typical of other proposed Settlement Class members because each class member's claim arises from the same course of events and each makes similar legal arguments to prove the defendant's liability. *Id.* These claims arise from allegations of BANA's uniform practice of providing extensive financial services to Epstein that enabled him to traffic and abuse victims in the proposed Class Settlement at an unprecedented scale and with impunity, evading government detection through BANA's alleged complicity. Like the other proposed Settlement Class members, Lead Plaintiff suffered injuries during Epstein's alleged relationship with BANA, or an affiliate, caused by the sex-trafficking venture, and pursuant to Epstein's established *modus operandi*, which involved targeting women and girls with vulnerabilities; luring them to his mansions, at which a victim would be forced to provide a massage, dangling money, opportunities, and access to celebrities coupled with threats, coercion, and indoctrination to coerce his victims' compliance with his exploitative demands. AC ¶¶ 28–31, 197–224; *see also* ECF No. 75 at 9–10.

*Adequacy*: Under Rule 23(a)(4), adequacy requires that the representative parties will "fairly and adequately protect the interests of the class." *See In re MF Global Holdings Ltd. Inv.*

*Litig.*, 310 F.R.D. 230, 237 (S.D.N.Y. 2015). Here, Lead Plaintiff has actively participated in and monitored the litigation, and has participated fully in discovery. Plaintiff's interests align with the proposed Settlement Class members' interests; she suffered the same or similar injuries as the other proposed Settlement Class members, and she has prosecuted this matter vigorously. *JPMorgan*, 2023 WL 3945773, at *7. Further, her counsel is qualified and able to conduct the litigation. *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).

### B. Rule 23(b)(3) Are Satisfied.

***Predominance***: Rule 23(b)(3) certification turns on whether common issues predominate over individualized issues. *JPMorgan*, 2023 WL 3945773, at *8. "[A] common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *In re Petrobras Sec. Litig.*, 862 F.3d 250, 270 (2d Cir. 2017) (citation omitted). Moreover, "[t]he predominance requirement differs between trial and settlement." *In re Petrobras Sec. Litig.*, 317 F. Supp. 3d 858, 870 (S.D.N.Y. 2018), *aff'd*, 784 F. App'x 10 (2d Cir. 2019). Because the proposed Settlement contemplates that there will be no trial, issues relating to the proportion of class-wide evidence to individualized evidence at trial are of lesser importance. *See* 2 Newberg on Class Actions § 4.63 (5th ed. 2018) ("[I]n settlement class actions, because manageability need not be a concern, predominance – the main focus of manageability – recedes in importance as well.").

Even so, common, class-wide issues predominate in this case. Lead Plaintiff brings claims for violations of the TVPA. Lead Plaintiff's TVPA claims for beneficiary liability and obstruction of TVPA enforcement will primarily require the adjudication of issues common to the class and subject to common proof, including the existence of a sex-trafficking venture operated by Jeffrey Epstein, the alleged banking services BANA or an affiliate provided to Epstein, BANA's alleged knowledge about the sex-trafficking venture, whether BANA benefitted from the sex-trafficking

10

venture, and what steps the Bank took to obstruct enforcement of the TVPA.

*Superiority*: Here, "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" in this context. Fed. R. Civ. P. 23(b)(3). The relevant factors include:

> (A) The class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

*Id*. These factors weigh in favor of certifying the proposed Class. The TVPA was designed to protect victims of trafficking, who are vulnerable, may fear reprisal or the loss of anonymity, and wish to avoid repeatedly revisiting their past traumas. Class treatment is superior in this context. *See, e.g.*, *JPMorgan*, 2023 WL 3945773, at *11. Class treatment would also avoid a "multiplicity and scattering of suits" that would follow were the victims of Epstein's venture to independently vindicate their rights in courts across the country. *In re MF Global Holdings*, 310 F.R.D. at 239 (citation omitted). Moreover, many Class members are not proficient in English and lack familiarity with the U.S. legal system, such that class treatment is preferable. *JPMorgan*, 2023 WL 3945773, at *11. Lastly, "there are no apparent difficulties that are likely to be encountered in the management of this action as a class action apart from those inherent in any hard-fought battle where substantial sums are at issue and all active parties are represented by able counsel." *Id.*

### C. The Court Should Appoint BSF and EH as Class Counsel and Jane Doe as Class Representative Pursuant to Rule 23(g)(1).

