**U.S. Department of Justice**

Office of the Deputy Attorney General

---

The Deputy Attorney General

*Washington, D.C. 20530*

January 30, 2026

**Re:  Epstein Files Transparency Act – Production of Department Materials**

President Trump signed the Epstein Files Transparency Act (the Act) into law on November 19, 2025, directing the Department of Justice to produce, with few exceptions, all documents, files, records, videos and images related to the investigations and prosecutions of Jeffrey Epstein and Ghislane Maxwell.[1] Today's production marks the Department's compliance with its production obligations under the Act.

**<u>Overview</u>**

As detailed below, the Department's document identification and review protocols consisted of multiple levels of review and quality control procedures designed to ensure compliance with the Act, resulting in the production of all materials from the Department, with few identified exceptions. More than 500 attorneys and reviewers from the Department contributed to this effort, with the objective of identifying all potentially responsive materials for review and production while carefully redacting any information that could identify victims or that was otherwise required to be redacted under law. In addition, the United States Attorney's Office for the Southern District of New York (USAO-SDNY) employed an additional review protocol to ensure compliance with a court order under which United States Attorney Jay Clayton must certify that, with respect to certain materials, a rigorous process was undertaken to protect victims against any clearly unwarranted invasion of personal privacy.

The Department's collection efforts resulted in more than 6 million pages being identified as potentially responsive, including Department and FBI emails, interview summaries, images,

---

[1] In relevant part, the Act requires the Department to publish (in a searchable and downloadable format), among other things, "all unclassified records, documents, communications, and investigative materials in the possession of the Department . . . that relate to (1) Jeffrey Epstein including all investigations, prosecutions, or custodial matters; (2) Ghislaine Maxwell; (3) flight logs and travel records . . . ; and (4) individuals, including government officials, named or referenced in connection with Epstein's criminal activities." *See* Sec. 2(a).

Cited in Doe v Bank of America
25-cv-8520 Decided 3/20/26
produced on 3/25/26
The document is protected by copyright.
Further reproduction is prohibited without permission.

videos, and various other materials collected and generated during the various investigations and prosecutions covered by the Act.

These files were collected from five primary sources: (1) the Florida and New York cases against Epstein; (2) the New York case against Maxwell; (3) the New York cases investigating Epstein's death; (4) the Florida case investigating a former butler of Epstein; and (5) multiple FBI investigations; and (6) the Office of Inspector General investigation into Epstein's death. The Department erred on the side of over-collecting materials from various sources to best ensure maximum transparency and compliance with the Act. Prudently over-collecting, coupled with past intra-Department sharing of (and, therefore, duplication of) files across offices and jurisdictions, necessarily means that the number of non-duplicative, responsive pages is significantly smaller than the total number of pages initially collected. As a result, today, the Department is releasing the over 3 million responsive pages, including more than 2,000 videos and 180,000 images. Combined with prior releases, this makes the total production nearly 3.5 million pages released in compliance with the Act.

The Department's efforts to identify all potentially responsive documents has been extensive. This process included identifying materials stored in various formats in multiple offices spanning multiple investigations and prosecutions over a period of over twenty years. As a result, the document identification process was substantially manual and iterative with the document review process often leading Department personnel to search locations not previously identified. These efforts included conferring with available relevant personnel and third parties to best ensure that document identification efforts were informed by personnel associated with the investigative and prosecutorial efforts.

The Department will upload the materials described below through the course of the day. The materials produced by the Department are best reviewed with an understanding of the document identification and review protocol employed by the Department, including the Department's approach to the collection of materials from multiple sources and the redaction of victim-identifying information and other information as contemplated by the Act. This protocol is described below along with a discussion of the Department's approach to (1) the production of certain documents covered by court orders, including an order by the Southern District of New York (SDNY) court handling the case against Maxwell as well as sealing orders in a separate civil action (to which the Department is not a party) as described in further detail below, and (2) the production of sexually explicit material.

### Document Identification and Review Protocol

The Department implemented and periodically updated a review protocol that tracks the language of the Act. Importantly, the protocol provided reviewers with instructions on how to identify and redact victim identifying information and privileged materials. The protocol was updated from time to time as the Department learned more about the scope and type of potentially responsive materials, the various types of information that could identify victims, and

the capabilities and limitations of its document management systems. For example, reviewers were provided with Frequently Asked Questions (FAQs) to update guidance and instructions as common questions arose during the review. The final document identification and review protocol are being produced today as part of the Department's response under the Act.

