**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JANE DOE, individually and on behalf of all others similarly situated,<br><br>　　Plaintiff,<br><br>　　　　v.<br><br>BANK OF AMERICA, N.A.,<br><br>　　Defendant. | Case No. 25-cv-8520 (JSR) |

**CLASS REPRESENTATIVE'S MEMORANDUM OF LAW IN SUPPORT OF**
**UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
**AND APPROVAL OF THE PLAN OF ALLOCATION**

BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY
Telephone: (212) 446-2300
Fax: (212) 446-2350

EDWARDS HENDERSON, PLLC
425 N. Andrews Ave., Suite 2
Fort Lauderdale, FL 33301
Telephone: (954) 524-2820
Fax: (954) 524-2822

*Counsel for Class Representative Jane Doe*
*and the Class*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

HISTORY OF THE LITIGATION ......................................................................................... 2

ARGUMENT ............................................................................................................................ 3

    I.   FINAL APPROVAL IS WARRANTED. .......................................................................... 3

        A.  The Rule 23(e)(2) Factors Are Satisfied. .................................................................... 5

           1.  Class Representative and Class Counsel Have Adequately Represented the Class. ................................................................................................................... 5

           2.  The Proposed Settlement Is the Result of Good Faith, Arm's Length Negotiations. ...................................................................................................... 6

           3.  The Relief Provided by the Settlement Is Adequate When Weighed Against the Risks of Litigation................................................................................................ 7

               i.  The Settlement Is Reasonable Given the Costs, Risks, and Delay of Trial and Possible Appeals. ........................................................................................ 7

               ii.  The Proposed Method for Distributing Relief and Processing Class-Member Claims Is Effective.................................................................................... 8

               iii. Class Counsel's Fee Request Is Fair and Reasonable................................... 12

           4.  All Class Members Are Treated Equitably Relative to One Another................... 12

        B.  The Proposed Settlement Satisfies the *Grinnell* Factors............................................ 12

    II.  FINAL CERTIFICATION OF THE RULE 23 SETTLEMENT CLASS IS APPROPRIATE................................................................................................................ 16

        A.  Rule 23(a)'s Requirements Are Satisfied. .................................................................. 17

        B.  Rule 23(b)(3)'s Requirements Are Satisfied............................................................... 19

    III. THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE. .................................... 20

    IV. NOTICE TO THE CLASS COMPORTS WITH DUE PROCESS AND SATISFIES THE REQUIREMENTS OF RULE 23. .................................................................................. 22

CONCLUSION...................................................................................................................... 24

i

## TABLE OF AUTHORITIES

**Cases**

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) .......................................................................... 13

*Chalmers v. City of New York*,
2022 WL 4330119 (S.D.N.Y. Sept. 19, 2022) ......................................................................... 20

*Christine Asia Co., Ltd. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .......................................................................... 24

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ............................................................................................... passim

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 ......................................................................................................... 8, 13, 14

*Consol. Edison, Inc. v. Ne. Utilities*,
332 F. Supp. 2d 639 (S.D.N.Y. 2004) ..................................................................................... 24

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995) ...................................................................................................... 17

*Doe 1 v. JPMorgan Chase Bank*,
*N.A.*, 2023 WL 3945773 (S.D.N.Y. June 12, 2023) ......................................................... passim

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) ........................................................................................... 4, 6

*In re Agent Orange Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987) .................................. 16

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012) ..................................................................................... 15

*In re Drexel Burnham Lambert Grp., Inc.*,
960 F.2d 285 (2d Cir. 1992) ................................................................................................... 19

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
2007 WL 2230177 (S.D.N.Y. July 27, 2007) ........................................................................ 5, 6

*In re Facebook, Inc.*,
822 Fed. App'x 40 (2d Cir. 2020) ........................................................................................... 14

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
343 F. Supp. 3d 394 (S.D.N.Y. 2018) ..................................................................................... 14

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................................... 5, 16

*In re GSE Bonds Antitrust Litig.*,
2019 WL 6842332 (S.D.N.Y. Dec. 16, 2019) .................................................................. 5, 6, 17

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) ..................................................................... 7, 14, 21

*In re Merrill Lynch Tyco Research Sec. Litig.*,
249 F.R.D. 124 (S.D.N.Y. 2008) .................................................................................. 22

*In re MF Global Holdings Ltd. Inv. Litig.*,
310 F.R.D. 230 (S.D.N.Y. 2015) ............................................................................. 19, 21

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) ................................................................................ 5, 14

*In re Petrobras Securities*,
862 F.3d 250 (2d Cir. 2017)........................................................................................ 19

*In re USA Gymnastics*,
No. 18-09108 (Bankr. S.D. Ind. Dec. 5, 2018) .......................................................... 21

*In re Veeco Instruments Inc. Sec. Litig.*,
2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007), *aff'd,* 607 F. App'x 73 (2d Cir. 2015) ........ 13, 22

*In re Vitamin C Antitrust Litig.*,
2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012).............................................................. 15

*Joel A. v. Giuliani*,
218 F.3d 132 (2d Cir. 2000)........................................................................................ 3

*McMahon v. Olivier Cheng Catering & Events, LLC*,
2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) .............................................................. 4

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972)........................................................................................ 16

*Nichols v. Noom, Inc.*,
2022 WL 2705354 (S.D.N.Y. July 12, 2022) ............................................................. 5

*Pantelyat v. Bank of Am., N.A.*,
2019 WL 402854 (S.D.N.Y. Jan. 31, 2019) ............................................................... 8

*Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co.*,
277 F.R.D. 97 (S.D.N.Y. 2011) .................................................................................. 17

*Rodriguez v. CPI Aerostructures, Inc.*,
2021 WL 9032223 (E.D.N.Y. Nov. 10, 2021)............................................................ 24

*S.J. v. Choice Hotels Int'l, Inc.*,
473 F. Supp. 3d 147 (E.D.N.Y. 2020) ........................................................................ 18

