**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JANE DOE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>Defendant. | Case No. 25-cv-8520 (JSR) |

# MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES

BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY
Telephone: (212) 446-2300
Fax: (212) 446-2350

EDWARDS HENDERSON, PLLC
425 N. Andrews Ave., Suite 2
Fort Lauderdale, FL 33301
Telephone: (954) 524-2820
Fax: (954) 524-2822

*Counsel for Class Representative Jane Doe and the Class*

# TABLE OF CONTENTS


INTRODUCTION ..... 1

HISTORY OF THE LITIGATION ..... 3

ARGUMENT ..... 6

I. CLASS COUNSEL'S FEE REQUEST IS REASONABLE. ..... 6

A. Class Counsel Is Entitled to an Award of Attorneys' Fees from the Common Fund... 7

B. The *Goldberger* Factors Confirm that the Requested Fee Is Reasonable. ..... 8

1. The Quality of Representation Supports the Requested Fee. ..... 9

2. The Relationship of the Requested Fee to the Settlement. ..... 11

3. The Time and Labor Expended by Counsel. ..... 13

4. The Risks of the Litigation. ..... 17

5. The Magnitude and Complexity of the Litigation ..... 21

6. Public Policy Considerations ..... 22

C. The Class's Reaction to the Fee Request to Date Supports the Requested Fee. ..... 22

D. The Fee Request Is Reasonable Based on a Lodestar Cross-Check. ..... 23

CONCLUSION ..... 25

## TABLE OF AUTHORITIES

**Cases**

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
2018 WL 6250657 (S.D.N.Y. Nov. 29, 2018) .......... 13

*Arbuthnot v. Pierson*,
607 F. App'x 73 (2d Cir. 2015) .......... 7

*Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm.*,
504 F. Supp. 3d 265 (S.D.N.Y. 2020) .......... 22

*Blum v. Stenson*,
465 U.S. 886 (1984) .......... 7

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) .......... 7

*Chabak v. Somnia Inc.*,
2025 WL 1275214 (S.D.N.Y. Apr. 28, 2025) .......... 12

*Christine Asia Co., Ltd. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .......... 19, 21

*City of Birimingham Ret. & Relife Sys. v. Davis*,
806 F. App'x 14 (2d Cir. Mar. 12, 2020) .......... 12

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014) .......... 7, 21, 23, 24

*deMunecas v. Bold Food, LLC*,
2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) .......... 16

*Doe v. Bank of America, N.A.*,
819 F. Supp. 3d 314 (S.D.N.Y. 2026) .......... 5, 9

*Faught v. Am. Home Shield Corp.*,
668 F.3d 1233 (11th Cir. 2011) .......... 8

*Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*,
62 F.4th 704 (2d Cir. 2023) .......... 20

*Fresno Cnty. Employees' Retirement Ass'n. v. Isaacson/Weaver Family Trust*,
925 F.3d 63 (2d Cir. 2019) .......... 7, 24

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000) ........................................ passim

*Grice v. Pepsi Beverages Co.*,
363 F. Supp. 3d 401 (S.D.N.Y. 2019)........................................ 12

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
2006 WL 3057232 (S.D.N.Y. Oct. 25, 2006)........................................ 23

*In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig.*,
2009 WL 762438 (S.D.N.Y. Mar. 24, 2009)........................................ 7

*In re BHP Billiton Ltd. Sec. Litig.*,
2019 WL 1577313 (S.D.N.Y. Apr. 10, 2019)........................................ 12

*In re Colgate-Palmolive Co. ERISA Litig.*,
36 F. Supp. 3d 344 (S.D.N.Y. 2014) ........................................ 24

*In re Comverse Tech., Inc. Sec. Litig.*,
2010 WL 2653354 (E.D.N.Y. June 24, 2010)........................................ 17

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)........................................ 9, 13

*In re KeySpan Corp. Sec. Litig.*,
2005 WL 3093399 (E.D.N.Y. Sept. 30, 2005) ........................................ 23

*In re Lloyd's Am. Tr. Fund Litig.*,
2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002)........................................ 8

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) ........................................ 11, 20

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) ........................................ 23, 24

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
991 F. Supp. 2d 437 (E.D.N.Y. 2014) ........................................ 8

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
985 F. Supp. 410 (S.D.N.Y. 1997) ........................................ 20

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005) ........................................ 22

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008) .......... 7

*In re Top Tankers, Inc. Sec. Litig.*,
2008 WL 2944620 (S.D.N.Y. 2008) .......... 13

*In re Veeco Instruments Inc. Sec. Litig.*,
2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) .......... 11

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005) .......... 24

*Landmen Partners, Inc. v. Blackstone Grp., L.P.*,
2013 WL 11330936 (S.D.N.Y. Dec. 18, 2013) .......... 12

*Lea v. Tal Educ. Grp.*,
2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) .......... 13

*Maley v. Del Glob. Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) .......... 24

*Missouri v. Jenkins*,
491 U.S. 274 (1989) .......... 23

*New York State Ass'n for Retarded Child., Inc. v. Carey*,
711 F.2d 1136 (2d Cir. 1983) .......... 23

*Rapuano v. Trs. of Dartmouth Coll.*,
2020 WL 3965784 (D.N.H. July 14, 2020) .......... 12

*Sewell v. Bovis Lend Lease, Inc.*,
2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) .......... 24

*St. Louis v. Perlitz*,
No. 3:13-CV-01332 (D. Conn. Aug. 27, 2019) .......... 12

*Swedish Hosp. Corp. v. Shalala*,
1 F.3d 1261 (D.C. Cir. 1993) .......... 8

*Tiro v. Pub. House Invs., LLC*,
2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013) .......... 11

**Statutes**

18 U.S.C. § 1595(a) .......... 9

**Other Authorities**

Association of Trial Lawyers of America, *Representing the Victim of Sexual Assault and Abuse: Special Considerations and Issues*, Ann. 2006 ATLA-CLE 1889 (2006) .............................. 19

Blanche Bong Cook, *Stop Traffic: Using Expert Witnesses to Disrupt Intersectional Vulnerability in Sex Trafficking Prosecutions*, 24 Berkeley J. Crim. L. 147 (2019).......... 18, 19

Chitra Raghavan & Kendra Doychak, *Trauma-coerced Bonding and Victims of Sex Trafficking: Where Do We Go From Here?*, 17(2) International Journal Emergency Mental Health and Human Resilience (2015) ........................................................................................ 19

Jane Musgrave, *Prosecutor to Jeffrey Epstein victims: I'm Sorry Deal Labeled You as Prostitutes*, Palm Beach Post (Dec. 3, 2020)............................................................... 19

