**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JANE DOE, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>        v.<br><br>BANK OF AMERICA, N.A.,<br><br>    Defendant. | Case No. 25-cv-8520 (JSR) |

**JOINT DECLARATION OF DAVID BOIES AND BRADLEY J. EDWARDS IN
SUPPORT OF MOTIONS FOR (1) FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION AND (2) AN AWARD
OF ATTORNEYS' FEES**

We, David Boies and Bradley J. Edwards, declare as follows:

1.        I, David Boies, am a member in good standing of the bar of the State of New York and am admitted to practice before this Court. I am a Founding Partner of Boies Schiller Flexner LLP ("BSF"). I make this declaration on my own personal knowledge, and if called as a witness to testify, I could and would testify competently to the following facts.

2.        I, Bradley Edwards, am a partner at Edwards Henderson ("EH"). I am an attorney at law duly licensed to practice before the courts of the state of New York. I make this declaration on my own personal knowledge, and if called as a witness to testify, I could and would testify competently to the following facts.

3.        The two law firms representing Plaintiff Jane Doe ("Class Representative" or "Plaintiff") and the Class, Boies Schiller Flexner LLP and Edwards Henderson, PLLC (collectively, "Class Counsel"), have invested significant resources into investigating and

1

litigating this case.

4.      We submit this declaration pursuant to Rule 23 of the Federal Rules of Civil Procedure in support of the motions for: (a) final approval of the Settlement between Class Representative, on behalf of herself and the Class, and Defendant Bank of America, N.A. ("Defendant" "BANA," or the "Bank") (together with Class Representative, the "Parties"), in an amount of $72.5 million plus certain litigation costs and claims administration costs, and approval of the Plan of Allocation, and (b) an award of attorneys' fees.

## I.      PRELIMINARY STATEMENT

5.      This case grew out of our firms' long representation of the survivors of Jeffrey Epstein's sex-trafficking ring. EH began representing Epstein survivors in 2008. BSF began representing Epstein survivors in the first half of 2014.

6.      By 2021, our firms had successfully brought lawsuits against Epstein himself during his life, his estate after his death, collaborators like Ghislaine Maxwell, and certain associates like Prince Andrew. Although we had collectively recovered substantial amounts for our clients, we believed they had not been fully compensated, and that many who had made the scope, scale, and duration of Epstein's sex trafficking possible had not been held accountable.

7.      For many years, we had investigated Epstein's relationship with major banks. In early 2021, we decided to make a concerted effort to develop cases against JPMorgan Chase and Deutsche Bank, the two primary banks on which Epstein had relied.

8.      BSF and EH were appointed as co-class counsel for *Doe 1 v. JPMorgan Chase Bank, N.A.*, (22-cv-10019) (S.D.N.Y.). There, the Court granted class certification for similar claims against JPMorgan Chase. BSF and EH led the case through discovery and eventually to an agreeable settlement for all involved victims. The Court also granted class certification for similar

claims against Deutsche Bank for settlement purposes.

9.        In 2025, we decided to make a concerted effort to develop a case against Bank of America, after new information revealed that Epstein had also relied on its banking services. BSF and EH have expended substantial time and resources in actively and diligently litigating this action. Class Counsel has spent over 12,000 hours and substantial resources in developing the Class Representative's case, undertaking substantial discovery and engaging in motion practice. In preparation for the filing of this action, Class Counsel engaged in extensive research, conducted dozens of interviews, and reviewed thousands of documents. Class Counsel confidentially interviewed at least 50 individuals, including dozens of survivors. Additionally, Class Counsel conducted significant research into Defendant and reviewed an enormous volume of publicly available documents regarding Jeffrey Epstein and his sex-trafficking operation. Class Counsel expended considerable resources once the suit was filed engaging in extensive discovery efforts, including extensive fact, class certification, and expert discovery, taking and defending 10 depositions with other depositions continuing, producing and reviewing hundreds of thousands of pages of documents, and preparing and rebutting reports for nine expert witnesses. Class Counsel also engaged in motion practice and opposed Defendant's motions, including discovery disputes, a motion to dismiss, and a motion for class certification.

