UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>Defendant. | Case No. 25-cv-8520 (JSR) |

**CLASS REPRESENTATIVE'S REPLY MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF THE PLAN OF ALLOCATION**

BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 446-2300
Fax: (212) 446-2350

EDWARDS HENDERSON, PLLC
425 N. Andrews Ave., Suite 2
Fort Lauderdale, FL 33301
Telephone: (954) 524-2820
Fax: (954) 524-2822

*Counsel for Settlement Class Representative Jane Doe and the Class*

# TABLE OF CONTENTS


I. THE CLASS OVERWHELMINGLY SUPPORTS THE SETTLEMENT ............................ 1

II. THE COURT SHOULD OVERRULE THE OBJECTIONS ................................................ 2

A. Jennifer Freeman and the Marsh Law Firm Lack Standing to Object. .............................. 2

B. The Release Is Not Overbroad (Objection Number 1). ..................................................... 3

C. The CSAM Objection Fails (Objection Number 2). .......................................................... 5

D. The Objection Fails to Credibly Allege Any Conflicts (Objection 3). .............................. 7

E. Notice Is Adequate (Objection 4). ........................................................................................ 8

F. The Reasonableness of Settlement Weighs in Favor of Final Approval (Objection 5). ..... 9

III. CONCLUSION ......................................................................................................... 10

**TABLE OF AUTHORITIES**

**Cases**

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997) ........ 7, 10

*Amy v. Apple Inc.*,
2026 WL 2031817 (N.D. Cal. July 13, 2026) ........ 6

*Consol. Edison, Inc. v. Ne. Utils.*,
332 F. Supp. 2d 639 (S.D.N.Y. 2004) ........ 8

*Davis v. JP Morgan Chase & Co.*,
827 F. Supp. 2d 172 (W.D.N.Y. 2011) ........ 1

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006) ........ 7

*Doe 1 v. JP Morgan Chase Bank, N.A.*,
22 Civ. 10019 (S.D.N.Y. Oct. 19, 2023) ........ 2

*Doe 1 v. JP Morgan Chase Bank, N.A.*,
2023 WL 4373292 (S.D.N.Y. June 29, 2023) ........ 5, 10

*Gonqueh v. Leros Point To Point, Inc.*,
2016 WL 791295 (S.D.N.Y. Feb. 26, 2016) ........ 4

*In re Agent Orange Prod. Liab. Litig.*,
597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987) ........ 9

*In re Citigroup Inc. Sec. Litig.*,
965 F. Supp. 2d 369 (S.D.N.Y. 2013) ........ 1

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
327 F.R.D. 483 (S.D.N.Y. 2018) ........ 3

*In re Literary Works in Elec. Databases Copyright Litig.*,
654 F.3d 242 (2d Cir. 2011) ........ 5, 7

*In re Merrill Lynch Tyco Research Sec. Litig.*,
249 F.R.D. 124 (S.D.N.Y. 2008) ........ 8

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
827 F.3d 223 (2d Cir. 2016) ........ 5

*In re Sci. Control Corp.*,
80 F.R.D. 237 (S.D.N.Y. 1978) ........ 8

*Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*,
660 F.2d 9 (2d Cir. 1981) .......... 5

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972) .......... 10

*Old Jericho Enters., Inc. v. Visa, Inc.*,
175 F.4th 172 (2d Cir. 2026) .......... 7, 8

*Stinson v. City of New York*,
256 F. Supp. 3d 283 (S.D.N.Y. 2017) .......... 3, 6

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005) .......... 2, 9

**Other Authorities**

Newberg and Rubenstein on Class Actions § 3:58 (6th ed.) .......... 7

**Rules**

Fed. R. Civ. P. 23 .......... 7

Class Representative Jane Doe ("Class Representative"), individually and on behalf of a class of similarly situated victims (the "Class"), respectfully submits this reply in support of her motions for: (i) final approval of the Settlement[1] of *Jane Doe v. Bank of America, N.A.*, No. 25-cv-8520 (S.D.N.Y.) (the "Litigation"), and (ii) approval of the Plan of Allocation. ECF Nos. 151, 152.

This litigation resulted in a life-altering $72.5 million settlement for the survivors of Jeffrey Epstein. In granting preliminary approval, the Court found the settlement fair, reasonable, and adequate, and authorized Notice to the Class. ECF No. 134 ¶¶ 1–2. After notice procedures were completed, there were no opt-outs and approximately 90 individuals submitted claims, many expressing strong support for the Settlement. The lone objection—filed by attorney Jennifer Freeman of the Marsh Law Firm who raises objections not on behalf of Class Members but in her capacity as an attorney—is conclusory, speculative, and without merit. *See* ECF No. 160 (the "Objection" or "Obj."). It should be overruled.