Rule 23(g)(1) provides that "a court that certifies a class must appoint class counsel." As fully briefed in Lead Plaintiff's class certification papers, ECF Nos. 75, 93, BSF and EH should be appointed as Class Counsel under Rule 23(g). Proposed Class Counsel invested substantial time and resources investigating Doe's claims, prosecuting this case, and gathering discovery from the

11

Bank and third parties. Further, Class Counsel are well qualified to represent the proposed

Settlement Class and its interests. Indeed, Class Counsel have significant experience handling class

actions, complex litigation, banking matters, matters involving trafficking and abuse, and, more

specifically, cases related to Epstein's sex-trafficking venture.

## II.    PRELIMINARY APPROVAL IS WARRANTED AND WILL ALLOW LEAD PLAINTIFF TO NOTIFY THE CLASS.

In the Second Circuit, there is a "strong judicial policy in favor of settlements, particularly

in the class action context." *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir.

1998). Courts have also approved class settlements in TVPA cases. *E.g.*, *JPMorgan*, 2023 WL

3945773, at *1. Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of a

class action settlement. The approval process typically takes place in two stages. *In re LIBOR-*

*Based Fin. Instruments Antitrust Litig.*, 2018 WL 3475465, at *1 (S.D.N.Y. July 19, 2018). In the

first stage, a court provides preliminary approval of the settlement and authorizes notice of the

settlement to be given to the class. *Id.* In the second stage, which will come only if the Court grants

this motion, the Court will hold a fairness hearing and "make[] a final determination as to whether

the proposed settlement is fair, reasonable and adequate." *In re Initial Pub. Offering Sec. Litig.*,

243 F.R.D. 79, 87 (S.D.N.Y. 2007).

Pursuant to Rule 23 (e)(1)(B), the preliminary approval of a settlement is appropriate where

"the parties[] . . . show[] that the court will likely be able to: (i) approve the proposal under Rule

23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Rule 23 (e)(2)

identifies factors that courts must consider in determining whether a class action settlement is "fair,

reasonable, and adequate," including whether:

> a) the class representative and class counsel have adequately represented the class;
> b) the proposal was negotiated at arm's length;
> c) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorneys' fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

d) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Overlapping with the factors listed in Rule 23(e) are the nine so-called *Grinnell* factors, which the Second Circuit has counseled district courts to consider in determining whether to grant final approval to a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the Global Settlement Fund to a possible recovery in light of all the attendant risks of litigation.

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

The Rule 23(e) factors are not intended to "displace" any previously adopted factors but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23 (e)(2) advisory committee's note to 2018 amendment. Likewise, "[i]n finding that a settlement is fair, not every factor must weigh in favor of settlement, rather the court should consider the totality of these factors in light of the particular circumstances." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004) (internal quotations omitted).

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties.

13

*Clark v. Ecolab, Inc.*, 2009 WL 6615729, at \*3 (S.D.N.Y. Nov. 27, 2009). "If, after a preliminary evaluation of the proposed settlement, the court finds that it 'appears to fall within the range of possible approval,' the court should order that the class members receive notice of the settlement." *Id*. Here, the proposed Settlement provides for a QSF of $72.5 million in cash, a beneficial recovery to the Class, and within the range of possible approval.

### A. Rule 23(e)(2) Factors Are Satisfied.

#### 1. Lead Plaintiff and Class Counsel Have Adequately Represented the Class

Lead Plaintiff's interests in this case align with those of the other proposed Settlement Class Members. *See In re LIBOR-Based Fin. Instruments*, 2018 WL 3475465, at \*3. Lead Plaintiff, who alleges she suffered the same or similar injuries as other proposed Settlement Class Members, has demonstrated her ability and willingness to pursue the litigation on the proposed Settlement Class's behalf through her active involvement in the litigation, including by searching for and producing documents, scheduling a deposition, reviewing numerous filings, staying apprised of developments in the case, participating in settlement negotiations, and approving the Settlement. *See In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 184 (S.D.N.Y. 2014). Lead Plaintiff and Class Counsel zealously advocated for the interests of victims of Jeffrey Epstein and have obtained an excellent result on the proposed Settlement Class's claims. Lead Plaintiff's decision to settle this case was informed by a thorough investigation of the relevant claims; extensive fact and expert discovery; extensive briefing on a motion to dismiss, a motion for class certification, motions relating to discovery issues; and participation in extensive settlement negotiations. The Settlement is the product of well-informed negotiations and vigorous advocacy on behalf of victims of Epstein.