The protocol established by the Department included several layers of review. The first level of review was completed by over 500 members of the Department, including trial attorneys from the National Security Division and the Criminal Division at Main Justice, Assistant United States Attorneys from the Southern District of Florida, the Southern District of New York, the Northern District of New York, and attorneys and specialists at the Federal Bureau of Investigation. Following the first level of review, a second-level review was conducted by a group of 40 specialized attorneys. These attorneys conducted a sample-based review of the files reviewed by the first-level reviewers to maximize compliance with the Act and the identification and review protocol, including the FAQs. As is common practice in any large-scale document review, if a second-level reviewer identified common errors or over-redactions, those issues were relayed back to the first-level reviewers to ensure that other files were redacted as contemplated by the Act and in accordance with the identification and review protocol. The attorneys from this second-level review team included attorneys from the Department's Office of Privacy and Civil Liberties (OPCL) and Office of Information Policy (OIP), many of whom are experts in privacy rights and have relevant experience with large-scale document reviews.

*Additional SDNY Quality Control Review.* To ensure compliance with the SDNY court order requiring the United States Attorney for the SDNY to certify that materials released under court order (i.e., materials covered by an SDNY court protective order and grand jury materials) had been rigorously reviewed and, through that review, none of released records had been identified to contain personally identifiable information of victims "the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," the Department implemented additional quality control procedures for these materials. Namely, with the exception of materials covered by the SDFL Quality Control Review described below, attorneys from SDNY reviewed: (i) any document identified through search terms as containing a known victim name; (ii) categories of particularly sensitive victim documents (such as prior statements of victims and other related witnesses); and (iii) a random sampling of remaining documents. SDNY's review was focused on reviewing and applying redactions to protect victim information. This process provided another layer of assurance of compliance with the Act and the protection of victims while separately complying with the SDNY court order.

*Additional SDFL Quality Control Review.* Attorneys from the Southern District of Florida (SDFL) also conducted several layers of review focused on reviewing and applying redactions to protect victim information. A set of 36 attorneys conducted an initial review of SDFL files. Thereafter, a set of 10 attorneys conducted a second-level review of the redactions, which was filed by a third-level review based on searches for sensitive victim information. This

process provided another layer of assurance of compliance with the Act and the protection of victim-identifying information while separately complying with the SDNY court order.

In practice, virtually all of the time and attention of Department personnel who participated in the manual review and redaction efforts was devoted to maximizing the protection of victim-identifying information.

*Subsequent Reporting Under the Act.* Under the Act, the Department must subsequently "submit to the House and Senate Committees on the Judiciary a report listing (1) all categories of records released and withheld; (2) a summary of redactions made, including legal basis; [and] (3) a list of all government officials and politically exposed persons named or referenced in the released materials." *See* Sec. 3 (cleaned up). To that end, and as disclosed in the December 19 letter to Congress, the categories of documents withheld include those permitted under the Act: Files that "(A) contain personally identifiable information of victims or victims' personal and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy; (B) depict or contain child sexual abuse materials (CSAM) as defined under 18 U.S.C. 2256 and prohibited under 18 U.S.C. 2252–2252A; (C) would jeopardize an active federal investigation or ongoing prosecution, provided that such withholding is narrowly tailored and temporary; [or] (D) depict or contain images of death, physical abuse, or injury of any person." *See* Sec. 2(c)(1). Although the Act allows for withholding for items necessary "to be kept secret in the interest of national defense or foreign policy"—no files are being withheld or redacted on that basis.

If after that report is submitted any member of Congress wishes to view personally any portions of the production in unredacted form, they are welcome to make arrangements with the Department to do so. These arrangements should be made through the leadership of the House and Senate Committees on the Judiciary and will be subject to customary and appropriate confidentiality undertakings.

*Privileged-Based Redactions.* Further, consistent with the December 19, 2025 letter, the Department withheld or redacted files covered by various privileges, including deliberative-process privilege, the work-product doctrine, and attorney-client privilege. In total, approximately 200,000 pages have been redacted or withheld based on various privileges. A formal report with a summary of redactions made and list of all government officials and politically exposed persons named or referenced in the released materials will be submitted to the House and Senate Committees on the Judiciary within 15 days of today's release.