*Sewell v. Bovis Lend Lease, Inc.*,
2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012)............................................................. 14

*Shapiro v. JPMorgan Chase & Co.*,
   2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ................................................................ 24

*Thompson v. Metropolitan Life Ins. Co.*,
   216 F.R.D. 55 (S.D.N.Y. 2003) ....................................................................................... 5

*Vargas v. Capital One Fin. Advisors*,
   559 F. App'x 22 (2d Cir. 2014) ..................................................................................... 23

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)................................................................................... 3, 22, 25

**Statutes**

18 U.S.C. § 1591 ................................................................................................................ 18

28 U.S.C. § 1715 ................................................................................................................ 23

Trafficking Victims' Protection Act ............................................................................ 17, 20

**Rules**

Fed. R. Civ. P. 23 ........................................................................................................ passim

**Treatises**

Newberg and Rubenstein on Class Actions § 4.63 (6th ed. June 2026 update) ............................ 20

Class Representative Jane Doe ("Class Representative"), individually and on behalf of a class of similarly situated victims (the "Class"), respectfully submits this memorandum of law in support of her unopposed motion for: (i) final approval of the Settlement[1] of *Jane Doe v. Bank of America, N.A.*, No. 25-cv-8520 (S.D.N.Y.) (the "Litigation"), between Class Representative, on behalf of herself and the members of the Class, and Defendant Bank of America, N.A. ("Defendant," "BANA," or the "Bank") (together with Class Representative, the "Parties"), in an amount of $72.5 million plus certain litigation costs and claims administration costs; and (ii) approval of the Plan of Allocation. The terms of the Settlement are set forth in the Stipulation of Settlement dated March 27, 2026 (ECF No. 121-1) (the "Stipulation"). The Court preliminarily approved the Settlement on April 3, 2026 (ECF No. 134) (the "Preliminary Approval Order"). *See* Preliminary Fairness Hr'g Tr. (Apr. 2, 2026) at 15:10–13 (The Court: "I am very grateful to both sides for, first of all, their outstanding work throughout this case, and second, for reaching a settlement, which is almost always in the public interest, as this one appears to be.").

## PRELIMINARY STATEMENT

Following months of hard-fought litigation on an expedited trial schedule, the Parties have reached a $72.5 million settlement agreement for the survivors of Jeffrey Epstein. The Settlement is the product of arm's-length negotiations by experienced and knowledgeable counsel, and will provide life-changing relief to dozens of sex-trafficking survivors whose lives were destroyed by Epstein and his associates. The Settlement is a strong result for the Class given the likely amount

---

[1] Unless otherwise stated or defined, all capitalized terms used herein shall have the meanings provided in the Stipulation of Settlement (ECF No. 121-1), or the accompanying Declaration of David Boies and Bradley J. Edwards in Support of Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation and an Award of Attorneys' Fees ("Boies & Edwards Decl."), and in the Memorandum of Law in Support of Motion for an Award of Attorneys' Fees, submitted concurrently herewith. All emphasis is added and all citations are omitted unless otherwise noted.

1

of recovery, the defenses that Defendant advanced, the nature of the class being comprised of victims of sex trafficking and sexual abuse, and the design of a confidential claim process with an experienced Fund Administrator that allowed Epstein survivors to decide the extent to which they want to participate given the significant potential for re-traumatization. The Settlement therefore satisfies each of the Rule 23(e)(2) factors, as well as the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

Class Representative respectfully submits that the Settlement for $72.5 million, plus Defendant's agreement to separately pay Class Representative's litigation costs and all claims administration costs, and the Plan of Allocation are fair and reasonable. Accordingly, Class Representative respectfully requests that the Court grant final approval of the Settlement and the Plan of Allocation under Rule 23(e) of the Federal Rules of Civil Procedure.

## HISTORY OF THE LITIGATION

Drawing on their extensive experience investigating the inner workings of Jeffrey Epstein's multi-decade sex-trafficking enterprise, Class Counsel commenced the action on October 15, 2025 by filing an initial Individual and Class Action complaint, which was later amended on December 29, 2025.[2] At the heart of the Amended Complaint, Class Representative alleges that Epstein's sex-trafficking venture was facilitated and enabled by Defendant helping Epstein avoid regulators' scrutiny and providing Epstein with banking and wire services, all so Defendant could profit from

---

[2] The Amended Complaint brought six claims against the Bank: (1) violating the Trafficking Victims Protection Act ("TVPA") by participating in Epstein's sex-trafficking venture and benefiting thereby (Count I); (2) violating the TVPA by perpetrating sex trafficking (Count II); (3) aiding, abetting, and inducing TVPA violations (Count III); (4) obstructing the enforcement of the TVPA (Count IV); (5) negligent failure to exercise reasonable care to prevent physical harm (Count V); and (6) negligent failure to exercise reasonable care as a banking institution (Count VI). As explained in the Preliminary Approval Motion, Counts I and IV survived the Bank's motion to dismiss. *See* ECF No. 122 at 5.

Epstein and his associates. ECF No. 57. Class Representative further alleges that Defendant's assistance to Epstein's sex-trafficking enterprise delayed law enforcement's discovery of Epstein's illegal scheme, increasing Epstein's access to and control of victims and causing additional damage to members of the Class.

Once commenced, the Litigation proceeded at a very fast pace, with robust fact and expert discovery, and intense motion practice including a motion to dismiss, to certify the class, and numerous discovery motions. For a full recitation of the case history, Class Representative respectfully refers the Court to her Memorandum of Law in Support of Unopposed Motion for (i) Preliminary Approval of Class Action Settlement; and (ii) Approval of Notice to the Class for a discussion of the factual background and procedural history of the Litigation, the significant efforts undertaken by Class Representative and Class Counsel during the Litigation, the risks of continued litigation, and the negotiations leading to the Settlement. *See* ECF No. 122 at 4–7.