Jonathan Stempel, Jeffrey Epstein Victims' Fund Pays More Than $121 Mln, as Claims Process Ends, Reuters (Aug. 9, 2021), https://www.reuters.com/world/us/jeffrey-epstein-victims-fund-awards-125-mln-claims-process-ends-2021-08-09/. ............................................................. 10

Kimberly D. Bailey, *Sex in a Masculinities World: Gender, Undesired Sex, and Rape*, 21 J. Gender Race & Just. 281 (2018)......................................................................................... 19

Operational Indicators of Trafficking in Human Beings, Int'l L. Org. (2009),........................... 19

Theodore Eisenberg et. al., *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937, 952 (2017).............................................................................................................. 12

## INTRODUCTION

Class Counsel[1] achieved a Settlement of $72.5 million plus certain litigation costs and claims administration costs for survivors of Jeffrey Epstein's sex-trafficking operation. This result is the culmination of a decades-long effort by Class Counsel to bring relief to dozens of sex-trafficking victims whose lives were ruined by Epstein. For years, Epstein and his powerful associates victimized young women and girls across the globe. They silenced victims with threats of physical harm and other forms of intimidation, and publicly discredited any who were brave enough to speak out. This campaign of abuse was made possible in part due to Epstein's access to global banking services from Defendant Bank of America, N.A. ("Defendant," or "BANA," or the "Bank").

Survivor-plaintiffs in earlier cases faced an onslaught of oppressive discovery into their personal lives, witness intimidation, and public shaming intended to ruin their lives and serve as a warning to other survivors contemplating filing suit on their own. Epstein and his cohorts also sued survivors' lawyers directly for similar reasons. Only through the courageous efforts of survivors and their counsel has the full scope of Epstein's operations emerged. As society has learned in recent years, the number of wealthy businessmen, powerful individuals, and politicians involved with Epstein and his far-flung sex trafficking operation is staggering.

This case seeks to hold one of Epstein's financial institutions accountable for its involvement in Epstein's illegal activities in violation of federal statutes. In pursuit of those claims, Class Counsel

---

[1] As used herein, "Class Counsel" means Boies Schiller Flexner LLP ("BSF") and Edwards Henderson ("EH"). *See* Declaration of Sigrid S. McCawley filed on behalf of Boies Schiller Flexner LLP in Support of Motion for an Award of Attorneys' Fees ("BSF Decl."); Declaration of Bradley Edwards filed on behalf of Edwards Henderson in Support of Motion for an Award of Attorneys' Fees ("EH Decl."); Joint Declaration of David Boies and Bradley Edwards in Support of Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation and an Award of Attorneys' Fees ("Boies & Edwards Decl."). All emphasis is added and all citations are omitted unless otherwise noted.

painstakingly pieced through Epstein's sham businesses and corporate entities and tracked Epstein's (and his cohorts') banking transactions over multiple years. Relying on their decades of experience representing Epstein's victims, Class Counsel were prepared to argue at trial how Defendant's role was necessary to the sex-trafficking operation and to prove through the evidence compiled that it was a knowing beneficiary of Epstein's illegal activities in violation of the Trafficking Victims Protection Act ("TVPA").

Class Counsel's performance in this litigation resulted in a settlement of $72.5 million to be provided to the Class,[2] plus Defendant's agreement to separately pay Class Representative's litigation costs and all claims administration costs, a result that will provide life-changing relief to Epstein's victims. The recovery is substantial by any measure and is especially meaningful given the nature of the claims and the barriers survivors face in coming forward. Significantly, the average recovery for Class Members will be substantially similar to the average recovery they received from Epstein and his estate.

In light of this result and for the additional reasons set forth below, Class Counsel's application for a fee award of 30% is more than justified. The Settlement is a strong result for the Class given the likely amount of recovery, the defenses to liability and damages that Defendant advanced, and the design of a claim process that accounted for the significant potential for re-traumatization. Class Counsel now respectfully moves the Court for an award of attorneys' fees of

---

[2] Capitalized terms used herein are defined and have the meanings contained in the Stipulation of Settlement (ECF No. 121-1) (the "Stipulation"), the Boies & Edwards Declaration in Support of Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation and an Award of Attorneys' Fees ("Boies & Edwards Decl."), and in the Memorandum of Law in Support of Unopposed Motion for Final Approval of Class Action Settlement and Approval of the Plan of Allocation ("Final Approval Mem."), submitted concurrently herewith.

30% of the Settlement Amount that were reasonably and necessarily incurred in prosecuting and resolving the Litigation.

As set forth below, the relevant factors articulated in *Goldberger* strongly support the requested award. *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). Following an extensive Court-ordered notice program, approximately 90 proposed Class Members submitted Confidential Questionnaires and Releases—despite the geographic distance of many of Epstein's survivors (many of whom are presently living in war-torn countries), and the likelihood that many survivors may have chosen not to participate due to fear of retaliation, cultural differences in those countries, or traumatization. Not one Class Member has filed an objection to the Settlement or opted out. The $72.5 million Settlement that Class Counsel obtained provides the Class with an immediate and certain recovery in a case that faced significant risks at summary judgment, trial, and on appeal. In achieving this result, Class Counsel worked 12,350.44 hours on this complex litigation, all on a contingency basis and with no guarantee of ever being paid for their work on behalf of the Class.

Class Counsel believes that an attorneys' fee award of 30% of the Global Settlement Amount properly reflects the significant risks shouldered by Class Counsel in prosecuting the Litigation, as well as the result achieved. Under this Circuit's preferred method for assessing fees in class action litigation, a 30% fee award is reasonable and well within the range of attorneys' fees awarded in similar complex contingency cases. For the reasons set forth below, Class Counsel respectfully submits that this request is fair and reasonable.

## HISTORY OF THE LITIGATION

Class Counsel commenced this action on October 15, 2025 by filing an initial Individual

and Class Action Complaint, which was later amended on December 29, 2025.[3] The operative Amended Complaint alleges that Epstein's sex-trafficking venture was facilitated and enabled by Defendant helping Epstein avoid regulators' scrutiny and providing Epstein with banking and wire services, all so Defendant could profit from Epstein and his associates. *See* ECF No. 57. The Amended Complaint further alleges that Defendant's assistance to Epstein's sex-trafficking enterprise prevented the authorities from discovering his illegal scheme and increased the size and scale of Epstein's access to and control of victims, causing damage to members of the Class.