10.        This Settlement is the product of hard-fought litigation and takes into consideration the significant risks specific to the case. In particular, the Settlement is the result of arm's-length negotiations between the parties facilitated by Judge Layn R. Phillips, a former United States Attorney, former United States District Judge, and nationally recognized mediator. These negotiations were conducted by experienced counsel with a full understanding of both the strengths and weaknesses of their respective cases.

11.     Class Representative believes that this Settlement is an excellent result. While the time for objecting to the Settlement or counsel's fees has not yet expired, no Class Members opted out and no objections have been filed. Any objections will be addressed in Class Counsel's reply brief (which, in accordance with the schedule set by the Court, will be filed no later than August 20, 2026).

## II.     SUMMARY OF CLASS REPRESENTATIVE'S ALLEGATIONS

12.     Class Representative alleges that Jeffrey Epstein's sex-trafficking venture was facilitated and enabled by Defendant helping Epstein avoid regulators' scrutiny and providing Epstein with banking and wire services, all so Defendant could profit from Epstein and his associates. *See* ECF No. 57 (Amended Complaint). She alleges that Defendant's assistance to Epstein's sex-trafficking enterprise prevented the authorities from discovering his illegal scheme and increased the size and scale Epstein's access to and control of victims, causing damage to members of the Class.

## III.     THE REASONS FOR THE SETTLEMENT

13.     In opting to settle the Litigation, Class Representative and Class Counsel were informed by a thorough investigation of the relevant claims; extensive fact and expert discovery; extensive briefing on motions to dismiss and for class certification, and discovery issues; and participation in extensive settlement negotiations, which included a two-day mediation. Class Representative and Class Counsel therefore had an adequate basis for assessing the strength of the Class's claims and Defendant's defenses when they agreed to the Settlement. The Settlement is demonstrably the product of well-informed negotiations and vigorous advocacy on behalf of victims of Jeffrey Epstein.

14.     On balance, considering all the circumstances and risks both sides faced were

4

the case to continue to trial, both Class Representative (for herself and the Class) and Defendant concluded that settlement on the terms agreed upon was in their respective best interests.

15.     Class Counsel have prosecuted the Litigation on a wholly contingent basis and have advanced and incurred substantial litigation expenses. In doing so, Class Counsel shouldered the substantial risk of an unfavorable result. Class Counsel have not yet received any compensation for their efforts.

16.     Class Counsel's fee application for 30% of the Settlement Amount is fair, reasonable, and within the range of fee awards in this District in similar class actions. *See* Memorandum of Law in Support of Motion for an Award of Attorneys' Fees ("Fee Motion"). Particularly under the facts of this case, this percentage is justified in light of the substantial benefits conferred on the Class, the risks undertaken, the quality of representation, and the nature and extent of legal services performed.

## IV.    THE LITIGATION

17.     The following is a summary of the principal events that occurred during the course of the Litigation.

18.     Class Counsel expended substantial time and effort pursuing the Litigation on behalf of the Class. BSF and EH are both primarily trial firms and prepare their case strategy based on anticipating the requirements for trial and working back from there in implementing strategy for discovery, experts, and motion practice. Class Counsel took that approach here and respectfully submits that doing so led directly to the successful Settlement.

### A.    Preparation for and Commencement of the Action

19.     As described above, before filing Class Counsel investigated this complex matter by engaging in extensive research, conducting dozens of interviews, and reviewing

thousands of documents. That investigation involved investigating Epstein's worldwide trafficking scheme during the timeframe he banked with Defendant or its affiliates, interviewing survivors, and investigating Defendant's relationship with Epstein.

20.      On October 15, 2025, Plaintiff filed her putative class action complaint on behalf of herself and on behalf of "[a]ll women who were sexually abused or trafficked by Jeffrey Epstein or Epstein's co-conspirators during the time when Bank of America maintained bank accounts for Epstein, Epstein's co-conspirators, Epstein-related entities, and/or Epstein related-accounts." *See* ECF No. 1 at ¶ 115.

21.      On November 13, 2025, Defendant moved to dismiss the complaint. *See* ECF Nos. 38, 39. Plaintiff filed a response on December 1, 2025, *see* ECF No. 45, and Defendant filed a reply on December 8, 2025, *see* ECF No. 48.