## I. THE CLASS OVERWHELMINGLY SUPPORTS THE SETTLEMENT

It is widely recognized that overwhelming class support indicates the proposed settlement is fair, reasonable, and adequate. *See, e.g.*, *Davis v. JP Morgan Chase & Co.*, 827 F. Supp. 2d 172, 177 (W.D.N.Y. 2011) (granting final approval and noting "very little negative reaction by class members to the proposed settlement"); *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 382 (S.D.N.Y. 2013) (noting "numbers here overwhelmingly support approval of the settlement"). Indeed, "the favorable reaction of the overwhelming majority of class members . . . is perhaps the

[1]Unless otherwise stated or defined, all capitalized terms used herein shall have the meanings provided in ECF Nos. 121-1, 152, 155. All emphasis is added and all citations are omitted unless otherwise noted.

most significant factor in [the] *Grinnell* inquiry." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 119 (2d Cir. 2005). Here, approximately 90 individuals submitted claims, many expressing "profound gratitude" for the Settlement. *See* ECF No. 152 at 11.

## II. THE COURT SHOULD OVERRULE THE OBJECTIONS

On August 6, 2026, Jennifer Freeman, an attorney, filed "Objections to the Proposed Settlement." *See* Objection at 1.[2] Ms. Freeman purports to object "in her capacity as an attorney and advocate" and challenges aspects of the Settlement and Plan of Allocation, namely that the Release uses a common term releasing claims that can be imputed to BANA and would extinguish the claims of unidentified purported Class Members who may have child sexual abuse material ("CSAM") claims. Obj. at 1. Ms. Freeman's objections are legally and factually insufficient.

### A. Jennifer Freeman and the Marsh Law Firm Lack Standing to Object.

As a threshold matter, the Court should overrule the Objection for lack of standing. The Objection identifies Jennifer Freeman and her law firm, Marsh Law Firm PLLC, as the "Objector." Obj. at 1. And while the firm claims to be counsel to "three Jane Doe class members," the Objection itself makes clear that "Objector raises these objections ***in her capacity as an attorney and advocate***." *Id.*; *see also id.* at 2 (noting that "Jennifer Freeman, Esq. makes the following objections class wide").[3] Because neither Ms. Freeman nor her law firm are Class Members, the Court should

---

[2]Neither the filing nor the copies mailed to Class Counsel included "documents sufficient to prove membership in the Class," which was required by the Court's Preliminary Approval Order. *See* ECF No. 134 ¶ 19. The Objection also fails to "state with specificity the grounds for the objection." Fed. R. Civ. P. 23(e)(5).

[3]This language differs materially from a prior objection the Marsh Law Firm filed with this Court in 2023 during the *JP Morgan* settlement. That objection clearly indicated that objections were on behalf of a class member and included that class member's signed declaration. *See Doe 1 v. JP Morgan Chase Bank, N.A.*, 22-cv-10019, ECF No. 47, at 1 (S.D.N.Y. Oct. 19, 2023) ("[Class Member], by and through her attorneys of record, Marsh Law Firm PLLC, hereby makes the following objections to the Settlement of this Litigation . . . . ").

overrule their purported objection for lack of standing. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 327 F.R.D. 483, 500–01 (S.D.N.Y. 2018) (overruling non-class-member firm's objection for lack of standing); *Stinson v. City of New York*, 256 F. Supp. 3d 283, 291 (S.D.N.Y. 2017) ("Only a 'class member may object to the [settlement] proposal,' . . . which implies that '[o]bjectors who are non-Class members lack standing to object to . . . the settlement.'").

Since the Court's Preliminary Approval Order makes clear that the right to object is limited to "Class Members," the Court should first ascertain from Ms. Freeman whether any actual Class Member authorized her to object on her behalf. *See* ECF No. 134 ¶ 18 (providing that "Any Class Member may appear at the Settlement Hearing and object if she has any reason why the proposed Settlement of the Litigation should not be approved . . ."); *id.* ¶ 19 (requiring objections "by an objecting Class Member" to be "signed by the objector" and "include documents sufficient to prove membership in the Class"). There is no indication that the three clients Ms. Freeman identifies intend to raise (or would support) objections to the Settlement, as doing so would be against their interests. These listed individuals received notice and do not allege CSAM-specific claims for themselves. They would therefore have no basis to object on those grounds, which Ms. Freeman and her firm appear to be raising instead on behalf of still-unidentified "absent class members." Obj. at 1.