#### 2. The Proposed Settlement Is the Result of Good Faith, Arm's-Length Negotiations

Courts presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations between counsel. *See In re EVCI Career Colleges Holding Corp. Sec.*

14

*Litig.*, 2007 WL 2230177, at \*4 (S.D.N.Y. July 27, 2007). This is particularly true when, as here, a mediator assisted the parties in reaching a settlement. *In re GSE Bonds Antitrust Litig.*, 2019 WL 6842332, at \*2 (S.D.N.Y. Dec. 16, 2019) (Rakoff, J.) ("[T]he parties engaged in mediation and the mediator's declaration confirms that the settlement agreement was 'a product of extensive and informed negotiations conducted at arm's length' by 'sophisticated and capable counsel.'"). As described above, the Settlement was reached only after extensive, arm's-length negotiations before a nationally recognized mediator who is experienced in class actions. In advance of that mediation, the Parties submitted detailed mediation statements. Importantly, the mediators engaged by the Parties have mediated a number of similar, large settlements involving sexual abuse victims.

In addition, the Parties and their counsel were knowledgeable about the strengths and weaknesses of the case prior to reaching an agreement to settle. Lead Plaintiff agreed to settle after extensive pre- and post-pleading factual investigation and towards the close of fact discovery. Lead Plaintiff and Class Counsel therefore had an adequate basis for assessing the strengths and weaknesses of the Class's claims and Defendant's defenses when they agreed to the Settlement. *See In re Marsh ERISA Litig.*, 265 F.R.D. 128, 139 (S.D.N.Y. 2010). These circumstances confirm the fairness of the proposed Settlement.

### 3. The Relief Provided by the Settlement Is Adequate When Weighed Against the Risks of Litigation

Courts consider the best possible recovery and litigation risks in deciding "not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case." *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at \*9 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). A court thus need only determine whether the settlement falls within a range of reasonableness that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and

15

costs necessarily inherent in taking any litigation to completion." *Pantelyat v. Bank of Am., N.A.*, 2019 WL 402854, at *7 (S.D.N.Y. Jan 31, 2019).

If approved, the Settlement will provide Settlement Class Members with $72.5 million in cash, less reasonable attorneys' fees, unreimbursed expenses of Class Counsel, taxes, and tax expenses. The recovery obtained represents a favorable result for the Class. Additionally, although Lead Plaintiff and Class Counsel believe their case against Defendant is strong, they acknowledge that Defendant has presented arguments in defense of the matter. Lead Plaintiff and Class Counsel considered the risks that are presented by any jury trial and the inevitable post-trial motions or appeal. Moreover, even if ultimately successful, the trial and appeal would take several years, thereby delaying the recovery by Settlement Class Members of damages they suffered years ago. When viewed in this context, the Settlement is extremely beneficial to the Class.

### 4. The Proposed Method for Distributing Relief Is Effective

The method of the proposed notice and claims administration process is effective. This includes well-established, effective procedures for giving notice to potential Class Members, processing claims submitted by Class Members, and efficiently distributing the GSA.

The Parties recommend that Simone Lelchuk be appointed as the Fund Administrator. Ms. Lelchuk was appointed as the Fund Administrator in the *Jane Doe v. JPMorgan Chase Bank, N.A.*, No. 22-cv-10018 (S.D.N.Y.), *Jane Doe v. Deutsche Bank*, No. 22-cv-10019 (S.D.N.Y.), and *Ward v. Indyke et al*, No. 21-cv-01204 (S.D.N.Y.) cases and as such, she has extensive experience in handling claims of this nature and will not only be proficient in identifying non-viable claims, but also well-situated to deliver fair compensation determinations to claimants.