*Duplications, Potential Inconsistencies and Victim Engagement.* Considering various factors, including the volume of documents reviewed, the presence of duplicative and partially duplicative documents, and the number of attorneys and reviewers involved, inconsistencies will likely exist in how reviewers applied redactions. The multiple-layered review process, including quality control check, was designed to minimize inconsistencies, but variations are inevitable given the volume of materials reviewed, the necessity for manual review, the importance of

redacting victim information, and the iterative nature of the various elements of the protocol. For example, during this process, the Department continued to engage with attorneys representing victims and others. This engagement led to additional victim names being added to the review guidance. In addition, conferring with victim counsel and further review of communications involving people initially identified as victims caused the Department to conclude that certain individuals whose names were initially being redacted out of an abundance of caution should no longer be redacted. At that point, those names were not redacted on a go-forward basis. And while the second-level reviewers took steps to minimize the inconsistencies in redacting those individuals' information, inconsistencies likely remain.

The Department remains committed to protecting the privacy of victims and welcome continued engagement from victims and their counsel. In that regard, the Department has established an email inbox for victims to reach us directly to correct redaction concerns when appropriate.

*Production Format.*   In general, documents have been produced in the format that they were collected and loaded into the document management system. For example, if a document obtained from a third party during the criminal investigation originally had redactions in it, the produced version of that document contains those redactions. Additionally, electronic files (e.g., emails) were provided or obtained in various formats. As they were loaded into the document management system for review, these various formats have caused certain emails to display differently, appear cut off, or display with symbols. In some instances, these documents contain previously applied Bates numbers. Those Bates numbers do not reflect whether an item is responsive under the Act. Only those documents that include a Bates number with "EFTA" in its designation are those that are responsive under the Act. The Department has reviewed and produced these items as they were formatted upon entry into the document management system.

*Foreign Language Documents and Technically Incompatible Documents.*   The Department's collection of documents included pages in various foreign languages. Because it was not practicable for a first-level reviewer to determine the responsiveness of a foreign-language document, those pages have not been produced. Similarly, some materials could not be uploaded for review on the Department's discovery platform because of technical issues with the files. Those items could not be reviewed for responsiveness and have not been produced.

*Protective and Sealing Orders.*   A portion of the documents collected pursuant to the Act include materials that a law firm produced to the SDNY in 2019 pursuant to a grand jury subpoena during the criminal investigation into Ghislaine Maxwell. For the law firm to produce documents responsive to the SDNY subpoena, the SDNY U.S. Attorney sought and obtained a court order allowing the law firm to produce to SDNY materials otherwise covered by a protective order from a separate civil action (again, to which the Department is not a party), and some of which have been filed under seal in that action. The Department concluded that prior to producing the materials pursuant to the Act, it would be prudent to seek an order from the court

allowing production of the materials subject to sealing orders in the civil lawsuit. To that end, the Department has filed that motion in the U.S. District Court for the Southern District of New York and, if and to the extent the motion is granted, will promptly release the materials with appropriate redactions. Additionally, the Department has moved in the U.S. District Court for the Southern District of New York to release certain grand jury materials from an SDNY case charging corrections officers who worked at the correctional facility when Epstein killed himself. If that motion is granted, the materials will be released promptly with appropriate redactions pursuant to the Act.

*Sexually Explicit Materials.*  This production contains sexually explicit videos and images recovered from Epstein's electronic devices pursuant to a search warrant. The Act requires public release of these materials. To comply with the Act while also protecting the identities of female victims or possible victims, females portrayed in the pornographic videos and images have been redacted. Even videos that appear to be commercial pornography have been released in redacted form as part of this production because the Department could not confirm that the individuals in these videos were not victims. As a result, today's production includes redacted sexually explicit materials, requiring anyone entering the Epstein library to verify that they are over the age of 18.

### Conclusion

Today's release marks the end of a comprehensive document identification and review process to ensure transparency to the American people and compliance with the Act. The Department has engaged in an unprecedented and extensive effort to do so. After submitting the formal report to Congress required under the Act and publishing the written justifications in the Federal Register, the Department's obligations under the Act will be completed.

Sincerely,

PAMELA J. BONDI
United States Attorney General

TODD BLANCHE
~~Deputy~~ United States Attorney General
United States Department of Justice

Cited on Doe v Bank of AmNA 23Va520 Decided 3/20/26
Archived on 1/25/26
This document is protected by copyright. Further reproduction is prohibited without permission.