## ARGUMENT

## I.    FINAL APPROVAL IS WARRANTED.

The Court should grant final approval of the settlement pursuant to Rule 23(e). To become final and binding, the Settlement requires this Court's approval. *See* Fed. R. Civ. P. 23(e) ("The claims . . . [of] a class proposed to be certified for purposes of settlement . . . may be settled . . . only with the court's approval."). Courts should approve a "class action settlement if it is 'fair, adequate, and reasonable, and not a product of collusion.'" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). In evaluating proposed settlements, courts consider "both the settlement's terms and the negotiating process leading to settlement." *Id*. This assessment is conducted "in light of the 'strong judicial policy favoring settlements' of class action suits." *McMahon v. Olivier Cheng Catering & Events, LLC*, 2010 WL 2399328, at *3 (S.D.N.Y. Mar. 3, 2010); *see also In re Adv. Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 174 (S.D.N.Y. 2014)

3

("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation."). Thus, the Second Circuit has instructed that, although proposed settlements should not be "rubber stamp[ed]," courts should "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Grinnell*, 495 F.2d at 462.

To determine whether final approval is warranted, the Court first conducts an inquiry pursuant to Rule 23(e)(2), which identifies factors that must be considered in determining whether a class settlement is "fair, reasonable, and adequate," including whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i)  the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Court then considers the nine so-called *Grinnell* factors, which overlap with the Rule 23(e)(2) factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the reasonableness of the settlement fund to a possible recovery in light of all of the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463. "[T]he new Rule 23(e) factors . . . add to, rather than displace, the *Grinnell* factors," and "there is significant overlap" between the two "as they both guide a court's

4

substantive, as opposed to procedural, analysis." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019). Not every factor need be satisfied for a settlement to be deemed substantively and procedurally fair, reasonable, and adequate. "[R]ather, the court should consider the totality of these factors in light of the particular circumstances." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Nichols v. Noom, Inc.*, 2022 WL 2705354, at *7 (S.D.N.Y. July 12, 2022).

As set forth below, the Parties' $72.5 million Settlement is fair, reasonable, and adequate under the relevant 23(e)(2) factors, and the *Grinnell* factors strongly support final approval.

## A. The Rule 23(e)(2) Factors Are Satisfied.

### 1. Class Representative and Class Counsel Have Adequately Represented the Class.

The determination of adequacy under Rule 23(e)(2)(A) "typically 'entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019) (Rakoff, J.). Both factors favor approval here.

As set forth in support of her motion for class certification, *see* ECF No. 77, and motion for preliminary approval of the Settlement, *see* ECF No. 122, Class Representative's interests in this case are directly aligned with those of the other Class Members. *See Wal-Mart*, 396 F.3d at 106–07 ("Adequate representation of a particular claim is established mainly by showing an alignment of interests between class members."). Class Representative has demonstrated her ability and willingness to pursue the Litigation on the Class's behalf through her active involvement in the Litigation, including by responding to written discovery, searching for and

5

producing documents in response to numerous requests and follow-up requests, including private medical records, constantly communicating with counsel during the development of the case, scheduling a deposition, preparing for a deposition, sitting for a deposition, undergoing a Rule 35 medical exam, reviewing numerous filings, staying apprised of developments in the case, participating in settlement negotiations, and approving the Settlement. *See In re Adv. Battery Techs., Inc.*, 298 F.R.D. at 184. Class Representative and Class Counsel zealously advocated for the interests of survivors of Epstein, and Class Representative's decision to settle this case was informed by a thorough investigation of the relevant claims; extensive fact and expert discovery; extensive briefing and supplemental briefing on a motion to dismiss, a motion for class certification, and motions relating to discovery issues; and participation in extensive settlement negotiations. Since preliminary approval, Class Counsel have worked diligently with dozens of Class Members and the Fund Administrator to facilitate the claims process. The Settlement is the product of well-informed negotiations and vigorous advocacy on behalf of survivors of Epstein. Accordingly, this factor weighs in favor of approval of the Settlement.

## 2. The Proposed Settlement Is the Result of Good Faith, Arm's Length Negotiations.

Courts presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations between counsel, particularly where, as here, a mediator assisted the parties in reaching a settlement. *See In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007); *In re GSE Bonds Antitrust Litig.*, 2019 WL 6842332, at *2 (S.D.N.Y. Dec. 16, 2019) (Rakoff, J.) ("[T]he parties engaged in mediation and the mediator's declaration confirms that the settlement agreement was 'a product of extensive and informed negotiations conducted at arm's length' by 'sophisticated and capable counsel.'"). The Settlement was reached after extensive, arm's-length negotiations before Judge Layn R. Phillips of Phillips ADR Enterprises, a nationally recognized mediator experienced in class actions. ECF No. 121-2 ¶

6

13. Judge Phillips has mediated similar, large settlements on behalf of sexual abuse victims, including the related case *Doe 1 v. JPMorgan Chase Bank, N.A.*, (22-cv-10019) (S.D.N.Y.). *Id.* ¶ 3. Before reaching a Settlement, the Parties submitted detailed mediation statements and supporting evidence. *Id.* ¶ 6.

The Parties and their counsel understood the strengths and weaknesses of the case before reaching a settlement. Class Representative agreed to settle only after extensive pre- and post-pleading factual investigation, and near the close of fact discovery. Class Representative and Class Counsel therefore had an adequate basis for assessing the strength of the Class's claims and Defendant's defenses when they agreed to the Settlement.  *See, e.g.*, *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 139 (S.D.N.Y. 2010). This factor weighs in favor of granting final approval.

### 3. The Relief Provided by the Settlement Is Adequate When Weighed Against the Risks of Litigation.

Under Rule 23(e)(2)(C), the Court must also consider whether the relief provided for the class is "adequate" in light of "the costs, risks, and delay of trial and appeal"; "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"; "the terms of any proposed award of attorney's fees, including timing of payment"; and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(i)–(iv). These factors support approving the Settlement.