In preparation for the filing of this action, Class Counsel engaged in extensive research, conducted dozens of interviews, and reviewed thousands of documents that have accumulated over the past fifteen plus years of litigation against Epstein, his estate, and his associates. ECF No. 121 ¶¶ 5–9. Class Counsel have confidentially interviewed at least 50 individuals, including dozens of survivors both in the United States and abroad, as well as a number of other witnesses who were close to or associated with Epstein for many years. Additionally, Class Counsel reviewed an enormous volume of publicly available documents regarding Epstein and his sex-trafficking operation, including civil complaints, police reports, investigative reports, other information obtained through criminal investigations, court transcripts, hundreds of thousands of documents disclosed by the Department of Justice, news articles, audio recordings of survivors, and other publicly available sources. Finally, Class Counsel conducted significant research into Defendant, including extensive review of other lawsuits and other regulatory findings.

---

[3] The Amended Complaint brought six claims against the Bank: (1) violating the TVPA by participating in Epstein's sex trafficking venture and benefiting thereby (Count I); (2) violating the TVPA by perpetrating sex trafficking (Count II); (3) aiding, abetting, and inducing TVPA violations (Count III); (4) obstructing the enforcement of the TVPA (Count IV); (5) negligent failure to exercise reasonable care to prevent physical harm (Count V); and (6) negligent failure to exercise reasonable care as a banking institution (Count VI). As explained in the Preliminary Approval Motion, Counts I and IV survived the Bank's motion to dismiss. *See* ECF No. 122 at 5.

On November 13, 2025, Defendant moved to dismiss the complaint. *See* ECF Nos. 38, 39. Before ruling on the motion to dismiss, the Court directed Class Representative to file an Amended Complaint and allowed the Parties to file supplemental briefs. Class Representative's TVPA participation claim (Count I) and obstruction claim (Count IV) survived Defendant's motion to dismiss. *See* ECF No. 73; *Doe v. Bank of America, N.A.*, 819 F. Supp. 3d 314, 333, 335 (S.D.N.Y. 2026). Defendant answered the Amended Complaint on February 19, 2026. *See* ECF No. 81.

Class Counsel engaged in extensive discovery efforts spanning several months, including fact, class certification, and expert discovery, taking eight depositions and defending two depositions, including the deposition of the Class Representative, producing and reviewing hundreds of thousands of pages of documents, and preparing and rebutting reports for nine expert witnesses. Numerous discovery disputes were litigated, depositions were continuing, and discovery was set to close on March 16, 2026. On February 17, 2026, Class Representative moved for class certification. *See* ECF Nos. 74, 77. The motion was fully briefed and due to be heard on March 12, 2026.

On February 20 and March 9, 2026, the Parties engaged in a confidential mediation before Judge Layn R. Phillips, a retired judge and an experienced mediator in large and complex civil sexual abuse matters and class actions. ECF No. 121-2 ¶¶ 2–3, 7. Class Counsel and Defendant's Counsel provided the mediator with extensive mediation statements and engaged in a multi-day mediation to reach a settlement-in-principle. *Id.* ¶¶ 8–10. The Parties negotiated a Term Sheet, memorializing their agreement to settle Class Representative's claims against Defendant and to end the Litigation and executed a Stipulation of Settlement on March 27, 2026. ECF No. 121-1.

After a preliminary fairness hearing, on April 3, 2026, the Court granted preliminary approval of the Class and the proposed Settlement, as well as the proposed forms of Notice. ECF

No. 134. Since that time, Class Counsel has remained actively involved in consulting with survivors and assisting with claims administration. For example, Class Counsel provided the Fund Administrator with an extensive confidential list of potential class members and their current contact information based on Class Counsel's own research, past representations, interviews, and meetings with survivors. ECF No. 150-1 ¶ 7. In addition, Class Counsel identified a number of other potential Class Members by conducting an extensive review of documents relating to Epstein, including flight records, wire transfer records, police records, and other materials. Class Counsel expended significant resources ensuring that all potential Class Members were aware of the Settlement. Class Counsel also spent substantial time speaking with potential Class Members who had questions about the Settlement and claims administration process and assisting dozens of Class Members with preparing and submitting their claims as well as attending meetings with Class Members and the Fund Administrator. *See* Boies & Edwards Decl. ¶¶ 43–44.

## ARGUMENT

### I. CLASS COUNSEL'S FEE REQUEST IS REASONABLE.

In light of the $72.5 million Settlement, Class Counsel's fee request is reasonable under both the percentage method and the lodestar cross-check method. The $72.5 million Settlement provides substantial relief to the Class, the requested 30% fee is consistent with awards in comparable common fund cases, and the request satisfies each factor of the *Goldberger* test this Court applies to assess the reasonableness of fee requests. *See Goldberger*, 209 F.3d at 50. The positive reaction by the Class to date further supports Class Counsel's request. Finally, as a backstop check on reasonableness, Class Counsel's lodestar multiplier is well within the range of reasonable ratios accepted by this and other courts.

### A. Class Counsel Is Entitled to an Award of Attorneys' Fees from the Common Fund.

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Courts in this District have consistently adhered to this precedent. *See, e.g.*, *Fresno Cnty. Emps.' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63, 68 (2d Cir. 2019); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 584–85 (S.D.N.Y. 2008).

Fees awarded pursuant to the common fund doctrine serve two related purposes: to fairly and adequately compensate class counsel for services rendered to the class, and to ensure that all class members contribute equally toward the costs associated with litigation pursued on their behalf. *See Goldberger*, 209 F.3d at 47. Awards of attorneys' fees from a common fund "also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature." *See City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *11 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).

The Court has discretion to determine a reasonable fee. *Goldberger*, 209 F.3d at 47. Typically, courts use one of two methods to determine a reasonable fee: (1) the percentage of recovery method and (2) the lodestar method. *Id*. The percentage of recovery method is the preferred method for calculating the reasonableness of attorneys' fees in the Second Circuit. *See In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig.*, 2009 WL 762438, at *2 (S.D.N.Y. Mar. 24, 2009) (explaining that the "trend in this Circuit is toward the percentage [of the fund] method"); *In re Telik*, 576 F. Supp. at 585 (describing the percentage of recovery method as "the preferred method"). The percentage of recovery method also "directly aligns the interests of the class and its

counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *In re Lloyd's Am. Tr. Fund Litig.*, 2002 WL 31663577, at *25 (S.D.N.Y. Nov. 26, 2002).

In contrast, the lodestar method—under which "the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate"—has created "temptation for lawyers to run up the number of hours for which they could be paid," and "an unanticipated disincentive to early settlements." *Goldberger*, 209 F.3d at 47–48; *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 440 (E.D.N.Y. 2014). The lodestar method also requires courts to "engage in a gimlet-eyed review of line-item fee audits," which is "an inevitable waste of judicial resources." *Goldberger*, 209 F.3d at 49. Courts of Appeals have broadly approved the percentage method, with two circuits requiring its use in common-fund cases. *See Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1242 (11th Cir. 2011) (requiring use of percentage method); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269–71 (D.C. Cir. 1993) (same).