22.      Following oral argument regarding Defendant's motion to dismiss on December 15, 2025, Plaintiff filed an Amended Complaint on December 29, 2025. *See* ECF No. 51 (refiled at ECF No. 57). On January 12, 2026, Defendant filed its supplemental memorandum in support of its motion to dismiss, *see* ECF No. 63, and on January 20, 2026, Plaintiff filed her supplemental memorandum in opposition to the motion to dismiss, *see* ECF No. 68.

23.      The Court entered a "bottom-line" order granting in part and denying in part Defendant's motion to dismiss on January 29, 2026. *See* ECF No. 70. The Court's written opinion followed on February 11, 2026, reconfirming its rulings and explaining the reasoning behind them. *See* ECF No. 73; *Doe v. Bank of America, N.A.*, 819 F. Supp. 3d 314 (S.D.N.Y. 2026).

24.      Defendant answered the Amended Complaint on February 19, 2026. *See* ECF No. 81.

6

**B.      Fact Discovery**

25.      After the matter was filed, the Court held the parties to a fast and efficient discovery schedule. In the span of just five months, Class Counsel served three sets of document requests on Defendant, met and conferred at least once a week with Defendant about their requests, and analyzed the over 27,000 documents Defendant produced.

26.      During the fact-discovery period, Class Counsel took seven depositions of current or former employees of Defendant or an affiliate with relevant information. In addition, Class Counsel took the deposition of a 30(b)(6) witness. Class Counsel negotiated with Defendant's counsel extensively regarding deposition topics for Defendant's Rule 30(b)(6) deposition and took that deposition on March 5, 2026.

27.      During the same compressed timeframe, Defendant served five sets of document requests on Plaintiff, and Class Counsel collected, searched, and produced over 17,000 responsive documents from Plaintiff's files, including over 1,000 pages of personal medical records. Class Counsel spent significant time preparing responses and objections, and meeting and conferring with Defendant's Counsel about the scope of their requests at least weekly. Class Counsel also prepared Plaintiff for her deposition, which involved extensively preparing her to testify about an extremely traumatic and complex period of her life. Class Counsel defended Plaintiff for her deposition. Plaintiff also sought documents from numerous other non-parties over the course of the Litigation.

**C.      Motion Practice**

28.      At the time of settlement, Class Counsel had devoted time and resources to two major motions. As just mentioned, Defendant filed a motion to dismiss all of Plaintiff's claims on November 13, 2025. ECF Nos. 38, 39. In response, Class Counsel closely analyzed the motion and

submitted a response in opposition to the motion. ECF No. 45. The Court held oral argument on Defendant's motion, which required significant preparation by Class Counsel. Then, on December 29, 2025, Class Counsel filed an Amended Complaint on behalf of Plaintiff to address the issues raised at the hearing. ECF No. 51 (refiled at ECF No. 57). On January 20, 2026, Class Counsel filed a supplemental memorandum in opposition to the motion to dismiss. ECF No. 68. Defendant's motion and supplemental briefing involved complex legal theories and responding to Defendant's motion and supplemental briefing required substantial resources.

29.     On February 17, 2026, Class Counsel filed a motion to certify the class, which was accompanied by a declaration and over 60 exhibits. ECF Nos. 74, 77, 78. On March 9, 2026, Class Counsel filed a reply, which was accompanied by a declaration and over 15 additional exhibits. ECF Nos. 91, 92. Class Counsel also prepared significantly for oral argument on the motion to certify the class, which was scheduled for March 12, 2026, the day after the parties reached a settlement-in-principle.