**B. The Release Is Not Overbroad (Objection Number 1).**

Without identifying the specific claims it contends are being improperly released, the Objection argues that the Release is overbroad and encompasses claims outside those litigated against BANA. Obj. at 3. This argument is without merit.

The Release covers only claims against the "Released Defendant Parties," defined as: "Bank of America, N.A., Merrill Lynch, Pierce, Fenner & Smith, Inc., BofA Securities, Inc., and

Bank of America Corporation, together with their respective past and present parents, subsidiaries, corporate affiliates, predecessors, and successors; each of those entities' respective past or present officers, directors, and agents acting within the scope of their duties on behalf of the foregoing entities; and each of those entities' respective past or present employees for any act connected in any way to their employment." ECF No. 121-1 at 13. The Released Plaintiffs' Claims are limited to those Class Members "(a) asserted in the Litigation against the Released Defendant Parties, (b) could have asserted in the Litigation against the Released Defendant Parties, or (c) could assert against the Released Defendant Parties in any other action or forum with respect to Epstein . . . ." *Id.* at 11. The Release further excludes "any claims against Jeffrey Epstein, his Estate, or any trustee, successor, or representative of his Estate; any Epstein-related individuals specifically identified by name in paragraph 13 of Plaintiff's first set of interrogatories; or any natural person who sexually abused any Class Member." *Id.* at 12. The Release is properly tied to BANA's purported knowing facilitation of Epstein's sex-trafficking venture through its banking services.

The Objection's argument that the phrase "any other person or entity" broadens the Release (Obj. at 3) to include "materially different claims" ignores that the Settlement only releases claims arising out of conduct "***that can be imputed to a Released Defendant Party***." ECF No. 121-1 at 11. This language recognizes established principles of agency and respondeat superior liability, ensuring BANA cannot face duplicative claims predicated on the same financial relationship with Epstein. The imputation clause does not expand the Release beyond claims arising from BANA's financial relationship with Epstein; it merely forecloses future attempts to repackage banking-predicate claims. Courts in this Circuit have routinely approved settlement releases containing comparable imputation language. *See, e.g.*, *Gonqueh v. Leros Point To Point, Inc.*, 2016 WL 791295, at *4 n.1 (S.D.N.Y. Feb. 26, 2016) (approving final settlement order defining "Released

Persons" as defendants "as well as to each of their present and former parent companies, subsidiaries, heirs, related or affiliated companies and their respective shareholders, officers, directors, employees, members, managers. . . and ***all persons or entities*** acting by, through, under or in concert with any of them, and ***any individual or entity*** which could be jointly liable with any of them"); *Doe 1 v. JP Morgan Chase Bank, N.A.*, 2023 WL 4373292, at *2 (S.D.N.Y. June 29, 2023).

The Objection's cases are distinguishable. In *National Super Spuds*, the objecting class member held an ***existing***, separately filed lawsuit against the same defendants, asserting claims that were factually and legally distinct. *Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*, 660 F.2d 9, 11–12 (2d Cir. 1981). The Second Circuit reversed approval of the settlement because the release extinguished the objector's pending claims. *Id.* at 18–19. Here, by contrast, the Objection does not identify any claim against BANA or any Released Defendant Party, and the Release preserves all claims against any Epstein-related individuals and any natural persons who committed abuse. The remaining cases are distinguishable for similar reasons. *See In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242 (2d Cir. 2011) (rejecting objections and reversing on adequacy grounds); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223 (2d Cir. 2016) (reversing settlement where the sub-classes were represented by the same counsel despite having divergent interests in the relief awarded).

**C. The CSAM Objection Fails (Objection Number 2).**

Ms. Freeman's CSAM objection focuses on claims for "image-based exploitation, possession, distribution, redistribution, future dissemination, and other harms distinct from the trafficking-facilitation claims pleaded against Bank of America." Obj. at 3. This Objection fails for numerous reasons.

***First***, the Objection does not identify any viable CSAM claims Class Members could bring against BANA. Indeed, the Objection ignores the threshold requirement for Class membership: individuals who were abused on or after June 30, 2008. The vast majority of victims—if not all—with potential CSAM claims relating to Epstein were abused ***before*** that date, and are therefore not Class Members whose claims could be released. For example, even if a victim could overcome the statute of limitations and attempt to assert a CSAM claim against BANA, that claim would not be extinguished because the claimant falls outside the Class definition. Any theoretical CSAM claim against BANA that would be covered by the Release is therefore purely hypothetical and should not disturb settlement. *See Stinson*, 256 F. Supp. 3d at 292–93 (explaining that "the hypothetical nature of the objections … do not weigh against approving a Settlement").