The notice plan includes direct mailing (via electronic mail) of the Notice to all Class Members who can be identified with reasonable effort, supplemented by the publication of the Summary Notice in *USA Today* and *Gazeta Wyborcza.* Additionally, a dedicated website will be

16

created for the Settlement and will be updated regularly with information and key documents concerning the Settlement, including the Stipulation, Notice, Settlement Forms, Preliminary Approval Order, and all briefs and declarations in support of the Settlement and an award of attorneys' fees and expenses.

The proposed claims process also includes a Questionnaire and Release that requests the information necessary to allow the Fund Administrator to evaluate each claim individually. The Stipulation will govern how Class Members' claims will be calculated and how money will be distributed to Participating Claimant. At the outset, a Questionnaire and Release will be provided to the Fund Administrator with built-in protections to avoid the possibility of fraudulent claims, and the Fund Administrator will determine based upon a review of a Class Member's Questionnaire and Release whether the Class Member is eligible to receive an Allocated Amount from the QSF.

The Fund Administrator shall consider the circumstances, severity, type, and extent of the alleged abuse or trafficking, the nature and duration of the relationship with Epstein, any cooperation with government investigations or refusal to cooperate with government investigations or refusal to cooperate with this civil litigation including any convictions relating to Epstein's sex trafficking venture, and the impact of the alleged conduct on the Participating Claimant, and any other factors the Fund Administrator deems relevant.

### 5. Class Counsel's Fee and Expense Request Is Fair and Reasonable

Class Counsel will apply for an award of attorneys' fees to Class Counsel, plus any unreimbursed litigation costs and expenses incurred in connection with the prosecution, and interest earned on both amounts. For the reasons set forth below, Class Counsel respectfully submits that this request, which will be further briefed in Class Counsel's forthcoming motion for attorneys' fees and

expenses, is fair and reasonable.[4]

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Courts in this District have consistently adhered to this precedent. *In re CRM Holdings*, 2016 WL 4990290, at *2 (S.D.N.Y. Sept. 7, 2016) (recognizing that "attorneys who create a common fund to be shared by a class are entitled to an award of fees and expenses from that fund as compensation for their work."); *Aeropostale, Inc.*, 2014 WL 1883494, at *11 (same).

Courts use one of two methods to determine a reasonable fee: (1) the percentage of recovery method; and (2) the lodestar method. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). The percentage of recovery method is the preferred method for calculating the reasonableness of attorneys' fees. *In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig.*, 2009 WL 762438, at *2 (S.D.N.Y. Mar. 24, 2009).

Courts are further guided by the traditional criteria for determining a reasonable fee in a common fund case: (1) quality of the representation; (2) the requested fee in relation to the settlement; (3) the time and labor expended by counsel; (4) the risk of the litigation; (5) the magnitude and complexities of the litigation; and (6) public policy considerations. *Goldberger*, 209 F.3d at 50. Considering these factors, Class Counsel's forthcoming fee request is reasonable.

***The quality of representation.*** Class Counsel's fee request will be substantially premised on the successful outcome obtained for the Class. When placed in the context of similar settlements

---

[4] A motion for final approval of the Settlement, including a motion for attorneys' fees and expenses, will be filed thirty-five (35) calendar days before the Settlement Hearing. *See Gordon v. Vanda Pharms. Inc.*, 2022 WL 4296092, at *5 (E.D.N.Y. Sept. 15, 2022) (noting that "it is premature to pass judgment on any anticipated fee application" at the preliminary approval stage).

and analyzed considering the specific here, Class Counsel submits that the $72.5 million outcome is an excellent result. Class Counsel vigorously pursued TVPA claims against sophisticated defense counsel, litigating the case past a challenging motion to dismiss and through a robust fact and expert discovery period. Thus, Class Counsel's forthcoming fee request is reasonable.

*The relationship of the requested fee to the settlement.* Class Counsel's forthcoming request for no more than 30% of the Settlement Amount is reasonable and is on par with other awards in comparable class actions over the last ten years. *See In re BHP Billiton Ltd. Sec. Litig.*, 2019 WL 1577313, at *1 (S.D.N.Y. Apr. 10, 2019), *aff'd sub nom. City of Birimingham Ret. & Relief Sys. v. Davis*, 806 F. App'x 17 (2d Cir. 2020), *as amended* (Mar. 17, 2020).