#### i. *The Settlement Is Reasonable Given the Costs, Risks, and Delay of Trial and Possible Appeals.*

Courts consider both the best possible recovery and litigation risks in deciding "not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case." *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *9 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). A court thus need only determine whether the settlement falls within a range of reasonableness that

"recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion. *Pantelyat v. Bank of Am., N.A.*, 2019 WL 402854, at *7 (S.D.N.Y. Jan. 31, 2019).

If approved, the Settlement will provide Class Members with $72.5 million in cash, less reasonable attorneys' fees and interest thereon, taxes, and tax expenses—a strong recovery given that each Class Member will receive an uncapped Allocated Amount. Additionally, although Class Representative and Class Counsel believe their case against Defendant is strong, they acknowledge Defendant's arguments in defense of this matter, the risks inherent in any jury trial, and the likelihood of post-trial motions or appeal. Even if ultimately successful, the trial and appeal would likely take years, further delaying the recovery by Class Members of compensation for damages they suffered years ago. When viewed in this context, the Settlement is extremely beneficial to the Class.

> ii. *The Proposed Method for Distributing Relief and Processing Class-Member Claims Is Effective.*

The method for providing notice and processing Class Member claims has been highly effective. It includes well-established, effective procedures for giving notice to potential Class Members, processing claims submitted by Class Members, and efficiently distributing the Global Settlement Amount ("GSA"). This factor supports final approval as well.

As preliminarily approved by the Court, the notice plan included direct mailing or electronic mailing of the Notice and the Confidential Questionnaire and Release to all Class Members who can be identified with reasonable effort, supplemented by the publication of the Summary Notice in *USA Today*, *People*, *Le Monde* (a prominent French publication), and *Gazeta Wyborcza* (a prominent Eastern European publication). The notice plan also included a social media campaign (in various languages) on Facebook and Instagram that targeted geographies

likely to contain potential Class Members, which generated millions of impressions. After reviewing hundreds of thousands of documents—including banking records produced by Defendant, flight logs, message pads, police reports from multiple states and jurisdictions, news articles, and multiple third-party productions including emails from the Estate of Jeffrey Epstein— Class Counsel hired international Russian and Ukrainian speaking investigators to locate and obtain contact information for potential Class Members. Class Counsel also contacted attorneys known to have represented survivors in previous Epstein-related litigation to obtain contact information and ensure that all known or suspected Class Members received proper notice. The third-party claims administrator, JND Legal Administration ("JND"), then mailed the Notice to all identified Class Members.

Class Counsel and the investigative team hired by Class Counsel also located and corresponded with dozens of potential Class Members to provide notice of the underlying action and information relating thereto. For Class Members who were not located through the aforementioned efforts, Class Counsel called and emailed potential eligible survivors using known contact information. Class Counsel further asked known Class Members to provide the identity and contact information for any additional potential Class Member that they were familiar with and then underwent the same investigative measures to locate and contact those individuals. In total, Class Counsel caused at least 120 potential Class Members to receive notification of the Settlement by mail, email, or both.

The Fund Administrator, in coordination with Class Counsel and JND, also created a dedicated website for the Settlement, which has been updated regularly with information and key documents concerning the Settlement, including the Stipulation, Notice, Confidential Questionnaire and Release form, Preliminary Approval Order, all briefs and declarations in support

of the Settlement and an award of attorneys' fees, key dates, and an informational video with the

Fund Administrator addressing Frequently Asked Questions. *See* Jane Doe v. Bank of America,

N.A. Settlement Website, https://www.2026survivorsbanksettlementfund.com/.



The proposed claims process is also effective. It includes a Confidential Questionnaire and

Release that requests the information necessary to allow the Fund Administrator to evaluate each

claim individually. The Confidential Questionnaire and Release will be provided to the Fund

Administrator with built-in protections to avoid the possibility of fraudulent claims, and the Fund

Administrator will determine based upon a review of a Class Member's Confidential Questionnaire

and Release whether the Class Member is eligible to receive an Allocated Amount from the GSA.

The Plan of Allocation governs how Class Members' claims will be calculated and how money

will be distributed to Participating Claimants.

In determining an Allocated Amount, the Fund Administrator will consider the

circumstances, severity, type, and extent of the alleged abuse or trafficking, the nature and duration

10

of the relationship with Epstein, any cooperation with government investigations, refusal to cooperate with government investigations, or refusal to cooperate with this civil litigation including any convictions relating to Epstein's sex-trafficking venture, and the impact of the alleged conduct on the Participating Claimant, and any other factors the Fund Administrator deems relevant.

Class Counsel has gone to great lengths to make the settlement fund as trauma-informed as possible. Many Class Members have expressed meaningful gratitude to Class Counsel for the approach that has been taken to ensure confidentiality and to treat survivors with dignity and respect. Many survivors were appreciative of the endless hours that Class Counsel spent walking through this process with them and counseling them in all areas. Multiple Class Members expressed profound gratitude to Class Counsel for creating an environment in which they finally felt safe enough to disclose the traumatic abuse they endured—some for the first time in their lives, particularly in light of the fear, stigma, and re-traumatization survivors often face when coming forward. Other Class Members specifically thanked Class Counsel for making the Confidential Questionnaire and Release available in their native languages and for devoting countless hours to ensuring that they fully understood the claims process despite significant language barriers. Through translated materials, individualized communications, and patient guidance, Class Counsel ensured that these survivors were able to meaningfully participate in the claims process on an informed and equal footing.