For these reasons, courts in the Second Circuit and this District typically utilize the percentage of recovery method. Courts are further guided by the criteria set out in *Goldberger* for determining a reasonable fee in a common fund case: (1) the quality of the representation; (2) the requested fee in relation to the settlement; (3) the time and labor expended by counsel; (4) the risk of the litigation; (5) the magnitude and complexities of the litigation; and (6) public policy considerations. 209 F.3d at 50. Considering these factors, Class Counsel's fee request is reasonable.

### B. The *Goldberger* Factors Confirm that the Requested Fee Is Reasonable.

Class Counsel seeks attorneys' fees equal to 30% of the Global Settlement Amount. In light of the excellent Settlement achieved in this action, the percentage of recovery method is appropriate for evaluating the fee request, and the 30% fee request is reasonable under that framework.

**1. The Quality of Representation Supports the Requested Fee.**

Class Counsel respectfully submits that the strong result achieved supports the requested fee award. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *28 (S.D.N.Y. Nov. 8, 2010) ("The quality of the representation and the standing of Lead Counsel are important factors that also support the reasonableness of the requested fee.").

First, the case was factually and legal complex. Class Counsel vigorously pursued claims pursuant to the TVPA against sophisticated defense counsel representing a large financial institution, litigating the case past a challenging motion to dismiss, through a robust fact and expert discovery period, and through briefing on class certification. Class Representative brought her claims against Defendant pursuant to 18 U.S.C. § 1595(a), the provision of the TVPA that permits civil litigants to sue those who knowingly benefit from participating in a sex-trafficking venture. Class Counsel also brought other claims under the TVPA to seek to hold Defendant accountable, including aiding and abetting, perpetrator liability, and obstruction. Class Counsel vigorously litigated Defendant's motion to dismiss, which raised complex arguments regarding the level of knowledge that courts around the country interpret § 1595(a) to require (*see* ECF No. 39 at 9–11, 16–18); the level of participation required to give rise to liability against a bank pursuant to § 1595(a) (*id.* at 12–16); and the facts required to support a TVPA obstruction claim (*id.* at 21–22). The Court held that Class Representative's Amended Complaint adequately alleged that Defendant knew about, participated in, and benefited from Epstein's trafficking based on the detailed factual allegations in the Amended Complaint. *Bank of America*, 819 F. Supp. 3d at 327–28, 330–33. The Court also denied Defendant's motion to dismiss Class Representative's TVPA obstruction claim. *Id*. at 334–35. This supports the reasonableness of Class Counsel's fee request.

Second, the $72.5 million settlement is a strong result for the Class. Class Members who submitted a Confidential Questionnaire and Release and were not otherwise determined to be

ineligible will receive an Allocated Amount based upon the Fund Administrator's judgment. ECF No. 121-1 §§ 5.1–5.2; ECF No. 150-1 ¶ 5. The Fund Administrator evaluated each eligible Class Member in a trauma-informed manner consistent with best practices.

The Settlement also provides a path to recovery for survivors who otherwise would not have come forward due to aversion to litigation or reluctance to share sensitive or traumatic experiences with attorneys. These Class Members will be entitled to an Allocated Amount, and will not need to engage counsel, file their own lawsuits, be subjected to burdensome discovery requests, testify at deposition or trial about their traumatic experiences with Epstein, or wait for payment pending appeal. Any unused portion of the Global Settlement Amount will also be distributed to a charitable organization, another important aspect of the Settlement. ECF No. 121-1 § 5.13.

The Settlement further exceeds what the Class might have recovered even if Class Representative had prevailed at trial. There remained critical questions of fact to be determined at trial as to whether Class Representative would be able to prove Defendant's liability under the TVPA. Each Class Member would also have to prove the amount of damages to which she is entitled based on recounting personal and intimate information. And because no prior actions against banking institutions under a TVPA participant liability claim have proceeded to trial, the quantity of damages a jury would award is far from certain. As a comparator, the Epstein Victims' Compensation Program offered $125 million to approximately 150 claimants, an average of approximately $833,000 per eligible claimant.[4] The Settlement amount of $72.5 million for eligible Class Members is thus in line with amounts awarded from the Estate of the direct trafficker. As *Goldberger* explained, "the quality of representation is best measured by results, and that such

---

[4] *See* Jonathan Stempel, *Jeffrey Epstein victims' fund pays more than $121 mln, as claims process ends*, Reuters (Aug. 9, 2021), https://www.reuters.com/world/us/jeffrey-epstein-victims-fund-awards-125-mln-claims-process-ends-2021-08-09/.

results may be calculated by comparing 'the extent of possible recovery with the amount of actual verdict or settlement.'" 209 F.3d at 55. Evaluated on that basis, the Settlement here is strong and Class Counsel's request for 30% of the Settlement Amount is reasonable.

Third, courts also recognize that the quality of the opposition faced by plaintiff's counsel should be considered in assessing the quality of counsel's performance. *See, e.g.*, *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("The high quality of defense counsel opposing [p]laintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement."); *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *7 (S.D.N.Y. Nov. 7, 2007) (finding that among the factors supporting a 30% fee award was that defendants were represented by "one of the country's largest law firms"). Here, Defendant is represented by counsel from Jones Day—one of the nation's preeminent law firms—who spared no effort in representing their client. Notwithstanding this formidable opposition, Class Counsel's demonstrated willingness to vigorously prosecute the Litigation through trial and the inevitable appeals enabled Class Representative to achieve an exceedingly favorable Settlement for the benefit of the Class.

Finally, no Class Member has objected to or opted out of the settlement, which is itself a testament to quality of the representation, ECF No. 150-1 ¶¶ 13–14, and Class Members have proactively reached out to Class Counsel to express their gratitude for the Settlement. *See* Final Approval Mem. at 11; *Tiro v. Pub. House Invs., LLC*, 2013 WL 4830949, at *14 (S.D.N.Y. Sept. 10, 2013) (crediting the lack of objections to the attorneys' fee award as a factor demonstrating the quality of representation).

**2. The Relationship of the Requested Fee to the Settlement.**

Class Counsel's efforts have resulted in a $72.5 million Settlement for the Class. This recovery is an impressive result in a pre-trial settlement in a TVPA case. Accordingly, Class

Counsel's request for fees totaling 30% of the Settlement Amount is fair and reasonable in light of the substantial benefit Class Counsel's work has conferred on the Class.