**D.     Expert Discovery**

30.     Class Counsel worked extensively with the following retained experts and their teams and utilized their services throughout the Litigation:

a. <u>Jane Khodarkovsky</u>: Ms. Khodarkovsky is a former prosecutor and sex-trafficking expert who provides consulting services related to anti-money laundering, human trafficking, and child exploitation. Ms. Khodarkovsky prepared an expert report in this matter, reviewed many documents produced by Defendant, provided deposition testimony on March 10, 2026, and provided valuable consulting services to Class Counsel in connection with this case.

b. <u>Alison Jimenez</u>: Ms. Jimenez is a Certified Anti-Money Laundering Specialist

who provides expert testimony and consulting on Bank Secrecy Act and Anti-Money Laundering compliance issues. Ms. Jimenez prepared an expert report in this matter and provided valuable consulting services opining on whether Defendant's Epstein-related activities failed to meet industry standards relating to anti-money laundering, and reviewed many documents produced by Defendant in doing so.

c.  Marianne DeMario: Ms. DeMario is a Certified Public Accountant who specializes in forensic accounting investigations, damages analyses, and business valuations. Ms. DeMario prepared an expert report in this matter providing an analysis of the amount of economic damages Class Representative suffered due to Defendant's conduct.

d.  Chitra Raghavan: Ms. Raghavan is a licensed clinical psychologist and an expert in sex trafficking. She is the Director of the Forensic Mental Health Counseling Program at CUNY's John Jay College of Criminal Justice and has authored over sixty peer-reviewed book chapters and academic journal articles and two books on the subject. Ms. Raghavan spent significant time with Class Counsel and with Class Representative and prepared an expert report regarding the psychological damages to Class Representative related to sex trafficking.

31.     Ms. Khodorkovsky submitted a 51-page report, Ms. Jimenez submitted a 53-page report, Ms. DeMario submitted a 16-page report, and Ms. Raghavan submitted a 36-page report. Class Counsel reviewed those reports, prepared each expert for deposition, and defended Ms. Khodorkovsky's deposition prior to Settlement.

32.     Additionally, Defendant disclosed six experts on March 9, 2026. Class Counsel

9

reviewed and analyzed Defendant's expert reports and prepared for depositions of those experts prior to Settlement.

## V.    SETTLEMENT NEGOTIATIONS AND TERMS

33.    On February 20 and March 9, 2026, the Parties participated in a confidential mediation before Judge Layn R. Phillips, a retired judge and an experienced mediator in large and complex civil sexual abuse matters and class actions.

34.    Prior to the mediation, the parties submitted confidential mediation statements and exhibits that outlined each side's critical facts and legal arguments.

35.    Class Representative conducted arm's-length negotiations with Defendant with a view to achieving the best relief possible consistent with the interests of the Class. The settlement discussions were led by David Boies, Sigrid McCawley, and Bradley Edwards, who have extensive experience in litigating and resolving complex cases in federal courts. Defendant's counsel had similar experience in resolving complex litigation.

36.    Following the mediation, the parties reached a settlement-in-principle to resolve the Litigation for $72.5 million plus certain litigation costs and claims administration costs. The Parties negotiated a confidential Settlement Term Sheet ("Term Sheet"), memorializing their agreement to settle Class Representative's claims against Defendant and to end the Litigation, and executed the Term Sheet on March 15, 2026. The Term Sheet included, among other things, the Parties' agreement to settle and dismiss the Litigation with prejudice and to grant full mutual releases in return for a cash payment of $72.5 million by and/or on behalf of Defendant for the benefit of the Class, subject to the negotiation of the terms of a Stipulation of Settlement and approval by the Court.

37.    The parties then negotiated, drafted, finalized, and signed the formal settlement

agreement detailing the terms of the proposed Settlement, which was filed with the Court on March 27, 2026, along with Class Representative's Unopposed Motion for Preliminary Approval of Class Action Settlement and Approval of Notice to the Class. *See* ECF Nos. 120, 121, 122.

38.    On April 3, 2026, the Court granted preliminary approval of the Settlement, including the form and manner of notice of the Settlement to the Class. *See* ECF No. 134.

39.    The Settlement set forth in the Stipulation resolves the claims of the Class against Defendant for $72.5 million in cash, less reasonable attorneys' fees, unreimbursed expenses of Class Counsel, taxes, and tax expenses. The recovery to individual Class Members will depend on factors including the circumstances, severity, type, and extent of the alleged abuse or trafficking, the nature and duration of the relationship with Epstein, and the impact of the alleged conduct on the Participating Claimant. Significantly, the average recovery per Class Member will be similar to the average recovery Epstein victims have received in past settlements from Epstein and his estate.