***Second***, the Objection ignores that Class Members with CSAM claims retain the ability to sue natural persons for their own sexual abuse. Specifically, the Release expressly provides that "[n]othing contained in this Stipulation of Settlement shall constitute a release of any Class Members' claims against any natural person who sexually abused them." ECF No. 121-1 at 13. And, to the extent Class Members have CSAM claims against Epstein or his associates, those claims remain unaffected by this Settlement.

***Third***, to succeed on the type of claim that Ms. Freeman appears to be contemplating, a plaintiff must allege that BANA "knowingly received or distributed CSAM." *Amy v. Apple Inc.*, 2026 WL 2031817, at *4 (N.D. Cal. July 13, 2026). As a bank, BANA is not hosting or distributing visual content, and certainly Ms. Freeman has not alleged as much.

Even so, any conceivable CSAM claim against BANA would unavoidably be tied to financial services that the Bank provided to Epstein or to Epstein-related individuals or entities. That would involve the same factual predicate as the trafficking claims and therefore appropriately

be covered by the Release. *Wal-Mart Stores, Inc.*, 396 F.3d at 108 (holding that "the overlap between elements of *claims* is not dispositive," and "[c]lass actions may release claims, even if not pled, when such claims arise out of the same factual predicate as settled class claims"); *Old Jericho Enters., Inc. v. Visa, Inc.*, 175 F.4th 172, 180 (2d Cir. 2026) (affirming overruling of objections because "[w]e conclude, as the district court did, that the Old Jericho Plaintiffs are asserting claims based on a different legal theory but the same factual predicate as those in the Settlement Agreement").

### D. The Objection Fails to Credibly Allege Any Conflicts (Objection 3).

The Objection asserts that the settlement should be rejected "because the class representative and class counsel cannot adequately represent class members … [with] materially different claims." Obj. at 3. "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). To satisfy Rule 23(a)(4), the named plaintiffs must "possess the same interest[s] and suffer the same injur[ies] as the class members." *Id.* at 625–26. "Adequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). "Not every conflict among subgroups of a class will prevent class certification [and thus settlement]—the conflict must be 'fundamental' to violate Rule 23(a)(4)." *In re Literary Works*, 654 F.3d at 249. Fundamental conflicts may exist where the defendant's conduct may have harmed some class members while benefitting others or there are differences in the type of relief sought. 1 Newberg and Rubenstein on Class Actions § 3:58 (6th ed.). Here, the Objection does not articulate any fundamental conflict between Class Members. To the extent any CSAM-related claim exists (*but see supra* Section C),

any Class Member was at risk of being surreptitiously recorded or coerced to create CSAM materials, and therefore there are no discernible conflicts within the certified Class. And all Class Members "shar[e] an interest in maximizing the recovery for all class members" who suffered harm as a result of Epstein's financial relationship with BANA. *Old Jericho*, 175 F.4th at 180. Under the Settlement Agreement, in consideration of the Release, survivors are compensated in accordance with their economic interests and the circumstances and severity of their abuse. This is sufficient to secure a fair settlement. *Id*.

**E. Notice Is Adequate (Objection 4).**

The Objection's challenge to the adequacy of notice is meritless. It does not—because it cannot—claim that Ms. Freeman, the Marsh Law Firm, or any of the three Class Members they represent suffered from any deficiency in the Notice Plan whatsoever. Having received notice ***and*** opted into the Class, they lack standing to challenge the Notice Plan. *In re Sci. Control Corp.*, 80 F.R.D. 237, 240 (S.D.N.Y. 1978) ("Griffin also protests that notice to the class was inadequate. This is plainly not correct . . . having received notice himself, he lacks standing to complain.").

Moreover, the Notice Plan was comprehensive and Court-approved, incorporating suggestions from the Fund Administrator as to how to maximize dissemination to potential Class Members through social media. *See Consol. Edison, Inc. v. Ne. Utils.*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004). The plan included: (i) direct mailing or emailing of the Notice to identifiable Class Members; (ii) publication in *USA Today*, *People*, *Gazeta Wyborcza*, and *Le Monde*; (iii) a multilingual social media campaign on Facebook and Instagram; (iv) a dedicated Settlement website; (v) international investigators to locate potential Class Members; and (vi) supplemental mailings and outreach. *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008) (approving settlement where notice was easily understood by the average person,

set forth the essential information about the case, and was published in two news outlets).