It is also appropriate for the Court to use the fee applicant's lodestar as a cross-check on reasonableness. *Goldberger*, 209 F.3d at 50. Class Counsel's forthcoming fee request is appropriate under that metric, too. In this contingency fee case, Class Counsel bore substantial risk that it would be paid nothing for its work on behalf of the Class. Fees in excess of the lodestar are routinely awarded to account for this contingency-fee risk and other factors. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010).

*Counsel's time and labor.* Class Counsel expended substantial time and effort pursuing the litigation on behalf of the Class. Unlike many firms that regularly participate in class action matters, BSF routinely serves as counsel for both plaintiffs and defendants. BSF is primarily a trial firm and prepares its case strategy based on anticipating the requirements for trial and working back from there in implementing strategy for discovery, experts, and motion practice. EH is a litigation firm specializing in the civil representation of survivors of violent crimes, primarily victims of sexual abuse and sex-trafficking. Together, Class Counsel respectfully submits that the combined approach taken led directly to the successful settlement.

Class Counsel staffed the matter efficiently and avoided any unnecessary duplication of effort. Moreover, additional hours and resources will necessarily be expended seeking the Court's final approval of the Settlement, assisting Class Members with the completion and submission of Settlement Forms, responding to Class Member inquiries, and presenting the final proposed allocation of settlement proceeds among the Class Members. Given the significant amount of time and effort devoted by Class Counsel to obtain a $72.5 million recovery, a request for attorneys' fees not to exceed 30% of the Settlement Amount is appropriate.

*The litigation risks*. As set forth above, while Lead Plaintiff remains confident in her claims, trying her case to a jury as a class action would present a risk if Defendant's motion for summary judgment was denied. Defendant raised numerous challenges to Lead Plaintiff's allegations of liability under TVPA. Further, class certification was not certain, and maintaining class certification through trial carries risk. *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *13 (S.D.N.Y. Oct. 16, 2019).

The fee award also should take into account the risk that Class Counsel would walk away from this case with nothing. Class Counsel undertook this litigation on a wholly contingent-fee basis, has not yet been compensated for any time or expenses since it began to represent the Class, and would have received no compensation or payment of its expenses had this case not been resolved successfully. In undertaking that responsibility, Class Counsel was obligated to ensure that sufficient attorney and paraprofessional resources were dedicated to prosecuting the litigation and that funds were available to pay the substantial out-of-pocket expenses. Under such circumstances, the financial burden on contingent–fee counsel is far greater than on a firm that is paid on an ongoing basis. With the specter of an exceedingly costly loss always looming, Class Counsel's assumption of the contingent-fee risk strongly supports the reasonableness of a fee

request. *See Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F. 4th 704, 727 (2d Cir. 2023) (recognizing that "significant litigation risk present in this case meant that class counsel had taken on a venture with a high risk of failure, and that the risk should be compensated").

***The litigation's complexities and magnitude.*** The Court may make "specific and detailed findings from the record, as well as from its own familiarity with the case" to determine whether Class Counsel has met an element of the *Goldberger* test. *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 249 (2d Cir. 2007). Here, such findings support Class Counsel's contention that the complexity and magnitude of the Litigation support a fee award for Class Counsel's diligent efforts to secure an excellent settlement.

The Litigation involved significant briefing, motion practice, fact discovery, and expert discovery between Class Counsel and Defendant's Counsel, requiring sophisticated law firms with significant experience both litigating class action lawsuits and negotiating settlements to deploy significant resources to litigate effectively on behalf of their clients. The Litigation overlapped with government investigations, expanding the complexity of the substance of the typical class action context. Due to these overlapping areas of expertise required, discovery and motions practice were particularly complex and hard-fought, and would continue to be hard fought were litigation to continue. Given the complexity of the Litigation and the significant public interest it attracted, and the resources required to litigate the matter, Class Counsel's ability to secure a favorable outcome weighs in favor of Class Counsel's proposed fee award.