Finally, Simone K. Lelchuk, the Fund Administrator selected by the Parties and appointed by the Court, has been processing claims diligently, meeting with claimants and providing them an opportunity to cure any procedural deficiencies in their claims as necessary, and will distribute the Settlement proceeds pursuant to the Court-approved Plan of Allocation. Class Counsel has also

joined dozens of Class Members who wish to speak with the Fund Administrator during their in-person or Zoom meetings.

iii.    <em>Class Counsel's Fee Request Is Fair and Reasonable.</em>

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment."  Fed. R. Civ. P. 23(e)(2)(C)(iii). As set forth in the Memorandum of Law in Support of an Award for Attorneys' Fees filed concurrently herewith, Class Counsel seeks an award of attorneys' fees on behalf of itself in the amount of 30% of the Global Settlement Amount that were reasonably and necessarily incurred in prosecuting and resolving the Litigation. As set forth in that motion, this request is reasonable given the strong result in this case and is consistent with fee awards in this District in other types of class action settlements of similar size. Accordingly, this factor supports final approval of the Settlement.

**4.  All Class Members Are Treated Equitably Relative to One Another.**

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. *See* Fed. R. Civ. P. 23(e)(2)(D). Here, the proposed Plan of Allocation is fair, reasonable, and adequate because it does not treat Class Representative or any other Class Member preferentially. The Plan of Allocation, which is set out in the Notice, explains how the Settlement proceeds will be distributed among eligible Class Members and Participating Claimants. This factor supports final approval as well. *See also infra* Section III.

**B.  The Proposed Settlement Satisfies the *Grinnell* Factors.**

***The Complexity, Expense, and Likely Duration of the Litigation Support Approval of the Settlement.*** The first factor of the *Grinnell* analysis overlaps with the Rule 23(e)(2)(C)(i) factor of "the costs, risks, and delay of trial and appeal" addressed above. Fed. R. Civ. P. 23(e)(2)(C)(i); *see supra* Section I.A.3.i. This case is reflective of the complexity, expense, and duration of class

12

actions. Absent a settlement, further litigation through summary judgment, trial, and appeals is likely to be costly and take several years.

***The Reaction of the Class to the Settlement.*** The Class's reaction to the Settlement "is considered perhaps 'the most significant factor to be weighed in considering its adequacy.'" *Aeropostale*, 2014 WL 1883494, at \*5. Not a single class member, many of whom have counsel representing them individually, has chosen to opt out of the settlement. "A favorable reception by the class constitutes 'strong evidence' of the fairness of a proposed settlement and supports judicial approval." *Bellifemine v. Sanofi-Aventis U.S. LLC*, 2010 WL 3119374, at \*3 (S.D.N.Y. Aug. 6, 2010).

While the deadline to submit objections (August 6, 2026) has not yet passed, no objections have been filed to date, and no Class Members have opted out.[3] This positive reaction of the Class supports approval of the Settlement. *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 410 (S.D.N.Y. 2018) ("The overwhelmingly positive reaction–or absence of a negative reaction–weighs strongly in favor" of final approval.), *aff'd sub nom.*, *In re Facebook, Inc.*, 822 Fed. App'x 40 (2d Cir. 2020). The "absence of objections may itself be taken as evidencing the fairness of a settlement." *Aeropostale*, 2014 WL 1883494, at \*5.

***The Stage of the Proceedings.*** The extent and substance of Class Representative's and Class Counsel's knowledge of the merits and potential weaknesses of the claims alleged are more than adequate to support the Settlement. *See supra* Section I.A.2. The voluminous discovery record

---

[3] Doris V. Walker's motions to intervene, which the Court denied (ECF Nos. 128, 146, 149), do not constitute objections to the Settlement, Plan of Allocation, Notice, or the requested award of fees. Even if construed as objections, they do not undermine final approval. *See* ECF No. 146 at 3 ("Walker has not alleged . . . that she is a member of the class that the Court has preliminarily certified . . . nor has she explained how her ability to pursue any claim that she may have against Bank of America would be compromised by any action the Court may take with regard to the parties' proposed settlement.").

of hundreds of thousands of pages of documents, attending 10 depositions, as well as the multiple discovery disputes, extensive expert reports, evidentiary submissions made during mediation, and extensive briefing on a motion to dismiss and a motion for class certification, permitted Class Representative and Class Counsel to intelligently weigh the strengths and weaknesses of the case and to engage in effective settlement negotiations. *See, e.g.*, *In re Marsh*, 265 F.R.D. at 139; *Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012), at *8 ("[I]t is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make…an appraisal' of the [s]ettlement.").

***The Risk of Establishing Liability and Damages.*** The fourth *Grinnell* factor is addressed above under Rule 23(e)(2)(C)(i) ("costs, risks, and delay of trial and appeal"). As demonstrated above, Class Representative has satisfied the fourth *Grinnell* factor. *See supra* Section I.A.3.i.

***The Risks of Maintaining the Class Action Through Trial.*** Although the risk of maintaining a class through trial is present in every class action, this factor nevertheless weighs in favor of settlement where, as here, it is "likely that defendants would oppose class certification if the case were to be litigated." *In re Payment Card*, 330 F.R.D. at 40; *see also In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 268–69 (S.D.N.Y. 2012). Class Representative and Defendant reached a settlement shortly before the Court's hearing on Class Representative's class certification motion. However, if the Court were to grant the pending motion for class certification, Defendant could—and likely would—appeal that order, *see* Fed. R. Civ. P. 23(f), seek to narrow the Class definition at a later point, and/or move for decertification of the class that the Court certified, *see* Fed. R. Civ. P. 23(c)(1)(C). Although Class Counsel has provided enough information for the Court to certify the Class at the final approval stage for settlement purposes, there is no guarantee that the Class would be certified if the parties proceeded

14

with the litigation. *See, e.g.*, *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 476–77 (S.D.N.Y. 1998) (noting that "there is no guarantee that this class would not be decertified before or during trial" and stating that "if the Class were to be decertified at trial, or if class certification were to be reversed on appeal, the class members (other than a few dozen plaintiffs) would recover nothing at all"). Thus, Class Representative has satisfied the fifth *Grinnell* factor.