"Courts often look to empirical evidence of attorney's fees awarded in similar cases as a starting point for the baseline reasonable fee inquiry." *Grice v. Pepsi Beverages Co.*, 363 F. Supp. 3d 401, 407 (S.D.N.Y. 2019). Class Counsel's request is justified by the strong recovery it achieved for the Class and is consistent with awards in comparable sexual abuse class actions over the last ten years, including Class Counsel's predecessor cases against JP Morgan and Deutsche Bank. *See, e.g.*, *Doe 1 v. JPMorgan Chase Bank, N.A.*, No. 22-cv-10019-JSR (S.D.N.Y. Nov. 13, 2023), ECF No. 283 ¶ 1 (awarding 30% of TVPA class action settlement fund as fees); *Doe 1 v. Deutsche Bank Aktiengesellschaft, et al.*, No. 22-cv-10018-JSR (S.D.N.Y. Oct. 20, 2023), ECF No. 121 ¶ 1 (same); *Rapuano v. Trs. of Dartmouth Coll.*, 2020 WL 3965784, at *2 (D.N.H. July 14, 2020) (awarding 35% of sexual abuse class action settlement fund as fees); *St. Louis v. Perlitz*, No. 3:13-cv-01132 (D. Conn. Aug. 27, 2019), ECF Nos. 1080 ¶ 14, 1089 (awarding 31% of sexual abuse class action settlement as fees); *see also* Theodore Eisenberg et al., *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937, 952 (2017). Class Counsel's request is also similar to what courts in this District have awarded in other types of class action settlements of similar sizes. *See, e.g.*, *Chabak v. Somnia Inc.*, 2025 WL 1275214, at *2 (S.D.N.Y. Apr. 28, 2025) (approving fee request of 31.5% of the settlement fund and collecting cases); *In re Pfizer Inc. S'holder Derivative Litig.*, 780 F. Supp. 2d 336, 343 (S.D.N.Y. 2011) (Rakoff, J.) (approving $22 million in fees from $75 million settlement fund, amounting to approximately 29% of the settlement).[5] Given that fee

---

[5] *See also In re BHP Billiton Ltd. Sec. Litig.*, 2019 WL 1577313, at *1 (S.D.N.Y. Apr. 10, 2019) (awarding 30% of $50 million settlement plus expenses), *aff'd sub nom. City of Birmingham Ret. & Relief Sys. v. Davis*, 806 F. App'x 14 (2d Cir. 2020), *as amended* (Mar. 17, 2020); *Landmen Partners, Inc. v. Blackstone Grp., L.P.,* 2013 WL 11330936, at *3 (S.D.N.Y. Dec. 18, 2013) (awarding fees of 33.33% of $85 million recovery plus expenses); *Alaska Elec. Pension Fund v.*

requests for 30% of the Global Settlement Amount have been approved as reasonable in this Circuit, Class Counsel's request for no more than 30% is appropriate. As such, Class Counsel's fee request in the present matter is well within what this and other Courts have found to be reasonable.

**3. The Time and Labor Expended by Counsel.**

Class Counsel expended substantial time and effort pursuing the Litigation on behalf of the Class. Class Counsel and their paraprofessionals devoted 12,350.44 hours to prosecuting the Class's claims through June 30, 2026; that figure does not include additional work performed in July and August in connection with final approval, claims administration, and this fee application. BSF is primarily a trial firm experienced in class actions and prepares its case strategy based on anticipating the requirements for trial and working back from there in implementing strategy for discovery, experts, and motion practice. ECF No. 121 ¶ 20. BSF took precisely that approach here and respectfully submits that doing so led directly to the successful settlement. EH is a litigation firm specializing in the civil representation of survivors of violent crimes, primarily victims of sexual abuse and sex-trafficking. *Id*. ¶¶ 38–40. Together, Class Counsel respectfully submits that the combined approach taken led directly to the successful settlement.

To effectively prepare this exceedingly complex class action case for trial against highly sophisticated defense counsel, Class Counsel organized and analyzed hundreds of thousands of pages of party and third-party discovery. Class Counsel completed this work not just to defeat

---

*Bank of Am. Corp.*, 2018 WL 6250657, at *3 (S.D.N.Y. Nov. 29, 2018) (awarding 26% of $126 million in antitrust class action settlement); *Lea v. Tal Educ. Grp.*, 2021 WL 5578665, at *12 (S.D.N.Y. Nov. 30, 2021) (noting that fee requests for 33% of the settlement fund have "been approved as reasonable in this Circuit"); *Flag Telecom*, 2010 WL 4537550, at *24 (noting that 30% of the "net" settlement fund "is well within the range of fees awarded . . . by courts in this Circuit"); *In re Top Tankers, Inc. Sec. Litig.*, 2008 WL 2944620, at *13 n.9 (S.D.N.Y. 2008) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.").

dispositive motions but, more importantly, to quickly shepherd the matter to trial under the Court's expedited schedule. As detailed in the Declaration submitted with Class Counsel's Motion for Final Approval, Class Counsel undertook substantial efforts on behalf of the Class. *See* Boies & Edwards Decl. ¶¶ 9–10, 17–44. The work performed and the resources dedicated are summarized below.

***Fact Discovery and Development.*** Before filing, Class Counsel investigated this complex matter by engaging in extensive research, interviewing dozens of witnesses and potential class members, and reviewing tens of thousands of documents. That investigation involved investigating Epstein's worldwide trafficking scheme during the timeframe he banked with Defendant or its affiliates, interviewing survivors, and investigating Defendant's banking relationship with Epstein. *See id.* ¶ 19. After the matter was filed, the Court held the parties to a fast and efficient discovery schedule. In the span of just five months, Class Counsel served three sets of document requests on Defendant, met and conferred extensively with Defendant about their requests, and analyzed the over 27,000 documents Defendant produced. *See id.* ¶ 25. Class Counsel took eight depositions, including one Rule 30(b)(6) deposition of Defendant. *See id.* ¶ 26. Before the Rule 30(b)(6) deposition, Class Counsel negotiated with Defendant's counsel extensively regarding appropriate deposition topics. *See id.*

During the same compressed timeframe, Defendant served five sets of document requests on Class Representative, and Class Counsel collected, searched, and produced over 17,000 responsive documents from Class Representative's files, including over 1,000 pages of personal medical records. *See id.* ¶ 27. Class Counsel spent significant time preparing responses and objections, meeting and conferring with Defendant's Counsel about the scope of their requests and producing responsive documents. *See id.* Class Counsel also prepared and defended Class Representative for her deposition, which involved extensively preparing her to testify about an

extremely traumatic and complex period of her life. *See id.* Class Counsel also conducted substantial third-party discovery. Through diligent efforts and multiple meet-and-confers, Class Counsel also obtained additional evidence from third parties.