40.    Since the date of the settlement, Class Counsel have spent a tremendous amount of time and energy, along with the help of investigators, locating class members, obtaining current contact information, and providing same with adequate notice pursuant to the terms of the Order Granting Preliminary Approval.

41.    Class Counsel further communicated with last known counsel for Class Members, again to ensure that each identifiable Class Member received adequate notice of the Settlement.

42.    In total, Class Counsel caused at least 120 potential Class Members to receive notification of the Settlement by mail, email, or both.

43.    Following identification and initial contact, Class Counsel met with Class

Members virtually and in person, explaining the terms of the Settlement, and assisting in the preparation of Confidential Questionnaire and Release Forms to ensure that this Fund would be administered in the most effective and trauma informed manner possible.

44. Class Counsel have also attended and helped Class Members prepare for interviews with the Fund Administrator.

45. It is the informed judgment of Class Counsel, based upon all proceedings to date and its extensive experience in litigating class actions, that the proposed Settlement of this matter before the Court is fair, reasonable, and adequate and in the best interest of the Class.

## VI.    CLASS REPRESENTATIVE'S ROLE

46. Class Representative played an active role throughout the Litigation in furthering the interests of the Class. She has demonstrated her ability and willingness to pursue the Litigation on the Class's behalf through her active involvement in the Litigation, including by searching for and producing documents, sitting for a deposition, reviewing numerous filings, staying apprised of developments in the case, participating in settlement negotiations, and approving the Settlement. Class Representative's decision to settle this case was informed by a thorough investigation of the relevant claims; extensive fact and expert discovery; extensive briefing on motions to dismiss and for class certification, and discovery issues; and participation in extensive settlement negotiations, which included a two-day mediation. Class Representative zealously advocated for the interests of victims of Jeffrey Epstein and obtained an excellent result on the Class's claims.

## VII.    THE RISKS OF LITIGATION

47. The Parties vigorously litigated this case, and the Settlement in this Litigation was reached only after Class Counsel had a thorough understanding of the claims alleged in the

Complaint. At the time of Settlement, discovery was substantially complete. Documents had been produced, expert reports had been exchanged, and depositions had been taken. Accordingly, Class Counsel firmly understood the strengths of their claims, the strengths of Defendant's defenses, and the potential damages suffered by the Class.

48.     The $72.5 million Settlement here represents an excellent, historic result for the Class, especially given the likely amount of recovery, the defenses to liability and damages that Defendant advanced, and the design of a claim process that allowed survivors to decide the extent to which they want to participate given the significant potential for re-traumatization. The Settlement provides the Class with an immediate and certain recovery in a case that faced significant risks at summary judgment, trial, and on appeal.

49.     While Class Counsel believe that substantial evidence exists to support a jury verdict in favor of the Class, it recognizes that there were considerable risks and uncertainties if the case had proceeded to trial. The Settlement exceeds what the Class might have recovered even if Class Representative had prevailed at trial. There remained critical questions of fact to be determined at trial as to whether Class Representative would be able to prove Defendant's liability under the TVPA. Each Class Member would also have to prove the amount of damages to which she is entitled based on recounting personal and intimate information. Class Counsel carefully considered these risks throughout the Litigation and in recommending that Class Representative settle this matter.

50.     The Settlement eliminates the possibility that the Litigation would not be finally decided and damages collected for many more years. The trial and appellate process would have added years to the Litigation, further delaying the Class's recovery for harm that began years ago.

13

## VIII.    THE PLAN OF ALLOCATION

51.      The Plan of Allocation was included in the Notice of Proposed Settlement of Class Action, which was submitted to the Court in connection with the motion for Preliminary Approval of the Settlement. *See* ECF No. 121-1, Exhibit A-1.

52.      Under the Plan of Allocation, any Class Members who submit a valid and timely Confidential Questionnaire and Release to the Fund Administrator, does not otherwise exclude themselves from the Class, and who is not otherwise deemed ineligible by the Fund Administrator, will receive an Allocated Amount. The Plan describes the various factors and criteria the Fund Administrator will take into consideration in determining an Allocated Amount.