Further, the Objection's contention that the Notice did not specifically reference CSAM claims fails because the Release language gave proper notice of the claims being released against BANA. A release need not identify every possible claim by name so long as the released claims arise from the same factual predicate. *See Wal-Mart Stores, Inc.*, 396 F.3d at 108 (holding that "[c]lass actions may release claims, even if not pled, when such claims arise out of the same factual predicate as settled class claims"). Here, the Release is expressly limited to claims against the Released Defendant Parties arising from BANA's banking relationship with Epstein—the same factual predicate necessarily underlying any theoretical CSAM claims against BANA, as explained above. The Notice advised Class Members of the essential terms of the Settlement, including the scope of the Release, and provided full copies of the Stipulation on the Settlement website; Class Members had the opportunity to review the release language and opt out if they found it objectionable. Lastly, the Objection's argument that withheld documentary files under the Epstein Files Transparency Act might reveal additional absent Class Members is nothing more than speculation and would, if credited, delay justice indefinitely for the survivors who have already come forward and have a present need for the funds the Objection would deny them.

**F. The Reasonableness of Settlement Weighs in Favor of Final Approval (Objection 5).**

The Objection's challenges under *Grinnell* factors eight and nine fail. Even if any Class Members had CSAM claims against BANA, those claims would be justly compensated under the $72.5 million Settlement. The Objection's demand that the Parties "quantify the value" of theoretical CSAM claims (Obj. at 4) misapprehends the applicable legal standard. The adequacy of a settlement is assessed "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re Agent Orange*

*Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). The Court need only determine whether the settlement falls within a "range of reasonableness" that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). Here, the inclusion of any hypothetical CSAM claims against BANA would not materially alter the reasonableness calculus because such claims would be covered by the Release, *see supra* Section C.[4] If the Objection is sustained and a new subclass is created, the Class Representative faces significant litigation risks: BANA would oppose class certification, could appeal any certification order, or move for decertification. The Settlement was reached after extensive arm's-length negotiations before a nationally recognized mediator, following the submission of detailed mediation statements towards the close of fact discovery. The Court itself described the Settlement as being "almost always in the public interest." Preliminary Fairness Hr'g Tr. (Apr. 2, 2026) at 15:10–13; s*ee also JP Morgan Chase*, 2023 WL 4373292, at *2.

## III. CONCLUSION

The $72.5 million Settlement is an excellent recovery for the Class and will deliver life-changing monies and opportunities to the survivors of Jeffrey Epstein. For the reasons set forth herein and in their opening papers, Class Representative and Class Counsel respectfully request that the Court overrule the Objections, approve the Settlement and Plan of Allocation, and award the requested attorneys' fees.

---

[4] *Amchem* is distinguishable. *Amchem*, 521 U.S. 591. There, the Supreme Court vacated a class certification intended to achieve global settlement of asbestos-related claims because the interests of class members who had already manifested injuries diverged from those who had been exposed but had not yet shown signs of injury. *Id.* at 607–08, 626. Here, the Settlement secures relief for a single class based on the same predicate facts: BANA's purported knowing facilitation of Epstein's sex-trafficking venture through its banking services.

Dated: August 20, 2026

Respectfully submitted,

*/s/ Sigrid S. McCawley*
Sigrid McCawley
Daniel Crispino
Megan Nyman
Andrea Guzman
Boies Schiller Flexner LLP
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33316
Telephone: (954) 356-0011
Fax: (954) 356-0022
Email: smccawley@bsfllp.com
Email: dcrispino@bsfllp.com
Email: mnyman@bsfllp.com
Email: aguzman@bsfllp.com

David Boies
Andrew Villacastin
Rachael Schafer
Boies Schiller Flexner LLP
55 Hudson Yards
New York, NY
Telephone: (212) 446-2300
Fax: (212) 446-2350
Email: dboies@bsfllp.com
Email: avillacastin@bsfllp.com
Email: rschafer@bsfllp.com

Jessica Lim
Boies Schiller Flexner LLP
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Telephone: (213) 995-5745
Email: jlim@bsfllp.com

Bradley J. Edwards
Brittany N. Henderson
Dean Kaire
Edwards Henderson
425 N. Andrews Ave., Suite 2
Fort Lauderdale, FL 33301
Telephone: (954) 524-2820
Fax: (954) 524-2822

Email: brad@cvlf.com
Email: brittany@cvlf.com
Email: dean@cvlf.com

*Counsel for Plaintiff Jane Doe*

**CERTIFICATE OF COMPLIANCE**

I, Sigrid S. McCawley, hereby certify pursuant to Local Civil Rule 7.1(c) that the foregoing Memorandum of Law was prepared using Microsoft Word and complies with Rule 2(e) of this Court's Individual Rules and Local Rule 7.1(c).

*/s/ Sigrid S. McCawley*