***Considerations of public policy.*** Public policy considerations support awarding the requested fee, particularly because pursuing sex trafficking victims' rights is a necessary and important goal for the legal community. The reality is that "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on

21

behalf of the class." *Hicks v. Stanley*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005). Appropriately compensating Class Counsel here will incentivize competent counsel to shoulder the significant risk of contingent-fee litigation in service of the public's interest in pursuing the rights of sex trafficking victims.

### 6.  All Class Members Are Treated Equitably Relative to One Another

Rule 23 (e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. Here, the proposed method of allocation is fair, reasonable, and adequate because it does not treat Lead Plaintiff or any other Class Member preferentially. The Settlement Agreement and Notice each explain how the Settlement proceeds will be distributed among eligible Class Members.

### B.  The Proposed Settlement Meets the *Grinnell* Factors.

***The Complexity, Expense, and Likely Duration of the Litigation Supports Approval of the Settlement.*** The first factor of the *Grinnell* analysis overlaps with the Rule 23 (e)(2)(C)(i) factor of "the costs, risks, and delay of trial and appeal" addressed above. This case is reflective of the complexity, expense, and duration of class actions.

***The Reaction of the Class to the Settlement.*** Lead Plaintiff supports the Settlement based on her direct participation in the prosecution of the case, in the mediation, and in the decision to enter into the Settlement. At this stage, prior to distribution of notice to potential Settlement Class Members, this factor need not be further addressed. *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 699 n.1 (S.D.N.Y. 2019) (Rakoff, J.) (consideration of second *Grinnell* factor "is generally premature at the preliminary approval stage").

***The Stage of the Proceedings.*** The extent and substance of Lead Plaintiff's and Class Counsel's knowledge of the merits and potential weaknesses of the claims alleged are more than adequate to support the Settlement. The voluminous discovery record of hundreds of thousands of

pages of documents, taking 8 depositions and defending 2 depositions, as well as the extensive expert reports and the evidentiary submissions made during mediation, permitted Lead Plaintiff and Class Counsel to weigh the strengths and weaknesses of the case and to engage in effective settlement negotiations. *Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124, at \*8 (S.D.N.Y. Apr. 16, 2012).

**The Risk of Establishing Liability and Damages.** The fourth *Grinnell* factor is addressed above under Rule 23(e)(2)(C)(i) ("costs, risks, and delay of trial and appeal"). As explained above, Lead Plaintiff has satisfied the fourth *Grinnell* factor.

**The Risks of Maintaining the Class Action through Trial.** Although the risk of maintaining a class through trial is present in every class action, this factor nevertheless weighs in favor of settlement where, such as here, it is "likely that defendants would oppose class certification if the case were to be litigated." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 39–40 (E.D.N.Y. 2019); *see also In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 268–69 (S.D.N.Y. 2012). Such is the case here. Lead Plaintiff and Defendant reached a settlement. However, if the case were to proceed to trial, if the Court were to grant the pending motion for class certification Defendant could—and likely would—appeal that order, *see* Fed. R. Civ. P. 23(f), seek to narrow the Class definition at a later point, and/or move for decertification of the class that the Court certified, *see* Fed. R. Civ. P. 23(c)(1)(C).

**Defendant's Ability to Withstand a Greater Judgment.** While not generally determinative, a court may consider a defendant's ability to withstand a judgment greater than that secured by the proposed settlement. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001). Courts generally do not find this factor to be an impediment to settlement when the other *Grinnell* and Rule 23 factors favor settlement, particularly in actions against large corporate defendants. *See In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at \*6 (E.D.N.Y. Oct. 23, 2012).

***The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation.*** The adequacy of the amount recovered in a settlement must be judged not in comparison with the best possible recovery, but rather in light of the strengths and weaknesses of plaintiffs' case. *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). The Court need only determine whether the Settlement falls within a "range of reasonableness"—a range that recognizes the uncertainties of law and fact and the risks and costs necessarily inherent in taking any litigation to completion. *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). Given the nature of Defendant's conduct and knowledge, the period involved, and the complexity of the case, the Settlement amount is reasonable.