***Defendant's Ability to Withstand a Greater Judgment.*** As explained in the Motion for Preliminary Approval, a defendant's ability to withstand a greater judgment is not dispositive when other factors favor approval. *See* ECF No. 122 at 23. Courts generally do not treat this factor as an impediment to settlement when the other *Grinnell* and Rule 23 factors favor settlement, particularly in actions against large corporate defendants. *See In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *6 (E.D.N.Y. Oct. 23, 2012) ("[I]n any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement."). The law does not require a defendant to "empty its coffers before a settlement can be found adequate." *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *9 (S.D.N.Y. Dec. 19, 2014).

***The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation.*** The adequacy of the amount recovered in a settlement is assessed "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). The Court need only determine whether the Settlement falls within a "range of reasonableness"—a range that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily

15

inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also In re Glob. Crossing*, 225 F.R.D. at 461 ("The certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery."). Given the alleged facts and circumstances, including the nature of Defendant's alleged conduct and knowledge, the time period involved, and the size and complexity of the case, the Settlement amount is reasonable.

*     *     *

In sum, all of the Rule 23 and *Grinnell* factors weigh in favor of final approval of the Settlement.

## II.   FINAL CERTIFICATION OF THE RULE 23 SETTLEMENT CLASS IS APPROPRIATE.

The Court should grant final certification of the Class because the Class meets Rule 23(a)'s requirements and this action qualifies for certification under Rule 23(b)(3).

Rule 23(a) requires that every class must satisfy: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. *See Doe 1 v. JPMorgan Chase Bank, N.A.*, 2023 WL 3945773, at *2 (S.D.N.Y. June 12, 2023) (Rakoff, J.); *see also* Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). All requirements are met here and, as the Court observed, "many were not contested" by Defendant in opposing class certification. *See* Preliminary Fairness Hr'g Tr. (Apr. 2, 2026) at 6:18–22; *see also id.* at 6:23–24 (The Court: "[S]ome of those that were contested, like numerosity, I found the Plaintiffs' position more persuasive.").

16

### A.  Rule 23(a)'s Requirements Are Satisfied.

*Numerosity.* Courts presume numerosity when the proposed class contains 40 or more members. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *see also In re GSE*, 414 F. Supp. 3d at 700 (S.D.N.Y. 2019). Following an extensive Court-ordered notice program, approximately 90 potential Class Members have submitted Confidential Questionnaires and Releases, and not one Class Member has filed an objection to the Settlement or opted out. *See* ECF No. 150-1 ¶¶ 13–14. Numerosity is therefore satisfied.[4]

*Commonality.* Rule 23's commonality requirement is met if all class members' claims share a common question of law or of fact. *See Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co.*, 277 F.R.D. 97, 105 (S.D.N.Y. 2011) (Rakoff, J.). Class Representative brings two claims under the TVPA on behalf of the Class: *First*, a beneficiary liability claim under 18 U.S.C. § 1591(a), the elements of which are that "(1) the person or entity must knowingly benefit, financially or by receiving anything of value, (2) from participating in a venture, (3) that the person knew or should have known has engaged in an act in violation of this chapter." *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 152–53 (E.D.N.Y. 2020); and *second*, (2) an obstruction of TVPA enforcement claim, which requires proof that the Bank acted to obstruct, attempt to obstruct, interfere with, or prevent an investigation or prosecution into Epstein for trafficking. 18 U.S.C. § 1591(d). As to the beneficiary claim, this includes at least the following common issues: (1) whether Epstein ran a sex-trafficking venture; (2) whether BANA knew or should have known

---

[4]    The Class is also sufficiently ascertainable for certification. Based on this Court's guidance at the Preliminary Fairness Hearing, and in accordance with the Preliminary Approval Order, potential Class Members were identified through publicly available records and the extensive Court-approved notice plan, including through targeted publications and an extensive social media campaign. *See supra* Section I.A.3.ii.

about Epstein's sex-trafficking venture; (3) whether BANA benefited from the trafficking venture; and (4) whether BANA participated in Epstein's sex-trafficking venture. As to the obstruction claim, each class member would have to prove common questions of knowledge, intent, and whether BANA obstructed a prosecution or investigation. Accordingly, common questions of law and fact exist. *See JPMorgan*, 2023 WL 3945773 at *4 (finding class satisfied commonality because "[t]his case raises not just one but many questions that are capable of classwide resolution").

*Typicality.* Class Representative's claims are typical of other Class Members because they arise from the same course of events and each makes similar legal arguments to prove the Defendant's liability. *Id.* at *5. The claims arise from allegations of BANA's uniform practice of providing extensive financial services to Epstein that enabled him to traffic and abuse victims in the proposed Class at an unprecedented scale and with impunity while evading government detection through BANA's alleged complicity. Like the other proposed Class Members, Class Representative suffered injuries during Epstein's alleged relationship with BANA, or an affiliate, caused by the sex-trafficking venture, and pursuant to Epstein's established *modus operandi*, which involved targeting women and girls with vulnerabilities; luring them to his mansions, at which a victim would be forced to provide a massage; dangling money, opportunities, and access to powerful individuals coupled with threats, coercion; and indoctrination to coerce his victims' compliance with his exploitative demands. *See* ECF No. 57 ¶¶ 28–31, 197–224; *see also* ECF No. 77 at 9–10.

*Adequacy.* Under Rule 23(a)(4), adequacy requires that the representative parties will "fairly and adequately protect the interests of the class." *See In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 239 (S.D.N.Y. 2015). Defendant confirmed at the Preliminary Fairness

Hearing that it does not contest adequacy for Settlement purposes. *See* Preliminary Fairness Hr'g Tr. (Apr. 2, 2026) at 7:3–8. Class Representative has, and will continue to, "fairly and adequately" represent the Class. She has actively participated in and monitored the litigation and has participated fully in discovery. Class Representative's interests align with the Class Members' interests, she suffered the same or similar injuries as other Class Members, and she has prosecuted this matter vigorously. Further, Class Counsel is "qualified, experienced and generally able to conduct the litigation." *See In re Drexel Burnham Lambert Grp., Inc*., 960 F.2d 285, 291 (2d Cir. 1992).