***Motion Practice.*** At the time of Settlement, Class Counsel had devoted time and resources to two major motions. Defendant first filed a motion to dismiss all of Plaintiff's claims on November 13, 2025. *See* ECF Nos. 38, 39. Class Counsel closely analyzed the motion and submitted a response in opposition to the motion. *See* ECF No. 45. The Court held oral argument on Defendant's motion, which required significant preparation by Class Counsel. Then, on December 29, 2025, Class Counsel filed an Amended Complaint on behalf of Plaintiff to address the issues raised at the hearing. *See* ECF No. 57. On January 20, 2026, Class Counsel filed a supplemental memorandum in opposition to the motion to dismiss. *See* ECF No. 68. Defendant's motion and supplemental briefing involved complex legal theories, as further outlined above (*see supra* I.B.1.), and responding to Defendant's motion and supplemental briefing required substantial resources. Second, at the time of Settlement, Class Counsel had filed a motion to certify the class and reply in support of its motion, which were accompanied by declarations and over 75 exhibits. *See* ECF Nos. 74–78, 91–94. Class Counsel also prepared significantly for oral argument on the motion to certify the class, which was scheduled for March 12, 2026, the day after the parties reached a settlement-in-principle.

***Expert Discovery.*** At the time of Settlement, Class Counsel had retained four expert witnesses: Jane Khodarkovsky, Alison Jimenez, Marianne Demario, and Chitra Raghavan. Boies & Edwards Decl. ¶ 30. Ms. Khodarkovsky submitted a 51-page report, Ms. Jimenez submitted a 53-page report, Ms. DeMario submitted a 16-page report, and Ms. Raghavan submitted a 36-page report. Boies & Edwards Decl. ¶ 31. In addition to reviewing and analyzing each expert's report

and preparing each expert for deposition, Class Counsel defended Ms. Khodarkovsky's deposition, which took place on March 10, 2026. *Id.* In addition, Defendant disclosed six experts on March 9, 2026. *Id.* ¶ 32. Class Counsel reviewed and analyzed Defendant's expert reports and prepared for depositions of those experts prior to Settlement. *Id.*

***Mediation and Settlement.*** On February 20 and March 9, 2026, Class Counsel engaged in a multi-day, arms-length confidential mediation with Defendant before Judge Layn R. Phillips, a retired judge and experienced mediator in large and complex civil sexual abuse matters and class actions. *Id.* ¶¶ 33, 35. The mediation was preceded by the submission of substantial mediation statements by the parties. *Id.* ¶ 34. Beyond the work already performed, Class Counsel will continue to expend time and resources overseeing the administration of the Settlement. *See deMunecas v. Bold Food, LLC*, 2010 WL 3322580, at *10 (S.D.N.Y. Aug. 23, 2010) ("Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward . . . ").

After Settlement, Class Counsel combed through hundreds of thousands of documents including banking records produced by Defendant, flight logs, message pads, police reports from multiple states, news articles, and multiple third-party productions including emails from the Estate of Jeffrey Epstein to identify all potential Class Members within Class Counsel's possession. Class Counsel called and emailed potential survivors using known contact information. Class Counsel also hired an investigative team to locate and correspond with dozens of potential Class Members in their native language to provide notice of the underlying action and information relating thereto. Class Counsel further asked each known Class Member to provide the identity and contact information for any additional potential Class Member that they were familiar with and then underwent the same investigative measures to locate and contact those individuals. Lastly,

Class Counsel has devoted hundreds of hours meeting with Class Members in person and over Zoom, and engaging in telephone conversations with Class Members in order to assist in the completion of the Settlement Forms in the most trauma-informed manner possible, and assisting Class Members with the interview process. Many Class Members have expressed deep gratitude for the way in which Class Counsel handled the administration of this fund as many women had never come forward as a result of language barriers, cultural differences, and deep-rooted fear.

Throughout this Litigation, Class Counsel staffed the matter efficiently and avoided unnecessary duplication. Moreover, additional hours and resources have and will be expended seeking the Court's final approval of the Settlement, responding to Class Member inquiries, assisting Class Members with completing and submitting Settlement Forms, assisting the Fund Administrator in overseeing the claims process, and participating in the final approval hearing. Given the substantial time and effort devoted by Class Counsel to obtain a $72.5 million recovery, a request for attorneys' fees amounting to 30% of the Settlement Amount is appropriate.

**4. The Risks of the Litigation.**

Class Counsel faced substantial risks throughout the Litigation, and the Court's consideration of a reasonable fee should account for them. Indeed, the risk undertaken in the litigation is often considered the most important *Goldberger* factor. *See Goldberger*, 209 F.3d at 54 ("We have historically labeled the risk of success as 'perhaps the foremost' factor to be considered in determining whether to award an enhancement."); *In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010). Class Counsel respectfully submits that the risks Class Counsel shouldered throughout the Litigation strongly favor the requested fee.

***The Risks of Establishing Liability.*** As set forth in the Final Approval Memorandum and the accompanying Declaration of David Boies and Bradley J. Edwards, while Class Representative remains confident in her claims, her ability to ultimately prove her case at trial and obtain damages

was uncertain. *See* Boies & Edwards Decl. ¶¶ 47–50; Final Approval Mem. at 8. Defendant raised numerous challenges to the sufficiency of Class Representative's factual allegations supporting her TVPA claims. *See also supra* at 9. The Court's dismissal of Class Counsel's companion case against Bank of New York Mellon further illustrates the meaningful litigation risk Class Counsel assumed. Defendant was likely to raise at summary judgment, trial, and on appeal whether (1) Plaintiff could prove that Defendant knowingly participated in and benefited from Epstein's sex-trafficking venture and (2) whether Defendant obstructed enforcement of the TVPA.

Defendant may have also argued that Class Members' relationships with Epstein were consensual and not the stereotypical trafficking relationship that most jurors would expect.[6] The jury would be tasked with determining whether the Class Members' relationships with Epstein were consensual, whether they were victims of force, fraud, or coercion, and whether they were trafficked under the statutory definition in the TVPA. These complex issues create substantial risk in any trafficking case, no matter the strength of the evidence, and would require competing expert testimony about concepts like coercion, force, and trauma bonding.[7] Research shows that jurors' own biases and assumptions about sexual assault and trafficking, their personal perceptions of a victim's character and lifestyle, and their beliefs about how much a victim must resist sexual abuse in order to be entitled to the protections of the justice system could heavily influence the outcome

---

[6] *See, e.g.*, Blanche Bong Cook, *Stop Traffic: Using Expert Witnesses to Disrupt Intersectional Vulnerability in Sex Trafficking Prosecutions*, 24 BERKELEY J. CRIM. L. 147, 166–67 (2019) ("As a general matter, jurors are more inclined to recognize criminality in cases involving child sex trafficking or cases involving aggressive or sensationalized displays of force . . .").