53.      As such, the Plan of Allocation equitably distributes the Net Settlement Fund to all Participating Claimants who follow these procedures as specified in the Notice and the Confidential Questionnaire and Release.

## IX.    CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES IS REASONABLE

### A.    The Requested Fee Is Reasonable

54.      Considering the nature and extent of the Litigation, the risk and uncertainty of the Litigation, the strong result achieved, the rigorous prosecution of the action, the complexity of the factual and legal issues presented, and the other factors described above and in the accompanying Fee Motion, Class Counsel believe that the requested fee of 30% of the Settlement Amount, including interest at the rate earned by the Settlement Fund, is fair and reasonable.

55.      A 30% fee award is also entirely consistent with percentages awarded by courts in comparable class actions in the Second Circuit and this District, as well as around the country, and is justified by the specific facts and circumstances in this case—including the excellent result obtained for the Class—and the substantial risks that Class Counsel overcame during the

Litigation. *See generally* Fee Motion.

**B.    The Requested Fee Is Supported by the Effort Expended and Results Achieved**

56.    As discussed in greater detail above, the Litigation entailed significant risks with respect to Class Representative's ability to prove both liability and damages. Success was by no means assured. Defendant disputed both liability and damages. Were this Settlement not achieved, and even if Class Representative prevailed at trial, Class Representative (and the Class) potentially faced years of costly and risky appellate litigation, with ultimate success far from certain. And, it is also possible that a jury could have found no liability, lesser damages, or no damages.

57.    As a result of this Settlement, Class Members will benefit and receive compensation for their losses and avoid the significant risk of no recovery in the absence of a settlement. These factors also support Class Counsel's request for an award of attorneys' fees of 30% of the Settlement Amount, plus interest.

**C.    The Risk of Contingent Class Action Litigation Supports the Requested Fee Award**

58.    As set forth in the accompanying Fee Motion, a determination of a fair and reasonable fee should include consideration of the contingent nature of the fee, the financial burden and attendant risk carried by Class Counsel, and the litigation challenges that were overcome in obtaining the Settlement.

59.    This action was prosecuted by Class Counsel on a contingent fee basis. Class Counsel committed 12,350.44 hours of attorney and paraprofessional time in the prosecution of the Litigation. *See* Declaration of Sigrid McCawley in Support of Motion for An Award of Attorneys' Fees ¶ 6 ("BSF Decl."); Declaration of Bradley Edwards in Support of Motion for an Award of Attorneys' Fees ¶ 6 ("EH Decl.").

15

60.     BSF and EH fully assumed the risk of an unsuccessful result. Neither BSF nor EH has received any compensation for its services during the course of this Litigation and they have incurred significant expenses in litigating for the benefit of the Class. Because the fee to be awarded in this matter is entirely contingent, the only certainty from the outset was that there would be no fee without a successful result, and that such a result would be realized only after a lengthy and difficult effort.

61.     Class Counsel's efforts were performed on a wholly contingent basis despite significant risk and in the face of determined opposition. Under these circumstances, it is appropriate to award counsel a reasonable percentage fee based on the benefit conferred and the common fund obtained for the Class. A 30% fee, plus interest, is fair and reasonable under the circumstances present here.

## X.     CONCLUSION

62.     For all of the foregoing reasons, Class Counsel respectfully request that the Court approve the Settlement and Plan of Allocation, and award Class Counsel 30% of the Settlement Amount, plus interest at the same rate as earned on the Settlement Fund until paid.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: July 23, 2026                          Respectfully submitted,

                                              By: */s/ David Boies*
                                              David Boies
                                              Boies Schiller Flexner LLP
                                              55 Hudson Yards
                                              New York, NY
                                              Telephone: (212) 446-2300
                                              Fax: (212) 446-2350
                                              Email: dboies@bsfllp.com

                                              By: */s/ Bradley J. Edwards*

16

Bradley J. Edwards
Edwards Henderson, PLLC
425 N. Andrews Ave., Suite 2
Fort Lauderdale, FL 33301
Telephone: (954) 524-2820
Fax: (954) 524-2822
Email: brad@cvlf.com


*Counsel for Plaintiff Jane Doe*

17