## III.    NOTICE TO THE CLASS SHOULD BE APPROVED.

As outlined in the agreed-upon form of the proposed Preliminary Approval Order, and described above, Lead Plaintiff will notify proposed Settlement Class Members by mailing the Notice and Settlement Forms to all proposed Settlement Class Members who can be identified with reasonable effort.

The Notice will advise Class Members of the essential terms of the Settlement and provide information regarding Class Counsel's application for an award of attorneys' fees and expenses. The Notice will also provide specifics on the date, time, and place of the Settlement Hearing and set forth the procedures for both submitting valid and timely Settlement Forms and objecting to the Settlement, and/or the application for attorneys' fees and unreimbursed expenses. Further, the Notice will provide contact information for the Fund Administrator and Class Counsel and advise proposed Settlement Class Members how to obtain further information regarding the Settlement. In addition to mailing (via electronic mail) the Notice and Settlement Forms, the Fund Administrator will cause publication of a Summary Notice in *USA Today* and *Gazeta Wyborcza*. Defendant will serve notice of the proposed Settlement on the appropriate federal and state officials

under the Class Action Fairness Act, 28 U.S.C. § 1715, *et seq*.

The form and manner of providing notice to the Class satisfy the requirements of Due Process and Federal Rule of Civil Procedure 23. Under Rule 23(c)(2), the Court "must direct to class members the best notice that is practicable under the circumstances." *Vargas v. Capital One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014). Additionally, the notice must fairly apprise the prospective members of the proposed Settlement Class of the proposed settlement terms and the opportunity to opt out of or object to the settlement. *Id*. at 27. The requirements of Due Process impose similar requirements. *Consol. Edison, Inc. v. Ne. Utilities*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004). Here, the manner of providing notice, which includes (i) the creation of a dedicated website, and (ii) notice published in *USA Today* and *Gazeta Wyborcza* represents the best notice practicable under the circumstances. The Notice and Summary Notice will also include (i) the rights of the proposed Settlement Class Members, including the manner in which objections can be lodged, (ii) the nature, history and progress of the litigation, (iii) how to file Settlement Forms, (iv) a description of the Plan of Allocation (also described in the Stipulation), and (v) the fees and litigation expenses to be sought by Class Counsel. For these reasons, the Notice and Summary Notice satisfy all requirements of Due Process and Rule 23. *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982).

## CONCLUSION

Lead Plaintiff respectfully requests that the Court: (i) preliminarily approve the Settlement; (ii) approve the proposed form and manner of notice to be given to the Class; and (iii) schedule a hearing on Lead Plaintiff's motion for final approval of the Settlement and Class Counsel's application for an award of attorneys' fees and expenses.

25

Dated: March 27, 2026

Respectfully submitted,

*/s/ David Boies*
David Boies
Andrew Villacastin
Rachael Schafer
Boies Schiller Flexner LLP
55 Hudson Yards
New York, NY
Telephone: (212) 446-2300
Fax: (212) 446-2350
Email: dboies@bsfllp.com
Email: avillacastin@bsfllp.com
Email: rschafer@bsfllp.com

Sigrid McCawley
Daniel Crispino
Megan Nyman
Andrea Guzman
Boies Schiller Flexner LLP
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33316
Telephone: (954) 356-0011
Fax: (954) 356-0022
Email: smccawley@bsfllp.com
Email: dcrispino@bsfllp.com
Email: mnyman@bsfllp.com
Email: aguzman@bsfllp.com

Jessica Lim
Boies Schiller Flexner LLP
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Telephone: (213) 995-5745
Email: jlim@bsfllp.com

Bradley J. Edwards
Brittany N. Henderson
Dean Kaire
Edwards Henderson
425 N. Andrews Ave., Suite 2
Fort Lauderdale, FL 33301
Telephone: (954) 524-2820
Fax: (954) 524-2822
Email: brad@cvlf.com
Email: brittany@cvlf.com

26

Email: dean@cvlf.com

*Counsel for Plaintiff Jane Doe*

## CERTIFICATE OF COMPLIANCE

I, David Boies, hereby certify pursuant to Local Civil Rule 7.1(c) that the foregoing Memorandum of Law was prepared using Microsoft Word and complies with Rule 2(e) of this Court's Individual Rules and Local Rule 7.1(c).

*/s/ David Boies*