### B. Rule 23(b)(3)'s Requirements Are Satisfied.

*Predominance.* Rule 23(b)(3) certification turns on whether common issues predominate over individualized issues. *JPMorgan*, 2023 WL 3945773, at *8. "[A] common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *In re Petrobras Secs. Litig.*, 862 F.3d 250, 270 (2d Cir. 2017)), *aff'd,* 784 F. App'x 10 (2d Cir. 2019). The requirement calls "only for predominance, not exclusivity, of common questions." *See Chalmers v. City of New York*, 2022 WL 4330119, at *17 (S.D.N.Y. Sept. 19, 2022). Because the proposed Settlement contemplates that there will be no trial, issues relating to the proportion of class-wide evidence to individualized evidence at trial are of lesser importance. *See* 2 Newberg and Rubenstein on Class Actions § 4.63 (6th ed. June 2026 update) ("[I]n settlement class actions, because manageability need not be a concern, predominance—the main focus of manageability—recedes in importance as well.").

Even so, common, class-wide issues predominate in this case. Class Representative brings claims for violations of the TVPA. Class Representative's TVPA claims for beneficiary liability and obstruction of TVPA enforcement will require the adjudication of primarily issues common to the class and subject to common proof, including but not limited to the existence of a sex-

19

trafficking venture operated by Epstein, the alleged banking services BANA or an affiliate provided to Epstein, BANA's alleged knowledge about the sex-trafficking venture, whether BANA benefitted from the sex-trafficking venture, and what steps the Bank took to obstruct enforcement of the TVPA.

*Superiority.* Here, "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The relevant factors include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

*Id.* These factors weigh in favor of certifying the proposed Class. The TVPA was designed to protect victims of trafficking who are particularly vulnerable, fear reprisal or the loss of anonymity, and wish to avoid repeatedly revisiting their past traumas. Class treatment is superior in this context. *See, e.g.*, *JPMorgan*, 2023 WL 3945773, at *10–11. Class treatment would also avoid a "multiplicity and scattering of suits" that would follow were the victims of Epstein's venture to independently vindicate their rights in courts across the country. *In re MF Glob. Holdings*, 310 F.R.D. at 239. Moreover, many Class members are not proficient in English and lack familiarity with the U.S. legal system, such that class treatment is preferable. *JPMorgan*, 2023 WL 3945773, at *11. Lastly, "there are no apparent difficulties that are likely to be encountered in the management of this action as a class action apart from those inherent in any hard-fought battle where substantial sums are at issue and all active parties are represented by able counsel." *Id.*

## III.    THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE.

The Plan of Allocation—the method by which the Net Settlement Fund is distributed to the Class— "must be fair and adequate." *In re Facebook*, 343 F. Supp. 3d at 414; *see* Fed. R. Civ. P. 23(e)(2). Where, as in this case, a Plan of Allocation is "formulated by competent and experienced

class counsel," it "need have only a 'reasonable, rational basis.'" *In re Marsh*, 265 F.R.D. at 145. The Plan of Allocation easily satisfies that standard.

The Plan of Allocation was included in the Notice of Proposed Settlement of Class Action, which was submitted to the Court in connection with the motion for Preliminary Approval of the Settlement. *See* ECF No. 121-1, Exhibit A-1 at 5. It is based on a similar methodology which the Fund Administrator used in other cases. *See* ECF No. 150-1 ¶ 5; *TWC Liquidation Trust, LLC (f/k/a The Weinstein Company Holdings LLC)*, No. 18-10601 (Bankr. D. Del. Mar. 19, 2018); *Farruggio et al. v. 918 James Receiver, LLC et al.*, No. 003831/2017 (Sup. Ct. Onondaga Cty. Aug. 25, 2017); *In re USA Gymnastics*, No. 18-09108 (Bankr. S.D. Ind. Dec. 5, 2018); *Doe 1 v. JPMorgan Chase Bank, N.A.*, (22-cv-10019) (S.D.N.Y.).

The Plan also treats all Class Members equitably. Any Class Members who submit a valid and timely Confidential Questionnaire and Release, does not otherwise exclude themselves from the Class, and is not otherwise deemed ineligible by the Fund Administrator will receive an Allocated Amount. The Plan describes the various factors and criteria the Fund Administrator will take into consideration in determining an Allocated Amount.

As such, the Plan of Allocation equitably distributes the Net Settlement Fund to all Participating Claimants who follow these procedures as specified in the Notice and the Confidential Questionnaire and Release. This process is fair, reasonable, and consistent with the plans of allocation in other class action settlements. There have been no objections to the Plan of Allocation filed to date, which further supports approval. ECF No. 150-1 ¶ 14; *see In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *14 (S.D.N.Y. Nov. 7, 2007) ("[N]ot one class member has objected to the Plan of Allocation which was fully explained in the Notice of

Settlement sent to all Class Members. This favorable reaction of the Class supports approval of the Plan of Allocation."). The Plan of Allocation is appropriate and warrants approval.

IV.    **NOTICE TO THE CLASS COMPORTS WITH DUE PROCESS AND SATISFIES THE REQUIREMENTS OF RULE 23.**

Rule 23 requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," Fed. R. Civ. P. 23(c)(2)(B), and that it be directed to class members in a "reasonable manner," Fed. R. Civ. P. 23(e)(1)(B). Notice of a settlement satisfies Rule 23(e) and due process where it fairly apprises "members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart*, 396 F.3d at 114.  Notice is adequate "if the average person understands the terms of the proposed settlement and the options provided to class members thereunder." *In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008).