[7] *See, e.g.*, Operational Indicators of Trafficking in Human Beings, Int'l L. Org. (2009), http://www.ilo.org/wcmsp5/groups/public/@ed_norm/@declaration/documents/publication/wcms_105023.pdf ; Chitra Raghavan & Kendra Doychak, *Trauma-coerced Bonding and Victims of Sex Trafficking: Where Do We Go From Here?*, 17 INT'L J. EMERGENCY MENTAL HEALTH & HUM. RESILIENCE 583, 583-87 (2015) (explaining that victims of abuse can form emotional attachments to their abusers as a result of control dynamics and power imbalances).

of the trial.[8] Indeed, Epstein's own attorneys advanced the narrative that those he abused were "prostitutes," rather than victims, for years.[9] Whether Class Representative ultimately would prove liability was far from assured. And even if Class Representative's claims survived Defendant's motion for summary judgment and were successful at trial, these arguments undoubtedly would have been raised on appeal.

As importantly, the range of potential damages—assuming Class Representative succeeded in establishing liability at trial—was such that the Class faced substantial risk that a trial victory would have led to a recovery of a lesser amount than the Settlement. As noted above, the Epstein Victims' Compensation Program on average awarded less than $1 million per applicant, meaning there was substantial risk that a jury would have awarded substantially less to survivors against a financial institution that allegedly benefited from the trafficking but was not the direct trafficker.

Further, class certification was not certain, and if it were granted, maintaining class certification through trial carries risk. *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *13 (S.D.N.Y. Oct. 16, 2019) (the risk of maintaining a class action through trial weighed in favor

---

[8] *See, e.g.*, Cook, *supra* note 6, at 168–69 ("Jurors, judges, and the public more readily recognize force and fraud where the victim is subjected to sensationalized forms of violence. Much less obvious and detectible as 'common sense' are the multitudinous forms of vulnerability, psychological manipulations, 'head games,' and grooming processes that sex traffickers use to control their victims."); Elizabeth F. Kuniholm, *Representing the Victim of Sexual Assault and Abuse: Special Considerations and Issues*, Association of Trial Lawyers of America, July 2006 ("Suspicion, personal responsibility, and blaming the plaintiff are the most deadly of the biases, and the issues that arise in sexual assault and abuse cases seem to trigger these biases in a particularly potent way, especially when jurors identify with the plaintiff."); Kimberly D. Bailey, *Sex in a Masculinities World: Gender, Undesired Sex, and Rape*, 21 J. GENDER RACE & JUST. 281, 291 (2018) ("Even with respect to those jurisdictions that no longer formally require force, courts and jurors still intuitively look for either physical resistance or some type of force on the part of the perpetrator as evidence of a lack of consent.").

[9] *See* Jane Musgrave, *Prosecutor to Jeffrey Epstein victims: I'm Sorry Deal Labeled You as Prostitutes*, PALM BEACH POST, Dec. 3, 2020, https://www.palmbeachpost.com/story/news/2020/12/03/prosecutor-jeffrey-epsteins-victims-im-sorry-deal-labeled-you-prostitutes/3812499001/.

of final approval because "a class certification order may be altered or amended at any time before a decision on the merits"). With those risks in mind, securing a guaranteed payout for the Class weighs heavily in favor of awarding Class Counsel its fee request.

***The Contingent Nature of the Fee.*** The fee award must also account for the risk that Class Counsel could walk away from this case with nothing. *See Flag Telecom*, 2010 WL 4537550, at *27 ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award."); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 985 F. Supp. 410, 417 (S.D.N.Y. 1997) (same). Class Counsel undertook this litigation on a wholly contingent basis, investing millions of dollars in time and resources to develop the facts and legal theories, complete fact discovery and undertake expert discovery, and oppose critical motions, all with no guarantee of compensation or even recovery of expenses. Class Counsel has not yet been compensated for any time since they began to represent the Class and would have received no compensation or payment of its expenses had this case not been resolved successfully. In undertaking that responsibility, Class Counsel was obligated to ensure that sufficient attorney and paraprofessional resources were dedicated to prosecuting the litigation and had to advance its own funds to pay out-of-pocket expenses. Boies & Edwards Decl. ¶ 60. Under such circumstances, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis.

Class Counsel's assumption of the contingent-fee risk strongly supports the reasonableness of a fee request. As the Second Circuit explained, a "district court [may] reasonably conclude[] that the significant litigation risk present in this case meant that class counsel had taken on a venture with a high risk of failure, and that the risk should be compensated." *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 727 (2d Cir. 2023); *see Marsh*, 265 F.R.D. at 148.

**5. The Magnitude and Complexity of the Litigation**

The complexity of the litigation is another factor examined by courts evaluating the reasonableness of attorneys' fees requested by class counsel. *See Christine Asia Co.*, 2019 WL 5257534, at *18–19. Class Representative's Amended Complaint included six statutory and tort claims against Defendant. Defendant moved to dismiss all six claims in a motion to dismiss and raised complex legal arguments requiring substantial research and collaboration to effectively and successfully respond. ECF No. 39. Factually, the case involved litigating Epstein's complex decades-long sex-trafficking operation; difficult issues around sexual abuse, coercion and control, and trauma bonding, requiring expert consultation and testimony; and issues relating to banking, anti-money laundering compliance, and Bank Secrecy Act compliance. All legal issues and factual allegations were hotly contested. Litigating such a case prior to and at trial on the many complex, contested issues inherent in this type of litigation requires substantial skill, resources, and experience, all while facing an uncertain outcome and with millions of dollars in damages at stake. Ultimately, because the Litigation revolved around "difficult, complex, hotly disputed, and expert-intensive issues," this factor favors awarding a 30% fee. *Aeropostale*, 2014 WL 1883494, at *16.

The Litigation involved significant briefing, motion practice, fact discovery, and expert discovery between Class Counsel and Defendant's Counsel, requiring sophisticated law firms with significant experience both litigating class action lawsuits and negotiating settlements to deploy significant resources in order to litigate effectively on behalf of their clients. Additionally, the Litigation required expertise not only in sex-trafficking, but also in banking and finance, expanding the areas covered beyond the already complex substance of the typical class action context. Due to these overlapping areas of expertise required, discovery and motion practice were particularly complex and hard-fought—and would continue to be hard-fought were litigation to continue. Given the complexity and high stakes of the Litigation and the significant public interest it

attracted, and the resources required to litigate the matter, Class Counsel's ability to secure a favorable outcome counsels in favor of Class Counsel's proposed fee award.