The form and manner of notice here satisfied those requirements. Based on the Court's guidance at the Preliminary Fairness Hearing, and in accordance with the Preliminary Approval Order, *see* ECF No. 134, the parties crafted a Notice that advised the Class Members of the essential terms of the Settlement and provided information regarding Class Counsel's application for an award of attorneys' fees. The Notice also provided specifics on the date, time, and place of the Settlement Hearing and set forth the procedures for submitting a valid and timely Confidential Questionnaire and Release pursuant to the proposed Plan of Allocation and objecting to the Settlement, the proposed Plan of Allocation, and/or the application for attorneys' fees. Further, the Notice provided contact information for the Fund Administrator and Class Counsel and advised Class Members on how to obtain further information regarding the Settlement.

Pursuant to the Court's Preliminary Approval Order, the Fund Administrator timely (1) caused a copy of the Notice and the Confidential Questionnaire and Release to be mailed by First-Class Mail or electronic mail to all identifiable Class Members; (2) posted those documents on the case-designated website; (3) caused publication of the Summary Notice in *USA Today*, *People*, *Le Monde*, and *Gazeta Wyborcza*; and (4) supervised a social media campaign (in various languages) on Facebook and Instagram that targeted geographies likely to contain potential Class Members, including Florida, New York, California, New Mexico, France, and Ukraine. *See* ECF No. 150-1 ¶¶ 9–12. Defendant will also file proof of notice of the proposed Settlement on the appropriate federal and state officials under the Class Action Fairness Act, 28 U.S.C. § 1715, *et seq*. *See* ECF No. 134 ¶ 30.

Under Rule 23(c)(2), the Court "must direct to class members the best notice that is practicable under the circumstances." *Vargas v. Cap. One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014). In addition to how it is delivered, the notice "must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," including the opportunity to opt out of or object to the settlement. *Id*. at 27; *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *17 (S.D.N.Y. Mar. 24, 2014). The requirements of Due Process impose similar requirements. *See Consol. Edison, Inc. v. Ne. Utilities*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004) ("Due process requires that the notice to class members 'fairly apprise the . . . members of the class of the terms of the proposed settlement and of the options . . . in connection with [the] proceedings.'").

Both the substance and method of distributing the Notice comport with Rule 23, the dictates of Due Process, and are consistent with the notices in other, similar actions. The combination of (i) individual notice by mail or email to all Class Members who can be reasonably identified, and

23

supplemental mailings and email notice for Class Members who could not be reached on the first attempt, (ii) the creation of a dedicated Settlement website, (iii) publication in *USA Today*, *People*, *Le Monde*, and *Gazeta Wyborcza*, (iv) a multilingual social media campaign targeted at geographies likely to contain potential class members, (v) notices concerning the rights of the Class Members, including the manner in which objections can be lodged, (vi) notices concerning the nature, history and progress of the litigation, (vii) detailed instructions on how to file the Confidential Questionnaire and Release, or opt-out of the Settlement, (viii) a detailed description of the Plan of Allocation, and (ix) notice concerning the fees and litigation expenses to be sought by Class Counsel, represent the best notice practicable under the circumstances. *See, e.g.*, *Rodriguez v. CPI Aerostructures, Inc.*, 2021 WL 9032223, at *13 (E.D.N.Y. Nov. 10, 2021) (finding that a similar notice plan was "reasonable and adequate" because the proposed notice was "detailed enough to inform the class members of their rights and obligations"); *see Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *16 (S.D.N.Y. Oct. 16, 2019) (concluding that direct First-class mail combined with print and Internet-based publication of settlement documents was "the best notice practicable under the circumstances").

In short, the Notice and Summary Notice satisfy all requirements of Due Process and Rule 23 because they "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart*, 396 F.3d at 114.

## CONCLUSION

The $72.5 million Settlement is a strong recovery for the Class of Epstein survivors, particularly in light of the certain delay and significant risks posed by continuing the Litigation.

24

For the foregoing reasons, Class Representative respectfully requests that the Court approve the

Settlement and Plan of Allocation as fair, reasonable, and adequate.

Dated: July 23, 2026                    Respectfully submitted,


                                        */s/ David Boies*
                                        David Boies
                                        Andrew Villacastin
                                        Rachael Schafer
                                        Boies Schiller Flexner LLP
                                        55 Hudson Yards
                                        New York, NY
                                        Telephone: (212) 446-2300
                                        Fax: (212) 446-2350
                                        Email: dboies@bsfllp.com
                                        Email: avillacastin@bsfllp.com
                                        Email: rschafer@bsfllp.com

                                        Sigrid S. McCawley
                                        Daniel Crispino
                                        Megan Nyman
                                        Andrea Guzman
                                        Boies Schiller Flexner LLP
                                        401 E. Las Olas Blvd., Suite 1200
                                        Fort Lauderdale, FL 33316
                                        Telephone: (954) 356-0011
                                        Fax: (954) 356-0022
                                        Email: smccawley@bsfllp.com
                                        Email: dcrispino@bsfllp.com
                                        Email: mnyman@bsfllp.com
                                        Email: aguzman@bsfllp.com

                                        Jessica Lim
                                        Boies Schiller Flexner LLP
                                        2029 Century Park East, Suite 1520
                                        Los Angeles, CA 90067
                                        Telephone: (213) 995-5745
                                        Email: jlim@bsfllp.com

                                        Bradley J. Edwards

Brittany N. Henderson
Dean Kaire
Edwards Henderson
425 N. Andrews Ave., Suite 2
Fort Lauderdale, FL 33301
Telephone: (954) 524-2820
Fax: (954) 524-2822
Email: brad@cvlf.com
Email: brittany@cvlf.com
Email: dean@cvlf.com

*Counsel for Plaintiff Jane Doe*

26

## CERTIFICATE OF COMPLIANCE

I, David Boies, hereby certify pursuant to Local Civil Rule 7.1(c) that the foregoing Memorandum of Law was prepared using Microsoft Word and complies with Rule 2(e) of this Court's Individual Rules and Local Rule 7.1(c).

*/s/ David Boies*