**6. Public Policy Considerations**

Public policy considerations support awarding the requested fee. "Counsel's fees should reflect the important public policy goal of providing lawyers with sufficient incentive to bring common fund cases, like this one, that serve the public interest. A fee that is too low would create poor incentives to bring a class action case such as this . . . " *Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm.*, 504 F. Supp. 3d 265, 270–71 (S.D.N.Y. 2020). The representation of vulnerable sex-trafficking survivors is the type of case worthy of judicial encouragement, especially due to the difficulties associated with bringing such actions individually given the sensitive nature of the subject matter and their inherent risks. Additionally, the case has the potential to reshape how financial institutions oversee the banking activity of clients with criminal histories and monitor transaction activity for indicia of sex trafficking and other criminal activity.

**C. The Class's Reaction to the Fee Request to Date Supports the Requested Fee.**

The Fund Administrator included in her Notice to potential Class Members that Class Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 30% of the Settlement Amount. *See, e.g.*, ECF No. 150-1 at 12. The time to object to the fee request expires on August 6, 2026. *See id.* ¶ 14. To date, no objections to the fee and expense amounts set forth in the Notice have been filed, and no objections to any other aspect of the Settlement have been filed. *Id.* Such a "low level of objection is a 'rare phenomenon.'" *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005).

Further, no Class Member opted out of the Settlement by the May 13, 2026 deadline, ECF No. 150-1 ¶ 13, and many Class Members have communicated their appreciation for the settlement

to Class Counsel. *See* Final Approval Mem. at 11. The fact that zero objections have been filed to date and no Class Member has opted out supports the fairness of the fee request.

**D. The Fee Request Is Reasonable Based on a Lodestar Cross-Check.**

The Court has discretion to use the fee applicant's lodestar as a cross-check on reasonableness. *Goldberger*, 209 F.3d at 50. "It bears emphasis that the lodestar computation here is a cross-check, calculated with less precision than would be required if lodestar were the primary methodology." *In re AOL Time Warner*, *Inc. Sec. & ERISA Litig.*, 2006 WL 3057232, at *28 (S.D.N.Y. Oct. 25, 2006). As *Goldberger* explained, when used as a "mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. Class Counsel's fee request is appropriate under the lodestar metric.

The lodestar analysis has two parts. First is determining the lodestar, which is calculated by "multipl[ying] the number of hours each attorney spent on the case by each attorney's reasonable hourly rate." *Aeropostale*, 2014 WL 1883494, at *13. Here, Class Counsel's combined lodestar totals $12,727,507.00.[10] BSF Decl. ¶¶ 6–7; EH Decl. ¶¶ 6–7. "[S]econd, the court adjusts that lodestar figure (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result obtained, and the quality of the attorney's work." *Aeropostale*,

[10] In calculating their lodestars, BSF and EH used current, rather than historical, billing rates. The Supreme Court and courts in this Circuit have approved that approach, which compensates counsel for rising inflation (which have been particularly pronounced in the post-pandemic period) and the time-value of money. *See, e.g.*, *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1153 (2d Cir. 1983) (explaining that if, as here, "the [legal] services were rendered over two or three years, relevant figures for the current year will normally still be appropriate"); *In re KeySpan Corp. Sec. Litig.*, 2005 WL 3093399, at *15 n.8 (E.D.N.Y. Sept. 30, 2005) ("Given that services for this litigation were rendered over three years, this Court finds that use of current rates may be appropriate for purposes of the [lodestar] cross-check."); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 n.25 (S.D.N.Y. 1998).

2014 WL 1883494, at *13. Based upon the fee request of 30% of the Settlement Amount, Class Counsel's lodestar multiplier is approximately 1.7.

In this contingency fee case, Class Counsel bore substantial risk that it would be paid nothing for its work on behalf of the Class. Fees in excess of the lodestar are routinely awarded to account for this contingency-fee risk and other factors. *See, e.g.*, *Flag Telecom*, 2010 WL 4537550, at *26 ("[A] positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors."). Put simply, "an unenhanced lodestar fee does not account for the contingent risk that a lawyer may assume in taking on a case." *Fresno Cnty. Emps.' Ret. Ass'n*, 925 F.3d at 68.

"Courts commonly award lodestar multipliers between two and six." *Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012); *see also In re GSE Bonds Antitrust Litig.*, 2020 WL 3250593, at *5 (S.D.N.Y. June 16, 2020) (Rakoff, J.) ("[A] 4.09 multiplier is within the range of what [i]s considered reasonable by courts."); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 354 (S.D.N.Y. 2005) (4.0 multiplier); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (4.65 multiplier); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. at 489 (lodestar multipliers between 3 and 4.5 are common); *Bekker*, 504 F. Supp. 3d at 271 (5.85 multiplier); *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) (5.0 multiplier). Accordingly, a lodestar multiplier of 1.7 is below the range of reasonable multipliers in successful class actions.

The lodestar multiplier analysis is used as a cross-check on reasonableness. Here, while shouldering the risk of recovering nothing, Class Counsel litigated this case on a contingency basis, investing over 12,000 hours for the benefit of the Class through June 30, 2026, before accounting

for additional time incurred in July and August. The requested fee is reasonable, both calculated as a percentage of the fund and cross-checked using the lodestar method.

**CONCLUSION**

Class Counsel's efforts have achieved a strong result for the Class. Based on the foregoing, and the entire record herein, Class Counsel respectfully requests that the Court award attorney's fees of 30% of the Settlement Amount.

Dated: July 23, 2026

Respectfully submitted,

*/s/ David Boies*

David Boies
Andrew Villacastin
Rachael Schafer
Boies Schiller Flexner LLP
55 Hudson Yards
New York, NY
Telephone: (212) 446-2300
Fax: (212) 446-2350
Email: dboies@bsfllp.com
Email: avillacastin@bsfllp.com
Email: rschafer@bsfllp.com

Sigrid S. McCawley
Daniel Crispino
Megan Nyman
Andrea Guzman
Boies Schiller Flexner LLP
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33316
Telephone: (954) 356-0011
Fax: (954) 356-0022
Email: smccawley@bsfllp.com
Email: dcrispino@bsfllp.com
Email: mnyman@bsfllp.com
Email: aguzman@bsfllp.com

Jessica Lim
Boies Schiller Flexner LLP
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Telephone: (213) 995-5745
Email: jlim@bsfllp.com

Bradley J. Edwards
Brittany N. Henderson
Dean Kaire
Edwards Henderson
425 N. Andrews Ave., Suite 2
Fort Lauderdale, FL 33301
Telephone: (954) 524-2820
Fax: (954) 524-2822
Email: brad@cvlf.com
Email: brittany@cvlf.com
Email: dean@cvlf.com

*Counsel for Plaintiff Jane Doe*

**CERTIFICATE OF COMPLIANCE**

I, David Boies, hereby certify pursuant to Local Civil Rule 7.1(c) that the foregoing Memorandum of Law was prepared using Microsoft Word and complies with Rule 2(e) of this Court's Individual Rules and Local Rule 7.1(c).

*/s/ David Boies*